MARC E. MAYER (SBN 190969)
  mem@msk.com
KARIN G. PAGNANELLI (SBN 174763)
  kgp@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTIVISION PUBLISHING, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>WARZONE.COM, LLC,<br><br>Defendants. | CASE NO. 2:21-cv-3073<br><br>**COMPLAINT FOR DECLARATORY RELIEF**<br><br>**Demand For Jury Trial** |

Activision Publishing, Inc. ("Activision" or "Plaintiff"), by its attorneys Mitchell Silberberg & Knupp LLP, complain and allege against defendant Warzone.com, LLC ("Defendant") as follows:

## PRELIMINARY STATEMENT

1. This is an action for declaratory relief, seeking a declaration that Activision's use and registration of the word marks WARZONE and CALL OF DUTY WARZONE do not infringe Defendant's purported trademark rights in the title of its browser-based strategy game "Warzone."

2.      Activision is among the world's leading publishers of video games and interactive entertainment products.  Among Activision's most popular video game products are the *Call of Duty* series of video games.  The *Call of Duty* franchise has been the world's leading military-themed "first-person shooter" game series for nearly two decades.  Since 2003, Activision has released to the public more than two dozen *Call of Duty* games for personal computers, game consoles, and mobile devices.  In 2020, Activision released a free-to-play multiplayer game titled *Call of Duty: Warzone*, a large-scale, highly competitive, fast-paced military combat game in which 150 players fight to be the last soldier standing in a massive, detailed, fully-realized "Warzone," spanning more than nine square kilometers of virtual space.

3.      Activision's *Call of Duty: Warzone* could not be more different from Defendant's game, a low-budget, niche virtual board game like Hasbro's *Risk* where players take turns moving numbers (representing "armies") across a map of the world.  Indeed, it is inconceivable that any member of the public could confuse the two products or believe that they are affiliated with or related to each other.  Nevertheless, Defendant has claimed that Activision's *Call of Duty: Warzone* infringes Defendant's alleged trademark rights in the word "Warzone."  Defendant specifically has threatened to seek an injunction preventing Activision from using the word "Warzone," massive damages for the alleged injury to Defendant's alleged "brand," and an order from the U.S. Patent and Trademark Office preventing Activision from registering a trademark in the title of Activision's popular game.

4.      Defendant's threats of litigation and active efforts to block Activision's trademark registrations have created an actual and live controversy as to the parties' respective rights to use or register trademarks that include the word "Warzone."  Because Activision's use of the "Warzone" title is both protected by the First Amendment and unlikely to cause consumer confusion, Activision is

entitled to a declaration that it has not infringed Defendant's alleged trademark and is entitled to have its pending trademark applications mature to registration.

## JURISDICTION AND VENUE

5. This is an action for declaratory relief, arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.* and the Declaratory Judgment Act, 18 U.S.C. § 2201.

6. This Court has subject matter jurisdiction over Activision's claims for declaratory relief pursuant to 28 U.S.C. §§ 1331 and 1338, as the claims arise under and require interpretation of the trademark laws of the United States.

7. This Court has personal jurisdiction over Defendant because it has purposefully directed its activities at the State of California and has purposefully availed itself of the benefits of doing business in California, including by soliciting, doing business with, entering into contracts with, and communicating with individuals or entities in the State of California such as end-users, internet service providers, distribution platforms, and payment processors.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because this is a judicial district in which a substantial part of the events giving rise to the claims occurred.

## THE PARTIES

9. Activision is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in Santa Monica, California.

10. Activision is informed and believes, and on that basis alleges, that Defendant is a corporation duly organized and existing under the laws of the State of Washington, with its principal place of business in Everett, Washington.

# FACTS APPLICABLE TO ALL CLAIMS

## Activision and Its *Call of Duty* Games

11. Activision is among the world's preeminent video game publishers, engaged in the business of producing, financing, marketing, and distributing a portfolio of popular video games and interactive entertainment products. Among Activision's most popular video games are the *Call of Duty* series of games.

12. Activision's *Call of Duty* games are military-themed "first-person shooter" games, in which the player assumes the role of a military soldier or special forces operative and engages in intense, ground-based infantry combat against computer-controlled or human-controlled players across a series of computer-generated, virtual battlegrounds.

