Alyssa K. Schabloski (SBN 258876)
aks@gladiuslaw.com
GLADIUS LAW, APC
2708 Wilshire Blvd. #426
Santa Monica, CA 90403
Tel.: (310) 734-0720
Fax: (310) 734-0722

Brett E. Lewis (Admission *Pro Hac Vice* pending)
Brett@iLawco.com
LEWIS & LIN, LLC
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Tel.: (718) 243-9323
Fax: (718) 243-9326

*Attorneys for Defendant and Counterclaimant*
WARZONE.COM, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTIVISION PUBLISHING, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>WARZONE.COM, LLC,<br><br>Defendant. | CASE NO. 2:21-cv-3073<br><br>**ANSWER AND COUNTERCLAIMS OF WARZONE.COM, LLC TO PLAINTIFF'S COMPLAINT FOR DECLARATORY RELIEF;**<br><br>**DEMAND FOR JURY TRIAL** |

1

Defendant Warzone.com, LLC ("Warzone" or "Defendant"), through its undersigned counsel, Gladius Law, APC and Lewis & Lin LLC, as and for its answer to the Complaint of Plaintiff Activision Publishing, Inc. ("Activision"), respectfully alleges:

## PRELIMINARY STATEMENT

1.     Admits that this is an action for declaratory relief. Except as expressly admitted, Denies the allegations set forth in Paragraph 1 of the Complaint.

2.     Admits the allegations set forth in Paragraph 2 of the Complaint.

3.     Admits that Warzone has claimed that Activision's Call of Duty: Warzone infringes Warzone's trademark rights in the word "Warzone."  Admits that Activision caused substantial injury to Warzone's brand, and sought an order from the U.S. Patent and Trademark Office preventing Activision from registering a trademark in the title of Activision's popular game.  Except as expressly admitted, Denies the allegations set forth in Paragraph 3 of the Complaint.

4.     Admits that Warzone's efforts to block Activision's trademark registrations have created an actual and live controversy as to the parties' respective rights to use or register trademarks that include the word "Warzone." Except as expressly admitted, Denies the allegations set forth in Paragraph 4 of the Complaint.

## JURISDICTION AND VENUE

5.     Admits that Plaintiff has filed an action for declaratory relief under the Lanham Act, 15 U.S.C. § 1051 *et seq.* and the Declaratory Judgment Act, 18 U.S.C. § 2201.

6.     Admits the allegations set forth in Paragraph 6 of the Complaint.

//

7.      Admits that Warzone.com has customers in California, and some contacts with California, except denies the remaining allegations set forth in Paragraph 7 of the Complaint.

8.      Denies the allegations set forth in Paragraph 8 of the Complaint.

## THE PARTIES

9.      Denies knowledge or information sufficient to form a belief as to the truth of allegations set forth in Paragraph 9 of the Complaint.

10.    Admits the allegations set forth in Paragraph 10 of the Complaint.

## FACTS APPLICABLE TO ALL CLAIMS

### Activision and Its *Call of Duty* Games

11.    Admits the allegations set forth in Paragraph 11 of the Complaint.

12.    Admits the allegations set forth in Paragraph 12 of the Complaint.

13.    Admits the allegations set forth in Paragraph 13 of the Complaint.

14.    Admits the allegations set forth in Paragraph 14 of the Complaint.

### *Call of Duty: Warzone*

15.    Admits the allegations set forth in Paragraph 15 of the Complaint.

16.    Admits the allegations set forth in Paragraph 16 of the Complaint.

17.    Denies the allegations set forth in Paragraph 17 of the Complaint.

18.    Denies knowledge or information sufficient to form a belief as to the truth of allegations set forth in Paragraph 18 of the Complaint.

### Defendant and Warzone

19.    Admits the allegations set forth in Paragraph 19 of the Complaint.

20.    Admits that Warzone released Warzone to the public in November 2017.  Admits that in its initial version, Warzone was playable on Warzone's Internet website, located at www.warzone.com, using a web browser such as Internet Explorer or Google Chrome, but affirmatively avers that the game was

3

available on the same date on Android smartphones. Admits that sometime thereafter, Warzone made the game available to be played on Apple iPhones. Warzone is distributed and available to residents of the Central District of California. Admits that Warzone has never been available for video game consoles such as the Microsoft Xbox, Sony PlayStation, or Nintendo Switch.

