Alyssa K. Schabloski (SBN 258876)
aks@gladiuslaw.com
GLADIUS LAW, APC
2708 Wilshire Blvd., No. 426
Santa Monica, CA 90403
Tel: (310) 734-0720

Brett E. Lewis (Admitted *Pro Hac Vice*)
Brett@iLawco.com
Roberto Ledesma (*Pro Hac Vice* motion forthcoming)
roberto@ilawco.com
LEWIS & LIN, LLC
77 Sands Steet, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326

*Attorneys for Defendant/Counterclaimant*
WARZONE.COM, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTIVISION PUBLISHING, INC., a Delaware corporation<br><br>Plaintiff,<br><br>v.<br><br><br>WARZONE.COM, LLC<br><br>Defendant. | CASE NO. 2:21-cv-3073-FLA<br><br>**COUNTERCLAIMANT'S OPPOSITION TO COUNTERCLAIM DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS AND/OR FOR JUDGMENT ON THE PLEADINGS**<br><br>**Hearing Date:** October 1, 2021<br>**Time:** 1:30 pm |

1

WARZONE.COM, LLC

    Counterclaimant,

v.

ACTIVISION PUBLISHING, INC.

    Counterclaim Defendant.

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

Counterclaimant, Warzone.com LLC ("Warzone") opposes Counterclaim Defendant, Activision Publishing, Inc.'s ("Activision") motion to dismiss Counterclaimant's counterclaims and/or for judgment on the pleadings (the "Motion") filed on July 29, 2021.

Dated: August 19, 2021

BRETT E. LEWIS
ROBERTO LEDESMA
LEWIS & LIN, LLC

ALYSSA SCHABLOSKI
GLADIUS LAW, APC

By: /s/ Brett E. Lewis
_____
    Brett E. Lewis (pro hac vice)
*Attorneys for Defendant/Counterclaimant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................4

I.      INTRODUCTION ...................................................................................7

II.     STATEMENT OF FACTS .......................................................................9

III.    THE LEGAL STANDARD .....................................................................11

IV.     LEGAL ARGUMENT.............................................................................12

        A.      Activision's Infringement Is Not Protected
                By The First Amendment ..............................................................13

                1.      This Case Is Beyond *Rogers*'s Outer Limits ...........................16

        B.      Activision's Use of WARZONE Has No Artistic Relevance..............22

        C.      Activision's Use Of Warzone Is Explicitly Misleading......................23

        D.      The *Rogers* Test Should Not Be Applied On A Motion to Dismiss ....26

V.      CONCLUSION........................................................................................27

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................12

*Bell Atl. Corp. v Twombly*, 550 U.S. 544 (2007) ....................................................11

*Brown v. Elec. Arts, Inc.*, 724 F.3d 1235 (9th Cir. 2013) .................................16, 17

*Caiz v. Roberts*, 382 F. Supp. 3d 942 (C.D. Cal. 2019) .............................19, 20, 21

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Grp., Inc.*, 886 F.2d 490 (2d Cir.

   1989) ...................................................................................................................17

*Dillinger, LLC v. Elec. Arts, Inc.*, 795 F. Supp. 2d 829 (S.D. Ind. 2011)...............26

*Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127 (9th Cir. 1998) ........12

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095 (9th Cir.

   2008)………………………………………………………..14, 16, 17, 24, 25, 26

*Electronic Arts, Inc. v. Textron Inc.*, 2012 WL 3042668 (N.D. Cal. 2012)............25

*ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915 (6th Cir. 2003)........................16, 26

*Gordon v. Drape Creative, Inc.*, 909 F.3d 257 (9th Cir. 2018) 16, 17, 18, 22, 23, 24

*In re Cooper*, 254 F.2d 611(U.S. Cust. & Pat. App, Apr. 14, 1958 .......................14

*Ironhawk Technologies, Inc. v. Dropbox, Inc.,* 994 F.3d 1107 (9th Cir. 2021) 12, 13

*Kiedis v. Showtime Networks, Inc.*, No. CV 07-8185 DSF, 2008 WL 11173143

   (C.D. Cal. Feb. 19, 2008).....................................................................................14

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004) 12

*Masters Software, Inc. v. Discovery Communs., Inc.*, 725 F. Supp. 2d 1294 (W.D. Wash. 2010) ..................................................................................19, 20

*Mattel, Inc. v. MCA Records*, 296 F.3d 894 (9th Cir. 2002) .....14, 16, 17, 19, 20, 26

*Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003) ....16, 17, 19

*Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397 (8th Cir. 1987)........................15

*Novalogic, Inc. v. Activision Blizzard, et al,* 41 F. Supp. 3d 885 (C.D. Cal. 2013) 26

*Parks v. LaFace Records*, 329 F.3d 437 (6th Cir. 2003) ............................14, 16, 22

*Rebelution, LLC v. Perez*, 732 F. Supp. 2d 12 883 (N.D. Cal. 2010) .....................18

*Roxbury Entm't v. Penthouse Media Group, Inc.*, 669 F. Supp. 2d 1170 (C.D. Cal. 2009) ..................................................................................................................26

*Seale v. Gramercy Pictures*, 949 F.Supp. 331 (E.D. Pa. 1996) .............................26

*Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 944 F. Supp. 2d 830 (C.D. Cal. 2012) .........................................................................................................................15

*Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625 (9th Cir. 2005) ............8, 12

*Twentieth Cent. Fox Tel. v. Empire Dist.,* 875 F.3d 1192 (9th Cir. 2017)………………………………………………………..16, 17, 18, 20

