MARC E. MAYER (SBN 190969)
  mem@msk.com
KARIN G. PAGNANELLI (SBN 174763)
  kgp@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Activision Publishing, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTIVISION PUBLISHING, INC., a Delaware corporation,<br><br>   Plaintiff,<br><br>   v.<br><br>WARZONE.COM, LLC,<br><br>   Defendant. | CASE NO. 2:21-cv-3073-FLA (JCx)<br><br>[Assigned to Judge Fernando L. Aenlle-Rocha]<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION OF ACTIVISION PUBLISHING, INC. (1) TO DISMISS COUNTERCLAIMS, AND/OR (2) FOR JUDGMENT ON THE PLEADINGS.**<br><br>[Fed. R. Civ. P. 12(b)(6) & 12(c)]<br><br>Date:   October 1, 2021<br>Time:   1:30 pm |
| WARZONE.COM, LLC,<br><br>   Counterclaimant,<br><br>   v.<br><br>ACTIVISION PUBLISHING, INC., a Delaware corporation,<br><br>   Counterclaim-Defendant. | |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................1

I. THE COURT MAY DECIDE THE *ROGERS* ISSUE AT THE PLEADING STAGE ........................................................................................3

II. THE FIRST AMENDMENT BARS COUNTERCLAIMANT'S TRADEMARK CLAIMS................................................................................4

    A. The *Rogers* Test Applies To Activision's Choice of Title For Its Video Game ..............................................................................................4

    B. Activision's "WARZONE" Easily Meets Both Prongs Of The *Rogers Test*..............................................................................................10

        1. Activision's Title Has "Above Zero" Artistic Relevance ........11

        2. Activision's Use Is Not Explicitly Misleading.........................12

CONCLUSION.....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AM General LLC v. Activision Blizzard, Inc.*,
  450 F. Supp. 3d 467 (S.D.N.Y. 2020) ................................................................. 10

*Ashcroft v. Iqbal*,
  556 S.Ct. 1937 (2009) ......................................................................................... 15

*Betty's Found. for the Elimination of Alzheimer's Disease v. Trinity Christian Ctr. of Santa Ana, Inc.*,
  No. SACV 20-02146-CJC, 2021 WL 3046889
  (C.D. Cal. April 7, 2021) ................................................................................ 5, 12

*Brown v. Elec. Arts, Inc.*,
  724 F.3d 1235 (9th Cir. 2013) ................................................................... 3, 4, 15

*Brown v. Entm't Merchants Ass'n*,
  564 U.S. 786 (2011) .............................................................................................. 4

*Caiz v. Roberts*,
  382 F. Supp. 3d 942 (C.D. Cal. 2019) ........................................................ *passim*

*Capcom Co. v. MKR Group, Inc.*,
  2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) .................................................... 10

*DeClemente v. Columbia Pictures Industries, Inc.*,
  860 F. Supp. 30 (E.D.N.Y. 1994) ......................................................................... 7

*Dickenson v. Ryan Seacrest Enters., Inc.*,
  CV-18-2544-GW, 2019 WL 3035090 (C.D. Cal. 2019) ..................................... 3

*Diece-Lisa Indus. v. Disney Enters., Inc.*,
  No. CV20-09147, 2021 WL 3355284 (C.D. Cal. July 7, 2021),
  *appeal docketed*, No. 21-55816 (9th Cir. Aug. 2, 2021) ..................................... 6

*Dita, Inc. v. Mendez*,
  No. CV 10-6277 PSG FMOX, 2010 WL 5140855
  (C.D. Cal. Dec. 14, 2010) ................................................................................... 15

*E.S.S. Entertainment 2000, Inc. v. Rock Star Videos*,
  547 F.3d 1095 (9th Cir. 2008) .............................................................................. 8

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Elec. Arts, Inc. v. Textron Inc.*,
  No. C 12-00118 WHA, 2012 WL 3042668
  (N.D. Cal. July 25, 2012) ..................................................................................... 15

*Fortres Grand Corp. v. Warner Bros. Entertainment*,
  947 F. Supp. 2d 922 (N.D. Ind. 2013) ......................................................... 7, 8, 9

*Gordon v. Drape Creative, Inc.*,
  909 F.3d 257 (9th Cir. 2018) ........................................................................ 11, 12

*Jackson v. Netflix, Inc.*,
  506 F. Supp. 3d 1007 (C.D. Cal. 2020) ..................................................... 3, 6, 15

*Masters Software, Inc. v. Discovery Comms, Inc.*,
  725 F. Supp. 2d 1294 (W.D. Wash. 2010) ........................................................ 8, 9

*Medina v. Dash Films, Inc.*,
  No. 15-CV-2551 (KBF), 2016 WL 3906714
  (S.D.N.Y. July 14, 2016) ................................................................................. 9, 14

*Mil-Spec Monkey v. Activision Blizzard, Inc.*,
  74 F. Supp. 3d (N.D. Cal. 2014) ............................................................... 8, 13, 14

