MARC E. MAYER (SBN 190969)
  mem@msk.com
KARIN G. PAGNANELLI (SBN 174763)
  kgp@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Activision Publishing, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTIVISION PUBLISHING, INC., a Delaware corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WARZONE.COM, LLC,<br><br>　　　　Defendant.<br><br>WARZONE.COM, LLC,<br><br>　　　　Counterclaimant,<br><br>　　v.<br><br>ACTIVISION PUBLISHING, INC., a Delaware corporation,<br><br>　　　　Counterclaim-Defendant. | CASE NO. 2:21-cv-3073-FLA (JCx)<br><br>[Assigned to Judge Fernando L. Aenlle-Rocha]<br><br>**NOTICE OF MOTION AND MOTION OF ACTIVISION PUBLISHING, INC. TO TEMPORARILY STAY DISCOVERY PENDING RESOLUTION OF ACTIVISION'S MOTION TO DISMISS AND/OR FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:　　February 18, 2022<br>Time:　　1:30 pm<br>Location:　Courtroom 6B<br><br>[Declaration of Marc E. Mayer and Proposed Order filed concurrently herewith] |

Mitchell
Silberberg &
Knupp LLP

13810619.1

TO ALL PARTIES AND THEIR COUNSEL OF RECORD.

PLEASE TAKE NOTICE that on February 18, 2022 at 1:30 p.m., or as soon thereafter as this matter may be heard, Plaintiff and Counterclaim-Defendant Activision Publishing, Inc. ("Activision") will and hereby does move for an order temporarily staying discovery in this action pending the Court's determination of Activision's Motion to Dismiss the Counterclaims and/or for Judgment on the Pleadings (ECF No. 24) (the "MTD"). This Motion will be heard in the Courtroom of the Honorable Fernando Aenlle-Rocha, at the First Street Courthouse, 350 West 1st Street, Courtroom 6B, 6th Floor, Los Angeles, California 90012.

This Motion is brought on the grounds that good cause – including interests of judicial economy and public policy – exist for the Court to exercise its discretion to stay discovery pending the resolution of the MTD. Specifically, the MTD is potentially dispositive of the entire lawsuit, does not require discovery to be decided, and is meritorious. Additionally, a stay is necessary to protect Activision's First Amendment rights and to avoid the burden, expense and disruption of litigation while the MTD is pending. By contrast, there is little, if any, prejudice to Defendant and Counterclaimant Warzone, Inc. if a brief stay is ordered.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the attached Declaration of Marc E. Mayer, and all exhibits thereto, the pleadings on file herein, and any other matters presented to the Court at the time of the hearing.

This Motion is made following a conference of counsel pursuant to C.D. Local Rule 7-3, which took place on December 13, 2021.

DATED: December 22, 2021        MARC E. MAYER
                                KARIN G. PAGNANELLI
                                MITCHELL SILBERBERG & KNUPP LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

By: /s/ Marc E. Mayer
   Marc E. Mayer (SBN 190969)
   Attorneys for Activision Publishing, Inc.

Mitchell Silberberg & Knupp LLP

13810619.1

3

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

I.   FACTUAL AND PROCEDURAL HISTORY..............................................2

II.  A DISCOVERY STAY IS APPROPRIATE HERE......................................5

   A.   Activision's Motion Is Both Dispositive and Meritorious. ..................7

   B.   No Discovery Is Necessary to Decide Activision's Motion. ................9

   C.   The Balance of Hardships Weighs Decidedly In Favor Of A
        Discovery Stay. ...................................................................................10

CONCLUSION....................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Brown v. Elec. Arts, Inc.*,
  724 F.3d 1235 (9th Cir. 2013) ................................................................. 9, 10, 12

*Caiz v. Roberts*,
  382 F. Supp. 3d 942 (C.D. Cal. 2019) ......................................................... 8, 9, 10

*Cellwitch, Inc. v. Tile, Inc.*,
  No. 4:19-CV-01315, 2019 WL 5394848 (N.D. Cal. Oct. 22, 2019) .................. 13

*Dickenson v. Ryan Seacrest Enters., Inc.*,
  CV-18-2544-GW, 2019 WL 3035090 (C.D. Cal. 2019) .................................... 10

