Alyssa K. Schabloski (SBN 258876)
aks@gladiuslaw.com
GLADIUS LAW, APC
2708 Wilshire Blvd., No. 426
Santa Monica, CA 90403
Tel: (310) 734-0720

Brett E. Lewis (*pro hac vice*)
brett@iLawco.com
Roberto Ledesma (*pro hac vice*)
roberto@ilawco.com
Michael D. Cilento (*pro hac vice*)
michael@iLawco.com
LEWIS & LIN, LLC
77 Sands Steet, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326

*Attorneys for Warzone.Com, LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTIVISION PUBLISHING, INC.<br><br>*Plaintiff / Counterclaim Defendant*<br><br>v.<br><br>WARZONE.COM, LLC<br><br>*Defendant / Counterclaimant* | CASE NO. 2:21-cv-3073-FLA (JCx)<br><br>**MEMORANDUM AND POINTS AND AUTHORITIES OF WARZONE.COM, LLC IN OPPOSITION TO MOTION TO STAY DISCOVERY**<br><br>Date:    February 18, 2022<br>Time:    1:30 pm<br>Location: Courtroom 6B<br>Judge:    Fernando L. Aenlle-Rocha |

MEMORANDUM AND POINTS AND AUTHORITIES OF WARZONE.COM, LLC IN OPPOSITION TO MOTION TO STAY DISCOVERY

# **Table of Contents**

PRELIMINARY STATEMENT ..........................................................................4

RELEVANT FACTS AND PROCEDURAL HISTORY ...................................5

ARGUMENT ..................................................................................................7

   I.    Activision's Motion To Stay Should Be Denied ...................................7

      A.   The Underlying Motion is Not Case Dispositive..................................9

      B.   Discovery is Inevitable and is Required in this Case ........................11

      C.   The Underlying Motion is Not Meritorious.......................................14

      D.   Balancing of Hardships Favors Denial of Discovery Stay ................20

CONCLUSION..................................................................................................21

MEMORANDUM AND POINTS AND AUTHORITIES OF WARZONE.COM, LLC IN OPPOSITION TO MOTION TO STAY DISCOVERY

## CASES

*Betty's Found. for Elimination of Alzheimer's Disease v. Trinity Christian Ctr. of Santa Ana, Inc.,* No. SACV2002146CJCADSX, 2021 WL 3046889 (C.D. Cal. Apr. 7, 2021) ............................................................................17

*Bhasin v. C & H Clubs, Inc.,* 2017 WL 5973280 (C.D. Cal. July 28, 2017)..............................................13

*Butler v. Resurgence Financial, LLC,* 521 F. Supp. 2d 1093 (C.D. Cal. Nov. 6, 2007) ...................................... 11, 15

*Center for Medical Progress et al. v. Becerra et al.,* No. 20-CV-00891-JLS, 2020 WL 7065355 (C.D. Cal. Oct. 22, 2020)............8

*Centerline Hous. P'ship I, L.P.-Series 2, et al v. Palm Communities, et al.,* 2021 WL 2493251 (C.D. Cal. May 26, 2021) .................................... 8, 12, 20

*Diece-Lisa Indus. v. Disney Enters., Inc.,* No. 20-CV-09147, 2021 WL 3355284 (C.D. Cal. July 7, 2021) ...... 16, 17, 18

*Hachette Distribution, Inc. v. Hudson County News Company,* 136 F.R.D. 356 (E.D.N.Y. 1991).....................................................................12

*Mlejnecky v. Olympus Imaging Am., Inc.,* No. 2:10–CV–02630 JAM KJN, 2011 WL 489743 (E.D. Cal. Feb. 7, 2011) .8

*Rogers v. Grimaldi,* 875 F.2d 994 (2nd Cir. 1989) ........................................................... 17, 18, 19

*Skellerup Industries Ltd. v. City of Los Angeles,* 163 F.R.D. 598 (C.D. Cal. 1995)............................................................. 8, 12

