1  MARC E. MAYER (SBN 190969)
       mem@msk.com
2  KARIN G. PAGNANELLI (SBN 174763)
       kgp@msk.com
3  MITCHELL SILBERBERG & KNUPP LLP
   2049 Century Park East, 18th Floor
4  Los Angeles, CA  90067-3120
   Telephone: (310) 312-2000
5  Facsimile: (310) 312-3100

6  LINDSAY R. EDELSTEIN (*pro hac vice*)
       lre@msk.com
7  MITCHELL SILBERBERG & KNUPP LLP
   437 Madison Ave., 25th Floor
8  New York, New York 10022-7001
   Telephone: (212) 509-3900
9  Facsimile: (212) 509-7239

10 *Attorneys for Activision Publishing, Inc.*

11

12             UNITED STATES DISTRICT COURT

13             CENTRAL DISTRICT OF CALIFORNIA

14

15 ACTIVISION PUBLISHING, INC., a          CASE NO. 2:21-cv-3073-FLA (JCx)
   Delaware corporation,
16                                          [Assigned to Judge Fernando L. Aenlle-Rocha]
                  Plaintiff,
17                                          **REPLY MEMORANDUM IN
        v.                                  FURTHER SUPPORT OF
18                                          MOTION OF ACTIVISION
   WARZONE.COM, LLC,                        PUBLISHING, INC. TO STAY
19                                          DISCOVERY PENDING
                  Defendant.                RESOLUTION OF THE MOTION
20                                          TO DISMISS AND/OR FOR
                                            JUDGMENT ON THE
21 WARZONE.COM, LLC,                        PLEADINGS**

22                Counterclaimant,          Date:        February 18, 2022
                                            Time:        1:30 pm
23      v.                                  Location:    Courtroom 6B

24 ACTIVISION PUBLISHING, INC., a
   Delaware corporation,
25
26
                  Counterclaim-Defendant.
27

28

Mitchell
Silberberg &
Knupp LLP

**INTRODUCTION**

1      In its memorandum in Opposition to Counterclaim-Defendant Activision

2 Publishing, Inc.'s ("Activision") Motion to Stay Discovery (the "Motion"),

3 Warzone.com LLC ("Counterclaimant") now concedes all of the critical facts that

4 warrant a stay of discovery:

5      ●      The pending Motion to Dismiss, or, alternatively, for Judgment on the

6 Pleadings (the "MTD"), involves critically important threshold issues that can and

7 should be decided before this case proceeds.

8      ●      If granted, the MTD would completely dispose of all of the

9 counterclaims for trademark infringement **and** Activision's claim for a declaration

10 of non-infringement.

11      ●      The MTD does **not** require discovery, as the use is both artistically

12 relevant and does not explicitly mislead.  In fact, Counterclaimant now **admits** that

13 "Activision has no interest in misleading customers" (Opp. at 18).

14      ●      There will be no prejudice to Counterclaimant from the requested

15 discovery stay, which is temporary and would remain in place only until the Court

16 decides the MTD.  By contrast, a stay would further interests of judicial economy

17 and efficiency and ensure that Activision is able to seek to vindicate its First

18 Amendment rights before engaging in costly and burdensome discovery.

19      Unable to dispute any of these salient points, Counterclaimant engages in

20 sleight of hand, diverting attention from these core issues and focusing instead on

21 red herrings such as the parallel trademark opposition proceeding pending in the

22 Trademark Trial and Appeal Board ("TTAB").  It then peppers its papers with

23 wholly unnecessary rhetoric – including proclamations about Activision's "real

24 strategy" and "motives;" accusations of hypocrisy and "abuse[] of the legal

25 framework;" and claims that Activision is trying to "usurp and trample"

26 Counterclaimant's purported mark.  None of these arguments have any bearing on

27 this Motion.  All that is relevant is that a ruling on the MTD will end this lawsuit

Mitchell
Silberberg &
Knupp LLP

1   and dispose of Counterclaimant's claim for monetary damages and injunctive

2   relief.  Thus it is eminently reasonable – and is in the interests of both parties – for

3   the court to temporarily pause discovery while it considers the pending motion.  In

4   the event that any disputes might remain concerning whether a trademark

5   *application* should proceed to registration, this is an administrative matter that is

6   the subject of pending proceedings before the TTAB.  The court need not (and,

7   indeed, cannot) decide these issues in the first instance in the absence of an

8   infringement claim.

