MARC E. MAYER (SBN 190969)
mem@msk.com
KARIN G. PAGNANELLI (SBN 174763)
kgp@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

LINDSAY EDELSTEIN (*pro hac vice*)
lre@msk.com
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Ave., 25th Floor
New York, New York 10022-7001
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

Attorneys for Activision Publishing, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTIVISION PUBLISHING, INC., a Delaware corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WARZONE.COM, LLC,<br><br>　　　　Defendants.<br><br>WARZONE.COM, LLC,<br><br>　　　　Counterclaimant,<br><br>　　v.<br><br>ACTIVISION PUBLISHING, INC., a Delaware corporation,<br><br>　　　　Counterdefendant. | CASE NO. 2:21-cv-3073-FLA (JCx)<br><br>[Assigned to Judge Fernando L. Aenlle-Rocha]<br><br>**JOINT RULE 26(f) REPORT**<br><br>Scheduling Conference:<br><br>Date:　　February 18, 2022<br>Time:　　1:00 p.m.<br>Crtrm:　　6B |

Pursuant to Fed. R. Civ. P. 26(f) and Local Rule 26-1, Plaintiff and Counterclaim-Defendant Activision Publishing, Inc. ("Activision"), and Counterclaimant Warzone.com, LLC ("Warzone"), through their respective counsel, jointly submit this Rule 26(f) Report following the conference of counsel required by Rule 26(f) of the Federal Rules of Civil Procedure and Central District Local Rule 26-1.

A.   **STATEMENT OF THE CASE**

**Joint Statement**:

This is a trademark dispute arising from use of the word "Warzone" in connection with interactive entertainment products. Activision has sought declaratory relief, and Warzone has asserted claims for reverse trademark infringement, false advertising, and unfair competition under federal and state laws.

The parties both offer interactive entertainment products. Activision is a developer and publisher of video games and interactive entertainment products, including the *Call of Duty* series of video games. In 2020, Activision released a new installment of the *Call of Duty* franchise, titled *Call of Duty: Warzone* ("*CODWZ*"), for video game consoles and personal computers.[1]

Warzone is an independent game developer and the owner of mobile and web-based games titled *Warzone* (now, *Warzone Classic*) and *Warzone Idle* (together, the "WZ Games" or "Warzone Games"). Warzone contends that, in 2014, Warzone began working on a sequel to its video game, *WARLIGHT*. After three years of work developing the game, Warzone acquired the <warzone.com>

---

[1] Activision applied for trademark registrations for both "Warzone" and "Call of Duty: Warzone" in the United States and around the world. Activision's US trademark applications are the subject of a separate dispute between the parties at the Trademark Trial and Appeals Board, which is currently suspended, pending the outcome of this litigation.

domain name, and in November 2017, Warzone launched a video game under the title *WARZONE*. Activision disputes that Warzone is entitled to trademark protection over the term "Warzone," and contends that the acquisition of a domain name is irrelevant to the present dispute.

On April 8, 2021, Activision filed this lawsuit for declaratory relief, seeking a declaration that it has not infringed Warzone's alleged trademark. On June 8, 2021, Warzone filed an Answer and Counterclaims, alleging that Activision's use of the term "Warzone" both as a standalone title for *CODWZ* as well as in the title of *CODWZ* itself, gives rise to reverse trademark infringement, false advertising, and unfair competition claims under federal and state laws. Activision denies these allegations, including that Activision has used "Warzone" as a "standalone title." Activision contends that its use of "Warzone" is not likely to confuse consumers and is protected by the First Amendment, irrespective of who is the senior or junior user. Warzone contends that Activision is a junior trademark user, that First Amendment protection should not apply to the circumstances here, and that the use has caused, and continues to cause, significant consumer confusion and harm to its mark and brand.

Activision seeks a declaration of non-infringement. Warzone seeks monetary damages and injunctive relief. The parties have briefed the First Amendment issue and are awaiting a decision from the Court.

**B.    SUBJECT MATTER JURISDICTION**

This is a civil action for declaratory relief, arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.* and the Declaratory Judgment Act, 18 U.S.C. § 2201. The parties agree that this Court has subject matter jurisdiction over Activision's claims for declaratory relief pursuant to 28 U.S.C. §§ 1331 and 1338, and over the Lanham Act claims asserted in Warzone's Counterclaims, as they arise under and

require interpretation of the trademark laws of the United States. This Court has supplemental jurisdiction over Warzone's state law claims.

