JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTIVISION PUBLISHING, INC., <br><br> Plaintiff, <br><br> v. <br><br> WARZONE.COM, LLC, <br><br> Defendant. | Case No. 2:21-cv-03073-FLA (JCx) <br><br> **ORDER GRANTING ACTIVISION PUBLISHING, INC.'S MOTION TO DISMISS COUNTERCLAIMS, AND JUDGMENT ON THE PLEADINGS [DKT. 24]** |

**RULING**

Before the court is Plaintiff and Counterclaim-Defendant Activision Publishing, Inc.'s ("Activision" or "Plaintiff") Motion to Dismiss Counterclaims And/or for Judgment on the Pleadings ("Motion"). Dkt. 24 ("Mot."). Defendant and Counterclaimant, Warzone.com LLC ("Warzone.com" or "Defendant"), opposes the Motion. Dkt. 29 ("Opp'n"). On December 6, 2021, the court found this matter appropriate for resolution without oral argument and vacated the hearing set for December 10, 2021. Dkt. 37; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15.

For the reasons stated herein, the court GRANTS Plaintiff's Motion, DISMISSES Defendant's counterclaims without leave to amend, and ENTERS Judgment in Plaintiff's favor on the Complaint.

**BACKGROUND**

The following allegations are taken from Plaintiff's Complaint. Dkt. 1 ("Compl."). Activision is a publisher of video games and interactive entertainment products, including the *Call of Duty* video game series. *Id.* ¶ 2. Activision released the first *Call of Duty* game in 2003 and has since released 16 major installments to the *Call of Duty* franchise. *Id.* ¶¶ 2, 13. Activision has sold more than 300 million *Call of Duty* games, which Plaintiff contends is considered the most successful first-person shooter game franchise ever made. *Id.* ¶ 14. On March 10, 2020, Activision released a stand-alone, "free to play," online multiplayer game titled *Call of Duty: Warzone* ("*CODWZ*"). *Id.* ¶ 15. *CODWZ* is a first-person shooter game that features a large computer-generated battlefield, or warzone, that accommodates up to 150 payers, and sometimes 200 players, at one time. *Id.* ¶ 16.

Warzone.com develops and makes available to the public a browser-based game titled *Warzone*. *Id.* ¶ 19. *Warzone* is a free-to-play, turn-based strategy game. *Id.* Players shift numbers, which represent armies, across a map of the world to take control of countries or territories. *Id.* ¶ 22. Warzone.com markets that game as "Better than Hasbro's RISK game." *Id.* Warzone.com released *Warzone* in

1    November 2017, and it is available on Warzone.com's internet website and mobile

2    devices.  *Id.* ¶ 20.  *Warzone* is not available on video game consoles.  *Id.*

3         On or about June 25, 2020, Activision filed applications for registration of the

4    trademarks WARZONE and CALL OF DUTY WARZONE.  *Id.* ¶ 26.  On October

5    30, 2020, Warzone.com filed applications for registration of the trademark

6    WARZONE.  *Id.* ¶ 27.  Warzone.com filed a Notice of Opposition to the registration

7    of the Activision marks and the opposition proceeding is currently pending before the

8    USPTO.  *Id.* ¶ 29.  On November 20, 2020, Warzone.com's counsel sent a cease-and-

9    desist letter to Activision's counsel, demanding that Activision "change the name of

10   its games, stop using Warzone's WARZONE mark, and abandon the trademark

11   applications."  *Id.* ¶ 30.  Activision and Warzone.com were unable to resolve the

12   dispute, and Warzone.com indicated it intended to seek injunctive relief and damages

13   against Activision.  *Id.* ¶¶ 3, 32.

14        In this action, Activision seeks a declaration of non-infringement under the

15   Lanham Act, 15 U.S.C. § 1125, that its use and registration of the word marks

16   WARZONE and CALL OF DUTY WARZONE do not infringe Warzone.com's

17   purported trademark rights in the title of its game titled *Warzone*.  *Id.* ¶¶ 1, 32.  On

18   June 8, 2021, Defendant filed counterclaims for unfair competition and trademark

19   infringement under the Lanham Act, 15 U.S.C. § 1125 ("Counterclaim I"), unfair

20   competition and false advertising under California law, Cal. Bus. & Prof. Code §§

21   17200 and 17500 *et seq*. ("Counterclaim II"), and trademark infringement under

22   California common law ("Counterclaim III").  Dkt. 14 ("Answer and Counterclaims")

23   at 16-19.  According to Defendant, it has been using the WARZONE mark in

24   commerce since at least November 13, 2017, and it has pending applications before

25   the USPTO for the mark WARZONE.  *Id.* at 8, ¶¶ 3, 5-6.  Defendant contends that

26   given the popularity of the *Call of Duty* franchise, Activision's use of WARZONE has

27   saturated the market in a manner that has overwhelmed Warzone.com.  *Id.* at 14, ¶ 23.

