Alyssa K. Schabloski (SBN 258876)
  aks@gladiuslaw.com
GLADIUS LAW, APC
2708 Wilshire Blvd., No. 426
Santa Monica, CA 90403
Tel: (310) 734-0720

Brett E. Lewis (*pro hac vice*)
  brett@iLawco.com
Roberto Ledesma (*pro hac vice*)
  roberto@iLawco.com
Michael D. Cilento (*pro hac vice*)
  michael@iLawco.com
LEWIS & LIN, LLC
77 Sands Steet, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326

*Attorneys for WARZONE.COM LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTIVISION PUBLISHING, INC., a Delaware corporation<br><br>Plaintiff/Counterclaim Defendant ,<br><br>v.<br><br>WARZONE.COM, LLC<br><br>Defendant/Counterclaimant | CASE NO. 2:21-cv-3073<br><br>**NOTICE OF APPEAL OF CIVIL JUDGMENT AND ORDER OF A UNITED STATES DISTRICT COURT** |

NOTICE IS HEREBY GIVEN that WARZONE.COM, LLC hereby appeals to the United States Court of Appeals for the Ninth Circuit from the Judgment and

1

Order of the Honorable Fernando L. Aenelle-Rocha filed and entered on August 15, 2022, ECF Doc. No. 57, which Granted Plaintiff's Motion to Dismiss Counterclaims and Motion for Judgment on the Pleadings.

    A Copy of said judgment and order is attached hereto.

    This is the first appeal in this case.

    This case was filed on April 8, 2021.

Dated: September 9, 2022

                             **LEWIS & LIN, LLC**
                             Brett E. Lewis
                             Roberto Ledesma
                             Michael D. Cilento

                             **GLADIUS LAW, APC**
                             Alyssa K. Schabloski

By: _____
     Michael D. Cilento (*pro hac vice*)

*Attorneys for WARZONE.COM, LLC*

**Representation Statement:**

**APPELLANT:**

**WARZONE.COM, LLC**

Brett E. Lewis (Registered for Efile in 9th Circuit)
  brett@iLawco.com
Michael D. Cilento (Registered for Efile in 9th Circuit)
  michael@iLawco.com
Roberto Ledesma
  roberto@iLawco.com
LEWIS & LIN, LLC
77 Sands Steet, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326

**APPELEE:**

**ACTIVISION PUBLISHING, INC.**

MARC E. MAYER
mem@msk.com
KARIN G. PAGNANELLI
kgp@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

LINDSAY EDELSTEIN
lre@msk.com
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Ave., 25th Floor
New York, New York 10022-7001
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| ACTIVISION PUBLISHING, INC., | Case No. 2:21-cv-03073-FLA (JCx) |
|---|---|
| Plaintiff, | |
| v. | **ORDER GRANTING ACTIVISION PUBLISHING, INC.'S MOTION TO DISMISS COUNTERCLAIMS, AND JUDGMENT ON THE PLEADINGS [DKT. 24]** |
| WARZONE.COM, LLC, | |
| Defendant. | |

1

# RULING

Before the court is Plaintiff and Counterclaim-Defendant Activision Publishing, Inc.'s ("Activision" or "Plaintiff") Motion to Dismiss Counterclaims And/or for Judgment on the Pleadings ("Motion"). Dkt. 24 ("Mot."). Defendant and Counterclaimant, Warzone.com LLC ("Warzone.com" or "Defendant"), opposes the Motion. Dkt. 29 ("Opp'n"). On December 6, 2021, the court found this matter appropriate for resolution without oral argument and vacated the hearing set for December 10, 2021. Dkt. 37; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15.

For the reasons stated herein, the court GRANTS Plaintiff's Motion, DISMISSES Defendant's counterclaims without leave to amend, and ENTERS Judgment in Plaintiff's favor on the Complaint.

# BACKGROUND

The following allegations are taken from Plaintiff's Complaint. Dkt. 1 ("Compl."). Activision is a publisher of video games and interactive entertainment products, including the *Call of Duty* video game series. *Id.* ¶ 2. Activision released the first *Call of Duty* game in 2003 and has since released 16 major installments to the *Call of Duty* franchise. *Id.* ¶¶ 2, 13. Activision has sold more than 300 million *Call of Duty* games, which Plaintiff contends is considered the most successful first-person shooter game franchise ever made. *Id.* ¶ 14. On March 10, 2020, Activision released a stand-alone, "free to play," online multiplayer game titled *Call of Duty: Warzone* ("*CODWZ*"). *Id.* ¶ 15. *CODWZ* is a first-person shooter game that features a large computer-generated battlefield, or warzone, that accommodates up to 150 payers, and sometimes 200 players, at one time. *Id.* ¶ 16.

