MARC E. MAYER (SBN 190969)
  mem@msk.com
KARIN G. PAGNANELLI (SBN 174763)
  kgp@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

LINDSAY R. EDELSTEIN (*pro hac vice*)
  lre@msk.com
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Ave., 25th Floor
New York, New York 10022-7001
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

*Attorneys for Activision Publishing, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTIVISION PUBLISHING, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>WARZONE.COM, LLC,<br><br>    Defendant.<br><br>WARZONE.COM, LLC,<br><br>    Counterclaimant,<br><br>    v.<br><br>ACTIVISION PUBLISHING, INC., a Delaware corporation,<br><br>    Counterclaim-Defendant. | CASE NO. 2:21-cv-3073-FLA (JCx)<br><br>[Assigned to Judge Fernando L. Aenlle-Rocha]<br><br>**SUPPLEMENTAL BRIEF OF ACTIVISION PUBLISHING, INC. IN SUPPORT OF MOTION TO DISMISS AND/OR FOR JUDGMENT ON THE PLEADINGS** |

## **TABLE OF CONTENTS**

**Page**

Introduction ........................................................................................................... 1

I.  *JACK DANIEL'S* DOES NOT IMPACT THE DISTRICT COURT'S PRIOR DECISION ........................................................................................ 3

   A.  *Jack Daniel's* Did Not Involve, And Does Not Impact, Claims Involving Titles Of Expressive Works. ............................................... 4

   B.  *Jack Daniels* Also Does Not Apply Because Activision Did Not Use *Defendant's Alleged Trademark*, It Used A Common English Word ..................................................................................................... 8

Conclusion ........................................................................................................... 10

Mitchell
Silberberg &
Knupp LLP

i
**SUPPLEMENTAL BRIEF OF ACTIVISION PUBLISHING, INC.**

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Caiz v. Roberts*,
  382 F. Supp. 3d 942 (C.D. Cal. 2019) ................................................................. 5

*Capcom Co. v. MKR Grp., Inc.*,
  2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) ................................................. 5, 8

*Dr. Seuss Enters. L.P. v. ComixMix LLC*,
  983 F.3d 443 (9th Cir. 2020) ............................................................................. 5

*Jack Daniel's Props., Inc. v .VIP Prods. LLC*,
  599 U.S. 140 (2023) ................................................................................. *passim*

*Jackson v. Netflix, Inc.*,
  506 F. Supp. 3d 1007 (C.D. Cal. 2020) ............................................................. 5

*JTH Tax LLC v. AMC Networks Inc.*,
  2023 WL 6215299 (S.D.N.Y. Sept. 25, 2023) ................................................ 4, 7

*Mattel v. MCA Records, Inc.*,
  296 F.3d 894 (9th Cir. 2002) ..................................................................... *passim*

*MGFB Props., Inc. v. Viacom, Inc.*,
  54 F.4th 670 (11th Cir. 2022) ..................................................................... 5, 6, 8

*Rebellion Devs. Ltd. v. Stardock Ent., Inc.*,
  2013 WL 1944888 (E.D. Mich. May 9, 2013) ............................................... 5, 8

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989) ...................................................................... *passim*

*Roxbury Ent. v. Penthouse Media Grp.*,
  669 F. Supp. 2d 1170 (C.D. Cal. 2009) ............................................................. 6

*Tommy Hilfiger Licensing, Inc. v. Nature Labs LLC*,
  221 F. Supp. 2d 410 (S.D.N.Y. 2002) ............................................................... 9

*Twentieth Century Fox Television v. Empire Distrib., Inc.*,
  875 F.3d 1192 (9th Cir. 2017) .................................................................. *passim*

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*VIP Prod., LLC v. Jack Daniel's Props., Inc.*,
   291 F. Supp. 3d 891 (D. Ariz. 2018) .................................................................. 8, 9

## Introduction

Pursuant to this Court's Order of October 27, 2023 (ECF 63), Plaintiff and Counterclaim-Defendant Activision Publishing, Inc. ("Activision") submits this supplemental brief to address if, and how, *Jack Daniel's Props., Inc. v .VIP Prods. LLC*, 599 U.S. 140 (2023) ("*Jack Daniel's*"), impacts Activision's Motion to Dismiss the Counterclaims and Motion for Judgment on the Pleadings (the "Motion"; ECF 24) in light of the October 25, 2023 Order of the Ninth Circuit Court of Appeals[1] vacating this Court's August 15, 2022 Order (the "Decision"; ECF 57).

