1
2
3
4
5
6
7
8
9
10
11
12
13
14

Alyssa K. Schabloski (SBN 258876)
aks@gladiuslaw.com
GLADIUS LAW, APC
2708 Wilshire Blvd., No. 426
Santa Monica, CA 90403
Tel: (310) 734-0720

Brett E. Lewis (*pro hac vice*)
brett@iLawco.com
Roberto Ledesma (*pro hac vice*)
roberto@ilawco.com
Michael D. Cilento (*pro hac vice*)
michael@iLawco.com
LEWIS & LIN, LLC
77 Sands Steet, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326

*Attorneys for Warzone.Com, LLC*

15
16
17

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| ACTIVISION PUBLISHING, INC. | CASE NO. 2:21-cv-3073-FLA (JCx) |
| *Activision / Counterclaim Warzone*, | **RESPONSIVE SUPPLEMENTAL BRIEF OF WARZONE.COM, LLC, IN OPPOSITION TO ACTIVISION'S MOTION (AND PURSUANT TO ORDER REOPENING ACTION (DKT. # 63))** |
| v. | |
| WARZONE.COM, LLC, | |
| *Warzone / Counterclaimant*. | |

1

## **Table of Contents**

2

3

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT ...............................................................................................................2

  I.   ACTIVISION'S USE OF "WARZONE" IS AS A
      SOURCE IDENTIFIER. ..................................................................................2

  II.  THE ALLEGATIONS IN THE COUNTERCLAIMS, TAKEN AS TRUE,
      ALLEGE THAT ACTIVISION IS INDEED USING "WARZONE" AS A
      TRADEMARK. ................................................................................................7

CONCLUSION ............................................................................................................9

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

**<u>Table of Authorities</u>**

**Cases**

*Bellagio Jewelry, Inc. v. Croton Watch, Co.*,
  No. CV 06-6662 ODW (RZx), 2008 WL 3905895 (C.D. Cal. Aug. 20, 2008) .....8

*Boldface Licensing + Branding v. By Lee Tillett, Inc.*,
  940 F. Supp. 2d 1178 (C.D. Cal. 2013) ...............................................................9

*Davis v. Amazon.com, Inc.*,
  Case No. 2:21-cv-02090-JVS(JDEx), 2023 WL 8113299
  (C.D. Cal. Nov. 2, 2023) .....................................................................................6

*Diece-Lisa Industries, Inc. v. Disney Store USA, LLC*,
  CV 20-09147 TJH (JCx) (C.D. Cal. July 1, 2021). ............................................2

*Jack Daniel's Props., Inc. v. VIP Prods.* LLC,
  599 U.S. 140 (2023) ..................................................................................... passim

*JTH Tax LLC v. AMC Networks Inc.*,
  22 Civ. 6526 (PGG), 2023 WL 6215299 (S.D.N.Y. Sept. 25, 2003) .....................5

*Lodestar Anstalt v. Bacardi & Co.*,
  Case No. 2:16-cv-06411-CAS (FFMx), 2019 WL 8105378
  (C.D. Cal. July 30, 2019) .....................................................................................8

*Louis Vuitton Malletier S. A. v. Warner Bros. Entertainment Inc.*,
  868 F.Supp.2d 172 (S.D.N.Y. 2012) ....................................................................5

*Mattel, Inc. v. MCA Records, Inc.*,
  296 F.3d 894 (9th Cir. 2002) ...............................................................................4

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989)........................................................................ passim

*University of Ala. Bd. of Trustees v. New Life Art, Inc.*,
  683 F.3d 1266 (2012)............................................................................................5

**Rules**

Rule 12(b)(6)...........................................................................................................7

1         Defendant/Counterclaimant Warzone.com, LLC ("Warzone" or

2    "Counterclaimant"), respectfully submits this responsive supplemental brief to

3    address the points raised by Plaintiff/Counter Defendant Activision Publishing,

4    Inc. ("Activision") in its supplemental brief (the "Suppl. Br.," Dkt. # 66).  The

5    impact of *Jack Daniel's Props., Inc. v. VIP Prods*. LLC, 599 U.S. 140 (2023)

6    ("*Jack Daniel's*") is that the August 15, 2022, Order ("Order," Dkt. # 57) granting

7    Activision's Motion to Dismiss Counterclaims and Motion for Judgment on the

8    Pleadings (the "Motion") should be reversed and denied.  Because Activision is

9    using Counterclaimant's WARZONE™ mark as a source identifier and trademark,

10   the "special First Amendment protection" provided in *Rogers v. Grimaldi*, 875

