MARC E. MAYER (SBN 190969)
  mem@msk.com
KARIN G. PAGNANELLI (SBN 174763)
  kgp@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA  90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

LINDSAY R. EDELSTEIN (*pro hac vice*)
  lre@msk.com
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Ave., 25th Floor
New York, New York 10022-7001
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

*Attorneys for Activision Publishing, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTIVISION PUBLISHING, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>WARZONE.COM, LLC,<br><br>Defendant.<br><br>WARZONE.COM, LLC,<br><br>Counterclaimant,<br><br>v.<br><br>ACTIVISION PUBLISHING, INC., a Delaware corporation,<br><br>Counterclaim-Defendant. | CASE NO. 2:21-cv-3073-FLA (JCx)<br><br>[Assigned to Judge Fernando L. Aenlle-Rocha]<br><br>**REPLY MEMORANDUM IN SUPPORT OF SUPPLEMENTAL BRIEF OF ACTIVISION PUBLISHING, INC. RE MOTION TO DISMISS AND/OR FOR JUDGMENT ON THE PLEADINGS** |

**SUPPLEMENTAL REPLY BRIEF OF ACTIVISION PUBLISHING, INC.**

# INTRODUCTION

Defendant's Supplemental Brief largely ignores the issues raised in Activision's filing – namely, that *Jack Daniel's* did not address titles of expressive works, especially when the junior user's title is a common word that was selected without any intent to trade off the goodwill of the senior user's alleged mark. Instead, Defendant focuses on whether Activision's title is alleged to have been used in a manner that gives it "source-identifying" power, ignoring the context in which *Jack Daniel's* was decided and the facts at issue in that case. As set forth in Activision's supplemental brief, *Jack Daniel's* dealt with a specific set of circumstances and was expressly intended to be a "narrow" opinion, not the sweeping sea change Defendant advocates for. Accordingly, as intended by the Supreme Court, *Jack Daniel's* must be limited to its facts and should not be applied in cases, such as this one, involving the coincidental use of a common word in the titles of two expressive works. Any other conclusion would expand the decision beyond its intended reach and chill expressive speech.

## I.   THE INCIDENTAL USE OF A COMMON WORD IN THE TITLE OF AN EXPRESSIVE WORK IS STILL PROTECTED UNDER *ROGERS*

### A.   *Jack Daniel's* Acknowledged That Titles Of Expressive Works Have An Expressive Purpose And Implicate Free Speech Rights.

Defendant does not dispute that *Jack Daniel's* did not involve trademark claims arising from ***titles*** of an ***expressive work***, and thus did not purport to overturn *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) or the many Ninth Circuit cases applying *Rogers* to the titles of expressive works, such as *Mattel v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002); *Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192 (9th Cir. 2017), or *Dr. Seuss Enters. L.P. v. ComixMix LLC,* 983 F.3d 443 (9th Cir. 2020).

Defendant also does not dispute that well-established Ninth Circuit authority – including *Rogers* and *Mattel*, **both** of which were cited by the Supreme Court –

expressly recognized that titles of expressive works are fundamentally different from trademarks used in connection with non-expressive, consumer products or services such as rubber chew toys, 599 U.S. at 155, or motorcycle repair shops. *Id.* (citing *Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 812–813 (1999)). This is because, as *Rogers* explained, consumers "do not regard titles of artistic works in the same way as the names of ordinary commercial products." *Rogers*, 875 F.2d at 1000; *see also Mattel,* 296 F.3d at 902 ("A title tells us something about the underlying work but seldom speaks to its origin[.]"). Indeed, the Second Circuit noted earlier this month that "*Jack Daniel's* is a case 'about toys and whiskey,'" and that "[c]ourts in this Circuit have been careful to apply *Rogers* to a limited category of expressive works, ***including the title and cover of books and magazines***." *Vans, Inc. v. MSCHF Prod. Studio, Inc.,* -- F.4th --, 2023 WL 8385065, *5 (Dec. 5, 2023) (emphasis added).[1] Thus, even if the Supreme Court intended for *Rogers* to remain a "cabined" doctrine (Def. Br. at 4), book, film, and game titles fall squarely within the confines of the doctrine. *See also Jack Daniel's*, 599 U.S. at 154 (*Rogers* distinguished between titles "with at least some artistic relevance" and "the name of a product").

