MARC E. MAYER (SBN 190969)
  mem@msk.com
KARIN G. PAGNANELLI (SBN 174763)
  kgp@msk.com
ALEXANDRA L. ANFUSO (SBN 333440)
  ala@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

LINDSAY EDELSTEIN (*pro hac vice*)
  lre@msk.com
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Ave., 25th Floor
New York, New York 10022-7001
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

Attorneys for Activision Publishing, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTIVISION PUBLISHING, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>WARZONE.COM, LLC,<br><br>    Defendants.<br><br>WARZONE.COM, LLC,<br><br>    Counterclaimant,<br><br>    v.<br><br>ACTIVISION PUBLISHING, INC., a Delaware corporation,<br><br>    Counterdefendant. | CASE NO. 2:21-cv-3073-FLA (JCx)<br><br>[Discovery Document: Referred To Magistrate Judge Jacqueline Chooljian]<br><br>**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF ACTIVISION PUBLISHING, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORY 14 (REGARDING DAMAGES) AND DOCUMENT REQUESTS 102 AND 67 (REGARDING REVENUE AND EXPENSES)**<br><br>[Declaration of Marc E. Mayer filed concurrently herewith]<br><br>Hearing Date: October 29, 2024<br>Hearing Time: 9:30 a.m.<br>Fact Discovery: December 17, 2024<br>Pretrial Conference: May 19, 2025<br>Trial: May 27, 2025 |

### Introduction

Warzone's response to the discrete discovery issues raised by Activision leans heavily on rhetoric and feigned outrage, but ultimately confirms that Warzone has not provided, and does not intend to provide, the critical information and documents requested by Activision. Far from being "academic" or "specious," (Joint Stipulation ("JS") at 5-7), the purpose of this Motion is simply to obtain fundamental damages and financial information that Activision has sought for months. Activision is entitled to a fulsome response to Interrogatory 14 – specifically, a coherent factual explanation of how the value of Warzone's alleged mark has been damaged by the alleged infringement and how it intends to calculate that damage. Activision also is entitled to detailed financial information (especially regarding its costs and expenses) – not merely top-line, undifferentiated numbers. Warzone possesses this information, and has no basis to withhold it.

## I. WARZONE'S RESPONSE TO INTERROGATORY 14 REMAINS INSUFFICIENT.

Interrogatory 14 seeks basic and highly relevant information – namely, articulation of Warzone's damages theories and claimed injury. Warzone apparently admits that its initial response (which it refused to supplement until *after* receiving this motion) was evasive. But Warzone's supplemental response *still* fails to answer the basic question: what *damage* does Warzone claim that its "brand" suffered as a result of the infringement? Warzone's over-the-top hyperbole and specious procedural arguments are unpersuasive.

As a threshold matter, Warzone's assertion that its supplemental response to Interrogatory 14 "mooted" Activision's motion is incorrect and illogical. For months, Activision has been attempting to obtain a fulsome, straightforward response to this Interrogatory. In multiple discovery conferences, Warzone repeatedly argued that it would not disclose its damages theories or calculations until its expert disclosures in January 2025, leaving Activision with no choice but

to serve a joint stipulation. Warzone's last-minute attempt to "moot" this motion by serving a cursory and equally evasive "supplemental" response the day before its response is like Lucy pulling the football away from Charlie Brown. Under Warzone's theory, each time a party is served with a joint stipulation it could simply "moot" the motion and re-start the clock, *ad infinitim*, by providing a halfhearted, insufficient "amended" response. The meet-and-confer obligations of Local Rule 37-1 are not intended to allow such gamesmanship. Warzone's argument is especially disingenuous since its position has not changed at all; it continues to refuse to provide *any* actual damages information.[1]

The foregoing aside, Warzone's supplemental response is deficient for the very same reason as was its initial response: it completely fails to describe or explain the nature and amount of the ***actual damages it suffered.*** Instead, Warzone's supplemental response is a two-page word salad that never answers the question and instead focuses on irrelevancies such as willfulness, injunctive relief, and the parties' 2021 pre-filing correspondence. Critically, while Warzone confirms that it intends to seek "compensatory damages" (JS, at 10), including "prospective corrective advertising," Warzone never explains the basis for such an award, much less the amount of damage it suffered, how it intends to calculate that damage, what facts or evidence it intends to rely on, or even whether it claims to have suffered ***any monetary*** damage. Warzone's claim that information regarding its own damages (including damage to the value of its trademark) is exclusively within Activision's possession is frivolous; only Warzone knows the amount and type of damage it has suffered due to the infringement.[2]

---

[1] None of the cases cited by Warzone support its position, as they all involved the total failure to conduct a discovery conference ***before*** a motion, not (as here) whether a supplemental response "moots" a joint stipulation.

[2] The two cases cited by Warzone – *Philips N. Am. LLC v. Vartanian,* 2023 WL 8937615, at *6 (C.D. Cal. Nov. 16, 2023) and *Allfasteners USA, LLC v. Acme Operations Pty., Ltd.,* 2021 WL 4027738, at *7 (C.D. Cal. May 25, 2021) – are not on point. Both of these cases involved attempts to impose Rule 37 evidentiary ***sanctions*** at the ***summary judgment stage***.

