# EXHIBIT 1

# LEWIS & LIN LLC

Brett E. Lewis
David D. Lin

Michael D. Cilento
Michael Druckman
Jane J. Jaang
Roberto Ledesma
Rachel Ann Niedzwiadek
Savita Sivakumar
Shuyu Wang

Eric Belanger (of counsel)

77 Sands Street, 6th Floor
Brooklyn, NY 11201

Tel: (718) 243-9323
Fax: (718) 243-9326

www.iLawco.com

Michael D. Cilento, Esq.
michael@ilawco.com
347-404-5844

July 26, 2024

**VIA EMAIL**
Marc Mayer (mem@msk.com)
Linday Edelstein (lre@msk.com)
Alex Anfuso (ala@msk.com)
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
*Attorneys for Activision Publishing, Inc.*

      **Re:** *Activision Publishing, Inc. v. Warzone.Com, LLC;* Case No. 2:21-CV-3073-FLA
            L.R. 37-1 Letter Requesting Prefiling Conference of Counsel

Dear Marc, Lindsay, and Alex,

Pursuant to Local Rule 37-1, Warzone hereby requests a conference of counsel to discuss the following issues regarding Activision's discovery responses and production thus far in the action. Please provide your availability to have a conference within the next 10 days (up to and including August 6, 2024).

(A) Boilerplate General Objections

Activision asserted 15 general objections to Set 1 RFPs, 13 to Set 1 ROGs, 13 to Set 2 RFPs, and 11 to Set 2 ROGs. Please note that Courts in this District routinely reject general or boilerplate objections. *See, e.g., M2 Software, Inc. v. M2 Commc'ns, L.L.C.*, 217 F.R.D. 499, 501 (C.D. Cal. 2003) ("two pages of boilerplate 'General Objections' ... [were] not sufficient to raise any substantial, meaningful or enforceable objections to any particular discovery request."); *U.S. ex*

# LEWIS & LIN LLC

*rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 649 (C.D. Cal. 2007) ("general or boilerplate objections… are not proper objections.")

Rule 24(b)(2) also forbids boilerplate objections. The Rule requires RFP responses to "each item or category," and that objections "state with specificity the grounds for objecting to the request, including the reasons," and "whether any responsive materials are being withheld on the basis of that objection." *See also* Rule 33(b)(3)-(4) (rules for interrogatories).

This is not a technicality – it is impossible to assess whether Activision complied with its obligations if every response is subject to a series of vague, boilerplate objections. Please confirm that Activision is not withholding documents or information based on any of the general objections. To the extent you believe any of the general objections apply to specific requests, please identify the specific requests and objections.

(B) Activision's Specific Assertions of Privilege

Many of Activision's specific objections to requests include an objection based on attorney client privilege (or work product for some). Yet, Activision has not produced a privilege log or otherwise confirmed that it is withholding relevant documents or communications based on privilege. For any documents or communications that Activision is withholding by alleging privilege, please identify same in an appropriate privilege log that complies with the instructions preceding the requests.

(C) Agreement to Supplement for Documents Withheld

Similarly, the parties have previously agreed to supplement RFP responses to indicate whether documents are being withheld based on specific objections. Please confirm Activision will do so.

(D) Activision's Responses to Set No. 1 ROGs

For the reasons below, we find Activision's conduct to object and not respond to the following Set 1 ROGs as unjustified. Therefore, if Activision does not agree to supplement the below responses in full, Warzone will seek orders from the Court directing Activision's full compliance.

ROG 1
This interrogatory seeks the basic information of the owners, directors, and officers of Activision. This information is relevant, *inter alia*, so that Warzone can assess who may have relevant information and/or liability within Activision. The link that Activision provided is broken; it does not resolve to any website.

ROG 6
Warzone disagrees that this interrogatory is vague, ambiguous, overbroad, or unduly burdensome. Warzone seeks information regarding the individuals who undertook, participated, or were otherwise involved in Activision's trademark clearance efforts for the mark "Warzone"

# LEWIS & LIN LLC

(which Activision has stated such clearance was performed in 2019). The identities of any such individuals does not give rise to an assertion of privilege.

ROG 9-11, 14

These interrogatories request information regarding Activision's sales, marketing expenditures, revenue, and usage data for any Activision products or services bearing or incorporating the term "Warzone." Activision objected on the grounds that the interrogatories are overbroad, unduly burdensome, seek information not relevant to the subject matter of this case, and not reasonably calculated to lead to discovery of admissible evidence. Activision's only argument and caselaw to support its objections is focused on the argument that Warzone is not entitled to Activision's profits from "Call of Duty: Warzone."

Warzone disagrees with Activision's blanket objections that these interrogatories are vague, ambiguous, overbroad, or unduly burdensome. Warzone seeks specific information, solely in Activision's control, relevant to Activision's marketing, use, sales, and profits from the mark that is in dispute. This information is relevant not only to damages, but to liability and the *Sleekcraft* factors as well. Moreover, to the extent that Activision is found to have willfully infringed – as Warzone has alleged in its active Counterclaims – Warzone absolutely can seek compensatory damages based on a percentage of marketing spend, and punitive damages based on a percentage of profits. *See Quia Corp. v. Mattel, Inc.,* No. C 10-1902 JF HRL, 2011 WL 2749576, at *5, *8 (N.D. Cal. July 14, 2011); *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1375 (10th Cir.1977).

