# EXHIBIT 12



**MITCHELL SILBERBERG & KNUPP LLP**
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Marc E. Mayer
A Professional Corporation
(310) 312-3154 Phone
(310) 231-8354 Fax
mem@msk.com

November 13, 2024

**VIA E-MAIL ONLY (MICHAEL@ILAWCO.COM; BRETT@ILAWCO.COM; NICOLE@ILAWCO.COM; JANE@ILAWCO.COM)**

Michael D. Cilento, Esq.
Brett E. Lewis, Esq.
Nicole Haff, Esq.
Jane J. Jaang, Esq.
Lewis & Lin LLC
77 Sands Street, 6th Floor
Brooklyn, NY 11201

Re:   <u>Activision Publishing, Inc. v. Warzone.com, LLC: November 4, 2024 Letter</u>

Dear Mike:

I am writing in response to your letter of November 4 requesting a discovery conference on a variety of document requests.

As I mentioned in my email, the massive scope of your letter makes it difficult for us to analyze the key issues and assess our position.  Specifically, it appears that your letter attempts to encapsulate more than *100* separate requests into four pages, without differentiating between dozens of these requests.  It would have been far more productive if you had focused your letter on those specific requests that you feel are important to this litigation, rather than forcing us to go through hundreds of requests and attempt to determine what the basis is for your claim that there are deficiencies in Activision's production with respect to each of these requests.

Your attempt to group all of these requests into two broad categories (requests that you claim can arguably encompass information pertaining to products other than the game titled "Call of Duty: Warzone" and requests that you claim arguably relate to alleged "benefit[s] inuring to Activision from any use of Warzone") is unhelpful and does not compensate for the unwieldy nature of your letter or proposed discovery conference.  These two purported "categories" do not fully encompass the nature of our objections to the various document requests.  Indeed, in many instances the "categories" are completely unrelated to the requests.

Moreover, the argumentative tone of the letter – including the use of phrases such as that Activision is "attempt[ing] to erase over three years of litigation history" or that "Activision conveniently ignores the scope of its own claims" -- is wholly unproductive, and the claims are untrue.  At issue in this case is the alleged use by Activision of the title "Call of Duty: Warzone" (and its mobile version) from 2020 to the present.  *See, e.g.,* Counterclaim, ¶¶ 21, 24, 35-39. Indeed, any alleged uses of the word "Warzone" by Activision prior to 2017 would make



November 13, 2024
Page 2

*Activision* the senior user with respect to these alleged uses. We assume that you are not contending that Activision used the word "Warzone" in commerce prior to 2020.

In any event, as you can appreciate, it is unfair and unduly burdensome to expect us to be prepared to discuss every single one of the dozens of requests listed in your letter, especially since many of the Requests at issue date back many months. Indeed, we expect that unless you are prepared to conduct a full day meet-and-confer, we will have to break our conference up into several sessions so that we can discuss each of the requests at issue.

With that in mind, following is our effort to address the requests at issue in your letter.

I. **GROUP 1: RFPs 3, 4, 5, 6, 7, 13, 16, 21, 27, 28, 29, 32, 36, 47, 48, 49, 50, 51, 53, 55, 56, 57, 61, 63, 65, 67, 69, 70, 72, 74, 75, 77, 78, 80, 90, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 106, 107, 108, 109, 111, 115, , 116, 117, 118, 119, 121, 123, 124.**

This category purports to encompass at least *60* separate document requests. As best we can determine, you are arguing that our responses are deficient because we purportedly did not provide information concerning "any other product names that use the term 'Warzone.'"

We continue to be perplexed by your argument. There are no Activision "products" that use the term "Warzone" and are "similar to those for which Warzone uses WARZONE" (Counterclaim, ¶ 38) other than *Call of Duty: Warzone* ("CODWZ") and its mobile version ("CODWZM"). "World Series of Warzone" ("WSOW") was a *Call of Duty: Warzone* tournament, and is not a "product."