13. The *Call of Duty* game franchise has been in existence for nearly two decades. The first *Call of Duty* game was released in 2003, followed by *Call of Duty 2* in 2005. Since then, Activision has released new installments in the *Call of Duty* franchise on a yearly basis, through and including 2020's *Call of Duty: Black Ops Cold War*. To date, Activision has released 16 major installments to the *Call of Duty* franchise for personal computers and home game consoles such as the PlayStation and Xbox. In addition, Activision has released a number of "remasters" (*i.e.* upgraded versions of prior games), "spin-offs," and mobile or handheld versions of *Call of Duty*. These include, for example, *Call of Duty: Mobile* (2019, for mobile devices), *Call of Duty: Modern Warfare Remastered* (2016, for PC and game consoles), *Call of Duty: Modern Warfare Mobilized* (2009, for the Nintendo DS), and *Call of Duty: Heroes* (2014, for mobile devices).

14. According to public reports, Activision has sold more than 300 million *Call of Duty* games. The series is considered the most successful first-person shooter game franchise ever made, with millions of people playing Activision's *Call of Duty* games each day. As a result, the *Call of Duty* name and trademark is among the strongest entertainment brands in the world and is

immediately recognizable to consumers of home entertainment products throughout the United States and the world.  Millions of people associate the *Call of Duty* name with Activision and its military-themed first-person shooter games.

### *Call of Duty: Warzone*

15. On March 10, 2020, Activision released a stand-alone, "free to play," online multiplayer game titled *Call of Duty: Warzone* ("*CODWZ*").

16. *CODWZ*, like other *Call of Duty* titles, is a competitive, first-person military shooter game in which the player assumes the role of a military soldier and competes against other human players.  *CODWZ* features a very large computer-generated battlefield (or "warzone") that accommodates up to 150 players (and sometimes 200 players) at one time.  In its most popular ("Battle Royale") game mode, players parachute onto the warzone, scrounge for weapons and equipment, and compete to be the "last one standing."  In the warzone, players may encounter and acquire a variety of military-style equipment such as guns, explosives, traps, vehicles, and melee weapons.  As the game progresses, the playable area shrinks, forcing players to come into close contact with each other.  When all other players have been eliminated, the remaining player is declared the winner.  A representative image of *CODWZ*'s gameplay appears below:



17. Because all combat takes place on a single, massive virtual landscape (of over nine square kilometers) that is populated by dozens of players engaged in virtual military combat against opponents, the title "Warzone" is both logical and highly relevant to the content of the game. Indeed, the battlefield on which combat takes place has all the hallmarks of a real-life warzone: namely, it is a "zone in which belligerents are waging war broadly: an area marked by extreme violence."[1]

18. Since its release, Activision consistently has marketed and promoted *CODWZ* as a part of the *Call of Duty* franchise. For example, key art for *CODWZ* prominently displays the *Call of Duty* name and logo, includes artwork consistent with the overall franchise, and uses a font consistent with other games in the franchise:



Like other *Call of Duty* titles, *CODWZ* contains realistic objects, weapons, and other in-game "assets" (textures, 3D models, landscapes) familiar to *Call of Duty* players and uses a control scheme that is the same as or similar to other *Call of Duty* games.

---

[1] *Warzone*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/war%20zone (last visited Apr. 8, 2021).

**Defendant and Warzone.com**

19. Activision is informed and believes, and on that basis alleges, that Defendant is a Washington-based LLC that developed and makes available to the public a "browser-based" game titled *Warzone*. *Warzone* is a free-to-play, turn-based strategy game (akin to a board game) that Defendant markets as "Better than Hasbro's RISK game" and with the slogan "If you like Hasbro's RISK® game, you'll love Warzone! Play alone or with friends."

20. Defendant claims that it released *Warzone* to the public in November 2017. Activision is informed and believes, and on that basis alleges, that in its initial version, *Warzone* was playable exclusively on Defendant's internet website, www.warzone.com, using a web browser such as Internet Explorer or Google Chrome. Sometime thereafter, Defendant made the game available to be played on mobile devices such as Apple iPhones and Android smartphones. *Warzone* is distributed and available to residents of the Central District of California. *Warzone* has never been available for video game consoles such as the Microsoft Xbox, Sony PlayStation, or Nintendo Switch.