21.     Admits that Arcade Studios launched a Warzone app in 2020, three years after Defendant did. Admits that Zaid Ghababsheh launched a Warzone app in March 2021. Admits that Y8 launched several differently named, "Warzone" formative games starting in late 2017. Admits that JOYCITY released Crossfire: Warzone in July 2020.  Admits that No Rule Warzone by Ren Xila launched in September 2019. Admits that the Battle Royale Warzone by RedZone Studios LLC app, launched in February 2019.  Admits that the Idle Warzone 3d by Virede app launched in September 2020. Admits that the Warzone: Clash of Generals app by Stratosphere Games launched in January 2018. Admit that Ace Viral launched Warzone Getaway 2020 in 2020.  Admits that 11 bit Studios S.A. launched the game, Anomaly Warzone Earth, and Reludo launched the app, Warzone! Emergency Landing. Defendant Affirmatively avers that Warzone by KEA Games is Defendant's game.

22.     Admits that Warzone's game is not a first-person shooter video game. Admits that Defendant's Warzone game is a turn-based strategy game, in which players shift numbers (representing "armies") across a map of the world in order to take control of countries or territories.  Admits that Warzone players may play against the computer or other players in "real time" or asynchronously.

23.     Admits that Warzone uses the WARZONE logo, but denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 23 of the Complaint.

24.     Admits that Warzone does not possess a trademark registration for WARZONE, but affirmatively avers that that is because Plaintiff's trademark

application Nos. 90020487 (WARZONE) and 90020455 (CALL OF

DUTY:WARZONE) are blocking its registration. Except as expressly admitted,

denies the allegations set forth in Paragraph 24 of the Complaint.

25.     Denies the allegations set forth in Paragraph 25 of the Complaint.

**The Parties' Dispute**

26.     Admits the allegations set forth in Paragraph 26 of the Complaint.

27.     Admits the allegations set forth in Paragraph 27 of the Complaint.

28.     Admits the allegations set forth in Paragraph 28 of the Complaint.

29.     Admits the allegations set forth in Paragraph 29 of the Complaint.

30.     Admits that counsel for Warzone sent a letter, dated November 20,

2020, and directs the Court to the letter for its contents. Admits that counsel for

Activision sent a letter, dated February 16, 2021 letter, and directs the Court to the

letter for its contents. Both letters speak for themselves. Except as expressly

admitted, Warzone denies the allegations set forth in Paragraph 30 of the

Complaint.

31.     Admits that counsel for Defendant and Plaintiff exchanged

correspondence, but were not able to reach an agreement. Warzone directs the

Court to Defendant's counsel's March 4, 2021 letter for its contents.  Except as

expressly admitted, denies the allegations set forth in Paragraph 31 of the

Complaint.

32.     Admits that Warzone's Opposition Proceeding and filing of

competing trademark applications for the mark "WARZONE," have created a

concrete dispute between the parties regarding Activision's right to use and register

the WARZONE and CALL OF DUTY: WARZONE trademarks in connection

with CODWZ.  Except as expressly admitted, denies the allegations set forth in

Paragraph 32 of the Complaint.

//

## COUNT I

## For A Declaration of Non-Infringement Under The Lanham Act

## (15 U.S.C. § 1125(a))

33.     Restates and incorporates by reference the responses contained in all preceding paragraphs as if set forth here in full.

34.     Admits that an actual and justiciable controversy exists as to whether Activision's use of WARZONE and CALL OF DUTY: WARZONE are likely to cause consumer confusion. Except as expressly so admitted, denies the remaining allegations of Paragraph 34 of the Complaint.

35.     Admits that Paragraph 35 of the Complaint states Activision's legal contentions. Except as expressly admitted, Warzone denies the allegations of Paragraph 35 of the Complaint.

36.     Admits that Activision requests a judicial declaration regarding the parties' respective rights with respect to the use and registration of the marks WARZONE and CALL OF DUTY: WARZONE.  Denies the remaining allegations of Paragraph 36.