*University of Alabama Board of Trustees v. New Life Art, Inc.*, 683 F.3d 1266 (11th Cir. 2012)................................................................................................. 26

*Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 664–65 (5th Cir. 2000) ................................................................................................................16

*Wild v. HarperCollins Publrs.*, LLC, SACV 12-1191-JST (ANx), 2012 WL
    12887690 (C.D. Cal., Nov. 29, 2012)................................................................21

*Yeager v. Cingular Wireless LLC*, 627 F. Supp. 2d 1170 (E.D. Cal. 2008) .....11, 26

**Treatises**

McCarthy on Trademarks and Unfair Competition § 23:10 (5th ed. 2020)............12

Restatement (Third) of Unfair Competition §25 (Am. Law Inst. 1995).................15

1

## I.    **INTRODUCTION**

2      In 2014, Randy Ficker, a solo indie video game developer and
3  Counterclaimant's founder, began working on a sequel to his popular video game,
4  WARLIGHT. After three years of work developing the game, he acquired the
5  <warzone.com> domain name, and in November 2017 Warzone launched a video
6  game under the title WARZONE™ (the "WARZONE™ Mark"). The game grew
7  its customer base every year and at one point had over 80,000 active members.
8  WARZONE™ is available to consumers online at <warzone.com> and in the
9  Apple (iOS) and Google (Android) app stores, where it has over 750,000
10  downloads.

11      On June 25, 2020, nearly three years *after* Warzone first used the
12  WARZONE™ Mark in U.S. commerce, Activision filed to register an identical
13  trademark "Warzone," as well as "Call of Duty Warzone," for downloadable and
14  online video games, with the U.S. Patent & Trademark Office (USPTO), alleging a
15  date of first use of March 10, 2020. Activision failed to disclose this key fact in its
16  Motion. Warzone opposed the trademark applications at the USPTO based on prior
17  common law rights. Activision then initiated this action seeking a declaration that
18  would allow it to take what it does not own – the WARZONE™ Mark.

19      Activision would like the Court to view this case as a "textbook example of
20  trademark overreach." Motion at 1. However, a review of the full factual record
21  reveals that it simply is not. Activision, a company with a market cap over $60
22  billion dollars, is the largest video game publisher in the U.S. By its own count, it
23  has sold over 400 million copies of its "Call of Duty" series, making it one of the
24  best-selling franchises in the history of video games[1]. More accurately, Activision
25  is the party overreaching in its bold attempt to usurp and trample over Warzone's
26  superior and senior trademark rights under the guise of free expression, *while*

27  _____

28  [1] See https://www.callofduty.com/blog/2021/04/Incredible-Warzone-and-Game-Sales-Milestones

7

*simultaneously* seeking exclusive trademark rights for the very same word (Warzone) and goods and services (downloadable and online video games) that Warzone is seeking to enforce. The hypocrisy and abuse of process is undeniable.

If we are going to reduce this dispute down to textbook examples, then what we have here is a classic case of reverse trademark confusion. Reverse confusion occurs when the junior user's advertising and promotion swamps the senior user's reputation in the marketplace such that customers are likely to be confused into thinking that the senior user's goods are those of the junior user. *See Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005) ("reverse confusion occurs when consumers dealing with the senior mark holder believe that they are doing business with the junior one").

Activision argues that its use of the WARZONE™ Mark as the title for a competing video game is protected under the First Amendment. However, Activision's Motion raises legitimate concerns about the balancing test used to evaluate trademark and First Amendment rights. When an identical trademark appears in the title of a competing expressive work, and where the senior user asserts a claim of reverse confusion, the balance advocated for by Activision tilts too far in favor of the junior user's First Amendment interests.

If this case is prematurely dismissed at the pleading stage it would effectively mean that a senior user's trademark is worthless and unenforceable. It would signal that a corporate giant can claim the mark of a *direct competitor* without the claimant even being afforded an opportunity via discovery to explore the issues presented, merely because the defendant is using the claimant's mark in the title of an expressive work. It would mean that a large corporation can engage in reverse trademark confusion with impunity – even filing for the *same trademark* for the *identical* description of goods. Such an outcome would place a fist – not a thumb – firmly on the First Amendment side of the scale balancing the constitutional interests between Lanham Act protection and free expression. No

court has ever faced this set of facts, or granted such an unwarranted intrusion on trademark rights, as is called for by Activision in this case.

Accordingly, the Motion should be denied.

## II.    STATEMENT OF FACTS[2]

On June 25, 2020, Activision filed USPTO trademark applications to register the marks WARZONE and CALL OF DUTY WARZONE for use in connection with "downloadable video game software, downloadable video and computer game programs" in Class 9 and for "providing online video games; and providing information on-line relating to computer games and computer enhancements for games," in Class 41. *Id*. ¶12-13. Warzone opposed the applications when they published for opposition. *Id*. ¶14. The USPTO opposition proceeding is in suspension pending disposition of the instant civil action. *Id*. ¶15.

Activision claims March 10, 2020 as the date of first use in commerce for its alleged WARZONE and the CALL OF DUTY WARZONE marks. *Id*. The USPTO cited the Activision applications as preliminary bars to approval of Warzone's WARZONE applications by virtue of their earlier filing date and the likelihood of consumer confusion. *Id*. ¶16. The USPTO did not find the term WARZONE to be descriptive in the Activision applications or in Warzone's WARZONE applications. *Id*. ¶17. The USPTO determined the term WARZONE is inherently distinctive of the parties' goods and services. *Id*. ¶18.