*Morrison Ent. Grp. Inc. v. Nintendo of Am., Inc.*,
  56 F. App'x 782 (9th Cir. 2003) ............................................................................ 7

*Novalogic v. Activision Blizzard*,
  41 F. Supp. 3d 885 (C.D. Cal. 2013) .......................................................... passim

*Rebellion Developments Ltd. v. Stardock Entertainment, Inc.*,
  No. 12-12805, 2013 WL 1944888 (E.D. Mich. May 9, 2013) .................... passim

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989) ......................................................................... passim

*Stewart Surfboards, Inc. v. Disney Book Grp., LLC*,
  CV-10-2982 GAF, 2011 WL 12877019 (C.D. Cal. 2011) .................................. 3

*Twentieth Century Fox Television v. Empire Distribution*,
  161 F. Supp. 3d 902 (C.D. Cal. 2016), *aff'd* 875 F.3d 1192
  (9th Cir. 2017) ....................................................................................................... 5

Mitchell Silberberg & Knupp LLP

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Twentieth Century Fox Television v. Empire Distribution, Inc.*,
  875 F.3d 1192 (9th Cir. 2017) ................................................................. *passim*

*VIRAG, S.R.L. v. Sony Comput. Entm't Am. LLC*,
  699 Fed. Appx. 667 (9th Cir. 2017) ..................................................................... 3

*VIRAG, S.R.L. v. Sony Computer Ent. Am, LLC*,
  No. 3:15-CV-01729-LB, 2015 WL 5000102 (N.D. Cal. Aug. 21,
  2015), *aff'd* 669 F. App'x 667 (9th Cir. 2017) ................................................ 8, 13

*Webceleb, Inc. v. Procter & Gamble Co.*,
  No. 10CV2318 DMS (BLM), 2012 WL 12846096 (S.D. Cal. Sept.
  25, 2012), *aff'd on other grounds*, 554 F. App'x 606 (9th Cir.
  2014) ..................................................................................................................... 7

*Wild v. Harpercollins Publishers, LLC*,
  No. SACV121191JSTANX, 2012 WL 12887690 (C.D. Cal. 2012) ................... 8

*Winchester Mystery House, LLC v. Global Asylum, Inc.*,
  210 Cal. App. 4th 579 (2012) ............................................................................... 6

Mitchell Silberberg & Knupp LLP

# INTRODUCTION

The memorandum of Warzone.com LLC ("Counterclaimant") in Opposition to Counterclaim-Defendant Activision Publishing, Inc.'s ("Activision") Motion to Dismiss or for Judgment on the Pleadings (the "Motion") confirms every one of the salient points that warrants dismissal of this action and judgment in favor of Activision. Specifically, there is and can be no dispute that: (1) the video game *Call of Duty: Warzone* ("*CODWZ*") is an expressive work; (2) the title of that work has artistic relevance to its content (a game about surviving in a warzone); and (3) nothing in *CODWZ* or any of its advertising or promotion *explicitly* misleads as to Counterclaimant's affiliation or sponsorship of that work. As a result, the use falls squarely within the two-part test set forth in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), and is by no means "beyond *Rogers'* outer limits." This is not even a close case.

Rather than address the *Rogers* test or discuss the relevant cases, Counterclaimant urges adoption of a completely new and unsupported legal standard: namely, the First Amendment does not apply to titles of expressive works unless that title has never previously been used as a title for a similar work – *even if* the title at issue is a meaningful English word that is directly relevant to the expressive work and is not used in an explicitly misleading or deceitful way. Counterclaimant even goes so far as to falsely claim that the *Rogers* test does not apply unless the title specifically is used to refer to the senior user, is not used in marketing or promotion, and does not become more well-known than the senior user's title. Counterclaimants' theory would effectively gut First Amendment protection for titles, which is why ***all*** of its arguments have been squarely, explicitly, and repeatedly rejected by the Ninth Circuit, as well as by more than a dozen district court cases in the Central District of California and elsewhere.

In fact, in *Twentieth Century Fox Television v. Empire Distribution, Inc.*, 875 F.3d 1192 (9th Cir. 2017), the Ninth Circuit rejected nearly every one of

Counterclaimant's arguments, including that the title must be "referential" or "cultural[ly] icon[ic]" (*id.* at 1198), the title may not be used as a "brand" to market or promote the expressive work (*id.* at 1196-97), the parties' goods must not be similar or related (*id.* at 1195-96), the standard for artistic relevance is more than "above zero" (*id.* at 1198-99), and the "mere use" of the alleged trademark may alone be sufficient to meet the "explicitly misleading" prong of the *Rogers* test (*id.* at 1199). Rather than address that case, Counterclaimant relies almost entirely on three district court cases that pre-date *Empire* and do not reflect the current state of the law, and on a single Ninth Circuit case that explicitly distinguished its discrete set of facts from those at issue here. In other words, Counterclaimant does not offer any relevant authority to support its arguments.