*Diece-Lisa Indus. v. Disney Enters., Inc.*,
  No. CV20-09147, 2021 WL 3355284 (C.D. Cal. July 7, 2021) ........................... 9

*Doe v. Reddit, Inc.*,
  No. SACV 21-768 JVS, 2021 WL 4348731
  (C.D. Cal. July 12, 2021) .................................................................................. 6

*GYE Wireless, Inc. v. Qualcom, Inc.*,
  192 F.R.D. 284 (S.D. Cal. 2000) ...................................................................... 7

*Jackson v. Netflix, Inc.*,
  506 F. Supp. 3d 1007 (C.D. Cal. 2020) ....................................................... 8, 10

*Little v. City of Seattle*,
  863 F.2d 681 (9th Cir. 1988) ............................................................................ 6

*Lu v. Central Bank of Republic of China (Taiwan)*,
  610 F. App'x 674 (9th Cir. 2015) ..................................................................... 6

*Marsh v. AFSCME Local 3299*,
  No. 2:19-cv-02382-JAM, 2020 WL 1475442
  (E.D. Cal., Mar. 26, 2020) ................................................................................ 7

*Mireskandari v. Daily Mail and Gen. Trust PLC*,
  No. 12-02943 MMM, 2013 WL 12129944
  (C.D. Cal. Jan 14, 2013) ............................................................................. 6, 12

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Newman v. San Joaquin Delta Cmty. Coll. Dist.*,
   2011 WL 1743686 (E.D. Cal. May 6, 2011) ........................................................ 11

*Nguyen v. BMW of N. Am., LLC*,
   2021 WL 2284113 (S.D. Cal. June 4, 2021) ........................................................ 11

*Pac. Surf Designs, Inc. v. Whitewater W. Indus., Ltd.*,
   No. 20CV1464-BEN (BLM), 2021 WL 3080061
   (S.D. Cal. July 21, 2021) ....................................................................................... 7

*Quezambra v. United Domestic Workers of Am. AFSCME Loc. 3930*,
   No. 819CV00927JLSJEM, 2019 WL 8108745
   (C.D. Cal. Nov. 14, 2019) ............................................................................ 6, 7, 9

*Rebellion Devs. Ltd. v. Stardock Entm't, Inc.*,
   No. 12-12805, 2013 WL 1944888 (E.D. Mich. May 9, 2013) .................... 8, 9, 12

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989) ......................................................................... *passim*

*Roxbury Ent. v. Penthouse Media Grp., Inc.*,
   669 F. Supp. 2d 1170 (C.D. Cal. 2009) ................................................................ 8

*Stavrianoudakis v. U.S. Dept. of Fish & Wildlife*,
   No. 1:18-cv-01505-LGO, 2019 WL 9667685
   (E.D. Cal. Dec. 20, 2019) ...................................................................................... 9

*Stewart Surfboards, Inc. v. Disney Book Grp., LLC*,
   CV-10-2982 GAF, 2011 WL 12877019 (C.D. Cal. 2011) ................................. 10

*Torres v. Cate*,
   501 F. App'x 662 (9th Cir. 2012) ......................................................................... 6

*Twentieth Century Fox Television v. Empire Distribution, Inc.*,
   875 F.3d 1192 (9th Cir. 2017) ..................................................................... 4, 7, 8

*VIRAG, S.R.L. v. Sony Comput. Entm't Am. LLC*,
   699 Fed. Appx. 667 (9th Cir. 2017) .................................................................... 10

*Wenger v. Monroe*,
   282 F.3d 1068 (9th Cir. 2002) .............................................................................. 6

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Wilmington Sav. Fund Soc'y FSB v. El*,
  No. 219CV01852KJDDJA, 2019 WL 6310718
  (D. Nev. Nov. 25, 2019) ............................................................................... 11

**RULES & STATUTES**

Fed. R. Civ. P. 12 .................................................................................................. 2, 6
Fed. R. Civ. P. 26 ................................................................................................ 4, 11

Mitchell Silberberg & Knupp LLP

13810619.1

iv

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

On July 29, 2021, Plaintiff and Counterclaim Defendant Activision Publishing, Inc. ("Activision") filed a Motion to Dismiss, or, alternatively, for Judgment on the Pleadings (the "MTD"). The MTD addresses a critical, threshold, and case-dispositive issue: namely, whether the First Amendment protects Activision's use of the word "Warzone" in its video game title ("*Call of Duty: Warzone*"). On December 6, 2021, this Court took the MTD under submission, and the parties are awaiting a ruling. By this Motion, Activision seeks an order temporarily staying discovery in this action until the Court has decided the MTD.