*Sonneveldt et. al. v. Mazda Motor of America, Inc., et. al.,* No. 19-CV-01298-JLS, 2021 WL 4814990 (C.D. Cal. 2021) .....................12

*Starbuzz Tobacco, Inc., v. Gold Star Tobacco Inc, et al.,* No. 19-CV-00408-JVS, 2019 WL 12446075 (C.D. Cal. July 3, 2019) .........12

*Zobmondo Entertainment, LLC v. Falls Media, LLC,* 602 F.3d 1108 (9th Cir. 2010) .......................................................................11

Defendant and Counterclaimant Warzone.com, LLC ("Warzone") hereby submits this Memorandum and Points and Authorities in Opposition to the Motion to Stay Discovery, ECF No. 40 ("Motion to Stay"), of Plaintiff and Counterclaim Defendant Activision Publishing, Inc. ("Activision") pending the determination of Activision's Motion to Dismiss and/or Motion for Judgment on the Pleadings (the "Underlying Motion"). ECF No. 24.

## PRELIMINARY STATEMENT

In its Motion to Stay, Activision simply glosses over the two main elements necessary to establish that a stay of discovery is appropriate – whether the Underlying Motion is dispositive and whether any further discovery is needed to resolve any issues in the case. Instead, Activision focuses solely on its hypocritical *Rogers* defense that the trademark WARZONE is artistically relevant to its underlying work. While Activision's ploy to gain exclusive rights to WARZONE may be thinly veiled by its First Amendment argument, Warzone *must* in this action be allowed to support its own claim to the WARZONE trademark, and to oppose Activision's explicit declaratory relief requests in its Complaint that the Court should allow Activision's registration of WARZONE while at the same time denying Warzone's registration of WARZONE for the identical goods and services.

This inherently conflicting and illogical position highlights the internal inconsistencies of Activision's entire case: that despite pleading its sole goal is to prevent Warzone from unfairly limiting competition by reserving an important English word for its exclusive use, Activision's Complaint asks this Court to allow that exact exclusive use, but in its favor.

Ultimately, and in any event, the Motion to Stay must be denied as the Underlying Motion can in no way be deemed case dispositive, since it is impossible for Activision to prove, as a matter of law, that it is entitled to the registration of the WARZONE trademark while Warzone is not. Furthermore, since factual discovery will be needed in this action to determine registrability of the WARZONE trademark, and who, if either party, is entitled to exclusive use of the trademark in connection with downloadable and online video game software, a stay of discovery would simply delay the inevitable discovery that must be conducted in this case. The Motion to Stay should therefore be denied.

## RELEVANT FACTS AND PROCEDURAL HISTORY

Given the several pending motions and varying factual and procedural backgrounds before the Court, the following background is limited to what is absolutely necessary to understand in the context of the Motion to Stay.

MEMORANDUM AND POINTS AND AUTHORITIES OF WARZONE.COM, LLC IN
OPPOSITION TO MOTION TO STAY DISCOVERY

Relevant Facts. Warzone launched WARZONE™, an online video game where players use strategy to compete with other users to conquer the world, in November 2017. ECF No. 14 ¶ 3.

Activision launched "Call of Duty: Warzone," a latest release in its first-person military shooter series, "Call of Duty." in March 2020, *Id*. ¶ 15.

On June 25, 2020, Activision filed USPTO trademark applications to register the marks, "WARZONE," and "CALL OF DUTY WARZONE," for use in connection the aforementioned video game. *Id*. ¶ 12, 13. Warzone opposed these applications when they were published for opposition. *Id.* ¶ 14. The USPTO found the parties' respective trademarks confusingly similar and has suspended disposition on the opposition proceedings until the resolution of the instant action. *Id.*

Relevant Procedural History. On April 8, 2021, in response to Warzone's opposition of its USPTO applications, Activision filed the Complaint in this Action against Warzone. ECF No. 1 ("Complaint"). The Complaint, among other requests, seeks the following declaratory relief:

> 4.    Declaring that Activision's pending applications for registration of the marks WARZONE and CALL OF DUTY WARZONE may proceed to registration;
>
> 5.    Declaring that Defendant's pending applications for registration of the mark WARZONE should not proceed to registration.