9          At the end of the day, Counterclaimant cannot articulate even a single reason

10  why a temporary discovery stay should not be issued.  The Court should grant

11  Activision's Motion.

12

13  **I.      ACTIVISION'S MOTION TO DISMISS IS CASE DISPOSITIVE,**

14  **DOES NOT REQUIRE DISCOVERY, AND IS MERITORIOUS.**

15         Counterclaimant agrees that federal district courts in this Circuit have

16  applied "a two-part test providing that it is appropriate to stay discovery if (1) the

17  pending motion [is] potentially dispositive of the entire case, or at least dispositive

18  on the issue at which discovery is aimed, and (2) the pending, potentially

19  dispositive motion can be decided absent additional discovery." *Quezambra v.*

20  *United Domestic Workers of Am. AFSCME Loc. 3930*, No. 819CV00927JLSJEM,

21  2019 WL 8108745, at *2 (C.D. Cal. Nov. 14, 2019) (internal quotations omitted).

22  Notwithstanding Counterclaimant's best efforts to challenge these factors, it

23  ultimately concedes that both are met here.  It also concedes, as it must, that

24  Activision's arguments in the MTD are meritorious and supported by law, while

25  Counterclaimant's legal theory is unsupported, novel, and contrary to case law in

26  this Circuit.

27

28

Mitchell
Silberberg &
Knupp LLP

1          **A.     The Motion to Dismiss is Case Dispositive**

2          Counterclaimant does not dispute that if the Court grants Activision's MTD,

3  the counterclaims will be dismissed in their entirety *and* Activision will be entitled

4  to a declaration that its use of the "*Call of Duty: Warzone*" title does not infringe

5  Counterclaimant's trademark.  A ruling in Activision's favor thus would determine

6  both *liability* and *damages*, including Counterclaimant's request for monetary

7  damages, corrective advertising, and injunctive relief.  In other words, Activision

8  would have no risk of liability, and there would be nothing left for trial.  This is the

9  very definition of a "case-dispositive" ruling.[1]

10         In an effort to re-characterize both the MTD and the parties' dispute,

11  Counterclaimant fixates on Activision's "Prayer for Relief," claiming that because

12  it includes prayers concerning trademark registrations (ECF No. 1 at 12-13), a

13  finding of non-infringement would not terminate this lawsuit.  Counterclaimant

14  even goes so far as to suggest that an entire district court trial should take place on

15  the narrow issue of whether the *U.S. Patent and Trademark Office* ("PTO")

16  should permit Activision's or Counterclaimant's trademark applications to proceed

17  to registration.  Opp. at 10-11.  This argument is incorrect, and fundamentally

18  misunderstands the relationship between federal courts and the TTAB.

19         As Counterclaimant acknowledges, if the Court rules in Activision's favor

20  on the infringement claims, then there will no dispute as to either parties' use or

21  exploitation of the term "warzone."  In fact, since Activision has *not* sought to

22  prevent Counterclaimant from using the term "WARZONE" as the title of its game

23  (and Activision's declaratory relief claim does not address Counterclaimant's use),

24  both parties would thereafter be able to continue using their games' respective

25  titles without risk of liability.  There would be no federal "case or controversy"

26  _____

[1]  At minimum, "the claims and the scope of permissible discovery may be
27  narrowed if any portion of [the] motion is granted." *Turner v. Colon*, No. 2:11-CV-
2343 KJM AC, 2014 WL 5308345, at *2 (E.D. Cal. Oct. 16, 2014) ("The court
28  finds that both prongs of the test [for a discovery stay] are met in that the motion is
potentially case dispositive or at a minimum may narrow the issues.").

Mitchell
Silberberg &
Knupp LLP

3

1   remaining for the Court to decide.  *See MedImmune, Inc. v. Genentech, Inc.*, 549

2   U.S. 118 (2007) (explaining that the test for declaratory judgment jurisdiction is

3   "whether the facts alleged, under all the circumstances, show that there is a

4   substantial controversy, between parties having adverse legal interests, of sufficient

5   immediacy and reality to warrant the issuance of a declaratory judgment.").

6         To the extent that a decision on the MTD might not fully resolve the

7   trademark *registration* issues, that is irrelevant.  Without an infringement claim,

8   this Court lacks jurisdiction to adjudicate trademark opposition or cancellation

9   proceedings.  *J & D Home Improvement, Inc. v. Basement Dr., Inc.*, 90 F. App'x

10  616, 618–19 (3d Cir. 2004) (holding that a federal court may only determine

11  certain trademark registration issues "in the context of actions over which courts

12  already have subject matter jurisdiction on some other basis").  Trademark

13  opposition proceedings are administrative proceedings that are properly

14  adjudicated before the TTAB.  *See*, *e.g.*, *Vina Casa Tamaya S.A. v. Oakville Hills

15  Cellar, Inc.*, 784 F. Supp. 2d 391, 395 (S.D.N.Y. 2011) (where "the legal relations

16  at issue [] concern [only] the registrability of . . . [a] mark. That dispute can

17  properly be resolved in the TTAB proceeding already underway").  Those

18  proceedings were underway before this case commenced, but were stayed during

19  the pendency of this action.