### C.    LEGAL ISSUES

The parties agree that there currently do not appear to be any unusual substantive, procedural, or evidentiary issues in this matter. The parties anticipate that this action will involve the following key legal issues:

    a. Whether Warzone possesses any protectable trademarks in the "Warzone" term and, if so, whether Activision has infringed any such trademark or engaged in any acts of unfair competition or false advertising.

    b. Whether use of the term "Warzone" by Activision is likely to cause consumer confusion as to the origin of their products or as to Warzone's affiliation, sponsorship, or endorsement of any such products.

    c. Whether Activision's use of the term "Warzone" is protected by the First Amendment or related doctrines.

    d. Whether Warzone is entitled to injunctive or corrective relief, lost profits, disgorgement of profits, attorneys' fees, or other such relief for its claims of reverse trademark infringement and unfair competition under the Lanham Act and California state law.

### D.    PARTIES AND EVIDENCE

**<u>Activision's Statement</u>**:

Activision is a wholly owned subsidiary of Activision Blizzard, Inc. Activision Blizzard Inc. is a publicly traded company.

Activision is currently aware of the following potential witnesses: Carolyn Wang, and representatives from Warzone, including Randy Ficker.

Key documents will include, among other things: (1) documents concerning the content of *Call of Duty: Warzone*, including the depiction of a "Warzone" within the game; (2) the videogames in the *Call of Duty* franchise, including, but not limited to, *Call of Duty: Warzone*; (3) documents pertaining to third-party use of the term "warzone" in connection with video games and other works; (4) documents pertaining to Warzone's use of the term "warzone" in connection with its WZ Games; (5) documents pertaining to Warzone's failure to register a trademark in the term "Warzone" until after this dispute arose; (6) documents regarding Warzone's decision to change its game's name from "Warlight" to "Warzone"; (7) documents pertaining to Warzone's purported damages in connection with Activision's use of the term "warzone" in its *CODWZ* video game; (8) documents concerning Warzone's business and background thereof; the creation, design, and exploitation of the WZ Games, including, but not limited to, the selection of the title "Warzone"; (9) documents concerning Warzone's licensing and exploitation of the WZ Games, including, but not limited to, any agreements or proposals to license the term "warzone" for use in any works; (10) documents concerning Warzone's efforts (or lack of efforts) to enforce and police its purported rights in the term "warzone"; (11) documents concerning Warzone's marketing and promotion of the WZ Games; (12) documentary evidence of purported confusion between the WZ Games and Activision's *CODWZ* video game; (13) documents pertaining to trade channels where the WZ Games are made available; (14) Warzone's profits and revenues in connection with the WZ Games; and (15) Warzone's misrepresentations to the public and its customers, including on its "GoFundMe" page.

**Warzone's Statement**:

Warzone is a limited liability company organized under the laws of the State of Washington.

Potential witnesses in this action include:

- former and current Activision employees and representatives, including Carolyn Wang, Bobby Kotick, Fernando Machado, Rob Kostich, Josh Taub, Byron Beede, and Johanna Faries; and
- representatives from Warzone, including its founder Randy Ficker.

Potential evidence will include documents and things that tend to show: (1) the content of *Warzone/CODWZ*, including the marketing and promotion of the game as "Warzone"; (2) the videogames in the *Call of Duty* franchise, including, but not limited to, *Warzone/CODWZ*; (3) later adopted third-party use of names incorporating the term "warzone" as one of the words in Activision's ganes in connection with video games and other works; (4) Warzone's use of the term "warzone" in connection with its Warzone Games; (5) the sales, revenue, and other growth measures relating to Warzone's use of the mark WARZONE, both pre- and post-Activision's adoption of the competing mark WARZONE; (6) Warzone's damages in connection with Activision's use of the mark WARZONE in its *Warzone/CODWZ* video game; (7) Warzone's business and background thereof; (8) the creation, design, and exploitation of the Warzone Games, including, but not limited to, Warzone's market position, customers, relative notoriety, and its selection of the title "Warzone"; (9) Warzone's efforts to enforce and police its rights in the trademark WARZONE; (10) Warzone's marketing and promotion of the Warzone Games; (11) actual confusion between the Warzone Games and Activision's *Warzone/CODWZ* video game; (12) the trade channels where the Warzone Games are made available; (13) Warzone's profits and revenues in connection with the Warzone Games; (14) Activision's selection, adoption, and clearance of WARZONE and CODWZ to be used or incorporated into a title for any Activision video game(s); (15) Activision's knowledge of Warzone prior to Activision's adoption of WARZONE and CODWZ as titles of video game(s); (16) the marketing expenditures in connection with the advertisement, sale, or offering of any Activision products or services that bear or incorporate the term or