28   / / /

1

**DISCUSSION**

2  **I.      Legal Standard**

3      "After the pleadings are closed—but early enough not to delay trial—a party

4  may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c) ("Rule 12(c)").  The

5  legal standard for a motion for judgment on the pleadings under Rule 12(c) is

6  "functionally identical" to a motion to dismiss under Fed. R. Civ. P. 12(b)(6) ("Rule

7  12(b)(6)").  *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

8  The same legal standard applies to motions brought under either rule.  *Id.*  Thus, the

9  issue presented by a Rule 12(c) motion is whether the factual allegations of the

10  complaint, together with all reasonable inferences, state a plausible claim for relief.

11  *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 & n. 4 (9th Cir. 2011).  "A

12  claim has facial plausibility when the plaintiff pleads factual content that allows the

13  court to draw the reasonable inference that the defendant is liable for the misconduct

14  alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v.*

15  *Twombly*, 550 U.S. 544, 556 (2007)).

16      In evaluating a motion for judgment on the pleadings, the court "must accept all

17  factual allegations in the complaint as true and construe them in the light most

18  favorable to the non-moving party."  *Fleming*, 581 F.3d at 925; *see also Hal Roach*

19  *Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989) ("For

20  purposes of the motion, the allegations of the non-moving party must be accepted as

21  true, while the allegations of the moving party which have been denied are assumed to

22  be false.").  "Judgment on the pleadings is proper when the moving party clearly

23  establishes on the face of the pleadings that no material issue of fact remains to be

24  resolved and that it is entitled to judgment as a matter of law."  *Hal Roach*, 896 F.2d

25  at 1550.

26  / / /

27  / / /

28  / / /

4

1    **II.    Analysis**

2         **A.    Lanham Act Claim**

3         Generally, courts within the Ninth Circuit apply an eight-factor "likelihood-of-

4    confusion test" to claims brought under the Lanham Act. *Twentieth Century Fox*

5    *Television v. Empire Distrib., Inc.*, 875 F.3d 1192, 1196 (9th Cir. 2017).  But when a

6    trademark is included in an expressive work, the protections afforded under trademark

7    laws must also be balanced against broader First Amendment concerns. *Id.*; *see also*

8    *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 900 (9th Cir. 2002) (noting "when a

9    trademark owner asserts a right to control how we express ourselves … applying the

10   traditional [likelihood-of-confusion] test fails to account for the full weight of the

11   public's interest in free expression").  In circumstances involving an expressive work,

12   a plaintiff with Lanham Act claims must instead overcome the test articulated in

13   *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), which was adopted by the Ninth

14   Circuit in *Mattel*, 296 F.3d at 902.  *See also Twentieth Century Fox*, 875 F.3d at 1196;

15   *E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008).

16              *1.    The Rogers Test*

17        The "threshold for applying the *Rogers* test is whether the allegedly infringing

18   use is contained in an expressive work." *Twentieth Century Fox Television v. Empire*

19   *Distrib. Inc.*, 161 F. Supp. 3d 902, 907 (C.D. Cal. 2016), *aff'd* 875 F.3d 1192 (9th Cir.

20   2017).  If the threshold requirement is met, the court applies the two-prong *Rogers*

21   test, which provides First Amendment protection to "the use of a trademark in an

22   expressive work if the use of the mark has [1] artistic relevance to the underlying

23   work and [2] does not explicitly mislead as to the source or content of the work." *Id.*

24   at 909; *see also Rogers*, 875 F.2d at 999 (noting that the Lanham Act "should be

25   construed to apply to artistic works only where the public interest in avoiding

26   consumer confusion outweighs the public interest in free expression").

27        The *Rogers* test squarely applies here.  To begin, Defendant admits that

28   *CODWZ* is an expressive work and thus, the *Rogers* test applies.  *See* Opp'n 15

1    ("Warzone does not dispute that video games may qualify as 'artistic works' subject

2    to application of the *Rogers* balancing test."). The Supreme Court has clearly

3    recognized that video games are subject to First Amendment protection. *Brown v.*

4    *Ent. Merchs. Ass'n*, 564 U.S. 786, 790 (2011); *see also Novalogic, Inc. v. Activision*

5    *Blizzard*, 41 F. Supp. 3d 885, 898 (C.D. Cal. 2013) (finding *Call of Duty—Modern*

6    *Warfare 3* was "an expressive work entitled to as much First Amendment protection

7    as … any other expressive work").[1]

8         Having found *CODWZ* an expressive work, the court applies the *Rogers* test.

9    *See Twentieth Century Fox*, 875 F.3d at 1196-97.