Warzone.com develops and makes available to the public a browser-based game titled *Warzone*. *Id.* ¶ 19. *Warzone* is a free-to-play, turn-based strategy game. *Id.* Players shift numbers, which represent armies, across a map of the world to take control of countries or territories. *Id.* ¶ 22. Warzone.com markets that game as "Better than Hasbro's RISK game." *Id.* Warzone.com released *Warzone* in

November 2017, and it is available on Warzone.com's internet website and mobile devices. *Id.* ¶ 20. *Warzone* is not available on video game consoles. *Id.*

On or about June 25, 2020, Activision filed applications for registration of the trademarks WARZONE and CALL OF DUTY WARZONE. *Id.* ¶ 26. On October 30, 2020, Warzone.com filed applications for registration of the trademark WARZONE. *Id.* ¶ 27. Warzone.com filed a Notice of Opposition to the registration of the Activision marks and the opposition proceeding is currently pending before the USPTO. *Id.* ¶ 29. On November 20, 2020, Warzone.com's counsel sent a cease-and-desist letter to Activision's counsel, demanding that Activision "change the name of its games, stop using Warzone's WARZONE mark, and abandon the trademark applications." *Id.* ¶ 30. Activision and Warzone.com were unable to resolve the dispute, and Warzone.com indicated it intended to seek injunctive relief and damages against Activision. *Id.* ¶¶ 3, 32.

In this action, Activision seeks a declaration of non-infringement under the Lanham Act, 15 U.S.C. § 1125, that its use and registration of the word marks WARZONE and CALL OF DUTY WARZONE do not infringe Warzone.com's purported trademark rights in the title of its game titled *Warzone*. *Id.* ¶¶ 1, 32. On June 8, 2021, Defendant filed counterclaims for unfair competition and trademark infringement under the Lanham Act, 15 U.S.C. § 1125 ("Counterclaim I"), unfair competition and false advertising under California law, Cal. Bus. & Prof. Code §§ 17200 and 17500 *et seq*. ("Counterclaim II"), and trademark infringement under California common law ("Counterclaim III"). Dkt. 14 ("Answer and Counterclaims") at 16-19. According to Defendant, it has been using the WARZONE mark in commerce since at least November 13, 2017, and it has pending applications before the USPTO for the mark WARZONE. *Id.* at 8, ¶¶ 3, 5-6. Defendant contends that given the popularity of the *Call of Duty* franchise, Activision's use of WARZONE has saturated the market in a manner that has overwhelmed Warzone.com. *Id.* at 14, ¶ 23.
/ / /

3

## DISCUSSION

I. **Legal Standard**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c) ("Rule 12(c)"). The legal standard for a motion for judgment on the pleadings under Rule 12(c) is "functionally identical" to a motion to dismiss under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"). *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). The same legal standard applies to motions brought under either rule. *Id.* Thus, the issue presented by a Rule 12(c) motion is whether the factual allegations of the complaint, together with all reasonable inferences, state a plausible claim for relief. *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 & n. 4 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

In evaluating a motion for judgment on the pleadings, the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming*, 581 F.3d at 925; *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989) ("For purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false."). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach*, 896 F.2d at 1550.

/ / /
/ / /
/ / /

4

## II. Analysis

### A. Lanham Act Claim

Generally, courts within the Ninth Circuit apply an eight-factor "likelihood-of-confusion test" to claims brought under the Lanham Act. *Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192, 1196 (9th Cir. 2017). But when a trademark is included in an expressive work, the protections afforded under trademark laws must also be balanced against broader First Amendment concerns. *Id.*; *see also Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 900 (9th Cir. 2002) (noting "when a trademark owner asserts a right to control how we express ourselves … applying the traditional [likelihood-of-confusion] test fails to account for the full weight of the public's interest in free expression"). In circumstances involving an expressive work, a plaintiff with Lanham Act claims must instead overcome the test articulated in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), which was adopted by the Ninth Circuit in *Mattel*, 296 F.3d at 902. *See also Twentieth Century Fox*, 875 F.3d at 1196; *E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008).

#### 1. The Rogers Test

The "threshold for applying the *Rogers* test is whether the allegedly infringing use is contained in an expressive work." *Twentieth Century Fox Television v. Empire Distrib. Inc.*, 161 F. Supp. 3d 902, 907 (C.D. Cal. 2016), *aff'd* 875 F.3d 1192 (9th Cir. 2017). If the threshold requirement is met, the court applies the two-prong *Rogers* test, which provides First Amendment protection to "the use of a trademark in an expressive work if the use of the mark has [1] artistic relevance to the underlying work and [2] does not explicitly mislead as to the source or content of the work." *Id.* at 909; *see also Rogers*, 875 F.2d at 999 (noting that the Lanham Act "should be construed to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression").