This trademark infringement action involves the question of whether Defendant and Counterclaimant Warzone.com, LLC ("Defendant") may choose the common English word "warzone" for its video game title (which many others have done prior to Defendant's use) and then claim for itself exclusive use of the word in the title of expressive works about warzones and military combat.[2] In its Decision, this Court correctly found that it cannot, based on Ninth Circuit precedent applying the test articulated in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), to claims involving titles of quintessential expressive works. Such precedent remains viable following *Jack Daniel's*, the arguments raised in the Motion remain sound, and this Court should now arrive at the same outcome as before.

Defendant is the maker of a little-known browser-based computer board game titled *Warzone*, and is among dozens of game makers, authors, filmmakers, and musicians who have used the common word "warzone" in the titles of their works. In 2020, Activision released an installment of its popular *Call of Duty* video game franchise, titled *Call of Duty: Warzone* ("*COD:WZ*"). *COD:WZ* is a

---

[1] *See Activision Publ'g, Inc. v. Warzone.com, LLC*, ECF 57, No. 22-55831 (9th Cir. Oct. 25, 2023) (Ninth Circuit order vacating August 15, 2022 Decision).
[2] There are other defenses that warrant dismissal of this action in its entirety, but the narrow focus of this brief – as directed by the Court – is this singular question.

1

**SUPPLEMENTAL BRIEF OF ACTIVISION PUBLISHING, INC.**

first-person, multiplayer, "battle royale" game in which players fight to be the last soldier standing in a massive virtual warzone. Applying the *Rogers* test, this Court granted Activision's Motion, holding that Activision's use was protected by the First Amendment. The Decision was consistent with (and, indeed, mandated by) Ninth Circuit precedent.

On June 8, 2023, the Supreme Court issued its ruling in *Jack Daniel's*. In *Jack Daniel's*, the alleged infringer, VIP Products, made "a squeaky, chewable dog toy designed to look like a bottle of Jack Daniel's whiskey." *Jack Daniel's*, 599 U.S. at 144. Certain words shown on a bottle of Jack Daniel's whiskey were replaced on VIP Products' goods to create various dog-themed jokes. *Id.* ("[T]he descriptive phrase 'Old No. 7 Brand Tennessee Sour Mash Whiskey' turns into 'The Old No. 2 On Your Tennessee Carpet.'"). The defendant sold the dog toy under the name "Bad Spaniels." *Id.* Unquestionably, VIP Products "used [] marks derived from Jack Daniel's[.]" *Id.* at 153.

The Supreme Court held that the *Rogers* test was inapplicable to the defendant's alleged use of *Jack Daniel's* trademarks because VIP Products marketed its goods using a brand name ("Bad Spaniels") that was intended to invoke *Jack Daniel's* own brand name, and *Rogers* does not apply "when someone uses another's trademark as a trademark." *Id.* at 157. However, the Supreme Court clarified that its opinion "is narrow" and that "[w]e do not decide whether the *Rogers* test is ever appropriate, or how far the 'noncommercial use' exclusion goes." *Id.* at 163.

*Jack Daniel's* – which involved (1) **an ordinary consumer product**; and (2) **deliberate use of a well-known trademark** (*i.e.*, "**another's** trademark as a trademark") – has no application (and certainly does not control) here, for at least two reasons:

***First***, Activision made use of the word "warzone" in the title of an expressive, artistic work *(i.e.,* a video game), not as the name of an ordinary

commercial product as was the case in *Jack Daniel's*. The Ninth Circuit has expressly acknowledged – and the Supreme Court implicitly acknowledged in *Jack Daniel's* – that titles of expressive works are different from brand names of ordinary consumer products.