11   F.2d 994 (2d Cir. 1989) no longer applies.  *See Jack Daniel's*, 599 U.S. at 146.

12   **PRELIMINARY STATEMENT**

13        *Jack Daniel's* held: "Without deciding whether *Rogers* has merit in other

14   contexts, we hold that it does not when an alleged infringer uses a trademark in the

15   way the Lanham Act most cares about: as a designation of source for the

16   infringer's own goods." *Jack Daniel's*, 599 U.S. at 153.  Warzone's

17   Counterclaims in this action (the "Counterclaims," Dkt. # 52) allege that Activision

18   is using Counterclaimant's WARZONE™ mark as a source identifier that is

19   confusing the consuming public into associating "Warzone" with Activision's Call

20   of Duty products—rather than with Warzone and its WARZONE™-branded

21   products, infringing Warzone's senior rights in the WARZONE™ mark.  (*See*

22   Counterclaims ¶ 23 ("Given the popularity of [Activision]'s Call of Duty franchise,

23   its adoption of the WARZONE Mark as the dominant junior user has saturated the

24   market with an identical mark in a manner that has overwhelmed [Warzone], the

25   senior user."); *see also id.* ¶¶ 19-21, 24, 27.)  Warzone's allegations, assessed in

26   light of *Jack Daniel's*, state claims for unfair competition and trademark

27   infringement under a reverse confusion theory.

28

1

1    The Order, entered in August 2022, applied the First Amendment-based test

2    articulated in *Rogers*.  (*See* Order at 5.)  After *Jack Daniel's*, however, "[t]he

3    [trademark] infringement issue is the more substantial."  *Jack Daniel's*, 599 U.S. at

4    145.  Accordingly, the granting of the declaratory relief and dismissal of the

5    Counterclaims on the basis of *Rogers* can no longer stand.

6                                    **ARGUMENT**

7    **I.    ACTIVISION'S USE OF "WARZONE" IS AS A SOURCE**

8          **IDENTIFIER.**

9          The Counterclaims allege reverse confusion, whereby Activision, as the

10   junior user but with the more dominant market position, leveraged that position to

11   overwhelm Warzone's ability to use its WARZONE™ mark, even though

12   Warzone is the senior user. [1] (*See id.* ¶¶ 20-23.)  The Counterclaims clearly allege

13   that the infringing use by Activision of "WARZONE" is as a source identifier or

14   trademark for Activision's products.  (*See id.* ¶¶ 19-22, 38; *see also id.* ¶¶ 12-15.)

15         Much of the Suppl. Br. (e.g., Suppl. Br. at 1-8) is devoted to Activision's

16   insistence that, if this Court will simply characterize Activision's use of

17   "WARZONE" as a "title" for an "expressive work," *Jack Daniel's* may be ignored.

18   (*See* Suppl. Br. at 1; *see also id.* at 6 ("*Jack Daniel's* did not involve film, book, or

19

20

21         _____

22

23   [1]    Another case involving reverse confusion that originated in this Court,
24   *Diece-Lisa Industries, Inc. v. Disney Store USA, LLC*, CV 20-09147 TJH (JCx),
     has been granted *certiorari* by the Supreme Court, *see* 143 S.Ct. 2634 (2023), and
25   the order of the Ninth Circuit affirming dismissal of the trademark infringement
26   claim on *Rogers* grounds has been vacated for further proceedings before this
     Court in light of *Jack Daniel's*.  No. 21-55816, 2023 WL 5541556 (9th Cir. Aug.
27   25, 2023).

28

                                             2

1   video game titles, and has no application . . . .").)  Activision's argument is without

2   merit.[2]

3          Assuming *arguendo* that there is an aspect of Activision's use of

4   "WARZONE" that includes expression as a "title," that is no longer enough to

5   apply *Rogers*.  As the Supreme Court recognized in *Jack Daniel's*, many

6   trademarks have an expressive component to them, but the existence of some

7   expressive function can no longer supplant the Lanham Act with *Rogers*.  *Jack*

8   *Daniel's*, 599 U.S. at 158 ("[T]rademarks are often expressive, in any number of

9   ways.")  That is why the Supreme Court made clear that, notwithstanding some

10  expressive aspect to a trademark, the trademark "infringement issue is the more

11  substantial."  *Id*. at 145.