Rather than address the specific issue of whether *Rogers* remains good law with respect to titles of expressive works, Defendant paints *Jack Daniel's* with an overly broad brush, interpreting the case in a manner that would effectively extinguish *Rogers* and *Mattel*. Specifically, Defendant apparently claims that unless the title ***exclusively*** performs an expressive function, and has no commercial purpose, *Rogers* does not apply. But that is not what *Rogers* held. It held that "[t]itles, like the artistic works they identify, are of a hybrid nature, combining

---

[1] Defendant's suggestion that there is no "basis for excluding video games from …'ordinary consumer products'" ignores the Supreme Court's holding in *Brown v. Entertainment Merchants Ass'n,* 564 US 786, 790 (2011) ("[V]ideo games communicate ideas – and even social messages – through many familiar literary devices… and through features distinctive to the medium . . . That suffices to confer First Amendment protection.").

artistic expression and commercial promotion." *Rogers*, 875 F.2d at 998. Moreover, in both *Rogers* and *Mattel,* the defendants promoted and advertised their works using the titles "Ginger and Fred" and "Barbie Girl."[2] Thus, the Supreme Court necessarily concluded that some commercial or marketplace exploitation of a title would not remove the use from First Amendment protection. That is exactly the case here; Defendant does not allege that Activision selected the title "Call of Duty: Warzone" for any purpose other than an expressive one – namely, to accurately describe the content of the game using a word that has "enter[ed] our public discourse and become an integral part of our vocabulary." *Mattel,* 296 F.3d at 900. Having done so, Activision was entitled to exploit its game in the marketplace using the title it selected. *See Empire,* 875 F.3d 1196-97 ("[W]orks protected under [the *Rogers*] test may be advertised and marketed by name.").

Under Defendant's reading of *Jack Daniel's,* a movie studio, game publisher, or author would be entitled to First Amendment protection with respect to its selection of an artistically relevant *title,* but would then lose that protection if and when it marketed, advertised, or promoted its work using that title. Such a reading would eviscerate the *Rogers* test in the very circumstances in which the *Rogers* decision was rendered. That cannot have been the Supreme Court's intent. For that reason, even the post-*Rogers* cases cited by Defendant did not go as far as Defendant urges. *See, e.g., JTH Tax,* 2023 WL 6215299, at *6, n.2 (use of a title in marketing and promotion does not preclude First Amendment protection under *Rogers*). In fact, Defendant recognizes that "*Jack Daniel's* was not meant to be

---

[2] Defendant argues (at 4) that because *Rogers* and *Mattel* involved references to pre-existing marks within expressive works (i.e. "Ginger Rogers" and "Barbie"), such uses were *solely* expressive, and the only type of uses to receive *Rogers* protection post-*Jack Daniel's*. In other words, Defendant argues *Rogers* now only applies to a narrow subset of "referential" uses. But what Defendant does not consider, and which further underscores Plaintiff's argument in Section I.B herein, is that *Jack Daniel's* did not address at all expressive conduct outside the context of such referential uses (such as when the expressive use is of a common descriptive word without any intent to refer to or trade off another's mark.)

such a sweeping opinion." Def. Br. at 4, n.3.[3]

### B. *Jack Daniel's* Is Especially Inapplicable Because Activision Is Not Alleged To Have Traded Off Defendant's Goodwill In Its Title.