Warzone's claim that it need not identify the amount or scope of its "prospective corrective advertising damages" because it intends to reference "Activision's expenditure and or budget" (JS at 11) misunderstands the remedy. Corrective advertising is not a form of disgorgement; rather, such damages are compensatory, intended to "restore the value plaintiff's trademark *has lost* due to defendant's infringement." *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1995), *as amended on denial of reh'g* (Feb. 15, 1996) (emphasis added.) To recover such damages Warzone must present "non-speculative evidence that goodwill and reputation – that is, the value of its mark – was damaged in some way." *Quia Corp. v. Mattel, Inc.*, 2011 WL 2749576, at * 5 (N.D. Cal. July 14, 2011). Yet Warzone refuses to explain how its mark was damaged or what facts it intends to rely on to calculate that damage. Warzone also ignores that its "corrective advertising" damages may not exceed the value of its mark at the time of the alleged infringement (*i.e.*, March 2020). Thus, Activision is entitled to know what value Warzone places on its alleged mark prior to the release of *CODWZ* and how it intends to calculate any diminution in such value. *Thrive Nat. Care, Inc. v. Thrive Causemetics, Inc.*, 2021 WL 4813257, at *7 (C.D. Cal. Oct. 6, 2021) (Plaintiff "has the burden of presenting evidence as to the foundational fact that [her] mark lost value at all.") Indeed, Warzone has not even explained whether it believes that its mark has been destroyed (in which case it would be entitled only to the value of the mark as of 2019), or just devalued (in which case it is entitled only to the difference in value between 2019 and the present.)

This is information that is wholly within Warzone's possession. In fact, on October 14, 2024, Warzone provided a supplemental initial disclosure in which it specifically identified its *own* employees (Randy Ficker and Jay Westerdahl) as having knowledge of the "value of the Warzone trademark" and "the impact of Activision's actions on [its] business." Mayer Supp. Decl., Ex. A. Activision is entitled to this information before the close of *fact* discovery, and should not have

to wait until Warzone's expert reports to receive this basic and critical disclosure.

Finally, Warzone's claim that the parties are "early in the discovery period" (JS at 4) is incorrect. This case has been pending since *2021*, and the parties have been engaged in discovery for *months*. The discovery cut-off is just weeks away.

## II. Warzone Must Produce Detailed Revenue And Cost Information

Activision has been attempting to obtain fulsome and detailed financial information for months, only to have been met with stonewalling, delay, and, at best, sporadic drips and drabs of incomplete information, delivered in the form of two-column spreadsheets without any context or explanation.

With respect to Warzone's revenue, it was only *after* this Motion was filed that Warzone provided *any* information purporting to reflect advertising and website revenue. Those documents (like the other documents it produced) are cursory, containing only a date and purported revenue number. Warzone has continued to refuse to produce any detailed information concerning that revenue, such as the source of the revenue and the nature of the purchases. It did not even reveal the identity of the advertising agency or company that paid it. There is no reason for Warzone to have limited its production to high-level lump-sum data. Like any developer who distributes content on one of the app stores, Warzone has access to a host of information concerning its apps, including granular sales data, performance metrics, and the country where such purchases were made. *See* https://developer.apple.com/help/app-store-connect/manage-in-app-purchases/view-and-edit-in-app-purchase-information. Warzone also has access to its PayPal records, which apparently are where website transactions were logged and to any statements issued by advertisers or agencies. Warzone can very easily export and produce sales data and transaction logs for each revenue source.

As for expenses, Warzone has never provided *any* useful information. All that Warzone produced is a handful of tax returns, which include an *annual* expense deduction purporting to reflect *all* purported corporate expenses for the

year. While these annual expenses are placed into a few very broad categories (for tax purposes), such as "software," "website services," and "redemptions," it is impossible to assess the nature of these expenses and what they are for -- far less conduct any sort of analysis about the profitability of the company and how that profitability was impacted by *CODWZ*. For example, a single line item for ***yearly*** "advertising" provides no information about the nature of Warzone's marketing and advertising expenses, including critical information such as who Warzone's advertising vendors are, where and how its advertising budget was spent, and when those expenses were incurred. Annual information also is insufficient, because Warzone has claimed that its revenue and profits have fluctuated from month to month (or week to week) based on ebbs and flows in *CODWZ's* marketing. Activision must be able to assess whether any monthly fluctuation is attributable to *CODWZ* or some other factor (such as license fees or server costs.)

     Warzone's continued insistence that it cannot be compelled to "create or produce documents that do not exist" misses the point. It need not "create" anything. Warzone necessarily possesses the documents that it used to prepare its tax returns. Alternatively, Warzone possesses bank records or PayPal records that reflect its expenses and that list the transactions that it claims as expenses. If Warzone does not possess actual balance sheets, ledgers, or Quickbooks entries, it should produce the raw data from its bank or PayPal records – or, if necessary, the actual invoices reflecting such expenses. Warzone has never claimed that doing so would be unduly burdensome, and it would not.

DATED: OCTOBER 15, 2024        MITCHELL SILBERBERG & KNUPP LLP

By: */s/ Marc E. Mayer*
    Marc E. Mayer (SBN 190969)
    Attorneys for Activision Publishing, Inc.

**Certificate of Compliance-L.R.11-6.2.**

The undersigned, counsel of record for Activision Publishing, Inc., certifies that this brief contains 1,607 words, which complies with the word limit of L.R. 11-6.1.

DATED: OCTOBER 15, 2024        /s/ Marc E. Mayer