ROG 13

This interrogatory asked Activision to identify all games offered for sale or download that bears or incorporates "Warzone" in its title. Activision stated that the only Activision game offered for sale or download that bears or incorporates the term "Warzone" in the title is "Call of Duty: Warzone." Yet, in more recent responses, Activision has confirmed that it has a game and application entitled Warzone Mobile, and a tournament called "World Series of Warzone." To the extent these were released after Activision's Set No. 1 ROG responses were served, Activision should update this response with the most current information.

(E) Responses to Set No. 1 RFPs

For the reasons below, we find Activision's conduct to object or not produce documents to the following Set 1 RFPs as unjustified. Therefore, if Activision does not agree to supplement and produce documents in response to the below requests, Warzone will seek orders from the Court directing Activision's full compliance.

RFPS 1- 7, 9, 13, 21, 22, 24

For these requests, Activision stated that it *would* produce documents. Yet, to date, Activision has failed to do so. Activision has not provided any reason for its failure or delay.

3

# LEWIS & LIN LLC

RFP 8 -15
These requests seeks documents and communications regarding Activision's marketing expenditure in connection with products or services bearing the term "Warzone," the retail channels used to market such products, the monthly sales of such products, monthly in-app purchases within such products, total revenue for such products, total number of downloads for such products, monthly volume of virtual currencies purchased within such products, and the monthly volume of virtual currencies spent within such products. To date, Activision has failed to provide any documents responsive to these Requests.

Activision objected to these Requests on the grounds that the Requests were overbroad and unduly burdensome, as well as oppressive and harassing, but does not explain its reasoning. Activision also objected to these Requests for requesting highly confidential, sensitive, and/or proprietary information. Activision objected to Request Nos. 10-15 as not relevant to the claims and defenses in this Action because Warzone does not claim any purchases of Activision's product were made under the mistaken belief that the purchaser was seeking Warzone's product.

Warzone disagrees that the requests are overbroad or unduly burdensome or oppressive and harassing, particularly where Activision has provided no reasoning whatsoever for those objections. Warzone seeks specific information, solely in Activision's control, relevant to not only damages but liability as well. Furthermore, as stated above, to the extent that Activision is found to have willfully infringed (as alleged), Warzone absolutely can seek compensatory damages based on a percentage of marketing spend and punitive damages based on a percentage of Activision's profits. *See Quia Corp. v. Mattel, Inc.,* No. C 10-1902 JF HRL, 2011 WL 2749576, at *5, *8 (N.D. Cal. July 14, 2011); *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1375 (10th Cir.1977).

Any objections to these requests based on confidentiality are also unpersuasive, given Activision's ability to produce any such documents under the appropriate designation pursuant to the parties' stipulated protective order.

RFP 16
Warzone disagrees that this request is vague and ambiguous, overbroad and unduly burdensome, or harassing. Warzone seeks specific information, solely in Activision's control, relevant to Warzone's claim that Activision purposefully flooded the market using a term in which Warzone possessed common law trademark rights. Activision's Call of Duty: Warzone undoubtedly creates "web traffic," as implied in Activision's own characterization of the product as an "online multiplayer game." Complaint ¶ 15. The online multiplayer game is, at least, advertised online and therefore, the website on which it is advertised generates web traffic.

RFP 17-20
Warzone disagrees that these requests are vague and ambiguous, overbroad and unduly burdensome, or harassing. Warzone seeks documents, communications, and things sufficient to identify four classes of disputes or lawsuits against Activision: (17) those accusing Activision of reverse trademark infringement; (18) those in which Activision has invoked the expressive use doctrine; (19) those in which Activision has disputed the applicability or validity of the expressive use doctrine; and (20) those in which Activision has been found liable for trademark

# LEWIS & LIN LLC

infringement. Furthermore, Activision has already provided at least some evidence of lawsuits in its production at ATV 301-559. As to Activision's no time limitation objection, Warzone is amenable to a time limitation from 2010 – present for these requests.

(F) Reponses to Set No. 2 ROGs

For the reasons below, we find Activision's conduct to object and not respond to the following Set 2 ROGs as unjustified. Therefore, if Activision does not agree to supplement the below responses in full, Warzone will seek orders from the Court directing Activision's full compliance.

ROG 1
This interrogatory seeks the identities of the persons from Activision with knowledge about Activision's launch of "Call of Duty: Warzone Mobile." These would include individuals responsible for approving the name of the game and its launch into the marketplace. This is relevant to the case because Activision's launch of an application-based game entitled "Warzone Mobile," during the pendency of this action, is evidence of not only continued infringement, but of willful escalation of the intentional infringement by Activision of Warzone's "Warzone" trademark.