**First Set of RFPs: 3, 4, 5, 6, 7, 13, 16, 21**

With respect to WZLLC's First Set of Document Requests we have provided you with:

- A detailed profit-and-loss statement that identifies (1) the total marketing expenditure for CODWZ, (2) the gross sales numbers for CODWZ, (3) and the deductible expenses and operational costs associated with CODWZ. The profit-and-loss statement we produced is not "meager"; it is a detailed statement prepared by Activision's accounting department based on its books and records. This is precisely the type of document that courts have found to be sufficient to reflect product sales and revenue. *See, e.g., Diamond Resorts U.S. Collection Dev., LLC v. Pandora Mktg., LLC*, 2020 WL 8413529, at *3–4 (C.D. Cal. Dec. 3, 2020).

- All documents (including email correspondence) we have been able to locate after a reasonable keyword search of relevant custodians concerning the "decision" to use the title "Warzone" for CODWZ, CODWZM, or WSOW. Your suggestion that we are withholding documents is untrue; the fact is that there was a limited amount of email traffic on the issue. (That is not surprising, since once the title "Call of Duty: Warzone" was selected, the use of the same title for the mobile version and for tournaments naturally followed.)



November 13, 2024
Page 3

- All "clearance" documents we have been able to locate after a diligent search, including documents reflecting non-privileged portions of searches that were performed by Activision's legal department.

- Confirmation that we do not possess any evidence of consumer confusion. That also is not surprising, since there is no dispute that no one downloaded or played CODWZ believing that it was Warzone.com LLC's ("WZLLC") game.

- Thousands of marketing assets used by Activision in connection with CODWZ, reflecting the manner by which the game was marketed and advertised to members of the public.

- All documents we have been able to locate regarding WZLLC. Again, it is not suprising that there are few such documents, because the game "Warzone" did not exist until 2017 and it was apparent in 2019 that it was just one of dozens of games and other products that included the word "Warzone" in their title.

We are in the process of preparing a profit-and-loss statement for CODWZM. We also are investigating whether there exists any revenue in connection with WSOW.

We are advised that it is not possible to obtain precise download numbers for CODWZ, as the game is distributed through third party platforms which do not report the total number of downloads. However, we do not understand why that information is relevant to any issues in this case, since we have provided you with revenue information. Additionally, since CODWZ and CODWZM are free-to-play, all revenue received in connection with these games is necessary from "in-game" or "in-app" purchases. There are no "in-game" purchases for WSOW, since it is not a game.

As for your request for "web traffic for Activision games that bears or incorporates the term or trademark WARZONE," the request does not make sense, since CODWZ and CODWZM are not distributed via any "website." In any event, we are investigating whether it is possible to obtain traffic data for the website www.callofduty.com/warzone, which is a website used to provide *information* about the game. However, to be clear, the game cannot be played or downloaded via that website, so it is unclear to us why this information is relevant.

**Second Set of RFPs: 27, 28, 29, 32, 36 (i.e. 2, 3, 4, 7, 11)**

With respect to Request Nos. 2 and 3 of the Second Set of RFPs, these requests are overbroad and irrelevant. We have searched for and produced any documents that refer to the decision to use the name "Call of Duty: Warzone" for the mobile version of the game. We have been unable to locate any non-privileged documents that refer to this lawsuit or to WZLLC (or its game) in connection with the release of CODWZM. There is no basis to demand that Activision provide documents pertaining to its entire mobile strategy or its business plans concerning CODWZM, and you have never articulated a basis for any such demand.



November 13, 2024
Page 4

Likewise, documents pertaining to Activision's overall "launch" of WSOW are wholly irrelevant.  We have searched for and produced documents pertaining to the decision to use the name "World Series of Warzone."  However, as expected, since WSOW was a tournament for CODWZ, we have not been able to locate any documents specifically discussing the selection of the "Warzone" portion of the WSOW name.  Again, documents pertaining to Activision's esports division and tournaments are not relevant to this lawsuit – especially since you do not claim that any person mistakenly believed that WSOW was sponsored or endorsed by WZLLC, much less elected to participate in the tournament believing that it was actually a tournament for WZLLC's "Warzone" strategy game. If you would like to discuss a reasonable narrowing of this request, we are prepared to do so.