21. Activision is informed and believes, and on that basis alleges, that Defendant's *Warzone* is one of many games titled "Warzone" that are available on the internet as a browser-based game or on mobile distribution platforms such as the Apple App Store and Google Play Store. Other games with the same name include, for example, *Warzone* by KEA Games, *Warzone* by Arcade Studios, *Warzone* by Zaid Ghababsheh, *Warzone* by Y8.com, *Warzones* by Y8.com, *Warzone Mercenaries* by Y8.com, *WWII: Warzone* by Y8.com, *Warzone Online MP* by Y8.com, *Crossfire: Warzone* by JOYCITY, *No Rule Warzone* by Ren Xila, *Battle Royale Warzone* by RedZone Studios LLC, *Idle Warzone 3d* by Virede, *Warzone: Clash of Generals* by Stratosphere Games, *Warzone Getaway 2020* by Ace Viral, *Anomaly Warzone Earth* by 11 bit Studios S.A., and *Warzone! Emergency Landing* by Reludo. Activision's *CODWZ* is not currently available on

1 mobile devices or smartphones.

2     22. Unlike *CODWZ*, Defendant's *Warzone* is not a first-person shooter video game. *Warzone* is a turn-based strategy virtual "board game" in which players shift numbers (representing "armies") across a map of the world in order to take control of countries or territories. *Warzone* players may play against the computer or other players in "real time" (akin to a game of computer chess) or asynchronously (akin to a game of chess-by-mail). Below is an illustration of *Warzone* as it appears on a computer browser:

    23. Activision is informed and believes, and on that basis alleges, that Defendant has at all relevant times marketed *Warzone* using a distinctive logo that is significantly and unmistakably different from the logo used by Activision for *CODWZ*, as illustrated below:



24. Defendant does not possess a trademark registration for WARZONE in connection with any goods and services, including video games or software products. Activision is informed and believes, and on that basis alleges, that the term "Warzone" has not acquired secondary meaning as a source identifier for Defendant's goods and services and that the consuming public does not associate the word "Warzone" with Defendant. To the contrary, the term "Warzone" is a phrase that is used by many video games and other entertainment products that involve military combat.

25. Activision is informed and believes, and on that basis alleges that reasonably sophisticated consumers of video games or computer software would not be likely to confuse Defendant's *Warzone* with Activision's *CODWZ*. Indeed, because *Warzone* and *CODWZ* are so different in style, gameplay, and appearance; are marketed very differently; appeal to and are played by different consumers; are not sold in the same channels of trade; and use completely different design marks and logos, a consumer of Defendant's *Warzone* would not be likely to believe that *CODWZ* is associated with Defendant or that Defendant's *Warzone* is associated with Activision.

**The Parties' Dispute**

26. On or about June 25, 2020, Activision filed applications for registration of the trademarks WARZONE (Ser. No. 90/020,487) and CALL OF DUTY WARZONE (Ser. No. 90/020,455) in connection with "downloadable video game software, downloadable video and computer game programs" (Class 9) and "entertainment services, namely, providing online video games and providing information on-line relating to computer games and computer enhancement for games (Class 41) (the "Activision Applications").

27. On October 30, 2020, Defendant filed applications for registration of the trademark WARZONE in connection with "downloadable game software"

(Class 9; Ser. No. 90/290,628) and "providing online non-downloadable game software" (Class 41; Ser. No. 90/290,658) ("Defendant's Applications").

28. On November 3, 2020, the marks subject to the Activision Applications were published for opposition in the Trademark Official Gazette. That same day, Defendant filed a Notice of Opposition to registration of the Activision Marks (the "Opposition Proceeding").

29. In the Opposition Proceeding, Defendant alleges that "[u]se and registration of Activision's WARZONE and CALL OF DUTY WARZONE marks, when applied to Activision's proposed goods and services, has already and will continue to result in the relevant consuming public being confused, mistaken or deceived as to the affiliation, association, origin, connection or sponsorship of Activision's goods and services marketed under these Proposed Marks" and that Defendant "is and will continue to be damaged by the registration of Activision's Proposed Marks." The Opposition Proceeding is currently pending before the U.S. Patent and Trademark Office.

30. On November 20, 2020, Defendant's counsel sent a "cease and desist" letter to Activision's counsel, demanding that Activision "change the name of its games, stop using Warzone's WARZONE mark, and abandon the trademark applications." Defendant also advised Activision that Defendant "would be within its rights to seek to enjoin Activision from using the WARZONE mark and to recover monetary relief as a result of Activision's infringing use… [including] Activision's profits attributable to its use of the WARZONE mark in 'Call of Duty: Warzone' or a reasonable royalty." Activision disputes these allegations, and expressed its position in a letter dated February 16, 2021.

31. Activision and Defendant continued to correspond concerning this dispute in early 2021. However, they were not able to reach an agreement, and on March 4, 2021, Defendant's counsel sent a letter to Activision's counsel, stating that "Activision's use of the WARZONE mark has caused actual consumer

confusion and damaged [Defendant]." Defendant's counsel also made a monetary settlement demand and demanded a response to that demand by March 12, 2021. On March 24, 2021, Activision made a counterproposal. On April 5, 2021, Defendant rejected the counterproposal and did not offer to continue the negotiations.