With respect to Plaintiff's demand for judgment, no response is required. To the extent a response is deemed necessary, Defendant denies the allegations contained after the WHEREFORE clause, and further avers that Plaintiff is not entitled to the requested relief or any relief whatsoever.

## AFFIRMATIVE DEFENSES

1.     Plaintiff's Complaint fails to state a claim upon which relief may be granted.

2.     Plaintiff's Complaint is not justiciable in this district because this Court lacks personal jurisdiction over Defendant.

3.     Plaintiff's Complaint is not justiciable in this district because venue is improper.

4.     Defendant built up a reputation for its inherently distinctive WARZONE™ game and mark, since first launching the game in 2017, with over 750,000 downloads. Plaintiff's adoption of the WARZONE and CALL OF DUTY: WARZONE marks in March 2020, has completely taken over and dominated Warzone's mark, WARZONE™, in the video game market, and has caused reversion confusion under the Lanham Act.

5.     The use of the mark, WARZONE, in Plaintiff's game – both alone, and in CALL OF DUTY: WARZONE – is not an expressive use, and is not protected by the First Amendment. Where a junior user adopts the use of a similar title to the senior user's work – as in this case – such use explicitly misleads as to source.

6.     WARZONE™ is an inherently distinctive mark – either suggestive or arbitrary – and qualifies for immediate protection. Activision applied for WARZONE as a mark, without any descriptiveness disclaimer, and has argued that it is inherently distinctive before the U.S. Patent & Trademark Office.  Activision also seeks relief from this Court, allowing its own marks to proceed to registration, but barring Warzone from obtaining the registration of its senior WARZONE™ mark. If WARZONE™ is inherently distinctive, then Activision's marks should not register, and Warzone's mark should.

7.     Defendant raises each and every defense available to it under the applicable laws of the State of California.  Defendant reserves the right to raise additional defenses.

## COUNTERCLAIMS

Defendant ("Counterclaimant") counterclaims against Plaintiff ("Counterdefendant") as follows:

1.     Counterclaimant Warzone is a Washington limited liability company with a business address of 314 142nd Place SW, Everett, Washington, 98208.

2.  On information and belief, Counter-defendant Activision is a Delaware corporation with an address at 3100 Ocean Park Boulevard, Santa Monica, California 90405.

3.  Warzone adopted the trademark WARZONE™ and has established common law trademark rights in the WARZONE™ mark (the "WARZONE™ Mark"). Warzone has been making continuous and ongoing use of the WARZONE™ Mark in U.S. commerce since at least as early as November 13, 2017 in connection with providing its online and downloadable video game of the same name.

4.  Warzone treated the WARZONE™ Mark as a trademark by consistently using the indicator "TM" after the word "Warzone" on its logo.

5.  Warzone owns pending U.S. Patent & Trademark Office (USPTO) application Serial No. 90290628 for the mark WARZONE™ under International Class 09 for use in downloadable game software based on use beginning on or before November 13, 2017.

6.  Warzone also owns pending USPTO application Serial No. 90290658 for the mark WARZONE™ under International Class 41 for use in providing online non-downloadable game software. This application is likewise based on use beginning on or before November 13, 2017.  Together, the referenced Warzone USPTO applications are referred to herein as the "WARZONE Applications."

7.  Since its launch in 2017, Warzone has devoted significant resources to developing a loyal customer base and ensuring the consistent quality of its goods and services offered under the WARZONE™ Mark.

8.  Warzone has tens of thousands of monthly active users, with users in every state of the United States.

9.  Warzone has developed apps that are available on both the Android and iOS app stores, making a large section of the public familiar with the mark. To

1    date, it has over three-quarters of a million downloads of the app-version of its

2    Warzone game through these app stores.

3           10.    Warzone has invested in developing and promoting the WARZONE

4    brand and developing game variants under the WARZONE brand. For example,

5    following its launch, a Google-powered search for the term "warzone" would

6    return Warzone's WARZONE brand at <warzone.com> as the top result.