Furthermore, the USPTO found the parties' respective "Warzone" trademarks are confusingly similar. *Id*. Indeed, despite claiming that WARZONE cannot function as a trademark, Activision seeks relief from this Court that would bar the registration of Warzone's pending WARZONE applications, and allow its own WARZONE applications to register. Compl. ¶1.

---

[2] Warzone refers to its Counterclaims for the salient facts concerning its use of the WARZONE[tm] Mark. *See, e.g.,* Countercl. ¶¶ 3-11.

Activision has been using "Call of Duty Warzone" interchangeably with the word "Warzone," which is identical to the WARZONE™ Mark. See, e.g., the following screenshot in Countercl. ¶19:



Activision is using an identical mark, WARZONE, *by itself and apart from the title of its game*, to market and offer similar goods and services as those offered by Counterclaimant. Activision repeatedly refers to its video game simply as "Warzone" in its press release announcing its launch[3]. Activision's site for the game greets potential customers with "Welcome to Warzone."[4] See screenshots in Countercl. ¶21.

There is significant actual consumer confusion from consumers as to the source, origin, or sponsorship of "Call of Duty Warzone." Consumers have been sending a flood of communications to Warzone about "Call of Duty Warzone," including bug reports and feature suggestions. *Id*. ¶24. Warzone continues to

---

[3] See https://investor.activision.com/news-releases/news-release-details/call-duty-delivers-game-changing-free-play-experience-call-duty

[4] See https://www.activision.com/games/call-of-duty/call-of-duty-warzone

receive these communications from "Call of Duty Warzone" consumers despite placing the below disclaimer on its feature suggestion page: (NOTE: "Call of Duty Warzone" and "Warzone" are DIFFERENT GAMES. Do not submit COD stuff here)[5]. *Id*. Further, although Warzone has its own "Warzone" channel on Twitch, which features WARZONE™, players of "Call of Duty Warzone" have flocked to this channel to livestream play "Call of Duty Warzone," which shows only "Call of Duty Warzone" games streaming on Warzone's Twitch channel.[6] *Id*. ¶25.

Once Activision adopted a WARZONE mark, it buried search results to <warzone.com>, leading to consumer confusion, diverted customers, lost sales and weakened trademark rights. *Id*. ¶26. This consumer confusion is exacerbated by the parties convergent marketing channels. *Id*. ¶27. On November 18, 2020, Warzone placed Activision on notice of its infringement. On April 8, 2021, Activision initiated the instant declaratory judgment action. *Id*. ¶32.

### III.   THE LEGAL STANDARD

Motions for judgment on the pleadings are governed by the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). On a motion to dismiss, the complaint's allegations must be accepted as true. *Yeager v. Cingular Wireless LLC*, 627 F. Supp. 2d 1170, 1174 (E.D. Cal. 2008). Because the court is "bound to give plaintiff the benefit of every reasonable inference to be drawn from the 'well-pleaded' allegations of the complaint" the plaintiff "need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged." *Id.* at 1174 (citation omitted).

A complaint must meet a standard of "plausibility" (*Bell Atl. Corp. v Twombly*, 550 U.S. 544, 564 (2007)) which is satisfied when "the plaintiff pleads

---

[5] See: https://warlight.uservoice.com/forums/77051-warzone-features/filters/new?page=1
[6] See: https://www.twitch.tv/directory/game/Warzone.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678(2009). The plausibility standard is met here.

## IV.   LEGAL ARGUMENT

To succeed on a "trademark infringement claim under the Lanham Act, 15 U.S.C. § 1051 et seq., requires a showing that the claimant holds a protectable mark, and that the alleged infringer's imitating mark is similar enough to 'cause confusion, or to cause mistake, or to deceive.'" *Surfvivor*, 406 F.3d at 630 (*quoting KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004)).

The Ninth Circuit has recognized two distinct claims in the trademark infringement context: forward confusion and reverse confusion. "Forward confusion occurs when consumers believe that goods bearing the junior mark came from, or were sponsored by, the senior mark holder." *Id.* (citations omitted). "By contrast, reverse confusion occurs when consumers dealing with the senior mark holder believe that they are doing business with the junior one." *Id.* The Ninth Circuit explained: "reverse confusion occurs when a person who knows only of the well-known junior user comes into contact with the lesser-known senior user, and because of the similarity of the marks, mistakenly thinks that the senior user is the same as or is affiliated with the junior user." *Ironhawk Technologies, Inc. v. Dropbox, Inc.,* 994 F.3d 1107 (9th Cir. Apr. 20, 2021) *citing Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir. 1998). This occurs when "the junior user's advertising and promotion so swamps the senior user's reputation in the market that customers are likely to be confused into thinking that the senior user's goods are those of the junior user[.]" 4 McCarthy on Trademarks and Unfair Competition § 23:10 (5th ed. 2020) (citations and footnotes omitted); *see Dreamwerks*, 142 F.3d at 1130 n.5.