In a last-ditch effort to save its claims, Counterclaimant seeks to distract the Court with irrelevant arguments and allegations regarding Activision's own trademark registrations, suggesting that Activision wishes to monopolize the use of the term "Warzone" as a video game title. But Counterclaimant, not Activision, is the one seeking to monopolize "Warzone." Indeed, Activision repeatedly stated to Counterclaimant that the parties' games can and should coexist. Activision's Motion seeks only a judicial declaration that its use of the "Warzone" title ***does not infringe*** Counterclaimant's alleged trademark rights.[1] Regardless, the law is clear that Activision's trademark applications do not change the *Rogers* analysis.

There now can be no doubt that this lawsuit has nothing at all to do with consumer deception or any explicitly misleading conduct. Counterclaimant simply seeks to unfairly limit competition by reserving an important English word for its exclusive use. Activision, however, was entitled to select a title for its game that

---

[1] To avoid any ambiguity on this point, Activision does ***not*** by this Motion seek to prevent Counterclaimant from continuing to use "Warzone" as its game title. It also does not hereby seek any adjudication with respect to the parties' pending trademark applications. These applications have no bearing on the issues presented in this Motion.

was artistically relevant to its content and not explicitly misleading.  The Court should grant Activision's Motion.

## I. THE COURT MAY DECIDE THE *ROGERS* ISSUE AT THE PLEADING STAGE.

As a threshold matter, Counterclaimant is wrong when it states that application of the *Rogers* test to *CODWZ*'s title is not appropriate for a motion to dismiss.  Courts routinely apply the *Rogers* test to dismiss facially deficient trademark infringement, unfair competition, and false advertising claims at the pleading stage.  *See*, *e.g.*, *VIRAG, S.R.L. v. Sony Comput. Entm't Am. LLC*, 699 Fed. Appx. 667, 668 (9th Cir. 2017) (use of plaintiff's mark in videogame did not violate Lanham Act; affirming district court's ruling on motion to dismiss); *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1248 (9th Cir. 2013) (dismissing Lanham Act claims based on use of plaintiff's likeness in video game); *Jackson v. Netflix, Inc.*, 506 F. Supp. 3d 1007, 1016-17 (C.D. Cal. 2020) (dismissing trademark claims on *Rogers* grounds on a motion to dismiss); *Dickenson v. Ryan Seacrest Enters., Inc.*, CV-18-2544-GW, 2019 WL 3035090, at *9-10 (C.D. Cal. 2019) (same); *Stewart Surfboards, Inc. v. Disney Book Grp., LLC*, CV-10-2982 GAF, 2011 WL 12877019, at *7-8 (C.D. Cal. 2011) (same); *see also Caiz v. Roberts*, 382 F. Supp. 3d 942, 948 (C.D. Cal. 2019) ("[T]he *Rogers* test can be applied as early as the motion to dismiss stage because the test analyzes facts facially apparent in a defendant's work.").

In fact, where, as here, free speech rights are at issue, it is not just appropriate, but necessary, to decide the matter at the pleading stage to avoid the chilling effect of protracted litigation and expensive discovery.  *See Rebellion Developments Ltd. v. Stardock Entertainment, Inc.*, No. 12-12805, 2013 WL 1944888, at *4 (E.D. Mich. May 9, 2013) ("Courts are cognizant of vindicating First Amendment protections through early dispositive motions[.]").

No amount of discovery could alter the analysis.  In fact, Counterclaimant

never even explains what facts it seeks to discover that might be relevant to the *Rogers* test. All material facts have been specifically alleged by Counterclaimant in its Counterclaims or admitted by Counterclaimant in its Answer. Counterclaimant cannot identify a single *factual* allegation, far less a plausible one, that could have any bearing on whether the use has artistic relevance or is explicitly misleading. *See Brown*, 724 F.3d at 1248 ("Brown asserts that there is no artistic relevance and that EA attempted to mislead consumers . . . but none of the facts asserted in support of these legal conclusions actually justify the conclusions.").[2] There is no reason to prolong this legally meritless claim or to subject Activision to costly discovery.

## II. THE FIRST AMENDMENT BARS COUNTERCLAIMANT'S TRADEMARK CLAIMS.

### A. The *Rogers* Test Applies To Activision's Choice of Title For Its Video Game.

Counterclaimant admits, as it must, that *CODWZ* is an expressive work, and that the word "Warzone" is used by Activision as part of the title of that expressive work. Opp. at 15 ("[Counterclaimant] does not dispute that video games may qualify as 'artistic works'… [Counterclaimant] submits that the *title* of Activision's game is CALL OF DUTY WARZONE[.]") (emphasis in original). *See Brown v. Entm't Merchants Ass'n,* 564 U.S. 786, 790 (2011) (video games are expressive works entitled to First Amendment protection); *Novalogic v. Activision Blizzard*, 41 F. Supp. 3d 885, 898 (C.D. Cal. 2013) ("[Call of Duty: Modern Warfare 3] is an expressive work entitled to as much First Amendment protection as any motion picture or any other expressive work."). This alone is sufficient to