A stay is warranted here not just because it furthers interests of judicial economy and efficiency, though it certainly does. Because the MTD seeks to vindicate Activision's First Amendment right to use a common word in the title of its game, permitting discovery to proceed would expose Activision to the type of intrusive, expensive, and expression-chilling discovery that the Ninth Circuit sought to avoid when it adopted the straightforward, bright-line test set forth in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). Courts have long recognized that the high cost of litigation and discovery can seriously deter the exercise of free speech rights. For this reason, courts consistently have held that defenses premised on First Amendment or free speech rights should be decided at the earliest possible stage of the litigation.

The chilling effect of this lawsuit – which Defendant and Counterclaimant Warzone, Inc. ("Counterclaimant") has publicized on its website and in the press – is significant and tangible. Counterclaimant's entire litigation strategy seems to be to incur hundreds of thousands of dollars in litigation expenses before the pleadings are settled, in the hopes of obtaining an unjustified windfall. Thus, even though the MTD is pending and pre-trial deadlines have not yet been set, Counterclaimant has demanded a broad array of internal business and financial

documents, threatened to file motions to compel if documents are not promptly produced, and refused to limit discovery or forebear from taking depositions until the MTD is decided.  This litigation strategy not only harms Activision, but also sends a message to other producers of entertainment content that any use of the term "Warzone" (or any common word, for that matter) will result in costly, burdensome litigation.  That is exactly what *Rogers* (and Rule 12) was intended to avoid.

The foregoing aside, all of the factors considered by courts in this district weigh decidedly in favor of a stay.  There is no dispute that the MTD is potentially dispositive of the entire action, since it seeks dismissal of the counterclaims and judgment on the pleadings as to Activision's claim for declaratory relief.  The issues presented in the MTD do not require discovery, since the MTD raises a single legal issue that can be decided purely on the pleadings.  Additionally, the MTD is supported by extensive case law in this Circuit, and thus plainly is meritorious.  Finally, as noted, the harm to Activision from discovery is tangible and significant, while there will be no prejudice to Counterclaimant if discovery is stayed for a brief time while the Court considers the MTD.  Accordingly, the Court should grant this Motion, temporarily stay the action, and vacate the pre-trial deadlines until the MTD is decided.

I. **FACTUAL AND PROCEDURAL HISTORY**

**The Parties and Their Games.**  Activision is a video game publisher engaged in the business of producing, financing, marketing, and distributing a portfolio of popular video games and interactive entertainment products.  Compl. ¶ 11; Answer ¶ 11.  Among Activision's most popular video games are the *Call of Duty* series of games.  *Id.*  Activision's *Call of Duty* games are military-themed "first-person shooter" games, in which the player assumes the role of a military soldier or special forces operative and engages in intense, ground-based infantry

combat against computer-controlled or human-controlled players across a series of computer-generated, virtual battlegrounds. Compl. ¶ 12; Answer ¶ 12.

On March 10, 2020, Activision released an online multiplayer *Call of Duty* game titled *Call of Duty: Warzone* ("*CODWZ*"). Compl. ¶ 15; Answer ¶ 15. *CODWZ*, like other *Call of Duty* titles, is a competitive, first-person military shooter game in which the player assumes the role of a military soldier and competes against other human players. Compl. ¶ 16, Answer ¶ 16. One of the defining features of *CODWZ* is that battles take place on an enormous computer-generated battlefield (or "warzone") that accommodates up to 150 players (and sometimes 200 players) at one time.