*Id*. pg. 13 ("Wherefore Clause 4" and "Wherefore Clause 5").

On June 8, 2021, Warzone filed an Answer and Counterclaims to the Complaint, with several counterclaims for trademark infringement and unfair competition under the Lanham Act and California law. ECF No. 14.

On July 29, 2021, Activision filed the Underlying Motion. ECF No. 24. The Underlying Motion asks for relief in the form of an order as follows:

1. The counterclaims are dismissed without leave to amend.

2. Judgment hereby is entered in favor of Activision and against Counterclaimant on Activision's claim for Declaratory Relief.

ECF No. 24-1, Proposed Order.

On August 19, 2021Warzone filed a timely response to the Underlying Motion. ECF No. 29.

On December 6, 2021, this Court vacated the scheduled argument and took the motions under submission. ECF No. 37.

On December 22, 2021, Activision filed the Motion to Stay. ECF No. 40.

And this Opposition from Warzone now follows.

## ARGUMENT

### I.   Activision's Motion To Stay Should Be Denied

A party seeking a stay of discovery carries a heavy burden of making a strong showing why discovery should be denied. *Skellerup Industries Ltd. v. City*

MEMORANDUM AND POINTS AND AUTHORITIES OF WARZONE.COM, LLC IN OPPOSITION TO MOTION TO STAY DISCOVERY

*of Los Angeles*, 163 F.R.D. 598, 600 (C.D. Cal. 1995). Indeed, the Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery, and "'district courts look unfavorably upon such blanket stays of discovery.'" *Centerline Hous. P'ship I, L.P.-Series 2, et al v. Palm Communities, et al.*, 2021 WL 2493251, at \*2 (C.D. Cal. May 26, 2021) (quoting *Mlejnecky v. Olympus Imaging Am., Inc.*, No. 2:10–CV–02630 JAM KJN, 2011 WL 489743, at \*6 (E.D. Cal. Feb. 7, 2011).

To warrant an exercise of the Court's discretion to grant a motion to stay, the movant must convincingly show that: "(1) the pending motion is potentially dispositive of the *entire* case, and (2) the pending motion can be decided absent additional discovery." *See Center for Medical Progress et al. v. Becerra et al.*, No. 20-CV-00891-JLS, 2020 WL 7065355, at \*2 (C.D. Cal. Oct. 22, 2020) (emphasis added). In addition may take a "sneak peak" at the merits of the allegedly dispositive motion to see if, on its face, the motion immediately appears likely to be granted. *Centerline Hous. P'ship I, L.P.-Series 2, et al* 2021 WL 2493251 at \*3-4.

Here, Activision fails nearly entirely to address the two main elements of required for a stay, relying solely on the "sneak peak" factor of the merits of its Underlying Motion. This is understandable, considering that Activision cannot

MEMORANDUM AND POINTS AND AUTHORITIES OF WARZONE.COM, LLC IN OPPOSITION TO MOTION TO STAY DISCOVERY

in good faith argue that its Underlying Motion is case dispositive, given the inconsistent relief Activision requests in its Complaint, namely that Activision should be allowed to proceed to registration of WARZONE but Warzone should not. Similarly, in order for Activision to be granted the relief it requests in its Complaint, there will need to be discovery at some point, in order for Warzone to prove its entitlement to the WARZONE mark – which Activision asks this Court to deny. Finally, a balancing of the hardships, and a look at the current and future timelines of discovery in this case all militate in favor of the Court denying the Motion to Stay and allowing the parties to complete the unavoidable discovery that will be necessary for a full determination of the disputes in this action.

### A.   The Underlying Motion is Not Case Dispositive

Activision seems to assume that its Underlying Motion is inherently case dispositive, based simply on the fact that it seeks "judgment on the pleadings." And while Activision states that "counterclaimant does not, and cannot, dispute that the MTD is case-dispositive," Motion to Stay at 7, in reality, it is Activision that cannot, and does not, offer any explanation for how it could possibly consider the Underlying Motion as case-dispositive.