20        In other words, if the Court were to dismiss the counterclaims and issue a

21  declaration of non-infringement, this Court would not be required (or even able) to

22  adjudicate trademark registration issues.  That can and should be left to the TTAB.

23        **B.      Discovery Is Not Necessary To Decide The Motion to Dismiss.**

24        The second prong of the test employed by California courts to determine

25  whether a stay of discovery is warranted is whether "the pending, potentially

26  dispositive *motion* can be decided absent additional discovery." *Quezambra*, 2019

27  WL 8108745, at *2 (internal quotations omitted; emphasis added).

28  Counterclaimant, however, misconstrues this prong.  Instead of focusing on

Mitchell
Silberberg &
Knupp LLP

4

1  whether discovery is needed for the Court to adjudicate the underlying ***motion***,

2  Counterclaimant engages in a lengthy discussion about discovery in the ***case*** if it

3  were to proceed past the MTD stage – and, more specifically, the discovery that

4  Counterclaimant would seek in a TTAB proceeding to adjudicate trademark

5  registration issues.  *See* Opp. at 13 ("To determine the ***registrability*** of an exclusive

6  trademark, required discovery will include [various topics].")  The various

7  discovery topics identified by Counterclaimant are wholly irrelevant to the *Rogers*

8  analysis, which does ***not*** require consideration of the "likelihood of confusion"

9  factors.  *See Novalogic, Inc. v. Activision Blizzard*, 41 F. Supp. 3d 885, 897 (C.D.

10  Cal. 2013) ("the intermingling of the *Rogers* test and the *Sleekcraft* factors is

11  directly contrary to the Ninth Circuit's holding in *Mattel*.")

12      As Counterclaimant admits, there is no factual dispute as to the title of the

13  parties' respective works; the content of those works; the relevance of the title *Call*

14  *of Duty: Warzone* ("*CODWZ*") to the game's content and themes; and the absence

15  of any statements by Activision that "explicitly mislead" as to the

16  Counterclaimant's affiliation or sponsorship of *CODWZ*.  Tellingly,

17  Counterclaimant does not identify *any* discovery needed on these points.  It cannot

18  do so, because there is none.[2]  *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1248

19  (explaining that the first prong of *Rogers* is a "black-and-white rule" that "has the

20  benefit of limiting our need to engage in artistic analysis in this context").  Courts

21  routinely decide these issues on the pleadings, and there is no reason why it cannot

22  do so here.  *See also Jackson v. Netflix, Inc.*, 506 F. Supp. 3d 1007, 1016-17 (C.D.

23  Cal. 2020) (dismissing trademark claims on *Rogers* grounds on a motion to

24  dismiss, effectively holding that discovery was unnecessary); *Dickenson v. Ryan*

25

26  [2] Ultimately, Counterclaimant's sole discussion of the underlying MTD – wherein
    it argues that *Rogers* should not apply in the reverse confusion context (Opp. at
27  15), which is misguided for the reasons set forth *infra* at 6-7 – reveals that the
    Court must determine the *Rogers* issue as a pure legal question.  It does not require
28  a fact-intensive inquiry necessitating far-reaching discovery, and Counterclaimant
    never explains what discovery would be required.

Mitchell
Silberberg &
Knupp LLP

1   *Seacrest Enters., Inc.*, CV-18-2544-GW, 2019 WL 3035090, at *9-10 (C.D. Cal.

2   2019) (same); *Stewart Surfboards, Inc. v. Disney Book Grp., LLC*, CV-10-2982

3   GAF, 2011 WL 12877019, at *7-8 (C.D. Cal. 2011) (same); *Caiz v. Roberts*, 382

4   F. Supp. 3d 942, 948 (C.D. Cal. 2019) ("[T]he Rogers test can be applied as early

5   as the motion to dismiss stage because the test analyzes facts facially apparent in a

6   defendant's work."); *Rebellion Developments Ltd. v. Stardock Entertainment, Inc.*,

7   No. 12-12805, 2013 WL 1944888, at *4 (E.D. Mich. May 9, 2013) ("Courts are

8   cognizant of vindicating First Amendment protections through early dispositive

9   motions[.]").

10       **C.      The Motion To Dismiss Is Meritorious.**

11       Underneath Counterclaimant's exaggerated and irrelevant policy arguments

12   and "David and Goliath" analogies, it ultimately does not contest that Activision's

13   MTD is meritorious and well-supported.  Instead, Counterclaimant re-hashes its

14   legal position that *Rogers* does not apply in cases of reverse confusion. Opp. at 15-

15   16.  Counterclaimant's argument is curious, because courts in this District have

16   consistently and unambiguously held that *Rogers **does***, in fact, apply in reverse

17   confusion cases.  *See Diece-Lisa Indus. v. Disney Enters.*, Inc., No. CV20-09147,

18   2021 WL 3355284, *3 (C.D. Cal. July 7, 2021) ("Rogers applies without

19   modification in reverse confusion cases")[3]; *Caiz v. Roberts*, 382 F. Supp. 3d 942,

20   949 (C.D. Cal. 2019) ("[T]he court finds that the *Rogers* test is not barred in this

21   case simply because it involves reverse confusion.").  That these cases were

22   decided on summary judgment (and not on motions to dismiss) is irrelevant; the

23   issue of whether *Rogers* applies to reverse confusion cases is a pure legal issue; not

24   a factual one.  As noted, courts often apply the *Rogers* test at the pleadings stage.