trademark WARZONE; (17) the retail channels used by Activision in connection with the advertisement, sale, or offering of any products or services that bear or incorporate the term or trademark WARZONE; (18) the sales of products or service offered by Activision bearing or incorporating the term or trademark WARZONE; and (19) Activision's trademark applications for *WARZONE*, *CODWZ*, and the WORLD SERIES OF WARZONE, both in the United States and internationally.

### E.   DAMAGES

**Activision's Statement**:

Activision does not seek damages in connection with its claim for declaratory relief, as set forth in the Complaint. However, Activision reserves the right to seek attorneys' fees if it prevails in this matter.

With respect to the Counterclaims, Activision denies that Warzone is entitled to any relief whatsoever, and specifically maintains that—as a matter of law—Warzone cannot recover Activision's profits from *CODWZ*. *See, e.g., Scat Enterprises, Inc. v. FCA US LLC*, No. CV 14-7995-R, 2017 WL 5896182, at *2 (C.D. Cal. June 8, 2017) ("The relevant case law of this Circuit is clear—Plaintiff is not entitled to seek disgorgement under its reverse confusion theory").

**Warzone's Statement**:

Warzone seeks injunctive relief that, inter alia, would enjoin and restrain Activision from imitating, copying, or making any unauthorized use of the WARZONE mark or any mark confusingly similar thereto. Warzone also seeks corrective relief.

Warzone also seeks monetary damages, as follows:

a. all damages sustained by Warzone as a result of Activision's unlawful actions, including lost profits and harm to the WARZONE mark;

b. the cost of corrective advertising, or other actions to address and repair any damage to Warzone's trademark as a result of Activision's unlawful actions;

c. punitive damages for willful infringement; and

d. all costs, including reasonable attorneys' fees, incurred by Warzone to stop Activision's unlawful actions.

The calculations of Warzone's damages have not yet been fully quantified at this early stage in the litigation and likely will require expert testimony. Moreover, given that Activision's unlawful actions are ongoing, any such calculations would be subject to change in the future, including certain other elements of damages, such as attorneys' fees, which must be quantified at a later date. Accordingly, the computation of certain elements of Warzone's damages must await an accounting upon completion of this litigation.

F.  **INSURANCE**

Both Activision and Warzone are unaware of any relevant insurance policies at this time.

G.  **MOTIONS**

Neither party seeks to file motions seeking to add other parties or claims, to transfer venue, or to challenge the Court's jurisdiction, and neither party seeks to file an amended pleading at this time.

However, Activision notes that its MTD remains *sub judice*. Activision also notes that it has filed a Motion to Stay Discovery pending the decision on the MTD. The Motion to Stay is fully briefed as of February 4, 2022, and is set for hearing on February 18, 2022. Activision contends that the MTD is dispositive of this action and that, if granted, all of the trademark infringement claims will be decided and no justiciable claims will remain. If there are any remaining issues

concerning whether the U.S. Patent and Trademark Office ("PTO") should allow an application to proceed to registration, those issues can and should be decided by the PTO or Trademark Trial and Appeal Board and those issues (standing alone) are not justiciable in the first instance by the federal court.

To the extent the parties must engage in discovery following the Court's ruling on those motions, Activision may request that the Court bifurcate discovery (as discussed *infra* in Section K), whether by motion or otherwise.

Warzone does not believe that this matter requires a stay of all discovery. Warzone contends that Activision's MTD is not dispositive of the action and that, even if granted, the Court will still need to rule on the registrability and possible exclusivity of the mark in question. Apparently, Activision now contends that any registrability issues should be decided by the PTO or TTAB, yet Activision, by filing the Complaint in this action, *asked this Court to decide those very issues*, which of course automatically stayed the TTAB proceeding that Activsion is now contending should decide the issues.

## H.   DISPOSITIVE MOTIONS

Both parties anticipate filing Motions for Summary Judgment which they each believe will be dispositive or partially dispositive.

Activision notes that its MTD, which it believes is dispositive, and which Warzone believes is not dispositive, is currently pending before the Court.

## I.   MANUAL FOR COMPLEX LITIGATION

The parties agree that there is no need to utilize the procedures of the Manual for Complex Litigation.