10                    a.        *Artistic Relevance Prong*

11        "The first prong of the *Rogers* test requires a showing that the use of a mark has

12   artistic relevance to the underlying work." *Id.* "[T]he level of relevance merely must

13   be above zero." *E.S.S.*, 547 F.3d at 1100.

14        In *CODWZ*, game play takes place in a large computer-generated battlefield

15   that accommodates over one hundred players at a given time. Compl. ¶ 16.

16   Activision argues this virtual battlefield has all the hallmarks of the definition of a

17   real-life warzone, and thus the title "Warzone" is logically and artistically relevant to

18   the content of its video game.[2] Mot. 14. Defendant counters that Activision could

19

20

21   [1] Defendant cites *Masters Software, Inc. v. Discovery Communications, Inc.*, 725 F.
     Supp. 2d 1294 (W.D. Wash. 2010), to argue that the *Rogers* test does not apply in
22   reverse confusion cases. Opp'n 19-21. Defendant's cited cases, however, are older
     district court cases that do not constitute binding authority, and which predate the
23   Ninth Circuit's ruling in *Twentieth Century Fox*, 875 F.3d 1192. The Ninth Circuit
     has expressly rejected the argument that *Rogers* has a referential requirement, *see Caiz*
24   *v. Roberts*, 382 F. Supp. 3d 942, 948-49 (C.D. Cal. 2019), as Defendant recognizes in
25   its Opposition. *See* Opp'n 20-21. Accordingly, the court will not find the *Rogers* test
     does not apply in this action, simply because it involves reverse confusion.
26
     [2] Merriam-Webster defines "war zone" as "a zone in which belligerents are waging
27   war" and "an area marked by extreme violence." *War zone*, MERRIAM-WEBSTER
28

1 have selected from among many common English words, such as "warfare, combat

2 zone, frontline, battle, [or] battle zone, but instead chose to appropriate the goodwill

3 inherent in Warzone.com's mark.  Opp'n 23.

4    Warzone.com cites *Gordon v. Drape Creative, Inc.*, 897 F.3d 1184, 1194 (9th

5 Cir. 2018), *opinion withdrawn and superseded on reh'g,* 909 F.3d 257 (9th Cir. 2018),

6 to argue that "the use of a mark is not artistically relevant if the defendant uses it

7 merely to appropriate the goodwill inhering in the mark …."  Opp'n 22.

8 Warzone.com's reliance on the withdrawn opinion in *Gordon* is misplaced.  In the

9 superseding opinion, the Ninth Circuit recognized that the use of a mark in a title has

10 artistic value when it is relevant to the underlying work and omitted the quoted

11 language from the withdrawn opinion on which Warzone.com relies.  *Gordon*, 909

12 F.3d at 265-67.

13    Activision's use of the term "Warzone" is clearly relevant to the content in

14 *CODWZ.*  That Activision could have chosen other relevant names does not negate the

15 artistic value of the name it ultimately selected.  The court, therefore, finds Plaintiff's

16 use of the term "Warzone" in the title of *CODWZ* has artistic relevance to the

17 underlying work, as a matter of law.

18        b.  *Explicitly Misleads Prong*

19    "The second prong of the Rogers test requires a junior user to show that their

20 work does not explicitly mislead as to the source or content of the work."  *Twentieth*

21 *Century Fox*, 161 F. Supp. 3d at 908; *see also E.S.S.*, 547 F.3d at 1100; *Brown v. Elec.*

22 *Arts, Inc.*, 724 F.3d 1235, 1245 (9th Cir. 2013) ("It is key here that the creator must

23 *explicitly* mislead consumers.") (italics in original).  Ordinarily, "the mere use of a

24 trademark alone cannot suffice to make such use explicitly misleading."  *E.S.S.*, 547

25 F.3d at 1100.  However, this "does not extend to instances in which consumers *would*

26

27 DICTIONARY, https://www.merriam-webster.com/dictionary/war%20zone (last

28 visited August 15, 2022).

1    expect the use of a mark alone to identify the source." *Gordon*, 909 F.3d at 270.

2    Further, "identical usage could reflect the type of 'explicitly misleading description'

3    of source that *Rogers* condemns." *Id.*  Concern about misleading consumers is

4    "generally allayed when the mark is used as only one component of a junior user's

5    larger expressive creation." *Id.* at 270-71.