The *Rogers* test squarely applies here. To begin, Defendant admits that *CODWZ* is an expressive work and thus, the *Rogers* test applies. *See* Opp'n 15

5

("Warzone does not dispute that video games may qualify as 'artistic works' subject to application of the *Rogers* balancing test."). The Supreme Court has clearly recognized that video games are subject to First Amendment protection. *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 790 (2011); *see also Novalogic, Inc. v. Activision Blizzard*, 41 F. Supp. 3d 885, 898 (C.D. Cal. 2013) (finding *Call of Duty—Modern Warfare 3* was "an expressive work entitled to as much First Amendment protection as … any other expressive work").[1]

Having found *CODWZ* an expressive work, the court applies the *Rogers* test. *See Twentieth Century Fox*, 875 F.3d at 1196-97.

      a.  *Artistic Relevance Prong*

"The first prong of the *Rogers* test requires a showing that the use of a mark has artistic relevance to the underlying work." *Id.* "[T]he level of relevance merely must be above zero." *E.S.S.*, 547 F.3d at 1100.

In *CODWZ*, game play takes place in a large computer-generated battlefield that accommodates over one hundred players at a given time. Compl. ¶ 16. Activision argues this virtual battlefield has all the hallmarks of the definition of a real-life warzone, and thus the title "Warzone" is logically and artistically relevant to the content of its video game.[2] Mot. 14. Defendant counters that Activision could

---

[1] Defendant cites *Masters Software, Inc. v. Discovery Communications, Inc.*, 725 F. Supp. 2d 1294 (W.D. Wash. 2010), to argue that the *Rogers* test does not apply in reverse confusion cases. Opp'n 19-21. Defendant's cited cases, however, are older district court cases that do not constitute binding authority, and which predate the Ninth Circuit's ruling in *Twentieth Century Fox*, 875 F.3d 1192. The Ninth Circuit has expressly rejected the argument that *Rogers* has a referential requirement, *see Caiz v. Roberts*, 382 F. Supp. 3d 942, 948-49 (C.D. Cal. 2019), as Defendant recognizes in its Opposition. *See* Opp'n 20-21. Accordingly, the court will not find the *Rogers* test does not apply in this action, simply because it involves reverse confusion.

[2] Merriam-Webster defines "war zone" as "a zone in which belligerents are waging war" and "an area marked by extreme violence." *War zone*, MERRIAM-WEBSTER

6

have selected from among many common English words, such as "warfare, combat zone, frontline, battle, [or] battle zone, but instead chose to appropriate the goodwill inherent in Warzone.com's mark. Opp'n 23.

Warzone.com cites *Gordon v. Drape Creative, Inc.*, 897 F.3d 1184, 1194 (9th Cir. 2018), *opinion withdrawn and superseded on reh'g,* 909 F.3d 257 (9th Cir. 2018), to argue that "the use of a mark is not artistically relevant if the defendant uses it merely to appropriate the goodwill inhering in the mark …." Opp'n 22. Warzone.com's reliance on the withdrawn opinion in *Gordon* is misplaced. In the superseding opinion, the Ninth Circuit recognized that the use of a mark in a title has artistic value when it is relevant to the underlying work and omitted the quoted language from the withdrawn opinion on which Warzone.com relies. *Gordon*, 909 F.3d at 265-67.

Activision's use of the term "Warzone" is clearly relevant to the content in *CODWZ*. That Activision could have chosen other relevant names does not negate the artistic value of the name it ultimately selected. The court, therefore, finds Plaintiff's use of the term "Warzone" in the title of *CODWZ* has artistic relevance to the underlying work, as a matter of law.

### b.  Explicitly Misleads Prong

"The second prong of the Rogers test requires a junior user to show that their work does not explicitly mislead as to the source or content of the work." *Twentieth Century Fox*, 161 F. Supp. 3d at 908; *see also E.S.S.*, 547 F.3d at 1100; *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1245 (9th Cir. 2013) ("It is key here that the creator must *explicitly* mislead consumers.") (italics in original). Ordinarily, "the mere use of a trademark alone cannot suffice to make such use explicitly misleading." *E.S.S.*, 547 F.3d at 1100. However, this "does not extend to instances in which consumers *would*

---

DICTIONARY, https://www.merriam-webster.com/dictionary/war%20zone (last visited August 15, 2022).

7

expect the use of a mark alone to identify the source." *Gordon*, 909 F.3d at 270. Further, "identical usage could reflect the type of 'explicitly misleading description' of source that *Rogers* condemns." *Id.* Concern about misleading consumers is "generally allayed when the mark is used as only one component of a junior user's larger expressive creation." *Id.* at 270-71.