***Second***, Activision did not use "***[Defendant's] trademark*** as a trademark" in a manner that precludes application of *Rogers*. A trademark is a word, phrase, symbol, or design that identifies goods and services and distinguishes brands from competitors. A trademark has source-identifying significance and goodwill belonging only to its owner. As Defendant concedes, Activision was using the ubiquitous English ***word*** "warzone" because of its artistic relevance to the underlying video game, not to refer to or trade off on the goodwill of Defendant's purported trademark. The Supreme Court's holding in *Jack Daniel's* that *Rogers* does not apply when a defendant uses a plaintiff's trademark as its own mark is inapplicable here because Activision has not used ***Defendant's alleged mark***, rather, it used a common English language word.

Because *Jack Daniel's* is a "narrow" decision that did not purport to overturn the precedent this Court relied on in correctly granting Activision's Motion, the result should not be any different post-*Jack Daniel's*. This Court should apply longstanding Ninth Circuit precedent to this case and reinstate its earlier Decision.

I.  **JACK DANIEL'S DOES NOT IMPACT THE DISTRICT COURT'S PRIOR DECISION.**

In dismissing Defendant's claims, this Court relied on the two-part *Rogers* test, as consistently adopted and interpreted by the Ninth Circuit in cases such as *Mattel v. MCA Records, Inc.,* 296 F.3d 894 (9th Cir. 2002) and *Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192 (9th Cir. 2017). Specifically, the Court found that because *COD:WZ* was an expressive work (a fact that was not disputed by Defendant), the *Rogers* test applied, and Defendant bore

the burden of proving that Activision's use of the word "Warzone" in the title of its game (1) has no artistic relevance or (2) is explicitly misleading. *See Empire*, 875 F.3d at 1197. This Court correctly held that Defendant could not satisfy its burden on either prong. As set forth below, this Court's decision was correct and *Jack Daniel's* does not preclude application of the *Rogers* test here.

### A. *Jack Daniel's* Did Not Involve, And Does Not Impact, Claims Involving Titles Of Expressive Works.

Like this case, *Rogers* involved trademark infringement claims arising from the title of an expressive work. At issue in *Rogers* was whether the film title "Ginger and Fred" infringed the plaintiff's trademark in her name ("Ginger Rogers"). In holding that the First Amendment barred the plaintiff's trademark claims, the court explained that "[t]itles, like the artistic works they identify, are of a hybrid nature, combining artistic expression and commercial promotion. The title of a movie may be both an integral element of the film-maker's expression as well as a significant means of marketing the film to the public. The artistic and commercial elements of titles are inextricably intertwined." 875 F.2d at 998.[3] In other words:

> Though consumers frequently look to the title of a work to determine what it is about, they do not regard titles of artistic works in the same way as the names of ordinary commercial products. Since consumers expect an ordinary product to be what the name says it is, we apply the Lanham Act with some rigor to prohibit names that misdescribe such goods. But most consumers are well aware that they cannot judge a book solely by its title any more than by its cover.

*Id.* at 1000 (internal citation omitted). The court thus held that trademark claims

---

[3] This quotation was cited approvingly in a post-*Jack Daniel's* decision involving the title of a fictional tax preparation business called "Sweet Liberty Tax Services" as featured in the television series "Better Call Saul." *JTH Tax LLC v. AMC Networks Inc.*, No. 22 CIV. 6526 (PGG), 2023 WL 6215299, at *6, n.2 (S.D.N.Y. Sept. 25, 2023).

involving titles could not proceed "unless the title has ***no artistic relevance*** to the underlying work whatsoever, or, if it has some artistic relevance, unless the title ***explicitly misleads*** as to the source or the content of the work." *Id.* at 999. This formulation became known as the "*Rogers* test."