12         Ignoring the clear import of *Jack Daniel's*, Activision argues for the exact

13  outcome the Supreme Court rejected.  The Supreme Court determined that, in the

14  years since *Rogers* was decided in 1989, focus had in some cases shifted from a

15  likelihood of confusion analysis under the Lanham Act to an evaluation of

16  expressive content.  *See id*. at 158.  *Jack Daniel's* was meant to halt the expansion

17  of *Rogers*, which was "always . . . a cabined doctrine," *id.* at 155, and return the

18  trademark infringement issue to the forefront.  (*See id*. at 158-59 ("[F]ew cases

19  would even get to the likelihood-of-confusion inquiry if all expressive content

20  triggered . . . *Rogers* . . . .  [T]he *Rogers* exception would become the general rule,

21  in conflict with courts' longstanding view of trademark law.")).  The potential for

22  *Rogers* to "take over much of the world" was what the Supreme Court sought to

23

24  ───────────────

25

26  [2]     Activision argues that *Jack Daniel's* "involved (1) **an ordinary consumer**

27  **product**" (Supp. Br. at 2) (emphasis in original), but fails to articulate any basis for
    excluding video games from Activision's self-serving categorization of "ordinary

28  consumer products."

1   forestall, *see id.* at 158, yet that is what Activision advocates.  (*See, e.g.,* Suppl. Br.

2   at 7.)

3          Activision urges this Court, notwithstanding *Jack Daniel's*, to continue to

4   apply *Rogers* to the Counterclaims because "the Supreme Court did not purport to

5   limit application of the *Rogers* test when claims involve the titles of expressive

6   works."  (Suppl. Br. at 6 (emphasis in original).)  Activision then stresses that in

7   *Jack Daniel's*, *Rogers* and *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th

8   Cir. 2002) were "discussed and cited **with approval**."  (Suppl. Br. at 6 (emphasis in

9   original).)

10         Activision omits exactly *what* about *Rogers* and *Mattel* the Supreme Court

11  cited with approval, which was that "lower courts adopting *Rogers* have *confined* it

12  to similar cases, in which a trademark is used not to designate a work's source, but

13  *solely* to perform some other expressive function."  *Jack Daniel's*, 599 U.S. at 154

14  (emphasis added).  *Mattel*, as the Supreme Court explained, involved the song

15  "Barbie Girl," but the references to "Barbie" did not infringe Mattel's trademark

16  because the "Barbie" in "Barbie Girl" did not identify the origin of the song.  *See*

17  *id.* (discussing *Mattel*, 296 F.3d at 901).  What the Supreme Court discussed with

18  approval about *Rogers* and *Mattel* is what Warzone argues here—that *Rogers* and

19  its progeny must, in light of *Jack Daniel's*, be "cabined" to cases where expressive

20  function is a mark's sole function.  That is not the case here because Activision's

21  use of "WARZONE" is not "solely" expressive; it is to associate Activision's

22  "WARZONE" products with its well-known Call of Duty products and thus to

23  Activision itself.[3]

24  ─────────────────

25

26  [3]    Activision attempts to make much of the fact that the Supreme Court did not

27  overturn *Rogers* and the cases that have applied *Rogers* since 1989, (*see* Suppl. Br. at 6), but the Supreme Court made clear that *Jack Daniel's* was not meant to be

28  such a sweeping opinion.  Instead, the Supreme Court made its purpose clear:

*JTH Tax LLC v. AMC Networks Inc.*, 22 Civ. 6526 (PGG), 2023 WL 6215299 (S.D.N.Y. Sept. 25, 2003), decided after *Jack Daniel's*, shows how the *Rogers* exception should be applied and how inapposite *Rogers* is to this case. *JTH* involved a trademark holder who claimed trademarks associated with its tax preparation service.  An episode of the series *Better Call Saul*, produced by Sony Pictures Television Inc. ("Sony") and shown on the AMC channel ("AMC"), featured a fictional tax service that used what the trademark holder alleged to be "an obvious imitation" of its trademarks.  *See JTH*, 2023 WL 6215299, at *2.  The Court in *JTH* determined that, after *Jack Daniel's*, *Rogers* still applied to the marks at issue because their use was as an expressive plot point, not to identify Sony, AMC or any of their products.  *See id.,* at *7 ("The Amended Complaint does not allege that [Sony and AMC] used [p]laintiff's marks to identify the source of Better Call Saul or any . . . [Sony or AMC] products . . . .").[4]  In contrast, the Counterclaims allege that Activision is using "WARZONE" to sell and identify its products.  (Counterclaims ¶¶ 12-15, 20-23.)