Defendant concedes that "warzone" is a common English word (and, in fact, is used in many video game titles.) Answer ¶ 21. Defendant also concedes it does not allege or claim in this action that Activision used the term "warzone" to intentionally trade off Defendant's goodwill and confuse consumers. This is critical, because even Defendant agrees that *Jack Daniel's*, at its heart, is a case about the appropriation of a well-known logo on a consumer product. *See Jack Daniel's,* 599 U.S. at 157 ("cardinal sin" of trademark law is "to confuse consumers about source, which "is most likely to arise when someone uses ***another's trademark*** as a trademark") (emphasis added); *see also Vans*, 2023 WL 8385065, at *7 (defendant "sought to benefit from the 'good will' that [plaintiff] . . . had generated over a decades-long period") (citing *Jack Daniels*, 599 U.S. at 156). Thus, even if *Jack Daniel's* could be read to encompass titles, it did not purport to cover – and did not address – the purely coincidental use of a common English word in the title of two creative works. This latter situation (which is the case here) triggers the Ninth Circuit's warning that a trademark owner does "not have the right to control public discourse whenever the public imbues [a] mark with a meaning beyond its source-identifying function." *Mattel*, 296 F.3d at 900.

*Davis v. Amazon.com,* 2023 WL 8113299, confirms this distinction. In *Davis,* the plaintiff (unlike Defendant here) alleged that the title of the film at issue, "Gringo," was ***not*** chosen for purely artistic reasons. Instead, the plaintiff alleged that the defendants originally chose a different name, but changed the name

---

[3] *JTH Tax,* does not change the analysis, as it did not address whether or how *Jack Daniel's* applied to titles of expressive works. Rather, the case involved the use of the Plaintiff's trademark ("Liberty Tax Service") in the content of the defendant's television show. Even then, the Court noted that the use of the disputed mark in promoting the television show (*e.g.*, in social media posts, trailers, and even merchandise) would not forfeit First Amendment protection.

4
**SUPPLEMENTAL REPLY BRIEF OF ACTIVISION PUBLISHING, INC.**

Mitchell Silberberg & Knupp LLP

because of the success of the plaintiff's book and had "the actual and purposeful intention to deceive, mislead, and cause confusion…" *Id.,* at *2.  Moreover, in assessing the impact of *Jack Daniel's*, Judge Selna did not conclude that the defendant used "Gringo" as a source identifier for the *film*; rather, *Rogers* did not apply because the complaint alleged that "Gringo" had become "a ***source identifier of the Book***." *Id.,* at *6 ("The SAC [alleges] widespread promotion, sales and readership of the Book," "favorable reviews," and the "long-running appearance [] on [] bestseller lists," thereby "imbu[ing] the GRINGO title with secondary meaning.").  Thus, the court held the allegations sufficiently alleged the ***plaintiff*** possessed a protectable mark in its title and the defendant was trading off the mark.

Finally, this analysis does not change merely because Defendant alleges "reverse confusion."  To the contrary, the fact that this case involves "reverse confusion" with respect to two titles further distinguishes this case from *Jack Daniel's*.  The Supreme Court did not even mention, far less consider, reverse confusion.  Applying a full-scale "likelihood of confusion" analysis to this case likely would be among the "rare situations" identified by the Supreme Court in which such test fails to account for the interest in free expression.  599 U.S. at 1591.  To deny First Amendment *Rogers* protection to a title of a creative work that happens to share one or more common words with a little known pre-existing work would upend the rights of authors, artists, and other creators – effectively walling off common words (*e.g.*, "alien," "dungeon," or "castle") merely because another little-known work previously used the same word in its title.  There is no indication that this was within the Supreme Court's contemplation.

## CONCLUSION

For the foregoing reasons, the Court should hold that *Jack Daniel's* does not impact this case, and should again grant Activision's Motion.

| | | |
|---|---|---|
| 1 | DATED:  December 15, 2023 | MITCHELL SILBERBERG & KNUPP LLP |
| 2 | | |
| 3 | | By:  /s/ Marc E. Mayer |
| | | Attorneys for Activision Publishing, Inc. |