ROG 2
This interrogatory seeks the identity of the persons from Activision with knowledge about Activision's use of the term and mark "World Series of Warzone." The objection that this is vague is not persuasive, given Activision's filing for a trademark specifically for "World Series of Warzone." Activision should identify the persons at Activision responsible for developing and approving the decision to launch a tournament series entitled "Call of Duty: World Series of Warzone." This is relevant to the case because it again shows active and further infringement by Activision, and also shows Activision's attempt to register and use "Warzone" as its own trademark.

(F) Responses to Set No. 2 RFPs

For the reasons below, we find Activision's conduct to object or not produce documents to the following Set 2 RFPs as unjustified. Therefore, if Activision does not agree to supplement and produce documents in response to the below requests, Warzone will seek orders from the Court directing Activision's full compliance.

RFP 2
For this response, Activision stated that it would produce non-privileged documents "concerning Activision's decision to release Call of Duty: Warzone Mobile, to the extent such documents exist and reference Warzone LLC or this Action."

To be clear, this request asks for documents and communications about Activision's decision to release Warzone Mobile regardless of whether the documents and communications also reference Warzone LLC. This is relevant to the case because Activision's launch of an application-based game entitled Warzone Mobile," during the pendency of this action, is

## LEWIS & LIN LLC

evidence of not only continued infringement, but of willful escalation of the intentional infringement by Activision of Warzone's "Warzone" trademark.

### RFP 5 and 6

These requests seek documents and communications between Activision and Microsoft relating to Warzone LLC or this action. Activision objected to this request as overbroad and not relevant, but failed to explain its reasoning. The request is not overbroad because it only asks for information relating to Warzone LLC or this action. The request is relevant for the same reason – it is asking for documents and communications relating to Warzone, which are relevant, as is Activision's knowledge of Warzone and Activision's intent to infringe. Furthermore, the request is relevant since Activision continued further infringement throughout the action, including after Activision was wholly acquired by Microsoft.

### RFP 7

This request seeks documents and communications between Activision and Microsoft related to both Activision's launch of its tournament "Call of Duty: World Series of Warzone" as well as any documents and communications relating to Activision's application and/or alleged rights in the trademark "World Series of Warzone." Any such documents and communications would be relevant to Warzone's claim of infringement on its Warzone mark. The request is also relevant to the determination of knowledge and intent by both Activision and Microsoft as it relates to Warzone's allegations of infringement. Furthermore, the request is relevant since Activision continued to infringe and escalate its efforts throughout the action, including after Activision was wholly acquired by Microsoft.

### RFP 8

Warzone asserts that knowing the organizational structure of Activision pre- and post-acquisition is relevant, *inter alia*, for Warzone being able to identify the people and departments within Activision that may have relevant information. Considering that Microsoft fully acquired Activision while this litigation was pending, any post-acquisition changes to the organizational structures are also relevant. Furthermore, because Activision's infringement continued (and was further actively escalated with its launch of Warzone Mobile) post-acquisition, the organizational structure post-acquisition is relevant to any claims Warzone may have against Microsoft. Any objection based on confidentiality are also unpersuasive, given Activision's ability to produce any such documents under the appropriate designation pursuant to the parties' stipulated protective order.

### RFP 10

This request seeks internal and external documents and communications relating to Activision policing, defending, or communicating about its alleged rights in any marks or games incorporating "warzone." Activision objected that this request is overbroad and not relevant, but failed to explain its reasoning. Warzone asserts that the request is clearly limited and relevant to Warzone's claims of infringement and, inter alia, Activision's continued assertion that it was not using "Warzone" as a source identifier.

# LEWIS & LIN LLC

RFP 11

This request seeks documents and communications relating to Activision's launch of "World Series of Warzone." The objection that this is vague is not persuasive, given Activision has filed for a trademark specifically for "World Series of Warzone." This is relevant to the case because it shows Activision launching products and services using "Warzone" as a trademark, and evidences active and further infringement by Activision. Any objection based on confidentiality is also unpersuasive, given Activision's ability to produce any such documents under the appropriate designations pursuant to the parties' stipulated protective order.

RFP 13

This request seeks internal documents and communications within Activision (and/or now Microsoft) relating to Ryvals, Inc. Activision objected that this request is overbroad and not relevant, but failed to explain its reasoning. The request is not overbroad because it seeks information on a limited topic, the entity Ryals, Inc. The request is relevant because Ryvals, Inc. is the entity that first applied for a trademark for "World Series of Warzone" on April 27, 2021. The application was abandoned on May 14, 2021. Activision then applied for the same trademark "World Series of Warzone" on Aug. 27, 2021. Thus, any documents and communications about Ryvals, Inc. and its earlier-filed trademark are relevant to Warzone's allegations that Activision uses Warzone as a trademark and has been policing "Warzone" marks while infringing on Warzone LLC's trademark.

RFP 14

This request seeks documents and communications between Activision and Ryvals, Inc. Activision objected that this request is overbroad and not relevant, but failed to explain its reasoning. This request is not overbroad as it seeks limited information between Activision and one other entity. The Request is relevant for the same reasons stated above under RFP 13.

       Sincerely,

       *Michael Cilento*

       Michael D. Cilento, Esq.