Finally, we have confirmed that there are no communications between Activision and Microsoft pertaining to WZLLC, other than updates or discussions about this lawsuit between in-house counsel at the companies.

**Third Set of RFPs:  47, 48, 49, 50, 51, 53, 55, 56, 57, 61, 63, 65, 67, 69, 70, 72, 74, 75, 77, 78, 80, 90, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 106, 107, 108, 109, 111, 115, 116, 117, 118, 119, 121, 123, 124.**

It appears that you wish to discuss *45* separate RFPs, without specifically explaining in your letter why you believe our responses were deficient or improper.  Moreover, the discussion in your letter does not appear to be pertinent to these RFPs, and it appears that you simply threw these RFPs into your letter at the last minute in order to create unnecessary burden.

For the most part, we have agreed to provide documents responsive to these requests, including Nos. 47, 48, 49, 50, 51, 53, 117, 118, 123.  We also have advised you that in response to some of these requests, no responsive documents exist (e.g. Nos. 111, 116).

With respect to those requests that we have objected to, we do not understand the relevance of these requests and it is clear that the burdensome nature of these request far outweighs any even hypothetical relevance.  For example:

- You have asked for "projections and forecasts" for the "Call of Duty" name (No. 55), even though this case does not involve that name.  As you know, the "Call of Duty" brand has been in existence for more than 20 years.  It would be a massively burdensome undertaking to review every document over the past 20 years that discussed the "Call of Duty" brand and its value to the company, and we do not understand how such documents possibly could be relevant to this case.

- You have asked for "all" documents concerning "Project Magma" (No. 57).  This Request literally seeks every single document that has anything to do with CODWZ.  As you know, CODWZ is the product of years of work by hundreds of people, including artists, programmers, game designers, sound designers, actors, motion capture specialists, accountants, executives, marketing and advertising teams, and many others. There are likely to be hundreds of thousands, if not millions, of documents pertaining to CODWZ,



November 13, 2024
Page 5

    and it would be incredibly burdensome to collect and review all such documents – especially since the only element at issue in this lawsuit is the "Warzone" *title*.

- You have demanded production of all documents generated by any Activision-owned studio that was involved in any manner in the development of CODWZ or CODWZM. In fact, it looks like you generated your list of studios from the game's credits, and not from any independent investigation of these studios. Most of these studios had nothing at all to do with the selection of the "Call of Duty: Warzone" title, and, moreover, are not parties to this lawsuit. There is no basis for us to search the records of various support studios (e.g. High Moon, Shanghai Studios, Beenox, Digital Legends), when none of them are likely to have any relevant information.

- You have demanded "analytics" for *every* Activision game title – including Activision games *other than* "Call of Duty" games (much less "Call of Duty: Warzone.") (No. 78). You have not offered any explanation for this request. Activision has published hundreds of games (e.g., Skylanders, Guitar Hero, Transformers, Spyro, Tony Hawk, Crash Bandicoot, etc.) and there is no basis for you to seek information concerning any of these games.

- You have demanded every document in which any person referred to CODWZ or CODWZM as "Warzone." Whether someone *internally* referred to CODWZ as "Warzone" is wholly irrelevant. Moreover, this request would require collection and production of *every* document that mentions the word "Warzone" – whether or not that document has any bearing or relevant to this action. There are hundreds of thousands of documents that include the word "Warzone," and we will not agree to collect and review all of these documents.

- You have asked for all documents pertaining to "expectations" for CODWZM. We fail to see the relevance of this request. It also is unclear what is meant by "expectations." To the extent you are requesting documents pertaining to "expectations" related to the use of the name "Call of Duty: Warzone," we have been unable to locate any such documents.

We are happy to discuss these 45 requests with you. However, we believe that it is wholly improper to simply list 45 random responses as deficient without any explanation. More troubling, it does not appear that you or your office even bothered to carefully review this list of 45 to ensure that there even was a dispute concerning these responses. Accordingly, we request that you provide us with an explanation of the basis for your deficiency claims with respect to each of the 45 requests before requiring us to engage in what likely will be an hours' long meet-and-confer.