32. Defendant's continued threats to seek injunctive relief and monetary damages against Activision, as well as Defendant's Opposition Proceeding and filing of competing trademark applications for the word "Warzone," have created a concrete dispute between the parties regarding Activision's right to use and register the WARZONE and CALL OF DUTY WARZONE trademarks in connection with *CODWZ*. Declaratory relief will serve to clarify the scope of each party's legal rights with respect to Activision's use of the WARZONE and CALL OF DUTY WARZONE marks.

## COUNT I

## For A Declaration of Non-Infringement Under The Lanham Act

## (15 U.S.C. § 1125(a))

33. Activision re-alleges and incorporates by reference the allegations in paragraphs 1 through 32, as if set forth fully herein.

34. By reason of the foregoing, an actual and justiciable controversy has arisen and now exists between Activision, on the one hand, and Defendant, on the other hand, regarding whether Activision's use and registration of the marks WARZONE and CALL OF DUTY WARZONE are likely to cause consumer confusion as to the origin of *CODWZ* or to mislead the public into believing that Activision is affiliated with, sponsors, or endorses Defendant's *Warzone* game, or that Defendant is affiliated with, sponsors, or endorses *CODWZ*.

35. Activision contends that its use and registration of the marks WARZONE and CALL OF DUTY WARZONE are not likely to cause consumer

confusion as to the origin of *CODWZ* or to mislead the public into believing that Activision is affiliated with, sponsors, or endorses Defendant's *Warzone* game, or vice-versa. Additionally, Activision contends that its use of the title *Call of Duty: Warzone* in connection with its video game (which is an expressive work) is protected by the First Amendment, including because the title is artistically relevant to the content of the game and does not explicitly mislead as to the source or sponsorship of its game. Defendant has contested these assertions.

36. Activision requests a judicial declaration regarding the parties' respective rights with respect to the use and registration of the marks WARZONE and CALL OF DUTY WARZONE. Such a declaration is necessary and appropriate because a substantial controversy exists between the parties having adverse legal interests, and it is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

## **PRAYER FOR RELIEF**

WHEREFORE, Activision respectfully requests that this Court enter judgment in its favor and against Defendant:

1. Declaring that Defendant does not possess exclusive trademark rights in the term "Warzone";

2. Declaring that Activision's use of the WARZONE or CALL OF DUTY WARZONE Marks does not infringe, and at all times has not infringed, any existing and valid common law trademark rights of Defendant under the Lanham Act, 15 U.S.C. § 1125(a);

3. Declaring that Activision's use of the WARZONE or CALL OF DUTY WARZONE Marks is not likely to cause, and has not caused, confusion, mistake or deception as to the affiliation, connection, or association of Defendant with Activision's goods and services, or as to the origin, sponsorship, or approval

of Activision's goods and services by Defendant under the Lanham Act, 15 U.S.C. § 1125(a);

    4.    Declaring that Activision's pending applications for registration of the marks WARZONE and CALL OF DUTY WARZONE may proceed to registration;

    5.    Declaring that Defendant's pending applications for registration of the mark WARZONE should not proceed to registration;

    6.    Ordering that Defendant, its officers, directors, employees, agents, affiliates, attorneys, representatives, and licensees, be enjoined and permanently restrained from interfering with Activision's use and registration of the WARZONE and CALL OF DUTY WARZONE marks and from opposing, seeking to cancel, or otherwise objecting to any federal registrations and applications for registration of such marks;

    7.    Awarding Activision its reasonable attorney's fees and costs; and

    8.    Granting Activision such other and further relief as the Court may deem just and proper.

DATED: April 8, 2021

MARC E. MAYER
KARIN G. PAGNANELLI
MITCHELL SILBERBERG & KNUPP LLP

By: /s/ Marc E. Mayer
      Marc E. Mayer (SBN 190969)
      Attorneys for Plaintiff

## JURY DEMAND

Activision demands a trial by jury on all issues so triable.

DATED: April 8, 2021

MARC E. MAYER
KARIN G. PAGNANELLI
MITCHELL SILBERBERG & KNUPP LLP

By: /s/ Marc E. Mayer
    Marc E. Mayer (SBN 190969)
    Attorneys for Plaintiff

Mitchell Silberberg & Knupp LLP

13069634.1