7           11.    Through its activities since 2017, Warzone has established a

8    reputation and goodwill in the WARZONE™ Mark in the United States, such that

9    consumers have come to associate it with Warzone and its products and services.

10   The WARZONE™ Mark distinguishes Warzone from related products of other

11   businesses. Warzone derives substantial benefit and goodwill from that consumer

12   identification.

13          12.    On June 25, 2020, Counterdefendant Activision filed USPTO

14   trademark application Serial No. 90020487 to register the mark WARZONE for

15   use in connection with International Classes 09 and 41, for "downloadable video

16   game software, downloadable video and computer game programs" and for

17   "providing online video games; and providing information on-line relating to

18   computer games and computer enhancements for games."

19          13.    Also on June 25, 2020, Counterdefendant Activision filed USPTO

20   trademark application Serial No. 90020455 to register the mark CALL OF DUTY:

21   WARZONE. This application is likewise for use in connection with International

22   Classes 09 and 41, for "downloadable video game software, downloadable video

23   and computer game programs" and for "providing online video games; and

24   providing information on-line relating to computer games and computer

25   enhancements for games."  Together, the two referenced Activision trademark

26   applications are referred to herein as the "Activision Applications."

27          14.    The Activision Applications were published for opposition on

28   November 3, 2020 in the Official Gazette. Counterclaimant filed a Notice of

Opposition on November 3, 2020.  The USPTO Opposition proceeding has been placed in suspension pending disposition of the instant civil action.

15.     Activision claims March 10, 2020 as the date of first use in commerce of the marks in the Activision Applications. Activision has been using the WARZONE and the CALL OF DUTY: WARZONE marks in connection with online and downloadable video games, goods and services identical to those previously offered by Counterclaimant in U.S. commerce.

16.     The USPTO cited the Activision Applications as preliminary bars to approval of the WARZONE Applications by virtue of their earlier filing date and the likelihood of consumer confusion.

17.     The USPTO did not find the term WARZONE to be descriptive in the Activision Applications, nor did the USPTO find the term WARZONE to be descriptive in Warzone's WARZONE Applications.

18.     As such, the USPTO determined that the term WARZONE is inherently distinctive of the parties' goods and services. Furthermore, the USPTO found the parties' respective "Warzone" trademarks are confusingly similar. Indeed, Activision seeks relief from this Court that would bar the registration of Warzone's pending WARZONE Applications.

//
//
//
//
//
//
//
//
//

10

19.     Activision's use of the WARZONE™ Mark isn't limited to its marketing and sales of "Call of Duty: Warzone," which alone is sufficient to establish similarity and proximity. Beyond this use, Activision has been using "Call of Duty: Warzone" interchangeably with the word "Warzone," which is identical to the WARZONE™ Mark. See, e.g., the following screenshot from "Call of Duty: Warzone":



20.     Activision is using an identical mark, WARZONE, to market and offer similar goods and services as those previously offered by Counterclaimant.

//
//
//
//
//
//
//

11

21.     Activision repeatedly referred to its video game simply as "Warzone" in its press release announcing its launch.  See https://investor.activision.com/news-releases/news-release-details/call-duty-delivers-game-changing-free-play-experience-call-duty. Activision's site for the game greets potential customers with "Welcome to Warzone," and displays WARZONE in significantly larger font than the phrase "Call of Duty" as shown, here:





See: https://www.activision.com/games/call-of-duty/call-of-duty-warzone.



See also the following screenshot from "Call of Duty: Warzone":



22.    Activision claims it has sold 400 million copies across its Call of Duty franchise since 2003, which – according to Activision – would make it the most popular first-person shooter franchise in the world and among the best-selling video game franchises of all time.  See: https://www.callofduty.com/blog/2021/04/Incredible-Warzone-and-Game-Sales-Milestones

23.    Given the popularity of Activision's Call of Duty franchise, its adoption of the WARZONE Mark as the dominant junior user has saturated the market with an identical mark in a manner that has overwhelmed Warzone, the senior user.