Courts have recognized a number of adverse consequences in reverse confusion cases. For example, the senior user may be foreclosed "from expanding into related fields" and misconduct or problems with the junior user and/or its product could negatively impact the goodwill of the senior user if it was unfairly associated with the junior mark. *Ironhawk* at 7. Courts recognize the reverse confusion theory "to prevent the calamitous situation [where a] larger, more powerful company thus usurp[s] the business identity of a smaller senior user." *Id.*

Here, it is undisputed that Warzone is the senior user of a WARZONE trademark and Activision is the larger, better known junior user. Activision's marketing and promotion of its own WARZONE video game in connection with one of the best-selling video game series of all time, CALL OF DUTY, has swamped Warzone's superior rights and reputation in the marketplace. Activision has buried Warzone's ranking in online search results, making it difficult for consumers to locate Warzone's game online. It is creating not only a likelihood of consumer confusion but an actual mistaken belief that WARZONE™ is affiliated with Activision. The result is a negative association with a company currently facing multiple lawsuits receiving extensive media exposure, with one accusing the company of sexual harassment and gender discrimination[7] and a second suit alleging the company purposefully misled investors with false statements[8].

## A.   Activision's Infringement Is Not Protected By The First Amendment

Activision is attempting to shield its infringing activities from liability under the guise of free expression. It argues that First Amendment concerns require application of the balancing test developed in *Rogers v. Grimaldi*, 875 F.2d 994

---

[7] See https://www.cnn.com/2021/08/03/tech/activision-blizzard-employee-backlash-kotick/index.html
[8] See https://kotaku.com/activistion-blizzard-faces-second-lawsuit-over-first-la-1847415904

(2d Cir. 1989) and its progeny. In *Rogers,* the Second Circuit found the Lanham Act "[s]hould be construed to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression." *Id.* at 999. Under the two prong *Rogers* test, which has been adopted by the Ninth Circuit in certain limited circumstances, an expressive use of a trademark in the title of a work is not actionable unless (1) the use of the mark has no artistic relevance to the underlying work, or (2) it has some artistic relevance, but explicitly misleads as to the source or the content of the work. *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008).

Where, as here, free expression concerns do not outweigh the public interest promoted by the Lanham Act, the First Amendment is no defense. *Rogers* 875 F.2d at 999. Indeed, "the First Amendment cannot permit anyone who cries 'artist' to have carte blanche when it comes to naming and advertising his or her works, art though it may be." *Parks v. LaFace Records*, 329 F.3d 437, 447 (6th Cir. 2003) (citing *Rogers*' adoption in *Mattel, Inc. v. MCA Records*, 296 F.3d 894 (9th Cir. 2002)).

This Court has held that the First Amendment does not automatically insulate all artistic works from liability under the Lanham Act. *Dita, Inc. v. Mendez*, CV 10-06277, 2010 WL 5140855 (C.D. Cal., Dec. 14, 2010) (Defendant cannot prevail on a motion to dismiss in light of the specific allegations of consumer confusion in the Complaint). Further, the Ninth Circuit noted that the First Amendment offers little protection for a competitor who uses a confusingly similar mark on its commercial goods. *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 900 (9th Cir. 2002)(rights in expression are strongest where the expression refers to a trademark). Activision is therefore "not entitled to absolute protection from liability under the Lanham Act… simply because [it] created an 'artistic' work." *Kiedis v. Showtime Networks, Inc.*, No. CV 07-8185 DSF, 2008 WL 11173143, *17-18 (C.D. Cal. Feb. 19, 2008). The First Amendment does not give

1    Activision "license to infringe" Warzone's trademark rights. *Mutual of Omaha Ins.*

2    *Co. v. Novak*, 836 F.2d 397, 402 (8th Cir. 1987).

3         A title can function as a trademark and source identifier, which removes it

4    from blanket First Amendment protection. Restatement (Third) of Unfair

5    Competition §25 (Am. Law Inst. 1995) (distinguishing protected use "as an

6    incident of speech directed at the trademark owner" from use "as a means of

7    identifying the user's own goods or services"). Although "[t]he title of a single

8    book cannot be a trademark because it does not 'serve as a source identifier' that

9    creates 'an association between the book's title (the alleged mark) and the source of

10   the book (the publisher),'. . .[t]he name of a book series, however, may serve a

11   trademark function… ***because the name 'indicat[es] that each book of the series***

12   ***comes from the same source as the others.***" *Spin Master, Ltd. v. Zobmondo*

13   *Entm't, LLC*, 944 F. Supp. 2d 830, 854 (C.D. Cal. 2012) (*emphasis added*) (*citing*

14   *In re Cooper*, 254 F.2d 611 at 615 (U.S. Cust. & Pat. App, Apr. 14, 1958).

15        Unlike the movie title in *Rogers*, which served merely as the name of a

16   single movie, Activision uses "Warzone" as a source-identifying trademark for a

17   video game series that competes directly with the trademark owner. Although

18   Activision also uses "Warzone" in the title, "Call of Duty Warzone," it promotes

19   its game under the word WARZONE in a manner that emphasizes and claims

20   trademark rights to WARZONE, *on its own*, separate and apart from CALL OF

21   DUTY. Its marketing displays the ™ symbol next to the word WARZONE and

22   Activision has filed to register WARZONE on its own as a trademark for goods

23   and services with an identical description to those previously offered by Warzone.

24        Warzone does not dispute that video games may qualify as "artistic works"

25   subject to application of the *Rogers* balancing test. However, Warzone submits that

26   the *title* of Activision's game is CALL OF DUTY WARZONE, not merely

27   WARZONE™. Activision's motive in choosing **also** to refer to its game by

28   WARZONE as the **trademark** for its billion dollar video game franchise was

gratuitous, willful, and not part of an artistic title. In essence, Activision is claiming the entitlement to two titles – both of which it has applied to register as a federal trademark, and one of which is identical to Warzone's mark. Discovery of information exclusively in the control of Activision is needed to fully understand whether its video game is both an artistic work and a commercial work, and the circumstances surrounding how and why it chose WARZONE as a trademark given Warzone's superior rights.