---

[2] Counterclaimant's vague assertion that it requires evidence of Activision's "advertising practices" is without merit. Opp. at 26. To determine whether a use is "explicitly misleading," the only even arguably relevant facts are statements made to *consumers*, which are, by definition, publicly available. *See Brown*, 724 F.3d at 1246-47. The few press releases included in the Counterclaims actually confirm that the use is *not* explicitly misleading.

require application of the *Rogers* test, because "[t]he only threshold for applying the *Rogers* test is whether the allegedly infringing use is contained in an expressive work." *Twentieth Century Fox Television v. Empire Distribution*, 161 F. Supp. 3d 902, 907 (C.D. Cal. 2016), *aff'd* 875 F.3d 1192 (9th Cir. 2017)

Each of Counterclaimant's arguments as to why the *Rogers* test is inapplicable have been squarely rejected.

***First***, Counterclaimant seems to suggest that a video game title cannot serve both an artistic purpose and a commercial or marketing purpose, including serving as a trademark or "brand." This is incorrect. *Rogers* specifically noted that "titles, like the artistic works they identify, are of a hybrid nature, ***combining artistic expression and commercial promotion***. The title of a movie may be both an integral element of the film-maker's expression as well as a significant means of marketing the film to the public." 875 F.2d at 998 (emphasis added).[3] The plaintiff in *Rebellion* made the exact same argument, to no avail:

> [Plaintiffs] say that Defendants are using REBELLION as a trademark because Defendants, in fact, filed a trademark application for the mark . . . Plaintiff's arguments against the use of the *Rogers* test are unpersuasive. The *Rogers* court itself recognized that the titles of literary and artistic works could acquire secondary meaning and become eligible for protection as trademarks. *Rogers* also did not include in its test any inquiry as to whether the title can or does function as a source identifier.

2013 WL 1944888, at *2; *see also Betty's Found. for the Elimination of Alzheimer's Disease v. Trinity Christian Ctr. of Santa Ana, Inc.*, No. SACV 20-02146-CJC (ADSx), 2021 WL 3046889, *1 (C.D. Cal. April 7, 2021) (dismissing

---

[3] Counterclaimant falsely claims that "[u]nlike the movie title in *Rogers*, which served merely as the name of a single movie, Activision uses 'Warzone' as a source-identifying trademark for a video game ***series*** that competes directly with the trademark owner." Opp. at 15 (emphasis added). Counterclaimant's own allegations confirm that *CODWZ* is one video game in the ***Call of Duty*** series. *Compare* Counterclaims ¶ 21 (describing the "video game" *CODWZ*), *with* Counterclaims ¶ 22 (referencing the "Call of Duty *franchise*") (emphasis added).

trademark infringement claims under a *Rogers* analysis despite the alleged infringer having filed a trademark application for the mark at issue).

The *Rebellion* court's conclusion is wholly consistent with the law in this Circuit. It is well established that even overtly commercial or promotional uses of a movie, television program, or video game title – including in merchandise and other ancillary products – are fully entitled to First Amendment protection. For example, in *Empire*, 875 F.3d at 1196-97, the defendant engaged in extensive promotion and exploitation of the "Empire" title, including by using it in advertisements, consumer products, sound recordings, live events, and personal appearances. The court held that ***all*** of these uses were fully protected by the First Amendment: "it requires only a minor logical extension of the reasoning of *Rogers* to hold that works protected under its test may be advertised and marketed by name, and we so hold." *Id.* Other courts have come to the same conclusion in similar circumstances. *See*, *e.g.*, *Jackson v. Netflix, Inc.*, 506 F. Supp. 3d 1007, 1014 (C.D. Cal. 2020) ("Plaintiffs contend that *Rogers* does not apply because Netflix used Plaintiffs' marks to promote the Documentary . . . This argument is foreclosed by Ninth Circuit precedent."); *Winchester Mystery House, LLC v. Global Asylum, Inc.*, 210 Cal. App. 4th 579, 591 (2012) (*Rogers* test applied even where the marks were used in the title and packaging as a "crass marketing tool"); *Rebellion*, at *3 ("It is clear that the commercial nature of artistic works does not diminish their protections under the First Amendment, and the fact that a title attempts to attract public attention with stylized components is irrelevant.").

**Second,** Counterclaimant argues that the *Rogers* test does not apply (or that it should be modified or altered) when the claim is for "reverse" confusion or involves related or competing products. Opp. at 19. But courts consistently have held – as recently as July 2021 – that *Rogers* applies to claims for "reverse confusion," contradicting Counterclaimant's argument (*id.*) that "the factual circumstances of a reverse confusion case do not fit neatly into the *Rogers*