Counterclaimant is the developer of a game titled *Warzone*. Compl. ¶ 19; Answer ¶ 19. *Warzone* is a strategy game that is playable on personal computers via a web browser (*e.g.*, Google Chrome, Windows Explorer) and on certain mobile devices. Compl. ¶ 20; Answer ¶ 20. Unlike *CODWZ*, Counterclaimant's *Warzone* is not a first-person shooter video game and does not feature animated characters, weapons, or battlefields. Answer ¶ 22. Counterclaimant's game is a turn-based virtual board game in which players shift numbers (representing "armies") across a map of the world to take control of countries or territories. *Id.*

**This Lawsuit.** On April 8, 2021, after Counterclaimant threatened to seek injunctive relief in connection with Activision's *CODWZ* and demanded millions of dollars in damages, Activision filed this lawsuit for declaratory relief, seeking a declaration that its use of the name *Call of Duty: Warzone* or *Warzone* did not infringe Counterclaimant's trademark rights. ECF No. 1.

On June 8, 2021, Counterclaimant filed an Answer and Counterclaims ("Counterclaims" or "Countercl."). ECF No. 14. All of the Counterclaims arise from allegations that Activision's use of the word "warzone" "has already and will continue to result in the relevant consuming public being confused, mistaken, or deceived as to the affiliation, connection or sponsorship of Activision's goods and

services" and that consumers purportedly will believe that Activision's goods and services marketed under Activision's WARZONE and CALL OF DUTY: WARZONE marks "are produced by, emanate from, or are in some way associated with [Counterclaimant]." Countercl. ¶ 39.

**Procedural History and Discovery Status.** On July 29, 2021, Activision filed its MTD. ECF No. 24. The MTD is premised on long-settled authority in the Ninth Circuit (and elsewhere) that titles of expressive works, including video games, are entitled to First Amendment protection. Thus, in order to sustain trademark claims arising from such titles, the trademark claimant (*i.e.*, Counterclaimant) has the burden of first proving that "[1] the title has ***no artistic relevance*** to the underlying work whatsoever, or, [2] if it has some artistic relevance, . . . the title ***explicitly misleads*** as to the source or the content of the work." *Twentieth Century Fox Television v. Empire Distribution, Inc.*, 875 F.3d 1192, 1196 (9th Cir. 2017) (internal quotations omitted) (*citing Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989)). The MTD has been fully briefed as of September 3, 2021. ECF No. 32. Activision initially scheduled the hearing on the MTD for October 1, 2021. However, on September 27, 2021, the Court, *sua sponte*, continued the hearing to December 10, 2021. ECF No. 33.

On October 28, 2021, Counterclaimant served its first set of written discovery, comprised of 16 interrogatories and 25 document requests (the "Discovery Requests"). *See* Declaration of Marc E. Mayer ("Mayer Decl.") ¶ 7, Exhs. 2, 3.[1] The Discovery Requests sought a broad array of documents and

---

[1] On October 6, 2021, Counterclaimant's counsel demanded that Activision conduct an early meeting of counsel under Rule 26, notwithstanding Activision's request that the parties defer the Rule 26 conference until after the (then extant) December 10th hearing, since there were no pending deadlines and the disposition of the MTD could have a determinative impact on the case. *Id.* ¶ 6, Exh. 1. In a show of good faith, Activision agreed to participate in the conference, without waiving its position that discovery was premature, and reserving its right to seek a discovery stay or other relief from the Court. *Id.*

information, including highly proprietary financial and other business information, such as:

- Marketing and advertising expenses;
- Sales, revenue, and purchasing information, including information concerning the sale and revenue from the sale of "virtual goods" within the game;
- Information regarding downloads and web traffic related to *CODWZ*;
- Activision's litigation history;
- Documents and emails relating to the selection and clearance of the *CODWZ* title.