MEMORANDUM AND POINTS AND AUTHORITIES OF WARZONE.COM, LLC IN OPPOSITION TO MOTION TO STAY DISCOVERY

Warzone, on the other hand, can and does dispute that the Underlying Motion is case-dispositive, and does so by referencing basic facts and using basic logic. Simply put, the Court cannot fully grant all of the relief in Activision's Complaint based solely on Activision's Underlying Motion. Specifically, the Court cannot order the registration of Activision's WARZONE and CALL OF DUTY WARZONE trademark applications (Wherefore Clause No. 4), while at the same granting Activision's next request for an order denying the registration of Warzone's WARZONE trademark application under the identical goods and services. Wherefore Clause No. 5.

Such relief cannot be granted through Activision's Underlying Motion, since both requests require facts and proof, and require the other party to be able to rebut those facts and proof with its own. In other words, since Activision and Warzone seek exclusive trademark rights in WARZONE in connection with video game services, this dispute will, one way or the other, require the parties to prove their cases, and is not ripe to be decided through the Underling Motion or any possible motion for judgment on the pleadings that would deprive the parties from proving their positions. *See Butler v. Resurgence Financial, LLC,* 521 F. Supp. 2d 1093, 1095 (C.D. Cal. Nov. 6, 2007) (discovery stay pending motion for judgment on the pleadings is only proper

MEMORANDUM AND POINTS AND AUTHORITIES OF WARZONE.COM, LLC IN
OPPOSITION TO MOTION TO STAY DISCOVERY

where "no question remains that the moving party is entitled to a judgment as a matter of law"); *see, also, Zobmondo Entertainment, LLC v. Falls Media, LLC,* 602 F.3d 1108, 1113 (9th Cir. 2010) ("the issue of trademark validity is considered 'an intensely factual issue'").

In sum, the inconsistent relief that Activision seek will necessarily require factual discovery into which party, if either, is entitled to exclusive use of the WARZONE trademark in connection with downloadable and non-downloadable video games and related services. That such factual discovery is necessary and inevitable to resolution of the relief sought in the Complaint negates Activision's paltry assertion that, "if the [Underlying] Motion is granted, that will be the end of the case." Motion to Stay at 7. Without any legal support, without any logical explanation for its conflicting requests, and without much more than a pronouncement that the Underlying Motion is dispositive, Activision asserts they are entitled to relief, and to a discovery stay, that cannot be awarded at this early stage of the litigation.

## B. <u>Discovery is Inevitable and is Required in this Case</u>

In considering "whether a stay of all discovery pending the outcome of a dispositive motion is warranted," the court must conduct a case-by-case analysis. *Skellerup Indus. Ltd.*, 163 F.R.D. at 601 (quoting *Hachette Distribution, Inc. v.*

*Hudson County News Company,* 136 F.R.D. 356, 358 (E.D.N.Y. 1991)). Even where a potentially dispositive motion is pending, a court may deny a stay when it is unconvinced that the motion, or the case, may require further discovery. *Sonneveldt et. al. v. Mazda Motor of America, Inc., et. al.,* No. 19-CV-01298-JLS, 2021 WL 4814990 at *1 (C.D. Cal. 2021); *see Starbuzz Tobacco, Inc., v. Gold Star Tobacco Inc, et al.,* No. 19-CV-00408-JVS, 2019 WL 12446075 at *9 (C.D. Cal. July 3, 2019) (denying motion to stay discovery where there remained "disputed facts" essential to the issue of trademark ownership.); *see, also, Centerline Hous. P'ship I, L.P.-Series 2, et al* 2021 WL 2493251 (finding that even with dispositive motion pending, additional discovery could be required to fully resolve all the case's issues);

Here, there are key facts still in dispute that must be established – facts that would indicate whether Warzone or Activision has a superior claim to trademark registration. While Activision attempts to shoehorn exclusive use of the WARZONE trademark into its Underlying Motion, such relief would require Activision to establish its alleged superior use. And it is not at all clear how a junior user could be entitled to exclusive rights in an identical trademark to a senior user's mark, or how such a trademark is deemed to be inherently distinctive when Activision applies for it but is rendered unprotectable when

Warzone does. Of course, Activision simply avoids these critical questions, both in its Underlying Motion and in its Motion to Stay.