25

26   [3] To be clear, the court in *Diece-Lisa* never suggested that *Rogers* could be
"inherently incompatible with reverse confusion cases," as Counterclaimant
27   suggests in its Opposition (at 15-16).  The out-of-context quotation comes from the
court's disapproving recitation of the *plaintiff's argument* before summarily
28   rejecting it and holding that *Rogers* applies with equal force in reverse confusion
cases. *See* 2021 WL 3355284, *3.

Mitchell
Silberberg &
Knupp LLP

6

1    It appears that what Counterclaimant is actually arguing is that this Court

2    should *depart* from established precedent and make new law.  But this only proves

3    Activision's point, which is that the threshold *Rogers* issue is a pure legal issue that

4    can and should be decided before discovery.  If the court grants the MTD,

5    Counterclaimant may appeal the decision to the Ninth Circuit Court of Appeals

6    and present its legal arguments there.  *Hunley v. Instagram, LLC*, No. 21-CV-

7    03778-CRB, 2021 WL 4243385, at *3 (N.D. Cal. Sept. 17, 2021) (rejecting

8    argument that earlier precedent was wrongly decided: "[Plaintiff] is free to present

9    that argument to the Ninth Circuit and the Supreme Court. But this Court is not

10   free to artificially narrow or overrule binding precedent.")

11

12   **II.    COUNTERCLAIMANT DOES NOT, AND CANNOT, IDENTIFY**

13   **ANY HARM OR PREJUDICE THAT WOULD RESULT FROM THE**

14   **STAY.**

15   Counterclaimant fails to identify a single "hardship" or "prejudice" that it

16   would suffer from a discovery stay.  The reality is that *CODWZ* has been in the

17   marketplace for nearly two years.  The brief discovery stay sought by Activision

18   will not have any material impact on Counterclaimant's intellectual property rights

19   or the harm it claims to have suffered.

20   The only purported "prejudice" that Counterclaimant can muster is the

21   conclusory statement that "if the court halted discovery and did not allow Warzone

22   to prove its entitlement to the WARZONE mark, Warzone would 'suffer prejudice

23   in [its] ability to protect [its] intellectual property.'"  Opp. at 13 (citing *Bhasin v. C*

24   *& H Clubs, Inc.*, No. 2:16-CV-09130-RGK-JC, 2017 WL 5973280, at *1 (C.D.

25   Cal. July 28, 2017)).[4]  The argument is circular.  If, as Activision contends,

26

27   [4] Notably, *Bhasin* addressed the very different circumstance in which a party
     sought to stay a ***case*** "pending other proceedings."  All that Activision is
28   requesting by its Motion is a brief pause in discovery until a threshold legal issue is
     decided.

Mitchell
Silberberg &
Knupp LLP

7

Counterclaimant's infringement claims are barred by the First Amendment, then Counterclaimant does not have the right to prevent the use of that word by Activision in its game title.

Counterclaimant's only other argument – that Activision is a large company with significant resources – misses the point.  The issue is not whether Activision can hypothetically afford to defend this action, but whether it should be required to submit to costly and intrusive discovery (including review and production of emails, sitting for depositions, and preparation of financial documents) while the MTD is pending.  Perhaps more critically, if Activision is required to bear the full cost of federal court litigation before a decision on the MTD, then the very efficiencies contemplated by *Rogers* would be nullified.  The chilling effect of such an outcome is real and tangible.  If creative decisions carry a significant risk of costly and burdensome litigation ***before*** First Amendment issues are even considered, then the inevitable consequence would be for game developers and publishers to avoid any uses that could carry even the hypothetical possibility of a third party complaint, irrespective of whether the third party's complaint has any merit or legal support.  On the other hand, if the MTD is denied, then discovery will proceed apace, with no harm to either side.

## CONCLUSION

For the reasons set forth herein, Activision requests that the Court enter an order staying discovery pending decision on the MTD.

DATED:  February 4, 2022

MARC E. MAYER
KARIN G. PAGNANELLI
LINDSAY R. EDELSTEIN
MITCHELL SILBERBERG & KNUPP LLP


By:  /s/ Marc E. Mayer
     Marc E. Mayer (SBN 190969)
     Attorneys for Activision Publishing, Inc.

Mitchell
Silberberg &
Knupp LLP