## J. STATUS OF DISCOVERY

**Activision's Statement**: As set forth in its Motion to Stay, Activision believes that discovery should be limited while the threshold issue of whether Warzone's claims are barred by the First Amendment under *Rogers v. Grimaldi* is decided. This will minimize the burden to both parties in the event that the issue is case dispositive.

Warzone has refused to agree to a stay or limitation of discovery while the MTD is pending. On October 22, 2021, Warzone served its first set of written discovery requests (the "Discovery Requests"). Without waiving its right to seek a discovery stay, Activision provided written responses to the Discovery Requests and on December 17, 2021, made an initial production of documents. To date, Warzone has not indicated any deficiencies in Activision's most recent production.

While Activision believes that electronic discovery is premature at this time (in light of the fact that its Motion to Dismiss—which is case dispositive—and its Motion to Stay Discovery are pending, and the Court has not even held the Initial Scheduling Conference yet), it has never taken the stance that it will not participate in any electronic discovery, or otherwise participate in discovery. To the contrary, Activision has invited Warzone to prepare and circulate an ESI protocol for its review.

Activision believes a stay would best serve interests of judicial efficiency and economy—and safeguard Activision's First Amendment rights. Nevertheless, to preserve its rights should the Motion to Stay be denied, on January 4, 2022, Activision served its first set of interrogatories and document requests on Warzone.

**Warzone's Statement**:

The parties each have served initial discovery requests on each other. Activision has served responses and objections and has made a partial production – however, there are severe deficiencies with Activision's responses, objections, and partial production, which does not include any significant or key disclosures or

documents that are known to exist, and Warzone thus intends on sending a deficiency letter regarding same to Activision as the first step in moving toward real disclosures.

Warzone's time to respond to discovery served upon it has not yet expired, and so Warzone has not served responses and objections yet.

The parties initially began to discuss ESI considerations, including an ESI protocol, which will undoubtedly be necessary in this action, and the next step is to propose potential search terms and custodians for electronic search; however, Activision has now taken the stance that it will not participate in any electronic discovery until its Motion to Stay is ruled on. Warzone does not believe this is appropriate, as the motion to dismiss is clearly not case dispositive.

In sum, the main preliminary issue is that it appears Activision does not wish to meaningfully participate in the discovery process until its pending motions are decided – to avoid producing any discovery that bears on the question of Activision's intent to hijack the WARZONE mark from Warzone and establish dominance over the WARZONE mark in the marketplace – while Warzone's position is that discovery should proceed normally without awaiting rulings on the motions. Until this issue is dealt with, there will be inherent and continuing disputes.

**K.    DISCOVERY PLAN**

All written discovery shall be conducted in accordance with the Federal Rules of Civil Procedure, specifically Rule 26 and Rules 29 through 37, as well as applicable Local Rules and the Orders of this Court. The parties agree to act reasonably in attempting to informally resolve any discovery dispute that may arise and to confer with each other to attempt to resolve any issue in good faith prior to seeking Court intervention.

1. **Electronic Service**

The parties consent to email service in this matter and agree that—for scheduling purposes—service will be effective on the date the email was received by the designated attorneys, as if made by personal service.

2. **Changes to Limitations on Discovery**

The Parties agree that no changes are needed to the limitations on discovery imposed by the Federal Rules and Local Rules.

3. **Electronically Stored Information**

The parties intend to negotiate a protocol for the production of Electronically Stored Information ("ESI Protocol"). That ESI Protocol will address any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced. The parties have been advised of their evidence preservation obligations and have taken steps to preserve relevant electronic and other materials. At this time, the parties have no reason to believe there are any issues regarding evidence preservation.

4. **Privilege Issues and Protective Order**

The parties anticipate that discovery materials will contain confidential or proprietary information concerning company operations and finances. The parties have already negotiated a Protective Order, which has been entered by the Court. ECF No. 39.

With regard to claims of privilege or protection as trial-preparation materials, the parties agree as follows:

The party who is claiming privilege shall create a privilege log that will list any documents (or portions thereof) that would otherwise be responsive but are being withheld based upon a claim of privilege. The privilege log should include a brief description of each document (or portion thereof) being withheld sufficient for the opposing party to assess the privilege claim being asserted, and designate it with a Bates or other number for identification purposes. The parties will

cooperate to agree on a date to produce their respective privilege logs. The parties otherwise agree to the provisions stated in Federal Rule of Evidence 502, and agree that an ESI and Clawback Order will be submitted and shall include a provision that the inadvertent disclosure of privileged information shall not constitute a waiver thereof, and shall include a claw-back provision for the return of inadvertently produced privileged information.