6          Activision argues that its use of the word "Warzone" cannot be explicitly

7    misleading because it is a common English word with general meaning independent of

8    Warzone.com's game.  Mot. 16.  Further, Activision argues its marketing makes clear

9    that *CODWZ* is part of the broader *Call of Duty* franchise and that "any suggestion

10   that Activision intended to mislead explicitly its customers into believing that it was

11   associated with [Warzone.com] and its browser-based strategy game defies common

12   sense or credibility." *Id.* at 17-18.  Defendant counters that Activision's use of

13   "Warzone" is explicitly misleading because consumers searching for its video game

14   are diverted to Activision's game.  Opp'n 23-24.  Defendant further argues its

15   allegations of consumer confusion are sufficient to negate the second prong of the

16   *Rogers* test.  *Id.* at 25.

17         Here, Defendant fails to allege plausibly that Activision explicitly mislead

18   consumers by using the term "Warzone" in the title of *CODWZ* as part of the broader

19   *Call of Duty* franchise.  In its attempt to satisfy the second prong of the *Rogers* test,

20   Defendant relies on allegations that Activision's use of "Warzone" has caused

21   consumer confusion.  But "[t]o fail the second prong of the *Rogers* test, it is key that

22   the creator must *explicitly* mislead consumers," and the court "must ask not only about

23   the likelihood of consumer confusion but also whether there was an explicit

24   indication, overt claim, or explicit misstatement that caused such consumer

25   confusion." *Twentieth Century Fox*, 875 F.3d at 1199.  Warzone.com alleges

26   Activision uses an identical mark to offer similar goods and services, saturating the

27   market and overwhelming Warzone.com, resulting in actual consumer confusion.

28   Answer and Counterclaims 11, 14-15, ¶¶ 20, 23-28.  However, nothing in the

1   allegations plausibly suggest that Activision's use of the term "Warzone" is explicitly

2   misleading.

3          Finally, Warzone.com argues it is not appropriate to apply the *Rogers* test on a

4   motion to dismiss, citing a number of cases where courts applied the Rogers test to

5   motions for summary judgment.  Opp'n 26.  However, there are numerous other

6   instances where courts appropriately applied the *Rogers* test to motions to dismiss.

7   *See* Dkt. 32 ("Reply") 3, collecting cases.  Where "[t]here is simply no allegation that

8   [Activision] explicitly misled consumers" there is "no problem with the district court

9   deciding this issue in response to a motion to dismiss."  *Brown*, 724 F.3d at 1248.  In

10  sum, the court finds Activision's use of the term "Warzone" in *CODWZ* is entitled to

11  First Amendment protection and does not violate the Lanham Act.

12          **B.       False Advertising and California Trademark Infringement**

13          The First Amendment protection articulated in *Rogers* applies equally to state

14  law claims and the Lanham Act claim.  *See E.S.S.*, 547 F.3d at 1101 (finding "the First

15  Amendment defense applie[d] equally to [plaintiff's] state law [trademark

16  infringement and unfair competition] claims as to its Lanham Act claim"); *see also*

17  *Novalogic*, 41 F. Supp. 3d at 904 ("Because Plaintiff's federal claims fail, its claim for

18  common law trademark infringement also fails.").  Having found that Activision's use

19  of the term "Warzone" is entitled to First Amendment protection under *Rogers*, the

20  court finds that Warzone.com's Counterclaims II and III for unfair competition and

21  false advertising under California law, Cal. Bus. & Prof. Code §§ 17200 and 17500 *et*

22  *seq*., and trademark infringement under California common law also fail.

23  / / /

24  / / /

25  / / /

26

27

28

**CONCLUSION**

For the foregoing reasons, the court GRANTS Plaintiff's Motion to Dismiss Counterclaims and Motion for Judgment on the Pleadings, Dkt. 24, and orders as follows:

1.  The court declares that Activision's use of the WARZONE and CALL OF DUTY WARZONE Marks does not infringe, and at all times has not infringed, any existing and valid common law trademark rights of Defendant under the Lanham Act, 15 U.S.C. § 1125(a);

2.  Judgment is entered in favor of Plaintiff on the Complaint; and

3.  Defendant's counterclaims are dismissed without leave to amend. [3]

IT IS SO ORDERED.

Dated: August 15, 2022

FERNANDO L. AENLLE-ROCHA
United States District Judge

---

[3] In its prayer for relief, Plaintiff seeks declarations that Activision's pending applications for registration of the marks WARZONE and CALL OF DUTY WARZONE may proceed to registration and that Warzone's pending applications for registration of the mark WARZONE should not proceed to registration.  Compl. at 12-13.  Activision previously conceded that that this court would not have the authority to decide trademark registration issues if the court were to dismiss Warzone.com's counterclaims and issue a declaration of non-infringement under the Lanham Act (15 U.S.C. § 1125(a)).  *See* Dkt. 52 at 4.  The court, therefore, does not address issues related to trademark registration.