Activision argues that its use of the word "Warzone" cannot be explicitly misleading because it is a common English word with general meaning independent of Warzone.com's game. Mot. 16. Further, Activision argues its marketing makes clear that *CODWZ* is part of the broader *Call of Duty* franchise and that "any suggestion that Activision intended to mislead explicitly its customers into believing that it was associated with [Warzone.com] and its browser-based strategy game defies common sense or credibility." *Id.* at 17-18. Defendant counters that Activision's use of "Warzone" is explicitly misleading because consumers searching for its video game are diverted to Activision's game. Opp'n 23-24. Defendant further argues its allegations of consumer confusion are sufficient to negate the second prong of the *Rogers* test. *Id.* at 25.

Here, Defendant fails to allege plausibly that Activision explicitly mislead consumers by using the term "Warzone" in the title of *CODWZ* as part of the broader *Call of Duty* franchise. In its attempt to satisfy the second prong of the *Rogers* test, Defendant relies on allegations that Activision's use of "Warzone" has caused consumer confusion. But "[t]o fail the second prong of the *Rogers* test, it is key that the creator must *explicitly* mislead consumers," and the court "must ask not only about the likelihood of consumer confusion but also whether there was an explicit indication, overt claim, or explicit misstatement that caused such consumer confusion." *Twentieth Century Fox*, 875 F.3d at 1199. Warzone.com alleges Activision uses an identical mark to offer similar goods and services, saturating the market and overwhelming Warzone.com, resulting in actual consumer confusion. Answer and Counterclaims 11, 14-15, ¶¶ 20, 23-28. However, nothing in the

8

allegations plausibly suggest that Activision's use of the term "Warzone" is explicitly misleading.

Finally, Warzone.com argues it is not appropriate to apply the *Rogers* test on a motion to dismiss, citing a number of cases where courts applied the Rogers test to motions for summary judgment. Opp'n 26. However, there are numerous other instances where courts appropriately applied the *Rogers* test to motions to dismiss. *See* Dkt. 32 ("Reply") 3, collecting cases. Where "[t]here is simply no allegation that [Activision] explicitly misled consumers" there is "no problem with the district court deciding this issue in response to a motion to dismiss." *Brown*, 724 F.3d at 1248. In sum, the court finds Activision's use of the term "Warzone" in *CODWZ* is entitled to First Amendment protection and does not violate the Lanham Act.

### B. False Advertising and California Trademark Infringement

The First Amendment protection articulated in *Rogers* applies equally to state law claims and the Lanham Act claim. *See E.S.S.*, 547 F.3d at 1101 (finding "the First Amendment defense applie[d] equally to [plaintiff's] state law [trademark infringement and unfair competition] claims as to its Lanham Act claim"); *see also Novalogic*, 41 F. Supp. 3d at 904 ("Because Plaintiff's federal claims fail, its claim for common law trademark infringement also fails."). Having found that Activision's use of the term "Warzone" is entitled to First Amendment protection under *Rogers*, the court finds that Warzone.com's Counterclaims II and III for unfair competition and false advertising under California law, Cal. Bus. & Prof. Code §§ 17200 and 17500 *et seq.*, and trademark infringement under California common law also fail.

/ / /
/ / /
/ / /

9

# CONCLUSION

For the foregoing reasons, the court GRANTS Plaintiff's Motion to Dismiss Counterclaims and Motion for Judgment on the Pleadings, Dkt. 24, and orders as follows:

1. The court declares that Activision's use of the WARZONE and CALL OF DUTY WARZONE Marks does not infringe, and at all times has not infringed, any existing and valid common law trademark rights of Defendant under the Lanham Act, 15 U.S.C. § 1125(a);

2. Judgment is entered in favor of Plaintiff on the Complaint; and

3. Defendant's counterclaims are dismissed without leave to amend.[3]

IT IS SO ORDERED.

Dated: August 15, 2022

FERNANDO L. AENLLE-ROCHA
United States District Judge

---

[3] In its prayer for relief, Plaintiff seeks declarations that Activision's pending applications for registration of the marks WARZONE and CALL OF DUTY WARZONE may proceed to registration and that Warzone's pending applications for registration of the mark WARZONE should not proceed to registration. Compl. at 12-13. Activision previously conceded that that this court would not have the authority to decide trademark registration issues if the court were to dismiss Warzone.com's counterclaims and issue a declaration of non-infringement under the Lanham Act (15 U.S.C. § 1125(a)). *See* Dkt. 52 at 4. The court, therefore, does not address issues related to trademark registration.