For more than two decades, courts in the Ninth Circuit consistently have applied the *Rogers* test to trademark claims involving titles of expressive works. Most notably, in *Mattel*, the Ninth Circuit held that a song titled "Barbie Girl" would not infringe Mattel's "Barbie" trademark, because:

> A title is designed to catch the eye and to promote the value of the underlying work. Consumers expect a title to communicate a message about the book or movie, but they do not expect it to identify the publisher or producer… A title tells us something about the underlying work but seldom speaks to its origin[.]

296 F.3d at 902.

Subsequently, in *Empire*, 875 F.3d 1192, and *Dr. Seuss Enters. L.P. v. ComixMix LLC*, 983 F.3d 443 (9th Cir. 2020), the Ninth Circuit applied *Rogers* to affirm the dismissal of trademark claims arising from the title of a television series and picture book, respectively. In both cases, it acknowledged that titles of expressive works are fundamentally different from brand names of ordinary consumer products and thus are entitled to protection from trademark claims. The Eleventh Circuit recently came to the same conclusion. *See MGFB Props., Inc. v. Viacom, Inc.,* 54 F.4th 670 (11th Cir. 2022) (affirming dismissal of claims arising from "Floribama" in the title of an MTV series).[4]

---

[4] District Courts also consistently and repeatedly have applied *Rogers* to dismiss trademark claims involving titles (including game titles.) *See, e.g., Rebellion Devs. Ltd. Stardock Ent., Inc.,* 2013 WL 1944888 (E.D. Mich. May 9, 2013) (video game titled "Rebellion"); *Jackson v. Netflix, Inc.*, 506 F. Supp. 3d 1007 (C.D. Cal. 2020) (television show "Tiger King"); *Caiz v. Roberts,* 382 F. Supp. 3d 942 (C.D. Cal. 2019) (record album "Mastermind"); *Capcom Co. v. MKR Grp., Inc.*, No. C 08-0904 RS, 2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) (video game "Dead Rising"); *Roxbury Ent. v. Penthouse Media Grp.,* 669 F. Supp. 2d 1170 (C.D. Cal. 2009) (film "Route 66"). The Supreme Court in *Jack Daniel's* did not once

*Jack Daniel's* did not involve film, book, or video game titles, and has no application to claims arising from such titles. Instead, *Jack Daniel's* involved trademark claims arising from a ***consumer product*** brand – namely, a dog toy shaped like a Jack Daniel's whiskey bottle, which was marketed as "Bad Spaniels," and which bore markings designed to mimic the distinctive Jack Daniel's whiskey label. In reversing the Ninth Circuit's ruling, the Supreme Court held that because VIP Products "used the marks derived from Jack Daniel's [as a designation of source for its own goods]," the *Rogers* test did not apply, and "the infringement claim here rises and falls on likelihood of confusion." *Jack Daniel's*, 599 U.S. at 153. However, the Supreme Court also was careful to note that "[t]oday's opinion is narrow" and it was not deciding the contours of the *Rogers* test or "whether the *Rogers* test is ever appropriate." *Id.* at 163.

Critically, the Supreme Court did ***not*** purport to limit application of the *Rogers* test when claims involve the ***titles*** of expressive works. Just the opposite. The Supreme Court discussed and cited ***with approval*** *Rogers* and *Mattel*. *Id*. at 154. The Supreme Court even quoted *Rogers* for the proposition that "the titles of 'artistic works,' like the works themselves, have an 'expressive element' implicating 'First Amendment values.'" *Id.* at 153. And the Supreme Court noted the key difference between claims involving titles of expressive works, and "the typical case [in which] the name of a ***product*** was more likely to indicate its source." *Id.* at 154 (emphasis added). The Supreme Court also reaffirmed *Mattel*, because the band's use of the word "Barbie" in its song title "did not 'speak[] to [the song's] origin.'" *Id.* (quoting *Mattel*, 296 F.3d at 902). And while the Supreme Court could have overturned *Empire* and *MGFB*, it did not do so, leaving this important appellate precedent unaffected in cases not involving ordinary consumer products.