---

"[W]hatever you make of *Rogers*—and again, we take no position on that issue—it has always been a cabined doctrine." *Jack Daniels*, 599 U.S. at 155.  What Warzone argues here is that, consistent with the Supreme Court's mandate to keep *Rogers* a "cabined doctrine," it should not be applied to the Counterclaims.

[4]    *JTH* is thus similar to the situation presented in the *Louis Vuitton Malletier S. A. v. Warner Bros. Entertainment Inc.*, 868 F.Supp.2d 172 (S.D.N.Y. 2012) case and the *University of Ala. Bd. of Trustees v. New Life Art, Inc.*, 683 F.3d 1266, 1279 (2012) case discussed in *Jack Daniel's*.  *See Jack Daniel's*, 599 U.S. at 154. As the Supreme Court explained in its analysis of both cases, the disputed use was not of a trademark as a trademark but, in the *New Life* case, "solely to 'memorialize' a notable event in 'football history,'" and, in the *Louis Vuitton* case, as a comedic plot point in *The Hangover: Part II*.  *Jack Daniel's*, 599 U.S. at 154. That made the application of *Rogers* appropriate in those cases, but that is not the situation presented in this case.

5

1    Activision further argues that, without *Rogers*, the ability to provide

2  expressive content and the associated First Amendment protections will be lost.

3  (*See* Suppl. Br. at 7-8.)  The Supreme Court anticipated and addressed that concern

4  in *Jack Daniel's*, explaining that "expressive content . . . may properly figure in

5  assessing the likelihood of confusion."  *Jack Daniel's*, 599 U.S. at 161.  Whatever

6  expressive content there is in Activision's use of "WARZONE" can be taken into

7  account as part of a likelihood of confusion analysis but cannot be used to dispense

8  with a likelihood of confusion analysis altogether.

9    A case from this District, also decided after *Jack Daniel's*, is instructive.

10  *See Davis v. Amazon.com, Inc.*, Case No. 2:21-cv-02090-JVS(JDEx), 2023 WL

11  8113299 (C.D. Cal. Nov. 2, 2023).  In *Davis*, before *Jack Daniel's* was decided,

12  the plaintiff's allegations of trademark infringement were dismissed twice on

13  motions to dismiss in light of *Rogers*.  *See id.*, at *3.  *Davis* involved two titles—

14  one for a book and one for a film—both using the word "Gringo."  *See id.*, at *1-2.

15  After *Jack Daniel's*, this Court re-assessed the allegations in the operative

16  complaint in *Davis* to determine whether *Rogers* should still be applied and

17  reached precisely the conclusion on the applicability of *Rogers* that should be

18  reached here:  "While a source-identifying . . . title may have an expressive aspect,

19  it may no longer seek shelter under *Rogers* from the Lanham Act likelihood-of-

20  confusion test following *Jack Daniel's*."  *Id.*, at *5.  Ultimately, this Court in *Davis*

21  did dismiss the operative complaint, but it did so under a likelihood of confusion

22  analysis, determining that certain factors, including the "dissimilarity" in the

23  appearance of the marks and the divergent marketing channels, allowed consumers

24  "to easily distinguish" between the book and film.  *Id.*, at *8-9.  Likewise in this

25  case, Activision may present arguments on the likelihood of confusion factors, but

26  it has no basis for insisting that this Court apply *Rogers* instead.

27

28

6

1
2

## II.   THE ALLEGATIONS IN THE COUNTERCLAIMS, TAKEN AS TRUE, ALLEGE THAT ACTIVISION IS INDEED USING "WARZONE" AS A TRADEMARK.

3
4
5
6

In the Suppl. Br., Activision tries hard to claim that its use of "WARZONE" is simply as a "common English word," not as a trademark.  (Suppl. Br. at 8-10.) That argument is unavailing.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