November 13, 2024
Page 6

## II.     GROUP 2: RFPs 1, 8, 9, 10, 11, 12, 13, 14, 15, 16, 18, 19, 20, 21, 49, 50, 51, 52, 53, 54, 55, 56, 70, 72, 78, 88, 89, 90, 91, 100, 102, 107, 108, 109, 112, 113, 114, 120, 121, 122 and Interrogatories 10, 11, 14, 20, and 21.

### First Set of RFPs: 1, 8, 9, 10, 11, 12, 13, 14, 15, 16.

We already discussed many of these requests above, and it is unclear to us why they are repeated in the second portion of your letter. Please explain to us what you believe we have failed to produce and its relevance to this lawsuit.

### Second Set of RFPs: 18, 19, 20, 21

These request seek financial information for "any other Activision game or title that was inclusive of Call of Duty: Warzone." We do not understand what you are intending to seek by this request. There is no game that is "inclusive" of CODWZ. Rather, CODWZ was a stand-alone game that must be separately downloaded.

To the extent you are suggesting that every "Call of Duty" game that has been released since 2019 (i.e., *COD: Modern Warfare, COD: Black Ops Cold War, COD: Modern Warfare 2, COD: Vanguard, COD: Modern Warfare 3, and COD: Black Ops* 6) is "inclusive" of CODWZ because players of these games are presented with a menu that enables them to download and play CODWZ, we fail to see the relevance of that demand. You cannot possibly expect Activision to gather financial and other data for all *six* of these games, when none of them include the word "Warzone" in their titles. Certainly, you cannot possibly claim that any revenue received by Activision in connection with these games is attributable to consumer confusion between WZLLC's game and any of these games. (It is equally, if not more likely, that a player of CODWZ came to that game only after first purchasing a mainline COD release.) Nor can you credibly claim that the release of these other games had any impact on the value of your client's alleged trademark.

Please explain to us why you believe this information is relevant or how it pertains to any of your damages claims in this action. Your citation to *Memory Lane, Inc. v. Classmates Int'l, Inc.,* No. SACV 11-00940-JLS, 2014 WL 6734820, at *6 (C.D. Cal. May 8, 2014) is unpersuasive. In that case, the jury found for the *defendants* and rejected the plaintiff's damages theories. The only issue discussed in that case was whether attorneys' fees should be awarded to the prevailing defendant. In electing not to award attorneys' fees, the Court declined to *penalize* the plaintiff for putting forward an overreaching disgorgement theory, because the infringing and non-infringing elements of the work at issue (a website) could not be readily separated. This was because, *inter alia,* "(1) Defendants' "Classmates" web pages used the MEMORY LANE mark; (2) Classmates' corporate name was changed to Memory Lane, Inc.; (3) Defendants publicized that "Classmates is now part of Memory Lane;" and (4) following the introduction of Defendants' "Memory Lane" website and related advertising, traffic increased to Defendants' sites and Defendants' net subscriber loss slowed."



November 13, 2024
Page 7

By contrast, revenue from CODWZ is separable from that of other COD mainline releases. You cannot possibly argue – far less prove – that revenue received by Activision from six other independent games is attributable to *the use of the word "Warzone."* *See Polar Bear Prods., Inc. v. Timex Com.,* 384 F.3d 700, 710-11 (9th Cir. 2004) (analyzing indirect profits in the copyright context: "[B]ecause the amount of profits attributable to the infringement in an indirect profits case is not always clear, 'we have held that a copyright holder must establish the existence of a causal link before indirect profits damages can be recovered.' 'When an infringer's profits are only remotely and speculatively attributable to infringement, courts will deny recovery to the copyright owner.'") As you know, these games were sold separately from CODWZ and their store pages do not specifically advertise or promote CODWZ. *See, e.g.,* https://www.callofduty.com/store/games/modernwarfare2; https://store.steampowered.com/app/1962660/Call_of_Duty_Modern_Warfare_II/

In any event, there are no documents that discuss whether the word "Warzone" had any impact on sales of *other* Activision products, and your request for all financial information concerning all of these other products is nothing more than a fishing expedition. If you have evidence reflecting that the inclusion of the *word* "Warzone" in CODWZ had any impact on sales of other games, please provide that to us.