24.    There is significant actual consumer confusion from consumers as to the source, origin, or sponsorship of "Call of Duty: Warzone."  Consumers have been sending a flood of communications to Warzone about "Call of Duty: Warzone," including bug reports and feature suggestions. Warzone continues to receive these communications from "Call of Duty: Warzone" consumers despite placing the below disclaimer on its feature suggestion page: (NOTE: "Call of Duty: Warzone" and "Warzone" are DIFFERENT GAMES. Do not submit COD stuff here).  See: https://warlight.uservoice.com/forums/77051-warzone-features/filters/new?page=1

25.    Further, although Warzone has its own "Warzone" channel on Twitch, which features the WARZONE™ Mark and an image of the stylized game logo, players of "Call of Duty: Warzone" have flocked to this channel to livestream play of "Call of Duty: Warzone," which shows only "Call of Duty: Warzone" games streaming on Warzone's Twitch channel.  See: https://www.twitch.tv/directory/game/Warzone. Consumers are demonstrably actually confused as to the source of "Call of Duty: Warzone" and its affiliation with Warzone and the WARZONE™ Mark.

14

26.     Warzone owns the <warzone.com> domain name, wherein it markets and offers its goods and services. Internet search results for "warzone video game" and similar searches previously pointed directly to Counterclaimant.  Once Counterdefendant adopted the WARZONE™ Mark, it buried Warzone's ranking in Internet search results, which has led to consumer confusion, diverted customers, lost sales and weakened trademark rights.

27.     This consumer confusion is exacerbated by the convergent marketing channels between Warzone and Activision, which only serves to increase the likelihood of confusion.  A finding of likelihood of confusion is supported when both parties use the internet as their primary marketing and advertising channel and both parties' marks are used in conjunction with web-based products. Both Warzone and "Call of Duty: Warzone" are video games, so both Warzone and Activision rely heavily on their online presence as their marketing, advertising and sales channel.

28.     Both Warzone and Activision use the WARZONE™ Mark in conjunction with their video games. Both are marketing online videogames to a similar consuming public who is interested in online game play.

29.     It is difficult to believe that a sophisticated public company like Activision would overlook Warzone and the WARZONE™ Mark when it chose to use an identical trademark for similar goods and services.

30.     Activision adopted the WARZONE™ Mark intentionally, willfully and in bad faith, fully aware of Warzone's prior and superior trademark rights in the WARZONE™ Mark.

31.     On November 18, 2020, Counterclaimant sent a letter to Activision requesting that it stop use of a WARZONE mark and abandon the Activision Applications or work out a resolution.

32.     In a response letter dated February 16, 2021, Counterdefendant refused to comply with Warzone's requests.  The parties subsequently discussed

terms to a potential settlement agreement but negotiations broke down and Counterdefendant initiated the instant declaratory judgment action.

## COUNTERCLAIM I
## UNFAIR COMPETITION AND TRADEMARK INFRINGEMENT
## UNDER THE LANHAM ACT
### (15 U.S.C. §1125)

33. Counterclaimant repeats and re-alleges each of the allegations contained above, as if fully set forth herein.

34. Activision began to use and applied to federally register an identical WARZONE trademark long after Warzone began using its WARZONE™ Mark.

35. Warzone's rights in WARZONE are prior to and superior to any rights that Activision may claim in either WARZONE or CALL OF DUTY: WARZONE, in any form or style.

36. Activision's WARZONE mark is identical in sight, sound, meaning and overall commercial impression to Warzone's WARZONE™ Mark in all respects. It creates a false suggestion of association with Warzone. Activision's CALL OF DUTY: WARZONE mark consists of Warzone's WARZONE™ Mark, is similar in sight, sound, meaning and overall commercial impression to WARZONE™, and suggests a false association with Warzone.

37. Both Activision's goods and services and Warzone's goods and services are promoted to the general public and purchased and used by the general public.

38. Activision is using WARZONE and CALL OF DUTY: WARZONE on goods and services that are similar to those for which Warzone uses WARZONE™. Activision's use and registration of WARZONE and CALL OF DUTY: WARZONE will enable it to trade upon and use the goodwill Warzone has established in its WARZONE™ Mark.