### 1.   This Case Is Beyond *Rogers*'s Outer Limits

In its most recent decision addressing the *Rogers* test, the Ninth Circuit noted that a case involving identical marks for competing products "demonstrates *Rogers*'s outer limits." *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 268 (9th Cir. 2018). "[T]he potential for explicitly misleading usage is especially strong when the senior user and the junior user both use the mark in similar artistic expressions." *Id*. The Ninth Circuit has held that "mere use of a trademark alone cannot suffice to make such use explicitly misleading," *E.S.S.*, 547 F.3d at 1095. However, in each case it made that observation, the junior user had employed the mark in a different context than the senior user[9]. *See Gordon*, 909 F.3d at 270.

---

[9] See *Twentieth Century Fox*, 875 F.3d at 1195 (Empire Distribution recording studio versus "Empire" television series' fictional use of EMPIRE mark); *Brown*, 724 F.3d at 1245 (Jim Brown versus video game that used his likeness); *E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008) ("Play Pen" strip club in East Los Angeles versus fictional video game depicting real life "Pig Pen" strip club in "East Los Santos"); *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 901–02 (9th Cir. 2002) (Barbie versus the parody song "Barbie Girl," by Aqua); *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003)(Barbie used in series of parody photographs); *see also Park*s, 329 F.3d at 442–43 (Rosa Parks versus the song "Rosa Parks," by Outkast); *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 664–65 (5th Cir. 2000) ("Polo" clothing versus a wealthy lifestyle magazine named "Polo"); *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 920 (6th Cir. 2003) (Tiger Woods versus a

For example, in *MCA Records*, Mattel's Barbie was used in a parody song; in *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003) Barbie was used in a series of parody photographs; in *E.S.S.* a fictional video game landscape depicted a real life gentleman's club within a video game, not the title; *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235 (9th Cir. 2013) was a right of publicity dispute involving use of legendary football player Jim Brown's likeness in a video game, not a title; and in *Twentieth Cent. Fox Tel. v. Empire Dist.,* 875 F.3d 1192 (9th Cir. 2017) a real life record label's mark EMPIRE was used as the title of an unrelated fictional television series. Importantly, ***none of these cases involved directly competitive uses of the same trademark***. Instead, they involve (1) parodies, (2) uses of a famous person's likeness, (3) a depiction of a business within the content of a video game, and (4) non-competing uses. The Ninth Circuit decisions cited above are distinguishable on their facts. In *Gordon,* the Ninth Circuit recognized the limitations in these cases. It explained that had the junior user in the above cases used the mark in the same way as the senior user, "such identical usage could reflect the type of 'explicitly misleading description.'" *Gordon*, 909 F.3d at 257.

In *Gordon*, the owner of the "Honey Badger Don't Care" trademark for greeting cards, among other products, filed a trademark infringement claim against a greeting card maker that, without permission, published cards with slight variations on the Honey Badger mark, such as "Honey Badger and Me Just Don't

---

painter who made a painting depicting various scenes from Woods's record-setting 1997 win at The Masters); *Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*, 683 F.3d 1266, 1278 (11th Cir. 2012) (famous college football team's uniforms versus a painter who painted that football team in various settings); *Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Grp., Inc.*, 886 F.2d 490, 492 (2d Cir. 1989) ("Cliffs Notes" study guides versus "Spy Notes," a parody that used a yellow and black layout on its cover); *Rogers*, 875 F.2d at 996 (Ginger Rogers versus Federico Fellini's film, Ginger and Fred).

Care." 909 F.3d at 262. Not only was the defendant producing the same type of product as the plaintiff (greeting cards), the defendant was using the Honey Badger mark precisely as the plaintiff did: "to convey a humorous message through . . . the honey badger's aggressive assertion of apathy." *Id*. at 268–69. The Ninth Circuit in *Gordon* recognized that the *Rogers* test, taken at face value, essentially destroyed the value of the Honey Badger mark, and perhaps many other marks, if parties are willing to be sued and defend themselves under *Rogers*. *Id*. at 268–71. A lawsuit is no deterrent for a $60 billion-dollar company like Activision. In fact, since the outset of this dispute, Activision has eagerly sought to use *Rogers* as a shield while simultaneously seeking federal trademark rights to wield as a sword, fully aware that smaller competitor Warzone would have to put up significant resources if it wanted to keep its trademark.

With the exception of *Twentieth Century Fox*, the line of Ninth Circuit cases applying *Rogers* are also distinguishable in that each case involved a defendant referring to a particular identifiable trademark or one that has attained cultural significance. In *Twentieth Century Fox,* the Ninth Circuit rejected the argument that *Rogers* has a referential requirement or that "the *Rogers* test includes a threshold requirement that a mark have attained a meaning beyond its source-identifying function." *Id*. at 1197. Nevertheless, it went on to find that whether a mark conveys a meaning beyond identifying a product's source is still a ***relevant consideration***: "trademarks that transcend their identifying purpose are more likely to be used in artistically relevant ways." *Id*. at 1198 (quotation marks and citation omitted).