balancing test." *See Diece-Lisa Indus. v. Disney Enters., Inc.*, No. CV20-09147, 2021 WL 3355284, *3 (C.D. Cal. July 7, 2021) (agreeing with other courts that "*Rogers* applies without modification in reverse confusion cases"), *appeal docketed*, No. 21-55816 (9th Cir. Aug. 2, 2021); *Caiz*, 382 F. Supp. 3d at 949 ("[T]he court finds that the *Rogers* test is not barred in this case simply because it involves reverse confusion.")[4]; *Fortres Grand Corp. v. Warner Bros. Entertainment*, 947 F. Supp. 2d 922, 933 (N.D. Ind. 2013) ("[T]he *Rogers* test applies to reverse confusion claims."); *DeClemente v. Columbia Pictures Industries, Inc.*, 860 F. Supp. 30, 52 (E.D.N.Y. 1994) (applying *Rogers* to reverse confusion claim); *Webceleb, Inc. v. Procter & Gamble Co.,* No. 10CV2318 DMS (BLM), 2012 WL 12846096, at *5 (S.D. Cal. Sept. 25, 2012) (same), *aff'd on other grounds*, 554 F. App'x 606 (9th Cir. 2014).

There is no logical or public policy reason why *Rogers* would not apply to claims of reverse confusion. The ultimate inquiry is exactly the same, whether the claim is for forward confusion or reverse confusion: namely, whether members of the public are likely to be confused or deceived into believing that the defendant's product is associated with or originates from the same source as the plaintiff's product. *See Morrison Ent. Grp. Inc. v. Nintendo of Am., Inc.*, 56 F. App'x 782, 783 (9th Cir. 2003) ("In reverse confusion cases, like forward confusion cases, in order to prevail on a trademark infringement action, a plaintiff must demonstrate a likelihood of confusion."). In both circumstances, the risk of consumer confusion must be weighed against the defendant's right to express itself through a work's title. As one court explained ("entirely agree[ing] with" and quoting *verbatim* from the defendant's reply brief in support of its motion to dismiss):

> [I]f *Rogers* didn't apply to cases of reverse confusion, the chilling effects on speech could be enormous . . . [it] would mean that a small,

---

[4] That *Caiz* was decided on a motion for summary judgment is wholly irrelevant. The case was decided based purely on the plaintiff's "legal argument," 382 F. Supp. 3d at 951, primarily, its argument that the *Rogers* test does not apply to claims of reverse confusion.

relatively unknown trademark owner, claiming rights in a mark that few people have ever heard of, would enjoy monopoly power over the use of certain words in expressive works – power that the First Amendment plainly denies to the owners of famous, household-word trademarks. If the First Amendment prevents the owners of strong and famous marks . . . from controlling the expressive speech of others, there is no rational basis for holding that the First Amendment freely permits the owners of more obscure marks to dictate the expressive speech of others. Such a rule, indeed, would be disastrous in practice.

*Fortres Grand*, 947 F. Supp. 2d at 933.

**Third,** Counterclaimant cannot avoid application of the *Rogers* test by arguing that Activision's use of its *Call of Duty: Warzone* title does not refer to Counterclaimant's own trademark or lacks "cultural significance." Opp. at 18-20. The Ninth Circuit has made very clear on many occasions that neither is required for First Amendment protection. *See Empire*, 875 F.3d at 1199 ("[A] referential requirement does not appear in the text of the *Rogers* test, and such a requirement would be inconsistent with the purpose of the first prong of *Rogers*.")[5]; *E.S.S. Entertainment 2000, Inc. v. Rock Star Videos*, 547 F.3d 1095, 1100 (9th Cir. 2008) ("It is true that the Game is not 'about' the Play Pen in the way that Barbie Girl was about Barbie . . . It is also true that Play Pen has little cultural significance."); *VIRAG*, 699 F. Appx. at 668 ("The test set forth in [*Rogers*] applies regardless of whether the VIRAG trademark has independent cultural significance."); *see also Mil-Spec Monkey v. Activision Blizzard, Inc.*, 74 F. Supp.

---

[5] Counterclaimant's reliance on *Masters Software, Inc. v. Discovery Comms, Inc.*, 725 F. Supp. 2d 1294, 1306 (W.D. Wash. 2010) and *Wild v. Harpercollins Publishers, LLC*, No. SACV121191JSTANX, 2012 WL 12887690 (C.D. Cal. 2012), is misplaced. Opp. at 19-21. Both cases were decided many years before *Empire* made clear that the "referential requirement does not appear in the text of the *Rogers* test, and such a requirement would be inconsistent with the purpose of the first prong of *Rogers*. As a result, several courts have refused to follow these cases. *See, e.g., Caiz*, 382 F. Supp. 3d at 948-49 ("[T]his court is not aware of any court in this district that has adopted the *Masters* reasoning, and the Ninth Circuit has expressly rejected the requirement that *Rogers* has a referential requirement..."); *Fortres Grand*, 947 F. Supp. 2d at n.2 (rejecting the plaintiff's citation of *Masters* for the proposition that the *Rogers* test does not apply to reverse confusion).

3d at 1140-41 (N.D. Cal. 2014) (plaintiff's contention that a mark must be a "cultural icon" is based on a "misreading of [*Mattel*]"); *Caiz*, 382 F. Supp. 3d at 949 ("[T]he Ninth Circuit has expressly rejected the argument that *Rogers* has a referential requirement.")