*Id.* ¶ 3, Exhs. 2, 3 (for example, Requests for Production of Documents numbered 8, 12, 13, 17-20; Interrogatories numbered 9, 10, 11). Activision provided written responses to the Discovery Requests on November 22, 2021, and agreed to make an initial production of documents. *Id.* ¶ 8. Nevertheless, on December 3, 2021, Counterclaimant sent a meet-and-confer letter to Activision, demanding that it supplement its initial disclosures and promptly produce documents. *Id.*

On December 13, 2021, at Counterclaimant's request, the parties conducted a discovery conference. *Id.* ¶ 10. At the discovery conference, Activision proposed that the parties limit discovery to the production of certain documents until a ruling on the MTD, in order to minimize the burden to Activision while the MTD was pending. *Id.* Counterclaimant refused, and communicated to Activision that it intended to conduct full discovery without restriction, including by noticing depositions and third-party subpoenas. *Id.* ¶ 10. Accordingly, Activision advised Counterclaimant that it intended to file this Motion to Stay. *Id.* ¶ 11.

## II.   A DISCOVERY STAY IS APPROPRIATE HERE

"The court has the discretion to stay proceedings and discovery as part of its 'inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for

litigants.'" *Mireskandari v. Daily Mail and Gen. Trust PLC*, No. 12-02943 MMM, 2013 WL 12129944, *1 (C.D. Cal. Jan 14, 2013) (quoting *Moser v. Encore Capital Grp., Inc.*, No. 04cv2085-LAB, 2007 WL 1114113, *3 (S.D. Cal. Mar. 27, 2007)). The Ninth Circuit repeatedly has held that a stay of discovery is particularly appropriate where, as here, a dispositive motion is pending. *See*, *e.g.*, *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) (stating that staying discovery while a motion to dismiss is pending "furthers the goal[] of efficiency for the court and litigants"); *Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002); *Torres v. Cate*, 501 F. App'x 662, 663 (9th Cir. 2012) ("We have held, however, that district court may . . . stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief.") (internal quotations omitted); *Lu v. Central Bank of Republic of China (Taiwan)*, 610 F. App'x 674, 675 (9th Cir. 2015) ("further discovery was not relevant to [a] motion" that "mounted a facial attack" on certain allegations). As Judge Selna recently noted, "[t]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to enable defendants to challenge the sufficiency of a complaint **without subjecting themselves to discovery**." *Doe v. Reddit, Inc.,* No. SACV 21-768 JVS, 2021 WL 4348731, *3 (C.D. Cal. July 12, 2021) (emphasis added) (quoting *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 601-02 (D. Nev. 2011)).

      California district courts employ "a two-part test providing that it is appropriate to stay discovery if (1) 'the pending motion [is] potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is aimed,' and (2) 'the pending, potentially dispositive motion can be decided absent additional discovery.'" *Quezambra v. United Domestic Workers of Am. AFSCME Loc. 3930*, No. 819CV00927JLSJEM, 2019 WL 8108745, at *2 (C.D. Cal. Nov. 14, 2019) (citing *Mlejnecky v. Olympus Imaging Am., Inc.*, No. 2:10-CV-02630, 2011 WL 489743, at *6 (E.D. Cal. Feb. 7, 2011) (collecting California district court cases applying this two-part test)). In addition, courts often consider

whether, upon a preliminary analysis, there is a possibility that the pending motion will be granted. *See GYE Wireless, Inc. v. Qualcom, Inc.,* 192 F.R.D. 284, 287 (S.D. Cal. 2000). Finally, courts also consider whether harm or prejudice will result from the discovery. *Quezambra*, 2019 WL 8108745, at *1.

### A. Activision's Motion Is Both Dispositive and Meritorious.

Counterclaimant does not, and cannot, dispute that the MTD is case-dispositive. The MTD seeks dismissal of ***all*** of the Counterclaims, as well as judgment on the pleadings on Activision's single claim for declaratory relief. Thus, if the Motion is granted, that will be the end of the case. Moreover, since Activision's declaratory relief claim is the mirror image of Defendants' counterclaims, a decision in Activision's favor on either the MTD *or* the Motion for Judgment on the Pleadings will resolve the critical legal issue.

The MTD also is meritorious. In deciding whether to issue a discovery stay, this Court may "take a 'preliminary peek' at the merits of the pending, potentially dispositive motion to determine whether a stay is granted." *Pac. Surf Designs, Inc. v. Whitewater W. Indus., Ltd.*, No. 20CV1464-BEN(BLM), 2021 WL 3080061, at *2 (S.D. Cal. July 21, 2021) (citing *Cellwitch, Inc. v. Tile, Inc.*, No. 4:19-CV-01315, 2019 WL 5394848, at *1 (N.D. Cal. Oct. 22, 2019)). Activision's MTD plainly is meritorious.