In any event, and notwithstanding Activision's self-serving claims to the contrary, Warzone "has a right to protect the Trademark until [its] right is deemed invalid" *Bhasin v. C & H Clubs, Inc.,* 2017 WL 5973280 at *2 (C.D. Cal. July 28, 2017). if the court halted discovery and did not allow Warzone to prove its entitlement to the WARZONE mark, Warzone would "suffer prejudice in [its] ability to protect [its] intellectual property." *Id.*

Furthermore, the discovery that Activsion must produce in this Action is similar to what Activision would be required to present at an opposition hearing with the Trademark Trial and Appeal Board. To determine the registrability of an exclusive trademark, required discovery will include, *inter alia*, whether searches of the term WARZONE were performed prior to filing for registration; why and how Activision chose its trademarks; information on Activision's clearance policy and procedures for the WARZONE mark; whether Activision was aware of Warzone's prior use of the mark; whether its current applications are void for violating the oath because it *was* aware of Warzone's third party rights; whether customers have confused Activision's use of WARZONE with Warzone's use; etc. All of this information will be necessary to determine

MEMORANDUM AND POINTS AND AUTHORITIES OF WARZONE.COM, LLC IN OPPOSITION TO MOTION TO STAY DISCOVERY

whether Activision can truly seek the relief sought in the Complaint and Underlying Motion – exclusive use of WARZONE.

And up until this point, Warzone has sought this necessary discovery, but it has been Activision's strategy to "strike first" before damaging facts – of Activision's knowledge of Warzone and Activision's bad faith adoption of the WARZONE mark – comes out. Given that Activision is valued at $70 billion, it's not very convincing that the motive behind all of Activision's costly motion practice is really cost savings – Activision's real strategy is to stop Warzone's claims dead in their tracks before Warzone has the chance to support them with facts gathered through discovery. In seeking to establish that Activision's use of the trademark is confusing and advertising practices are misleading, and on the basic issues of registrability of the mark, Warzone requires a meaningful exchange of discovery.

Activision's Motion to Stay should fail then additionally since there can be no doubt that discovery will be needed to decide this case.

## C. **The Underlying Motion is Not Meritorious**

While Activision inflates the court's ability to take a "sneak peek" at the merits of the Underlying Motion as an excuse to inundate the Court with examples of *Rogers*-based decisions that Activision is convinced that is infallible,

this defense is premature for the relief sought, does not apply to the competing products at issue, and is argued in bad faith in both Activision's Underlying Motion and Motion to Stay. For, it is Activision that is overreaching in its bold attempt to usurp and trample over Warzone's superior and senior trademark rights under the guise of free expression, *while simultaneously* seeking exclusive trademark rights for the very same word.

As the Court is aware, the standard for both a motion to dismiss under FRCP 12(b) and a Motion for Judgment on the Pleadings under FRCP 12(c) are essentially the same. *See Butler,* 521 F. Supp. 2d at 1095. Allegations must be construed in favor of the non-moving party. *Id.* "Conclusory allegations and unwarranted inferences are insufficient." *Id.* At this point in the litigation, however, Activision is hoping that the Court will ignore factual differences in this case, gloss over distinctions articulated by the 9th Circuit that weigh against dismissal, and ignore the fact that the *Rogers* factors have never been applied by the 9th Circuit in a reverse trademark infringement case. *See Diece-Lisa Indus. v. Disney Enters., Inc.,* No. 20-CV-09147, 2021 WL 3355284, *3 (C.D. Cal. July 7, 2021) (where the Court found no precedent "that would allow this Court to deviate from *Rogers,"* but noted argument that the second prong of *Rogers* "is inherently incompatible with reverse confusion cases… where neither mark

holder seeks to siphon off the other's good will"), appeal docketed, No. 21-55816 (9th Cir. Aug. 2, 2021).    Although Warzone's Opposition to Activision's Underlying Motion sets forth Warzone's arguments, counsel will briefly reiterate Warzone's points in the context of this Motion to Stay.