**Activision's Statement**:

Should the case not be disposed of following the Court's consideration of Activision's MTD, Activision intends to seek discovery from Warzone concerning its use and exploitation of the "Warzone" term; Warzone's claim that the phrase "Warzone" has acquired secondary meaning in connection with Warzone and its products; the likelihood of consumer confusion; any actual confusion between the Warzone Games and CODWZ; and Warzone's alleged damages (including its purported lost sales or loss of goodwill). Activision is prepared to consider bifurcation of liability and damages, depending upon the pre-trial timeline. However, discovery into Warzone's damages may be necessary if the parties are to discuss resolution or mediation.

**Warzone's Statement**:

Warzone believes that bifurcating discovery on liability and damages will allow the case to proceed in the most efficient manner, and that delaying damages discovery and damages experts until after a motion for summary judgment is decided will not significantly delay the case. Warzone also believes that damages discovery and experts can be accomplished on an expedited schedule once liability is determined.

L.  **DISCOVERY CUTOFF**

**Activision's Statement**:

Activision proposes a discovery cut-off date of September 30, 2022, or six months after the Court's ruling on Activision's MTD, whichever is later.

**Warzone's Statement**:

Warzone proposes a discovery cut-off date of August 16, 2022.

M.  **EXPERT DISCOVERY**

**Activision's Statement**:

As set forth in the attached Schedule of Pretrial and Trial Dates Worksheet (**Exhibit A** hereto), Activision proposes the following deadlines in connection with expert discovery:

| | |
|---|---|
| Expert Disclosure (Initial) | 10/7/22 |
| Expert Disclosure (Rebuttal) | 10/21/22 |
| Expert Discovery Cut-Off | 11/4/22 |

**Warzone's Statement**:

| | |
|---|---|
| Expert Disclosure (Initial) | August 23, 2022 |
| Expert Disclosure (Rebuttal) | September 6, 2022 |
| Expert Discovery Cut-Off | September 20, 2022 |

N.  **SETTLEMENT CONFERENCE/ALTERNATIVE DISPUTE RESOLUTION ("ADR")**

The parties have engaged in initial informal settlement discussions, which were not successful.  While Warzone would be agreeable to a private mediation in the near term, Activision would prefer to revisit any ADR proposals until after the pending MTD is decided.

O. **TRIAL ESTIMATE**

The parties have requested a jury trial, and they estimate that trial will last four days. The parties estimate that they will each call between four and six witnesses at trial, plus expert witnesses.

P. **TRIAL COUNSEL**

Activision's trial counsel will be Marc E. Mayer, Karin Pagnanelli, and Lindsay R. Edelstein of Mitchell Silberberg & Knupp LLP.

Warzone's trial counsels will be Brett E. Lewis, Michael D. Cilento, and Roberto Ledesma of Lewis and Lin, LLC and Alyssa K. Schabloski of Gladius Law, APC.

Q. **INDEPENDENT EXPERT OR MASTER**

The parties do not anticipate a need for an independent expert or master.

R. **SCHEDULE WORKSHEET**

The Parties have set forth their respective proposed trial dates and pre-trial timetables in the Court's Schedule of Pretrial and Trial Dates Worksheet, which is being submitted concurrently herewith as Exhibit A.

///
///
///
///
///
///
///
///
///

**S.   OTHER ISSUES**

The Parties do not anticipate any significant other issues in this matter.

DATED: FEBRUARY 4, 2022

MARC E. MAYER
KARIN G. PAGNANELLI
LINDSAY EDELSTEIN
MITCHELL SILBERBERG & KNUPP LLP

By: /s/ Marc E. Mayer
    Marc E. Mayer (SBN 190969)
    *Attorneys for Activision Publishing, Inc.*

DATED: FEBRUARY 4, 2022

BRETT E. LEWIS
ROBERTO LEDESMA
MICHAEL D. CILENTO
LEWIS & LIN, LLC

ALYSSA SCHABLOSKI
GLADIUS LAW, APC

By: /s/ Michael D. Cilento
    Michael D. Cilento (*pro hac vice*)
    *Attorneys for Warzone.com LLC*