---

mention, far less purport to overturn, any of these decisions, though it did cite to and address a number of other district court decisions.

6
**SUPPLEMENTAL BRIEF OF ACTIVISION PUBLISHING, INC.**

The distinction between artistic works and commercial products was a critical part of the Supreme Court's analysis. In citing *Rogers* and *Mattel*, the Supreme Court implicitly reaffirmed the proposition that consumers "do not regard titles of artistic works in the same way as the names of ordinary commercial products." *Rogers*, 875 F.2d at 1000. Thus, its decision – which involved an "ordinary commercial product" – does not and cannot foreclose the *Rogers* test from applying to cases (such as this one) involving two titles. Had it intended such a sweeping result (and to wipe away decades of authority) the Supreme Court would have stated as much, would not have cited *Rogers* and *Mattel*, and would not have emphasized the "narrow" scope of its decision.

Finally, Defendant's allegation that Activision used the "Warzone" title in marketing and promotion for its game (*see* Counterclaim, ¶¶ 19, 20) and applied for trademark protection for that title does not bring this case into the narrow holding of *Jack Daniel's*. In both *Rogers* and *Mattel*, the defendants engaged in a wide variety of marketing activities related to their works and their allegedly infringing titles, such as using photos of Ginger Rogers in advertising, 875 F.2d at 997, or using "Barbie Pink" in a music video, 28 F. Supp. 2d at 1152. As the Ninth Circuit noted in *Empire* (which was **not** addressed by the Supreme Court and remains good law), "works protected under [the *Rogers*] test may be advertised and marketed by name," because the "balance of First Amendment interests struck in *Rogers* and *Mattel* could be destabilized if the titles of expressive works were protected but could not be used to promote those works." 875 F.3d at 1197; *see also JTH Tax*, 2023 WL 6215299, at *6, n.2 (post-*Jack Daniel's* decision reinforcing that the use of a title in marketing and promotion does not preclude First Amendment protection under *Rogers*).

If the First Amendment permits the marketing of an artistic work under its title, then such protection also should not be lost merely because such advertising or promotion causes the title to acquire secondary meaning in the eyes of the

consuming public.  At least two district courts have so held.  *See Rebellion,* 2013 WL 1944888, *3 ("The *Rogers* court itself recognized that the titles of literary and artistic works could acquire secondary meaning and become eligible for protection as trademarks."); *Capcom*, 2008 WL 4661479 (defendant registered a trademark for "Dead Rising.").  At issue here is Activision's use of the word "warzone" ***in its title***; other uses are incidental to that.  As such, this case is analogous to *Rogers, Mattel, Empire, MGFB,* and the dozens of district court cases involving titles of expressive works.  Like those cases, Activision has used "warzone" to describe the content of its game, and has done so in a non-misleading manner.

### B. *Jack Daniels* Also Does Not Apply Because Activision Did Not Use Defendant's Alleged Trademark, It Used A Common English Word

*Jack Daniel's* also does not apply to this case because Defendant does not allege that Activision deliberately used ***Defendant's alleged trademark*** – *i.e.*, a mark with meaning, source-identifying significance, and goodwill belonging to Defendant – as its own.  Rather, the circumstances at issue here – namely, the coincidental use of a common English word in the titles of two expressive works – were not considered or addressed by the Supreme Court, and withdrawing First Amendment protection here would be antithetical to its analysis.

In *Jack Daniel's,* the Supreme Court focused on the "cardinal sin" of trademark law – namely, "to confuse consumers about source – to make [] them think that one producer's products are another's."  599 U.S. at 157.  It noted that "that kind of confusion is most likely to arise when someone uses ***another's trademark*** as a trademark – meaning, again, as a source identifier – rather than for some other expressive function."  *Id.* (emphasis added).