*First*, the Counterclaims were dismissed pursuant to Rule 12(b)(6).  At the 12(b)(6) stage, the allegations in the Counterclaims are to be accepted as true, and the arguments Activision raises about its use of "WARZONE" raise factual disputes that cannot be resolved under Rule 12(b)(6).  What is alleged in the Counterclaims is that Activision's use of "WARZONE" is as a trademark given that:  (A) Activision applied to register "WARZONE" with the United States Patent & Trademark Office (Counterclaims ¶ 12) and (B) Activision is using "WARZONE" to sell its products, including its popular Call of Duty products (*see id.* ¶¶ 19-22).  At this stage, the factual allegations in the Counterclaims are accepted as true, and Activision's arguments about the "coincidental" nature of its use of "WARZONE" do not supersede Warzone's allegations, or justify their dismissal as a matter of law.  Activision's arguments about how and why it came to use "WARZONE" in connection with its products should be considered as part of a likelihood of confusion analysis.  Those arguments do not demonstrate that, even though Activision has sought trademark registration for "WARZONE" and it uses "WARZONE" to identify Activision products, including its Call of Duty products (Counterclaims ¶¶ 12, 19-22), Activision is nonetheless not using "WARZONE" as a trademark.  Activision's attempt to raise factual issues that

25
26
27
28

1 │ dispute the allegations in the Counterclaims does not justify continued application

2 │ of *Rogers* in lieu of a likelihood of confusion analysis.[5]

3 │   *Second*, Activision insists that it cannot be using "WARZONE" as a

4 │ trademark because it is not seeking to "trade off on the goodwill of Warzone's

5 │ purported trademark," (Suppl. Br. at 3), characterizing Warzone as "the maker of a

6 │ little-known . . . game" (*id*. at 1).  This argument does not account for the fact that

7 │ Warzone is asserting a claim for reverse—not forward—confusion.

8 │   As discussed above (*see* discussion *supra* at 1-2), the Counterclaims allege

9 │ that Activision is using "WARZONE" as a source identifier for its popular Call of

10 │ Duty products, leveraging its existing market position to overwhelm

11 │ Counterclaimant's ability to use its registered WARZONE™ mark to which it has

12 │ the senior right.  (*See also* Counterclaims ¶ 23.)  A reverse confusion case presents

13 │ "the calamitous situation . . . [where] a larger, more powerful company usurp[s] the

14 │ business identity of a smaller senior user."  *Bellagio Jewelry, Inc. v. Croton Watch,*

15 │ *Co.*, No. CV 06-6662 ODW (RZx), 2008 WL 3905895, at *5 (C.D. Cal. Aug. 20,

16 │ 2008).

17 │   The "calamitous situation" this Court has previously recognized is precisely

18 │ what the Counterclaims present.  The Counterclaims allege that consumers have

19 │ "flood[ed]" Warzone with communications because they were actually confused

20 │ "as to the source, origin, or sponsorship of 'Call of Duty: Warzone.'"

21 │ (Counterclaims ¶ 24; *see also id.* ¶¶ 25-26.)

22 │

23 │

24 │ [5] For reverse confusion cases, this Court identified three factors that are
25 │ "particularly important"—arbitrariness of the marks, similarity of the marks and
  relatedness of the goods.  *Lodestar Anstalt v. Bacardi & Co.*, Case No. 2:16-cv-
26 │ 06411-CAS (FFMx), 2019 WL 8105378, at *6 (C.D. Cal. July 30, 2019).  To the
  extent that it can, Activision may certainly attempt to present evidence showing
27 │ that those factors do not support any likelihood of confusion determination in this
28 │ case.

1     Activision's argument that it could not be trading off of Warzone's goodwill

2 because Warzone is not well known does not demonstrate that Activision is not

3 using "WARZONE" as a trademark.  If anything, that argument demonstrates how

4 squarely the Counterclaims fall within the ambit of a claim for reverse confusion,

5 which is designed to "protect the small senior user from losing control over its

6 identity in 'the rising tide of publicity associated with the junior mark.'"  *Boldface*

7 *Licensing + Branding v. By Lee Tillett, Inc.*, 940 F. Supp. 2d 1178, 1187 (C.D. Cal.

8 2013) (citation omitted).

9 **CONCLUSION**

10     In light of the foregoing, and in light of *Jack Daniel's,* Warzone respectfully

11 requests that this Court reverse the Order, deny Activision's Motion, and award

12 such other and further relief as this Court deems just and proper.

13

14 DATED: December 8, 2023

15                         Brett E. Lewis

16                         Roberto Ledesma
                        Michael D. Cilento

17                         **LEWIS & LIN, LLLC**

18

19                         Alyssa Schabloski
                        **GLADIUS LAW, APC**

20                         By: _____

21                         Michael D. Cilento (*pro hac vice*)

22                         *Attorneys for Warzone.com LLC*

23

24

25

26

27

28
9