**Third Set of RFPs: 49, 50, 51, 52, 53, 54, 55, 56, 70, 72, 78, 88, 89, 90, 91, 100, 102, 107, 108, 109, 112, 113, 114, 120, 121, 122**

Again, you have included 26 separate Requests in your letter without differentiating among any of them. It is unfair and improper to force us to review each of these Requests and guess what the basis is for your claim of deficiency.

And, again, you have lumped into your list of purported deficiencies many requests for which we already have agreed to produce responsive documents, such as Nos. 49, 50, 51, 53, 54, 70, 88, 89, 102, 107, 110, and 114. The remaining Requests do not appear to be relevant to this action, or their relevance is far outweighed by the burden of collecting and producing the documents.

- As noted above, we fail to see the relevance of documents pertaining to the value of the "Call of Duty" name, as opposed to "Warzone." (e.g. Nos. 52, 55).

- As noted above, we do not believe that Activision should be obligated to search the records of various studios that were not involved in the decision to use the title "Call of Duty: Warzone."

- We will not produce analytics for all "Activision game titles" or for games that are not at issue in this lawsuit (Nos. 78, 108) Please explain to us why you believe this information is relevant to this action.

- With respect to Nos. 112 and 113, we are prepared to make a witness available to discuss the preparation of the profit-and-loss statements. We do not believe that we are required to produce internal accounting documents.



November 13, 2024
Page 8

- We have provided you with documents reflecting the marketing expenditures related to "Call of Duty: Warzone."  (No. 120)

- We do not understand the relevance of corporate organizational charts or for information regarding the salaries of Activision employees.  (Nos. 121, 122.)  We look forward to hearing your explanation as to why you believe this information is relevant.

### III.     "IMPROPER NARROWING" OF DISCOVERY OBLIGATIONS

Frankly, we are perplexed by this portion of your letter.  We were fully transparent as to the keywords and custodians that we were agreeing to search.  If you did not believe that these custodians or keywords were appropriate, it was incumbent on you to raise the issue with the court months ago – not at the eleventh hour, with less than a month remaining before the discovery cut-off.

In any event, you have not explained what documents you believe we have failed to produce or what you expected to receive from our production.  The fact that very few documents exist pertaining to the selection of the "Call of Duty: Warzone" name is not a basis to demand production of additional documents.

Additionally, it is absurd to demand that we produce documents dating from 2008 (i.e. 16 years of documents), when the games at issue were not released to the public until 2020 – and WZLLC's game did not exist until 2017.

As we mentioned to you, a keyword search for the word "Warzone" retrieved hundreds of thousands of documents.  Thus, we limited the keyword search to attempt to gather and retrieve those documents relevant to this lawsuit – namely, those specifically pertaining to the Warzone *title*.  If you contend that the burden of reviewing that large body of material is outweighed by the potential relevance of the documents, then please explain the basis for that contention.  Otherwise, it appears that you are engaged in a fishing expedition, with no purpose or plan other than to maximize the burden on Activision.  (Which, in fact, is precisely what you told us you intended to do when discovery first began in this case.)

\*\*\*

We trust that the foregoing helps to explain our position.



November 13, 2024
Page 9

As noted, while we are happy to discuss these discovery issues with you, if you truly wish to have a productive meet-and-confer, then we expect to go through each and every one of the dozens of requests raised in your letter. It thus may be necessary to break up our discussions into multiple sessions, as we expect that it will take at least three or four hours to discuss this massive number of requests.

Sincerely,

Marc E. Mayer
A Professional Corporation of
MITCHELL SILBERBERG & KNUPP LLP

MEM/szm