39.     Use of Activision's WARZONE and CALL OF DUTY: WARZONE marks, when applied to video games, has already and will continue to result in the relevant consuming public being confused, mistaken or deceived as to the affiliation, association, origin, connection or sponsorship of Activision's goods and services. Consumers have already and will continue to be misled into believing that Activision's goods and services marketed under Activision's WARZONE and CALL OF DUTY: WARZONE marks are produced by, emanate from, or are in some way associated with Warzone, to the damage and detriment of Warzone and its reputation.

40.     Activision's use of the WARZONE™ Mark as the junior user has injured senior user Warzone's business reputation, impaired its goodwill, and caused extreme and substantial personal and financial burden to Warzone's operations. In addition, Activision's unauthorized use of the WARZONE™ Mark has the potential to lead the consuming public to believe that Warzone is an unauthorized infringer, which is in fact untrue and misleading.

41.     Counterdefendant's unauthorized use of the WARZONE Mark in interstate commerce as described above constitutes a false designation of origin, false or misleading description of fact, or false or misleading representation, as well as trademark infringement and reverse confusion and has already, and will continue, to cause consumer confusion, mistake, or deception.

42.     As a direct and proximate result of Counterdefendant's unfair competition and infringement, Counterclaimant has suffered and will continue to suffer loss of income, profits and goodwill, and Counterdefendant has and will continue to unfairly acquire income, profits and goodwill from its unauthorized use of the WARZONE™ Mark in its branding and business activity.

43.     Counterdefendant's use and promotion of the WARZONE™ Mark will likely cause confusion, mistake or deception as to the affiliation, connection, or association of Counterclaimant with Counterdefendant, or with regard to the

17

origin, sponsorship or approval by Counterclaimant of Counterdefendant's goods, services or commercial activities.

44.    Counterdefendant has engaged and continues to engage in these activities knowingly, willfully and deliberately, entitling Counterclaimant to treble damages, and a preliminary and permanent injunction, among other remedies.

### COUNTERCLAIM II
### UNFAIR COMPETITION AND FALSE ADVERTISING
### UNDER CALIFORNIA LAW
**(Cal. Bus. & Prof. Code, §§ 17200 & 17500 *et seq.*)**

45.    The allegations of the preceding paragraphs of the Counterclaims are repeated and re-alleged as though fully set forth herein.

46.    Counterdefendant's use of the WARZONE™ Mark constitutes unfair competition under California state law and should be preliminarily and permanently enjoined.

47.    Counterdefendant's actions described above and specifically, without limitation, Counterdefendant's use of the WARZONE™ Mark, and confusingly similar variations thereof, in commerce to advertise, market and sell goods and services related to Counterclaimant's prior WARZONE™ game without its consent constitutes unfair competition and false advertising in violation of the laws of the State of California.

48.    At all times mentioned, Activision had actual knowledge of the existence of the WARZONE™ Mark and Warzone's ownership of said mark and superior rights to said mark.

49.    By these actions, Counterdefendant has engaged in false advertising and unfair competition in violation of the statutory law of the State of California, Cal. Bus. & Prof. Code §§ 17200 and 17500 *et seq.*, and, as a result,

Counterclaimant has suffered and will continue to suffer damage to its business, reputation and goodwill.

50.     Discovery will show that Activision adopted the WARZONE™ Mark intentionally, willfully and/or in bad faith, and that such actions would be oppressive, fraudulent and/or malicious and/or in reckless disregard of the rights of Warzone, entitling Warzone to an award of punitive damages under state common law.

51.     As a direct and proximate result of Counterdefendant's willful and intentional actions, Counterclaimant has suffered damages in an amount to be determined at trial and, unless Counterdefendant is restrained, Counterclaimant will continue to suffer irreparable damage. Further, Plaintiff is entitled to interest and to its attorney's fees and costs incurred in bringing this action, all in an amount to be proven at the time of trial.

## COUNTERCLAIM III
## TRADEMARK INFRINGEMENT
## UNDER CALIFORNIA COMMON LAW

52.     The allegations of the preceding paragraphs of the Counterclaims are repeated and re-alleged as though fully set forth herein.