Here, Activision's choice of title is not an artistic one. There is no indication that the WARZONE™ Mark is of "such cultural significance that it has become an integral part of the public's vocabulary" – still a relevant consideration in evaluating whether the *Rogers* test applies. *Id*.; *Rebelution, LLC v. Perez*, 732 F.

Supp. 2d 12 883, 887 (N.D. Cal. 2010)[10]. Simply put, Activision is not using the WARZONE™ Mark to describe or comment upon Warzone's mark or games or to express anything. Instead, it is using the mark in the ***exact same way*** Warzone has used it for years. Indeed, Activision goes one large leap further – the title of its game is "Call of Duty Warzone," but it separately claims exclusive trademark rights to WARZONE™, alone, and insinuates that the title of its game is also WARZONE. This purely gratuitous, obviously commercial, second use of WARZONE *as a trademark* is not shielded by *Rogers*.

Furthermore, the factual circumstances of a reverse confusion case do not fit neatly in the *Rogers* balancing test. Under the second prong of the test, the claimant must show that use of a trademark in the title is *explicitly misleading* as to the source or content of the work. However, in the reverse confusion context, consumers are confused into mistakenly believing that the larger junior user is the source of goods. The Ninth Circuit has never ruled on how to apply the second *Rogers* prong in the reverse confusion context, and this Court has never dismissed a case *at the pleading stage* in this context.[11]

In *Masters Software, Inc. v. Discovery Communs., Inc.*, 725 F. Supp. 2d 1294 (W.D. Wash. 2010) the defendant asserted a *Rogers* defense in a reverse confusion case and it was denied. *Masters* involved a small company with prior rights to CAKEBOSS for bakery related goods and services. The Discovery

---

[10] *See also MCA Records, Inc.*, 296 F.3d at 900 (First Amendment issue arises when trademarks "transcend their identifying purpose" and "enter our public discourse and become an integral part of our vocabulary"); *Mattel Inc. v. Walking Mountain Prod.*, 353 F.3d 792, 807 (9th Cir. 2003) ("As we recently recognized in MCA, however, when marks 'transcend their identifying purpose' and 'enter public discourse and become an integral part of our vocabulary,' they 'assume a role outside the bounds of trademark law.' Where a mark assumes such cultural significance, First Amendment protections come into play.")

[11] As explained further below, *Caiz v. Roberts*, 382 F. Supp. 3d 942 (C.D. Cal. Apr. 17, 2019) was decided on a motion for summary judgment.

Channel subsequently released a popular TV show called CAKE BOSS and trampled the smaller senior user's rights through reverse confusion. The Discovery Channel attempted to assert a First Amendment defense as the title of an expressive work and cited the Ninth Circuit's *Mattel* and *Rogers* line of cases as authority. The court noted, "the common thread in *Rogers, Mattel*, and similar cases is a well-known senior user seeking to prevent harm associated with the use of its trademark in the title of an expressive work authored by a junior user who intends an association with the senior user." That common thread is not present in a reverse confusion case. The court reasoned that the defendant did not choose the name Cake Boss as an allusion to plaintiff's mark, but chose a suggestive trademark to brand their product, as Activision did here. The court further found that the Lanham Act's limitations on such "expressions" do not violate the First Amendment. *Masters* at 1305, *citing Mattel*, 296 F.3d at 900 (noting that when "limited to [their] core purpose — avoiding confusion in the marketplace — a trademark owner's property rights play well with the First Amendment"). The court in *Masters* went on to say that otherwise, use of a trademark in the title of an expressive work would never violate the Lanham Act, and *Rogers* and *Mattel* did not intend to create such an extreme rule but rather created a balance between expressive interests and trademark interests. *Masters* at 1306.

Similarly, here, Activision's use of WARZONE in the title of its video game was not alluding to Warzone's mark, which has no cultural significance (still a *relevant consideration* post-*Twentieth Century Fox*) and has clearly infringed Warzone's mark. The public interest in allowing Warzone to avoid the consumer confusion that Activision has created outweighs the expressive interests (if any) inherent in the choice of title.

In *Caiz v. Roberts*, 382 F. Supp. 3d 942 (C.D. Cal. 2019), a court in this district found that the *Rogers* test is not barred simply because a case involves reverse confusion. *Caiz* was a ruling on a motion for summary judgment and the

plaintiff had been afforded the opportunity to develop an evidentiary record to support his position that *Rogers* should not apply. Ultimately, the court found the plaintiff failed to provide any evidence creating a triable issue of material fact as to either *Rogers* prong. *See Caiz* at 19 (*citing Wild v. HarperCollins Publrs.*, LLC, SACV 12-1191-JST (ANx), 2012 WL 12887690 (C.D. Cal., Nov. 29, 2012) as "persuasive authority" on a motion to dismiss).

In *Wild*, this Court refused to find the *Rogers* defense precluded the plaintiff from a finding of infringement given the defendant's book title of the same name as plaintiff's trademark. The Court in *Wild* highlighted that *Rogers* added the express qualification that "[t]his limiting construction would not apply to misleading titles that are confusingly similar to other titles. The public interest in sparing consumers this type of confusion outweighs the slight public interest in permitting authors to use such titles." *Rogers*, 875 F.2d at 999. The Court noted that "Movies, plays, books, and songs are all indisputably works of artistic expression and deserve protection. Nonetheless, they are also sold in the commercial marketplace like other more utilitarian products, making the danger of consumer deception a legitimate concern that warrants some government regulation." *Wild* at 9, *citing Rogers* at 997. The Court denied a motion to dismiss since a factual question existed "as to whether Defendants' book is likely to confuse consumers as to the origin of its source, they could not determine, as a matter of law, that it does not." *Wild* at 12-13.