In any event, Counterclaimant's "cultural significance" argument misses the point. What is relevant is not whether the mark is culturally iconic, but whether the use has any expressive purpose other than as a source-identifier for Counterclaimant's product. That plainly is the case here, because the word "Warzone" is descriptive and has a linguistic meaning that has nothing at all to do with Counterclaimant. "If a 'trademark owner does not have the right to control public discourse whenever the public imbues his mark with a meaning beyond its source-identifying function,' the same limit applies with even more logical force where the mark had a public meaning <u>before</u> it ever played a source-identifying function." *Medina v. Dash Films, Inc.*, No. 15-CV-2551 (KBF), 2016 WL 3906714, at *6 (S.D.N.Y. July 14, 2016) (emphasis in original); *Novalogic*, 41 F. Supp. 3d at 902 (noting that "the phrase 'Delta Force' and its insignia have an established and well-known prior meaning and connotation . . . that is unrelated to Plaintiff and that meaning and connotation significantly pre-date Plaintiff's use"). Likewise, here, Counterclaimant cannot exercise total control over the pre-existing word "Warzone" simply because it used that word first as the title of its own computer game. *Medina*, at *6 ("Plaintiff is entitled to protect his duo's trademark, but not by staking his claim to a pre-existing term and then attempting to remove all expressive, non-explicitly misleading uses from public circulation.").

***Finally***, it is irrelevant that both parties used the term "Warzone" in connection with video games. If, as Counterclaimant argues, *Rogers* applies only when the works at issue are unrelated, that would lead to the absurd result that two songs, movies, television shows, or books could never share the same word in their title – even if the title is comprised entirely of a common English word such as

"Hello," "Stay," "Crash," and "Gladiator."[6]  Many *Rogers* cases involved parties in the same or similar lines of business or selling related products.  For example: in *Empire*, Twentieth Century Fox not only used "Empire" in its television show, but also in related sound recordings.  *Empire*, 875 F.3d at 1195.  In *Caiz*, both the plaintiff and defendant were recording artists using the phrase "Mastermind."  382 F. Supp. 3d at 945.  In *Roxbury*, both parties were using the title "Route 66" in connection with their audiovisual works (a television series and adult film).  In *Rebellion* and *Novalogic*, both parties were in the business of developing and selling video games.  *Rebellion*, 2013 WL 1944888, at *1; *Novalogic*, 41 F. Supp. 3d at 889-90.  In *Capcom Co. v. MKR Group, Inc.*, both parties used the word "Dead" for their respective audiovisual works.  *See* No. C 08-0904 RS, 2008 WL 4661479, at *1-2 (N.D. Cal. Oct. 20, 2008).  And in almost every *Rogers* case, the plaintiff claimed that the defendant misappropriated a licensing opportunity.  *See, e.g.*, *AM General LLC v. Activision Blizzard, Inc.*, 450 F. Supp. 3d 467, 481 (S.D.N.Y. 2020) (plaintiff claimed that it "is in the business of licensing-out the rights to depict [Humvees] in video games and toys.").[7]

### B. Activision's "WARZONE" Easily Meets Both Prongs Of The *Rogers* Test.

Counterclaimant's Opposition ignores the legal standard and relative

---

[6] *Compare* LIONEL RICHIE, HELLO (Motown Record Corporation 1983), *with* ADELE, HELLO (XL Recordings 2015); *compare* MAURICE WILLIAMS, STAY (HERALD RECORDS, 1960), *with* LISA LOEB, STAY (RCA BMG 1994), *and with* RIHANNA, STAY (Def Jam 2012), *and with* SARA BAREILLES, STAY (Epic 2012); *compare* CRASH (The Movie Network 1996), *with* CRASH (Bob Yari Productions 2004); *compare* GLADIATOR (Price Entertainment 1992), *with* GLADIATOR (DreamWorks Pictures 2002).

[7] Counterclaimant briefly alludes to a footnote in *Rogers* stating that the court's limiting construction of the Lanham Act would not apply to "**misleading titles** that are confusingly similar to other titles."  Opp. at 21 (citing to *Rogers*, 875 F.2d at n.5).  However, the Ninth Circuit has squarely rejected application of this footnote, because it "conflicts with our precedents, which 'dictate that we apply the *Rogers* test in [Lanham Act § 43(a) cases involving expressive works.'"  *Empire*, 875 F.3d at 1197.  In any event, the *Call of Duty: Warzone* title is not "misleading," it accurately describes the game, which is about surviving in a warzone.

burdens of proof that apply here. Since Activision has made "a threshold legal showing that its allegedly infringing use is part of an expressive work protected by the First Amendment," the burden shifts to **Counterclaimant** to "satisfy not only the likelihood of confusion test but also at least one of *Rogers'* two prongs." *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 264-65 (9th Cir. 2018). It is clear that Counterclaimant cannot come close to meeting that burden.