As set forth in the MTD, Activision's Motion is fully and clearly supported by the case law, including the law in the Ninth Circuit. *See Marsh v. AFSCME Local 3299,* No. 2:19-cv-02382-JAM, 2020 WL 1475442, *2 (E.D. Cal., Mar. 26, 2020) (granting motion to stay where "[t]he arguments Defendants raise in their motions mirror those that have already been heard and accepted by several other district courts in cases that are extremely similar to this one"). In fact, the Ninth Circuit addressed an analogous situation in *Twentieth Century Fox Television v. Empire Distribution, Inc.*, 875 F.3d 1192, 1196 (9th Cir. 2017). In that case, the Ninth Circuit dismissed trademark claims arising from the use by Fox of the title

"Empire" for its television series about a fictional record label, notwithstanding that "Empire" was also the name of a record label that pre-dated Fox's television show. Citing *Rogers*, the Court held that Fox's use of "the common English word 'Empire'" for a show about a music and entertainment conglomerate that takes place in New York, the "Empire State," was artistically relevant to the subject matter of the Fox show, and the "Empire" title did not "explicitly mislead" consumers as to its affiliation with the real-life record label. 875 F.3d at 1199.

Other courts in this District came to the exact same conclusion, in even more closely analogous contexts. *See, e.g. Jackson v. Netflix, Inc.*, 506 F. Supp. 3d 1007, 1017-18 (C.D. Cal. 2020) (dismissing trademark claims arising from the use of the title *Tiger King* for a documentary about tiger keeper Joe Exotic, notwithstanding the plaintiff's use of that term as its own title); *Caiz v. Roberts*, 382 F. Supp. 3d 942, 952 (C.D. Cal. 2019) (dismissing claims from the use of the word *Mastermind* as the title of a record album, notwithstanding that the plaintiff was also using that name in connection with musical performances); *Roxbury Ent. v. Penthouse Media Grp., Inc.*, 669 F. Supp. 2d 1170, 1176 (C.D. Cal. 2009) (dismissing claims that the defendant infringed the plaintiff's trademark in its "Route 66" television series by releasing a sexually explicit film with the exact same title); *Rebellion Devs. Ltd. v. Stardock Entm't, Inc.*, No. 12-12805, 2013 WL 1944888 at *6 (E.D. Mich. May 9, 2013) (game titled *Rebellion* did not infringe the plaintiff's trademark in the word "Rebellion").

By contrast, each and every one of Counterclaimant's arguments in opposition to the MTD – that (1) Activision's use of the term "Warzone" did not refer to Counterclaimant, (2) *Rogers* and *Empire* do not apply to claims of "reverse trademark confusion," and (3) the First Amendment does not apply to the use of a title in commerce – have been repeatedly and squarely rejected by every court that has considered them. *See Empire,* 875 F.3d at 1198 ("This referential requirement does not appear in the text of the *Rogers* test, and such a requirement would be

inconsistent with the purpose of the first prong of *Rogers*."); *Diece-Lisa Indus. v. Disney Enters., Inc.*, No. CV20-09147, 2021 WL 3355284, *3 (C.D. Cal. July 7, 2021) ("*Rogers* applies without modification in reverse confusion cases"); *Caiz*, 382 F. Supp. 3d at 949 ("[T]he court finds that the *Rogers* test is not barred in this case simply because it involves reverse confusion."); *Rebellion*, 2013 WL 1944888 at *2 ("The *Rogers* court itself recognized that the titles of literary and artistic works could acquire secondary meaning and become eligible for protection as trademarks. *Rogers* also did not include in its test any inquiry as to whether the title can or does function as a source identifier.").

While the Court need not adjudicate Activision's MTD in order to resolve this Motion to Stay, the MTD plainly is "sufficiently meritorious for a finding that the motion[] [is] potentially dispositive of the case." *Stavrianoudakis v. U.S. Dept. of Fish & Wildlife,* No. 1:18-cv-01505-LGO, 2019 WL 9667685, *3 (E.D. Cal. Dec. 20, 2019).