First, the Underlying Motion is premature without discovery to determine whether Activision is entitled to its requested relief, namely, orders that it may proceed  with its trademark registrations and Warzone cannot. In order for the Court to even consider granting such relief, Activision must prove superiority of its claimed trademark rights. Such an inquiry requires factual investigation and a *Rogers* defense is immaterial to that inquiry at this juncture.

Second, the Ninth Circuit has never ruled on how to apply the second *Rogers* prong in the reverse confusion context and has never dismissed a case at the pleading stage in this context. *See Diece-Lisa,* 2021 WL 3355284 at *3 (ruling in favor of the junior user *on summary judgment* because the senior user failed to submit any admissible evidence that the junior's use was explicitly misleading); *see, also, Betty's Found. for Elimination of Alzheimer's Disease v. Trinity Christian Ctr. of Santa Ana, Inc.,* No. SACV2002146CJCADSX, 2021 WL 3046889 (C.D. Cal. Apr. 7, 2021) (where the court ruled that a TV show focusing on the lives of Christian music artists was not explicitly misleading consumers

MEMORANDUM AND POINTS AND AUTHORITIES OF WARZONE.COM, LLC IN
OPPOSITION TO MOTION TO STAY DISCOVERY

away from trademark holder's annual music festival for an Alzheimer's foundation, both aptly named "Remember the Music"), appeal docketed, No. 21-55553 (9th Cir. Mar 28, 2021).

Indeed, the court in *Diece-Lisa* concluded that it was constrained by the lack of a direct ruling by the 9th Circuit on the issue – an understandable but not unavoidable conclusion. 2021 WL 3355284 at *3. There is no good reason to believe that the 9th Circuit would woodenly wield *Rogers* and its progeny like a death ray against trademark holders, regardless of the facts of the case or factual differences in the rationale underlying *Rogers* and a case predicated on a different type of trademark confusion.

In fact, the issue approached in the *Diece-Lisa* Court pinpoints the pinnacle of the issue in this case and those like it. In formulating the *Rogers* defense, the Court sought "balance of public interest in avoiding consumer confusion against public interest in free expression." *Rogers v. Grimaldi,* 875 F.2d 994, 999 (2nd Cir. 1989). The *Rogers* test allows for a product to name their products based on their conduct, "insulat[ing] from restriction titles with at least minimal artistic relevance that are ambiguous or only implicitly misleading." *Id*. The title of the movie "Ginger and Fred," "contains no explicit indication that Rogers endorsed the film" and therefore, protects the film's title alluding to its content. *Id*.

However, this balancing test, as applied to a reverse confusion case, is misguided. "Plaintiffs in reverse confusion cases can rarely establish that defendants explicitly misled consumers regarding the source or the content of the work." *See Diece-Lisa,* 2021 WL 3355284 at *3. If this mode of thinking is affirmed, any senior user in a reverse confusion case will never overcome the second prong of the *Rogers* defense. As long as the junior user could argue artistic use, the second prong becomes moot.

In this case, Activision has no interest in misleading consumers from Warzone to Call of Duty: Warzone. It accomplishes this goal with its mammoth marketing arm and previous success. Thus, Activision, if victorious, and other large corporations, would essentially be given legal permission to trample over junior users like Warzone, inundate the market with their superior marketing resources, and effectively monopolize whatever product they seek to profit off, regardless of whether the junior user's trademark claim was superior.