**Attestation Regarding Signatures-Local Rule 5-4.3.4(a)(2)(i)**

I, Marc E. Mayer, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED: FEBRUARY 4, 2022      By: */s/ Marc E. Mayer*
                                  Marc E. Mayer

# EXHIBIT A

**Exhibit 1**
**Page 18**

**DISTRICT JUDGE FERNANDO L. AENLLE-ROCHA**
**SCHEDULE OF PRETRIAL AND TRIAL DATES WORKSHEET**

Please complete this worksheet jointly and file it with your Joint Rule 26(f) Report. The parties must make every effort to agree on dates or the court will set them.

| Case No. | 21-cv-03073-FLA-JC | Case Name: | Activision Publishing, Inc. v. Warzone.com, LLC |
|---|---|---|---|

| Trial and Final Pretrial Conference Dates | Pl(s)' Date mm/dd/yyyy | Def(s)' Date mm/dd/yyyy |
|---|---|---|
| Check one:  ☒ Jury Trial  or  ☐ Bench Trial<br>[Tuesday at 8:30 a.m. within 12 months of Scheduling Conference]<br>Estimated Duration: __4__ Days | 2/14/23 | 12/6/22 |
| Final Pretrial Conference ("FPTC" [L.R. 16], Hearing on Motions in Limine<br>[Friday at 3:00 p.m. at least 18 days before trial] | 1/27/23 | 11/15/22 |

| Event [1]<br>Note: Hearings shall be on Fridays at 1:30 p.m.<br>Other dates can be any day of the week | Time Computation [2] | Pl(s)' Date mm/dd/yyyy | Def(s)' Date mm/dd/yyyy |
|---|---|---|---|
| Last Date to Hear Motion to Amend Pleadings or Add Parties [Friday] | 90 days after scheduling conference | 5/20/22 | 5/20/22 |
| Fact Discovery Cut-Off<br>(no later than deadline for filing dispositive motion) | 17 weeks before FPTC | 9/30/22 | 8/16/22 |
| Expert Disclosure (Initial) | 16 weeks before FPTC | 10/7/22 | 8/23/22 |
| Expert Disclosure (Rebuttal) | 14 weeks before FPTC | 10/21/22 | 9/6/22 |
| Expert Discovery Cut-Off | 12 weeks before FPTC [3] | 11/4/22 | 9/20/22 |
| Last Date to Hear Motions [Friday]<br>• Rule 56 Motion due at least 5 weeks before hearing<br>• Opposition due 2 weeks after Motion is filed<br>• Reply due 1 week after Opposition is filed | 8 weeks before FPTC | 12/2/22 | 10/11/22 |
| Deadline to Complete Settlement Conference [L.R. 16-15]<br>Select one:  ☐ 1. Magistrate Judge (with Court approval)<br>                 ☐ 2. Court Mediation Panel<br>                 ☒ 3. Private Mediation | 5 weeks before FPTC | 12/23/22 | 11/1/22 |
| Trial Filings (first round)<br>• Motions in Limine<br>• Memoranda of Contentions of Fact and Law [L.R. 16-4]<br>• Witness Lists [L.R. 16-5]<br>• Joint Exhibit List [L.R. 16-6.1]<br>• Joint Status Report Regarding Settlement<br>• Proposed Findings of Fact and Conclusions of Law [L.R. 52] (bench trial only)<br>• Declarations containing Direct Testimony, if ordered (bench trial only) | 4 weeks before FPTC | 12/30/22 | 11/8/22 |
| Trial Filings (second round)<br>• Oppositions to Motions In Limine<br>• Joint Proposed Final Pretrial Conference Order [L.R. 16-7]<br>• Joint Agreed Proposed Jury Instructions (jury trial only)<br>• Disputed Proposed Jury Instructions (jury trial only)<br>• Joint Proposed Verdict Forms (jury trial only)<br>• Joint Proposed Statement of the Case (jury trial only)<br>• Proposed Voir Dire Questions, if any (jury trial only)<br>• Evidentiary Objections to Declarations of Direct Testimony (bench trial only) | 2 weeks before FPTC | 1/13/23 | 11/22/22 |

[1] The parties may seek dates for additional events by filing a separate Stipulation and Proposed Order.

[2] The numbers below represent the court's recommended timeline. The parties may propose alternate dates based on the needs of each individual case. Class Actions, patent, and ERISA cases may need to vary from the above.

[3] The parties may choose to cut off expert discovery prior to the deadline to file a motion for summary judgment.

Rev. 9/29/21                                            8

Exhibit 1
Page 19