In *Jack Daniel's*, VIP Products knowingly and deliberately appropriated a well-known brand and incorporated it into its own "Bad Spaniels" brand.  The President of VIP Products conceded that his intent in producing the goods at issue was to parody "existing products."  *VIP Prod., LLC v. Jack Daniel's Properties,*

*Inc.*, 291 F. Supp. 3d 891, 898 (D. Ariz. 2018), *rev'd in part, vacated in part*, 953 F.3d 1170 (9th Cir. 2020), *vacated and remanded*, 599 U.S. 140 (2023).  He also intended to "match" the designs of Jack Daniel's to further evoke its offerings, and he understood that "Bad Spaniels" was "a reference" to Jack Daniel's.  *Id.*  In other words, VIP Products was using the **Jack Daniel's trademark** as its own.

The same is true for each of the cases cited by the Supreme Court as examples of decisions conducting "likelihood of confusion analys[e]s without mentioning *Rogers*."  599 U.S. at 155 (*citing Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 812-13 (2d Cir. 1999)) (versions of Harley-Davidson logo used "to brand" a repair and parts business through signage, a newsletter, and T-shirts with images "similar" to Harley-Davidson); *Tommy Hilfiger Licensing, Inc. v. Nature Labs LLC,* 221 F. Supp. 2d 410 (S.D.N.Y. 2002) (line of pet perfumes using the brand "Timmy Holedigger").  In each of these cases, the alleged infringer used the **plaintiff's trademark** to sell its own goods.  And in such cases, the Lanham Act's protection for these preexisting trademarks outweighed any free speech interests in the defendants' appropriation of those trademarks.

Activision is not using Defendant's alleged mark as a source identifier, because it is not using Defendant's mark at all.  Activision simply chose a "common English word" as the title for an installment of its franchise.  *Empire,* 875 F.3d at 1198.  Defendant **admits** that Activision chose the word **not** to confuse consumers or trade off its own goodwill, but "for some other expressive function" (*id.* at 157) – namely, because the game takes place in a warzone.  *See* Countercl. ¶ 16 (admitting that Activision's game "features a very large [] battlefield (or 'warzone') . . . player parachute onto the warzone . . . . In the warzone, players may encounter a variety of military-style equipment . . . ").  Even the exemplar images included in Defendant's Counterclaim (¶¶ 19, 21) reflect that *COD:WZ*'s marketing is always associated with *Call of Duty* (not Defendant's game) and is always accompanied by images of other *Call of Duty* games, *Call of Duty*

characters and artwork, *Call of Duty* weapons, and related *Call of Duty* logos such as the stylized "MW" logo (representing the game *Call of Duty: Modern Warfare*.) This is the complete opposite of *Jack Daniel's,* where VIP Products created a product that was designed for the purpose of evoking (and poking fun at) the famous Jack Daniel's brand.

The Supreme Court did not address ***at all*** – and certainly did not intend to withdraw First Amendment protection from – expressive uses of independently meaningful words in book, movie, or game titles. To the contrary, it left intact the bedrock principles expressed in *Mattel* that trademark owners do "not have the right to control public discourse whenever the public imbues [a] mark with a meaning beyond its source-identifying function" and that the First Amendment protects uses of words and phrases that "become … part of our vocabulary." *Mattel*, 296 F.3d at 900. And, by limiting its discussion only to those cases where the defendant created and exploited a brand that was intentionally derived from (and intended to evoke) a pre-existing brand, the Supreme Court exempted from its decision those situations in which two artistic works share a similar title. If First Amendment protection were denied here, then every person or entity who used a common word in its book, movie, or game title could subject the author of a later work using such words in its title to costly trademark litigation. The chilling effect resulting from such a rule was not contemplated by the Supreme Court in its "narrow" decision.

## Conclusion

For the foregoing reasons, the Court should hold that *Jack Daniel's* does not impact this case, and should again grant Activision's Motion.

DATED:  November 17, 2023        MITCHELL SILBERBERG & KNUPP LLP

By:  /s/ Marc E. Mayer
　　　Attorneys for Activision Publishing, Inc.