53.     Counterdefendant's acts constitute trademark infringement of Counterclaimant's superior trademark rights related to its WARZONE™ Mark in violation of California common law.

54.     Counterdefendant engaged in the foregoing conduct with oppression, fraud or malice, and acted wantonly, willfully and with reckless disregard of the rights of Warzone, thereby entitling Counterclaimant to an award of punitive damages in an amount to be determined at trial.

//

## **PRAYER FOR RELIEF**

WHEREFORE, Counterclaimant respectfully requests that this Court enter judgment in its favor for the following relief:

1.      Dismissal of the Plaintiff's claims against Counterclaimant with prejudice;

2.      Preliminarily and permanently enjoining and restraining Counterdefendant and its affiliates, divisions, officers, directors, principals, servants, employees, successors and assigns, and all those in active concert or participation from:

       a.      Imitating, copying or making unauthorized use of the WARZONE™ Mark;

       b.      Manufacturing, importing, exporting, distributing, circulating, selling, offering for sale, advertising, promoting or displaying the infringing goods or any other productions bearing any unauthorized reproduction, counterfeit, copy or colorable imitation of the WARZONE™ Mark, either individually or in conjunction with other words, marks or designs;

       c.      Using any mark confusingly similar to the WARZONE™ Mark in connection with the manufacture, promotion, advertisement, display, sale, offering for sale, production, import, export, circulation or distribution of any product in such a manner as to relate or connect, or tend to relate or connect, such product in any way with Counterclaimant or to any goods sold, sponsored, approved by, or connected with the WARZONE™ Mark;

       d.      Engaging in any other activity constituting unfair competition with Counterclaimant, or constituting an infringement of the WARZONE™ Mark or of Counterclaimant's rights in, or its

rights to use or exploit such trademark, or the reputation and the goodwill associated with the WARZONE™ Mark;

e.  Making any statement or representation whatsoever, with respect to the infringing goods that falsely designates Counterclaimant as the origin of the goods, or that is false or misleading with respect to the WARZONE™ Mark; and

f.  Engaging in any other activity, including the effectuation of assignments or transfers of their interests in marks confusingly similar to the WARZONE™ Mark, the formation of other corporations, partnerships, associations or other entities or the utilization of any other devices, for the purposes of circumventing, evading, avoiding or otherwise violating the prohibitions set forth in subsections 2(a) through 2(e) above.

3.  That Counterdefendant, in accordance with Section 34(a) of the United States Trademark Act, 15 U.S.C. § 1116(a), be directed to file with this Court and to serve upon Counterclaimant within thirty (30) days after service upon Counterdefendant of this Court's injunction issued in this action, a written report by Counterdefendant, signed under oath, setting forth in detail the manner in which Counterdefendant has complied with the injunction.

4.  Requiring Counterdefendant to pay over to Counterclaimant monetary damages caused by its wrongful acts, and directing that such profits be trebled due to the Counterdefendant's willful actions.

5.  Requiring Counterdefendant to pay Counterclaimant monetary damages for reverse trademark confusion, and directing that such damages be trebled due to the Counterdefendant's willful actions.

6.  Awarding Counterclaimant costs of litigation, reasonable attorneys' fees, together with pre-judgment interest;

7.  Awarding punitive damages under California Civil Code § 3294; and

8.   Awarding such further legal and equitable relief as the Court deems just and proper.

Dated: June 8, 2021                    **GLADIUS LAW, APC**

By: _____
        Alyssa K. Schabloski (SBN 258876)

**LEWIS & LIN, LLC**

By:  /s/ Brett E. Lewis
        Brett E. Lewis (*pro hac vice* pending)
        *Attorneys for Defendant*
        WARZONE.COM, LLC

## <u>DEMAND FOR JURY TRIAL</u>

Counterclaimant demands a trial by jury on all claims so triable.

Dated: June 8, 2021                    **GLADIUS LAW, APC**

By: _____
        Alyssa K. Schabloski (SBN 258876)

**LEWIS & LIN, LLC**

By:  /s/ Brett E. Lewis
        Brett E. Lewis (*pro hac vice* pending)
        *Attorneys for Defendant*
        WARZONE.COM, LLC

22