Here too, like in *Wild*, we have misleading titles used for the same underlying work. As there is a factual question here whether consumers are likely to suffer reverse confusion as to the origin of the source of Warzone's game due to Activision's usage of the same WARZONE mark for the same class of goods and services as Warzone's superior rights, this court cannot determine, at the pleading stage on a motion to dismiss, that it does not. For the above reasons, neither the First Amendment nor the *Rogers* test bar Warzone's claims.

1

2
### B.    Activision's Use of WARZONE Has No Artistic Relevance

3
Activision opens its Motion by claiming "when Counterclaimant chose a

4
common English word for its game title, it ran the risk that others might also use

5
that word to describe their game, movie, book, or other creative endeavor…"

6
Motion at 2. However, Activision is not using the word "warzone" as a descriptor–

7
it uses the word as a source identifier. Activision's Motion conveniently fails to

8
disclose that it filed to federally register the word WARZONE, along with a

9
separate filing for CALL OF DUTY WARZONE, for downloadable and online

10
video games. In approving the trademark applications, the USPTO made a

11
determination that the word "warzone" is *not* merely descriptive for video games.

12
As such, the word "warzone" has been found to be inherently distinctive. This fact,

13
alone, undercuts the entire premise of Activision's Motion.

14
Nevertheless, while the word "warzone" may be suggestive of the content of

15
Activision's game, the question is whether it is *artistically* relevant. As stated in

16
*Gordon*, "the use of a mark is not artistically relevant if the defendant uses it

17
merely to appropriate the goodwill inhering in the mark …" *Gordon, citing Parks*,

18
329 F.3d at 453 (finding genuine issue of material fact on artistic relevance prong).

19
For artistic relevance to "be above zero," the defendant must *add its own artistic*

20
*expression beyond that represented by the mark. Gordon* at 270-271. As the Ninth

21
Circuit warned in *Gordon*: "*Rogers* protects our First Amendment interests in

22
artistic works, and defendants' greeting cards are among the artistic works the

23
Amendment protects. But it cannot be that defendants can simply copy a trademark

24
into their greeting cards without adding their own artistic expression or elements

25
and claim the same First Amendment protection as the original artist ... [t]hat

26
would turn trademark law on its head." *Gordon v. Drape Creative, Inc.*, 897 F.3d

27
1184 (9th Cir. 2018).

28

Activision refers to and promotes its video game using the identical word WARZONE. It has taken the significant step to federally register a trademark for WARZONE on its own. Activision is merely appropriating the goodwill inherent in Warzone's superior WARZONE™ Mark without adding any creativity of its own. Put another way, Activision is just copying Warzone's artistic expression. Under *Gordon*, this is not an *artistically* relevant use.

Activision could have chosen any number of common English words in place of "warzone" in its game title, e.g. warfare, combat zone, frontline, battle, battle zone, etc. Instead, it chose a word that it had to know was already taken. Discovery is needed to show whether Activision chose a trademark that it *knew* was unavailable in the hope that the smaller, senior trademark owner would not object, or if it did, would not have the resources to go to battle with a multi-billion dollar competitor.

Under Activision's interpretation of *Rogers*, anyone can use a trademark, even to sell the same good or service for which prior trademark rights existed, if the good or service can be deemed "art." To avoid taking the drastic step of destroying the value of trademarks in the name of the First Amendment, *Gordon* clarified Ninth Circuit precedent such that use of a mark in its entirety to compete with the senior user at the very least raises a triable issue for a jury as to whether it is free expression or trademark infringement. As such, dismissal is improper.

## C.  <u>Activision's Use Of Warzone Is Explicitly Misleading</u>

"Poetic license is not without limits. The purchaser of a book, like the purchaser of a can of peas, has a right not to be misled as to the source of the product." *Rogers* at 997. Activision's use of Warzone's mark is explicitly misleading because it appropriates the mark in its entirety to compete unfairly against Warzone and damage its reputation. WARZONE™ is not an Activision video game. Given Activision's size and power in the video game market, every

consumer searching for the WARZONE™ video game is now diverted to Activision's game. In *Gordon*, the Ninth Circuit explained that "in some instances, the use of a mark alone may explicitly mislead consumers about a product's source if consumers would ordinarily identify the source by the mark itself." *Gordon* at 270. Further, "the potential for explicitly misleading usage is especially strong when the senior user and the junior user both use the mark in similar artistic expressions." *Id*.

Activision's Motion disingenuously frames its use of "warzone" as merely a "subtitle." Motion at 1. Any suggestion that the word is used as a descriptor rather than an indication of source, sponsorship, or affiliation is contradicted by Activision's use of the ™ symbol and its filing for a federal trademark registration for WARZONE on its own. It is explicitly misleading to title a video game WARZONE because this use explicitly and implicitly associates the video game with Warzone's prior mark and thus falsely creates the impression that it was used with Warzone's permission, or in the reverse confusion context, that Warzone is the junior user and infringer. Taking the additional step to register the trademark is an indication of an overt action to explicitly mislead consumers.