### 1. Activision's Title Has "Above Zero" Artistic Relevance.

Counterclaimant ***admits*** that the title "*Call of Duty: Warzone*" has at least some artistic relevance to the *CODWZ* game, and thus is not used "merely" to appropriate Counterclaimant's alleged trademark. Opp. at 22 ("[T]he word 'warzone' may be suggestive of the content of Activision's game."). In fact, the title has far more than "above zero" relevance; it is directly relevant to the game, which is about military combat in a fictional virtual warzone. *See Empire*, 875 F.3d at 1198 ("Fox used the common word 'Empire' for artistically relevant reasons: the show's setting is New York, the Empire State, and its subject matter is a music and entertainment conglomerate, 'Empire Enterprises,' which is itself a figurative empire."); *Rebellion*, at *5 ("The court agrees with Defendants that the word REBELLION has some artistic relevance to Defendants' computer game because within the game, players may choose to align with 'loyalist' or 'rebel' factions in the context of a civil war.").

Counterclaimant's assertion that "Warzone" is insufficiently "artistic" deliberately and grossly misconstrues the "artistic relevance" prong of the *Rogers* test. *Rogers* itself made clear that "[w]e . . . need not interpret the Act to require that authors select titles that unambiguously describe what the work is about nor to preclude them from using titles that are only suggestive of some topics that the work is not about." 875 F.2d at 1000. Thus, as Judge Carney recently explained, "[a] title may have artistic relevance by supporting the themes and subject matter of the underlying work." *Betty's Foundation*, 2021 WL 3046889, at *3. The title

1 *Call of Duty: Warzone* plainly meets that low standard. By the same token, Counterclaimant's claim that Activision "could have" used a different title, such as "warfare," "combat zone," or "frontline," is equally misplaced. *Rogers* explicitly rejected this argument when it held that "in the context of titles, [a] 'no alternative' standard provides insufficient leeway for literary expression." *Rogers*, 875 F.2d at 998-99. In other words, the First Amendment gives Activision broad discretion to choose its video game title.

Finally, Counterclaimant's reliance on *Gordon*, 897 F.3d 1184 (9th Cir. 2018), *superseded by* 909 F.3d 257 (9th Cir. 2018), is wholly misplaced. *Gordon* addressed the entirely different situation in which a defendant appropriated the plaintiff's unique trademarked phrase and brand "Honey Badger Don't Give a S—t" in its greeting cards. *Gordon*, 909 F.3d at 261-63. Critical to the *Gordon* court's analysis was that the defendant had simply re-used the plaintiff's trademark as the "centerpiece" of its greeting cards, "unadorned with any artistic contribution by the junior user" and for the sole purpose of piggybacking on the popularity of the phrase. *Id.* at 271. By contrast, the *Gordon* court noted that "[i]n cases involving the use of a mark in the title of an expressive work – such as the title of a movie (*Rogers*), a song (*MCA Records*), a photograph (*Walking Mountain*), or a television show (*Twentieth Century Fox*) – the mark obviously served as only one 'element of the [work] and the [junior user's] artistic expressions.'" 909 F.3d at 271 (quoting *Rogers*, 875 F.2d at 1001). That is precisely the case here.[8]

### 2. Activision's Use Is Not Explicitly Misleading.

Counterclaimant also concedes that it does not and cannot allege that **anything** in the *CODWZ* title, game, or marketing materials (including its website, key art, or store page) even suggests – far less "explicitly misleads" (*i.e.*

---

[8] At times, Counterclaimant misleadingly cites the first Ninth Circuit decision in the case, failing to disclose that this decision was superseded by a second decision issued after rehearing. Opp. at 22 (*citing Gordon*, 897 F.3d at 1184). In that later decision, the Court confirmed that the use **did** have sufficient "artistic relevance" to meet the first prong of *Rogers*.

affirmatively states or overtly claims) – that *CODWZ* or Activision has any relationship whatsoever with Counterclaimant. *Novalogic*, 41 F. Supp. 3d at 901 ("[I]t is undisputed that Activision does not explicitly misrepresent or in any manner affirmatively state to the public that Plaintiff is associated with, sponsored, endorsed, or otherwise is the source of [*Call of Duty: Modern Warfare 3*]"); *VIRAG*, 2015 WL 5000102, at *12 ("The plaintiffs do not allege or even suggest that the defendants explicitly indicated, claimed, or misstated that VIRAG was a source of content for [the games] or sponsored [the games]."); *Caiz*, 382 F. Supp. 3d at 951 (dismissal where plaintiff "points to no evidence indicating that Defendants' use even 'implicitly suggest[s]' that the album is associated with Plaintiff, let alone any evidence of an overt association"); *Mil-Spec* Monkey, 74 F. Supp. 3d at 1143 ("[Plaintiff] has not put forth a single argument that Activision has affirmatively purported in any way to share a relationship with [Plaintiff].").