### B. No Discovery Is Necessary to Decide Activision's Motion.

California district courts also consider whether "the pending, potentially dispositive motion can be decided absent additional discovery." *Quezambra*, 2019 WL 8108745, at *2 (internal quotations omitted). No discovery is necessary to resolve the MTD. Rather, the MTD can be decided based entirely on the allegations of the Counterclaims and on allegations in Activision's Complaint that have been admitted in the Answer. Specifically, there is no factual dispute as the title of the parties' respective works; the relevance of the title *Call of Duty: Warzone* to the game's content; and the absence of any content that "explicitly misleads" as to the Counterclaimant's affiliation or sponsorship of Activision's game. *See* Counterclaimant's Opp. to the MTD, at 22 (admitting that "the word 'warzone' may be suggestive of the content of Activision's game"); *Brown*, 724 F.3d at 1248 ("Brown asserts that there is no artistic relevance and that EA attempted to mislead consumers . . . but none of the facts asserted in support of

Mitchell Silberberg & Knupp LLP

13810619.1

9

these legal conclusions actually justify the conclusions"); *Jackson*, 506 F. Supp. 3d at 1016 ("[C]onstruing the FAC in Plaintiffs' favor it offers no allegations rising to the level of explicit deception on Netflix's behalf.")  In the meantime, Counterclaimant never has explained what discovery it might possibly need in connection with Activision's First Amendment defense.  Obviously, Activision's internal financial information, web traffic data, internal correspondence and litigation history have absolutely no bearing on the issues raised in the MTD.

As noted in the MTD, courts routinely decide motions such as the MTD at the pleading stage, without the need for discovery.  *VIRAG, S.R.L. v. Sony Comput. Entm't Am. LLC*, 699 Fed. Appx. 667, 668 (9th Cir. 2017) (use of plaintiff's mark in videogame did not violate Lanham Act; affirming district court's ruling on motion to dismiss); *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1248 (9th Cir. 2013) (dismissing Lanham Act claims based on use of plaintiff's likeness in video game); *Jackson v. Netflix, Inc.*, 506 F. Supp. 3d 1007, 1016-17 (C.D. Cal. 2020) (dismissing trademark claims on *Rogers* grounds on a motion to dismiss); *Dickenson v. Ryan Seacrest Enters., Inc.*, CV-18-2544-GW, 2019 WL 3035090, at *9-10 (C.D. Cal. 2019) (same); *Stewart Surfboards, Inc. v. Disney Book Grp., LLC*, CV-10-2982 GAF, 2011 WL 12877019, at *7-8 (C.D. Cal. 2011) (same); *see also Caiz v. Roberts*, 382 F. Supp. 3d 942, 948 (C.D. Cal. 2019) ("[T]he *Rogers* test can be applied as early as the motion to dismiss stage because the test analyzes facts facially apparent in a defendant's work.").  Likewise here, the Court may decide the MTD on the pleadings, and there is no reason to subject Activision to broad discovery on irrelevant matters.

## C. The Balance of Hardships Weighs Decidedly In Favor Of A Discovery Stay.

The burden, annoyance, and prejudice to Activision (and the Court) from discovery at this stage is obvious.  Counterclaimant seeks to engage in extensive electronic discovery, demanding that Activision collect, review, and produce

potentially thousands of emails relating to the development and marketing of *CODWZ*, as well as proprietary financial and sales data. Mayer Decl. ¶ 7. Financial and sales data likely is not retained in a manner easily susceptible to production, and must be analyzed, reviewed, and placed in an understandable format by Activision's accounting department. Counterclaimant also apparently intends to take depositions of multiple Activision witnesses (and third-party witnesses), each of which will be time-consuming, disruptive, and costly. *Id.* ¶ 10. Moreover, Counterclaimant has made clear that it intends to litigate this case aggressively, including by filing discovery motions. (In fact, Counterclaimant already has threatened to file motions to compel additional Rule 26 disclosures.) *Id.*