Unlike the cases pending in the Ninth Circuit currently, the record here shows, at best, that Activision has asserted a competing claim for Warzone's identical WARZONE trademark – in addition to seeking to use WARZONE separately in an expressive manner as a part of the title: Call of Duty Warzone. Both companies make video games involving some aspects of war, and market

and advertise using WARZONE as a trademark. Although Activision talks from both sides of its mouth, it is undeniable that it seeks not only to bar Warzone from complaining about Activision's infringing use of the WARZONE mark, but also to award that trademark exclusively to Activision. Activision cannot deny that Warzone began using the WARZONE trademark first, nor can it deny the evidence of actual confusion already uncovered through discovery on Warzone's part. Where Warzone has pleaded that Activision's adoption of WARZONE as a trademark – separate and apart from its adoption of the CALL OF DUTY WARZONE title – deceptively misleads consumers, and Activision has actively blocked Warzone from taking discovery on that very issue, the *Rogers* test does not warrant dismissal as a matter of law.

Finally, Activision continues to assert a First Amendment defense to its infringing use of WARZONE– but in the process argues that the identical mark, when used by Warzone, for identical goods and services, cannot function as a trademark – while simultaneously asking the Court to grant it exclusive rights to that very mark. The hypocrisy of its argument – that Warzone "is the one seeking to monopolize," WARZONE, whereas Activision seeks to protect "the strong First Amendment interests at play," all while covertly attempting to secure the exclusive right to the trademark itself – abuses the legal framework

MEMORANDUM AND POINTS AND AUTHORITIES OF WARZONE.COM, LLC IN OPPOSITION TO MOTION TO STAY DISCOVERY

to protect those rightfully seeking to protect their hard-earned work via trademark registration. ECF No. 24 at 2; Underlying Motion at 12.

### D. **Balancing of Hardships Favors Denial of Discovery Stay**

In deciding whether to stay discovery, a court may also balance any harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery." *Centerline Hous.*, 2021 WL 2493251, at *4. The moving party in *Centerline* cited financial hardship and an "overbroad and far-reaching discovery strategy" as a reason to stay discovery, which the court clearly rejected in holding that, "costs and expenses of litigation do not generally rise to the hardship required to support a stay." *Id.* Similarly, here, Activision has failed to meet its burden that it would be unduly financially burdened in responding to basic discovery that will inevitably be required at some point in this litigation.

Furthermore, as already noted herein, it is hardly realistic that Activision, as the most profitable video game creator in the U.S., valued at nearly $70 billion, is weary of the costs of responding to inevitable discovery propounded by Warzone, a small, indie video game developer. Indeed, you do not see the "David," Warzone, complaining about the "Goliath," Activision, expounding **95** separate requests for production and interrogatories to Warzone (compared to the

MEMORANDUM AND POINTS AND AUTHORITIES OF WARZONE.COM, LLC IN OPPOSITION TO MOTION TO STAY DISCOVERY

total 41 requests for production and interrogatories from Warzone to Activision).

ECF 47-1 at ¶ 7. Finally, given the amount of time already put in by both parties

thus far in beginning discovery and negotiating now two joint reports, it can

hardly make sense to further delay the inevitable and triplicate already duplicated

work.

## **CONCLUSION**

There is no reason to disturb the Scheduling Conference date that was set

in this action nearly three months ago, and Activision's bad faith *ex parte*

applications without any notice to Warzone should subject Activision to

sanctions and entitle Warzone to its costs and fees to respond to the emergency

applications. The Court should find and Order as such.

Dated: January 27, 2022

                                    Brett E. Lewis
                                    Roberto Ledesma
                                    Michael D. Cilento
                                    LEWIS & LIN, LLC

                                    Alyssa Schabloski
                                    GLADIUS LAW, APC

                            By: _____
                                    Michael D. Cilento (pro hac vice)
                                    *Attorneys for Warzone.com LLC*

MEMORANDUM AND POINTS AND AUTHORITIES OF WARZONE.COM, LLC IN
OPPOSITION TO MOTION TO STAY DISCOVERY