*Rogers*-type analyses are highly fact dependent. The cases relied on by Activision are distinguishable based on their facts because in each example the defendant did not use the claimant's trademark *in its entirety to compete against it*. Here, the trademark is used for a video game that can be played on a personal computer or gaming device, both of which are squarely within Warzone's domain. Furthermore, this is not a case where Activision's products and Warzone's products are so different that no one could possibly confuse the two – especially in the reverse confusion context. *Cf. E.S.S.* at 1100-01 ("A reasonable consumer would not think a company that owns one strip club in East Los Angeles, which is not well known to the public at large, also produces a technologically sophisticated

24

video game like San Andreas."). Both Activision and Warzone inhabit the same gaming space, and Activision's customers have experienced actual confusion.

The second prong of the *Rogers* test is negated because Warzone alleges that Activision's use of its mark is likely to cause consumer confusion, that Activision actually intended to mislead the public as to the source of the video games, and actual reverse confusion occurred as consumers were misled by Activision into believing that Activision was the source of or affiliated with, Warzone's game. Countercl. ¶33-44. The fact that the parties are competitors in the video game market indicates Activision's use was explicitly misleading. *Cf. E.S.S.* at 1100-01 (use not explicitly misleading where parties' businesses were completely unrelated).

Throughout its Motion, Activision argues that Warzone failed to allege Activision's use of WARZONE was explicitly misleading. However, a complaint need not anticipate and negate a defendant's affirmative defense. Rather, in order to state a viable claim and to withstand a Rule 12(b)(6) motion, a plaintiff must only avoid establishing on the face of the complaint the applicability of some such defense. FED. R. CIV. P. 12(b)(6); see 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357, at 708–10 (3d ed. 2004).

Warzone's allegations are sufficient to negate the second prong of the *Rogers* test on a motion to dismiss. *See Dita, Inc.* at *3 (denying motion to dismiss, holding second prong of *Rogers* negated by plaintiff's allegations that defendant's use of the mark was likely to cause consumer confusion and defendant intended to mislead public as to source of the work); *Electronic Arts, Inc. v. Textron Inc.*, 2012 WL 3042668 (N.D. Cal. 2012) at *35 (second prong of *Rogers* negated on motion to dismiss because likelihood of confusion was alleged and consumers could "plausibly think" plaintiff sponsored defendant's video game). Accordingly, the *Rogers* test is not satisfied and the Motion should be denied.

25

1

2     **D.**    **The *Rogers* Test Should Not Be Applied On A Motion to Dismiss**

3        At this early stage in litigation, Warzone does not yet have any evidence of

4 Activision's advertising practices, which may be relevant to show their use of the

5 mark was explicitly misleading. *See Novalogic, Inc.*, 41 F.Supp.3d at 901.

6 Additionally, in determining whether Activision's use was explicitly misleading,

7 the Court should look beyond the face of the work itself. *See E.S.S.* at 1100—01

8 (considering several *Sleekcraft* factors such as relatedness of goods and likelihood

9 of actual confusion). In light of the procedural posture of this Motion and

10 Warzone's allegations, the First Amendment cannot be said to bar liability *as a*

11 *matter of law*. *Yeager*, 627 F.Supp.2d at 1175.

12        Authority from courts and circuit courts across the country supports that the

13 *Rogers* test only has value after a full record is developed, with a party seeking

14 determination of the First Amendment issue on summary judgment or at trial.[12]

15 Accordingly, Activision's Motion is premature and should be denied.

16 _____

17 [12] See *University of Alabama Board of Trustees v. New Life Art, Inc.*, 683 F.3d

18 1266 (11th Cir. 2012) (reviewing trial court's **summary judgment** ruling on

Lanham Act claims and *Rogers* test First Amendment defense); *E.S.S. Entm't*

19 *2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095 (9th Cir. 2008) (reviewing trial

20 court's **summary judgment** ruling on Lanham Act claims and *Rogers* test First

Amendment defense); *Seale v. Gramercy Pictures*, 949 F.Supp. 331 (E.D. Pa.

21 1996) (district court determining Lanham Act/First Amendment defense under

22 *Rogers* test at **summary judgment**); *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915

(6th Cir. 2003) (reviewing trial court's **summary judgment** ruling on Lanham Act

23 claims and *Rogers* test First Amendment defense); *Novalogic, Inc. v. Activision*

24 *Blizzard, et al* 41 F.Supp.3d 885 (C.D. Cal. 2013) (district court determining

Lanham Act/First Amendment defense under *Rogers* test at **summary judgment**);

25 *Roxbury Entm't v. Penthouse Media Group, Inc.*, 669 F. Supp. 2d 1170 (C.D. Cal.

26 2009) (district court determining Lanham Act/First Amendment defense under

*Rogers* test at **summary judgment**); *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d

27 894 (9th Cir. 2002) (reviewing trial court's **summary judgment** ruling on Lanham

28 Act claims and *Rogers* test First Amendment defense); *Dillinger, LLC v. Elec.*

*Arts, Inc.*, 795 F. Supp. 2d 829 (S.D. Ind. June 15, 2011)) (district court

## V.  <u>CONCLUSION</u>

For the foregoing reasons, Activision's motion to dismiss and/or for judgment on the pleadings should be denied.


Respectfully Submitted,

Dated: August 19, 2021                    BRETT E. LEWIS
                                          ROBERTO LEDESMA
                                          LEWIS & LIN, LLC

                                          ALYSSA SCHABLOSKI
                                          GLADIUS LAW, APC


                                  By:  /s/ Brett E. Lewis
                                          Brett E. Lewis (pro hac vice)
                                          *Attorneys for Defendant/Counterclaimant*

determining Lanham Act/First Amendment defense under *Rogers* test at ***summary judgment***).