Moreover, Counterclaimant concedes that Activision – far from seeking to explicitly mislead consumers – has marketed and advertised *CODWZ* in a manner that clearly indicates that ***Activision***, not Counterclaimant, is the source of the game ***and*** that the game is part of the *Call of Duty* franchise. This includes, for example, Activision's extensive use of its own *Call of Duty* branding, artwork, characters, and logos in connection with the game and its marketing. *See* Counterclaims ¶ 21 (screen captures include the words "CALL OF DUTY."); Opp. at 10 (screen capture displays *Call of Duty* characters, weapons, and the name of other *Call of Duty* games, such as "Black Ops"). As Judge Walter noted in *Novalogic*, 41 F. Supp. 3d at 901, "given the huge success of its 'Call of Duty' franchise, Activision understandably has made every effort to affirmatively negate any possible confusion regarding the source of [*Call of Duty: Modern Warfare 3*]." *See also Mil-Spec.*, 74 F. Supp. 3d at 1144 ("Activision's [*Call of Duty: Ghosts*] packaging is very clear as to its origin and source…"); *Caiz*, 382 F. Supp. 3d at 951 ("[E]very instance where [Mastermind] was used it was accompanied by a

clear indication that it is associated with Rick Ross."); *Medina*, at *5 ("The complaint is devoid of allegations that defendants attempted to suggest that plaintiff's duo produced the work; to the contrary . . . materials promoting the film prominently informed the reader that it was 'Executive Produced: Dame Dash & Kanye West.'"). Counterclaimant even admits that Activision's *Call of Duty* series is "one of the best-selling franchises in the history of video games." Opp. at 7.

      Unable to allege even a single "explicitly misleading" use of the word *Warzone*, Counterclaimant's entire argument ultimately boils down to its contention that Activision's mere *use* is likely to cause consumer confusion. Opp. at 24 ("It is explicitly misleading to title a video game WARZONE because this use explicitly and implicitly associates the video game with [Counterclaimant's] prior mark and thus falsely creates the impression that it was used with [Counterclaimant's] permission, or in the reverse confusion context, that Warzone is the junior user and infringer."); *id.* at 25 ("Activision's use of its mark is likely to cause consumer confusion.").[9] That is not, and never has been, the law. "[I]t is key . . . that the creator must *explicitly* mislead consumers" and "the use of a mark alone is not enough to satisfy this prong." *Empire*, 875 F.3d at 1199 (*quoting Brown,* 724 F.3d at 1245). As *Rogers* notes, the "risk of misunderstanding, not engendered by any overt claim in the title, is so outweighed by the interests in artistic expression as to preclude application of the Lanham Act." 875 F.2d at 1001. Thus, "even assuming that some consumers might have mistakenly believe[d] that some relationship exists between [the parties] as a result of the use… that mistaken belief on the part of those consumers would still not satisfy the

---

[9] Counterclaimant falsely states that it alleged that "Activision actually intended to mislead the public as to the source of the video games." Opp. at 25, *citing* Counterclaims ¶¶ 33-44. This purported allegation does not appear anywhere in its Counterclaims, likely because it is wholly implausible that Activision would intend to mislead consumers into believing that its *Call of Duty* game is related to Counterclaimant. In any event, the statement is wholly conclusory and devoid of factual allegations.

14

second prong of the *Rogers* test." *Novalogic,* 41 F. Supp. 3d at 902-03.[10]

Because Counterclaimant does not allege that *CODWZ* contains any explicit claims or references to Counterclaimant and its game, Activision's alleged use cannot be "explicitly misleading" as a matter of law. This is not a "fact-dependent" analysis. Without even a single allegation that Activision explicitly misled customers, Counterclaimant's claims must be dismissed. *See Jackson*, 506 F. Supp. 3d at 1016 ("[C]onstruing the FAC in Plaintiffs' favor it offers no allegations rising to the level of explicit deception on Netflix's behalf.").[11]

## CONCLUSION

For the reasons set forth herein, Activision requests that the Court dismiss the Counterclaims and enter judgment on the pleadings in favor of Activision on its claim for declaratory relief of noninfringement.

DATED: September 3, 2021

MARC E. MAYER
KARIN G. PAGNANELLI
MITCHELL SILBERBERG & KNUPP LLP

By: /s/ Marc E. Mayer
Attorneys for
Activision Publishing, Inc.

---

[10] *Dita, Inc. v. Mendez*, No. CV 10-6277 PSG FMOX, 2010 WL 5140855 (C.D. Cal. Dec. 14, 2010), and *Elec. Arts, Inc. v. Textron Inc.*, No. C 12-00118 WHA, 2012 WL 3042668 (N.D. Cal. July 25, 2012) were decided prior to *Brown* and *Empire*, both of which made clear that allegations of consumer confusion are not alone sufficient to meet *Rogers*' second prong.

[11] Counterclaimant's assertion that it was not required to allege that Activision's use was explicitly misleading (Opp. at 25) misses the point. Counterclaimant must allege *facts* sufficient to support an inference that the use explicitly misled as to Activision's association with Counterclaimant. *See Ashcroft v. Iqbal*, 556 S.Ct. 1937, 1949 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

15