       A ruling in Activision's favor on the MTD would obviate the need for all of this burdensome discovery and related motion practice. Thus, a discovery stay could potentially save Activision tens or hundreds of thousands of dollars in legal fees. *See Nguyen v. BMW of N. Am., LLC*, 2021 WL 2284113, *4 (S.D. Cal. June 4, 2021) (issuing a stay of discovery and ruling that "requiring Defendant to engage in discovery . . . would be prejudicial to Defendant"); *Newman v. San Joaquin Delta Cmty. Coll. Dist.*, 2011 WL 1743686, at *4 (E.D. Cal. May 6, 2011) (granting protective order staying discovery where it "is apparent . . . that plaintiffs simply wish to rummage around in [defendant's records] in furtherance of an unfocused fishing expedition"). A discovery stay also would avoid potentially unnecessary time and effort on the Court's part in resolving discovery disputes and other pre-trial motions. *Wilmington Sav. Fund Soc'y FSB v. El*, No. 219CV01852KJDDJA, 2019 WL 6310718, at *2 (D. Nev. Nov. 25, 2019) (staying discovery while motion to remand was pending and stating that "a temporary stay of discovery will further the goal of judicial economy").

       While the foregoing alone is sufficient to warrant a stay, the requested discovery stay is particularly appropriate (and, indeed, necessary) here in light of

the strong First Amendment interests at play. *Rebellion*, 2013 WL 1944888, at *4 ("Courts are cognizant of vindicating First Amendment protections through early dispositive motions[.]")  The aim of the *Rogers* court was to create a simple, easily applied framework for dismissal of claims involving the use of trademarks in expressive works.  That is why the court used the terms "***no*** artistic relevance" and "***explicitly*** misleading," which are phrases that have little ambiguity. *Rogers*, 875 F.2d at 1000 ("This construction of the Lanham Act accommodates consumer and artistic interests.  It insulates from restriction titles with at least minimal artistic relevance that are ambiguous or only implicitly misleading but leaves vulnerable to claims of deception titles that are explicitly misleading as to source or content, or that have no artistic relevance at all."); *Brown*, 724 F.3d at 1248 (explaining that the first prong of *Rogers* is a "black-and-white rule" that "has the benefit of limiting our need to engage in artistic analysis in this context").

Requiring Activision to respond to discovery and litigate this case prior to a decision on the MTD would turn *Rogers* on its head.  It would result in the very chilling effect that *Rogers* sought to prevent.  It also would send a message to other game developers that the exercise of their First Amendment rights could result in protracted litigation and burdensome discovery.  This fact further mandates a stay, because "a chilling effect on free speech can constitute irreparable injury." *Mireskandari*, 2013 WL 12129944, at *3 (granting a stay of discovery where the defendant "may suffer First Amendment-related harm if a stay is not granted").

In contrast to the harm suffered by Activision, Counterclaimant will not suffer any harm or prejudice as a result of a brief stay pending the Court's decision on the MTD.  *CODWZ* was released to the public in March 2020, and thus whatever harm Counterclaimant purports to have suffered has been occurring for well over a year.  In fact, Counterclaimant did not even threaten to file a lawsuit until many months after the game was released.  Moreover, since pre-trial deadlines have not yet been set, there is no risk that Counterclaimant will not have

Case 2:21-cv-03073-FLA-JC   Document 40   Filed 12/22/21   Page 20 of 20   Page ID #:261

sufficient time to complete discovery or other pre-trial activities. Activision does not seek to stonewall or preclude discovery, but only to temporarily delay discovery while the MTD remains pending. *See Cellwitch*, 2019 WL 5394848, at *2 ("Cellwitch does not demonstrate that it will suffer harm if the Court stays discovery briefly until after the Court rules on Tile's motion to dismiss.")

## CONCLUSION

For the reasons set forth herein, Activision requests that the Court enter an order staying discovery pending decision on the MTD.

DATED:  December 22, 2021

MARC E. MAYER
KARIN G. PAGNANELLI
MITCHELL SILBERBERG & KNUPP LLP

By: /s/ Marc E. Mayer
   Marc E. Mayer (SBN 190969)
   Attorneys for Activision Publishing, Inc.

Mitchell Silberberg & Knupp LLP

13810619.1

13