MARC E. MAYER (SBN 190969)
  mem@msk.com
KARIN G. PAGNANELLI (SBN 174763)
  kgp@msk.com
LINDSAY R. EDELSTEIN (*pro hac vice*)
  lre@msk.com
ALEXANDRA L. ANFUSO (SBN 333440)
  ala@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA  90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Activision Publishing, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTIVISION PUBLISHING, INC., a Delaware corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WARZONE.COM, LLC,<br><br>　　　　Defendant. | CASE NO. 2:21-cv-3073-FLA (JCx)<br><br>[Judge Fernando L. Aenlle-Rocha]<br><br>**DECLARATION OF LINDSAY R. EDELSTEIN IN OPPOSITION TO WARZONE.COM, LLC'S MOTION TO COMPEL FURTHER RESPONSES TO UNSPECIFIED DISCOVERY DEMANDS**<br><br>**REDACTED VERSION** |
| WARZONE.COM, LLC,<br><br>　　　　Counterclaimant,<br><br>　　v.<br><br>ACTIVISION PUBLISHING, INC., a Delaware corporation,<br><br>　　　　Counterdefendant. | |

# DECLARATION OF LINDSAY R. EDELSTEIN

I, Lindsay R. Edelstein, declare as follows:

1. I am an Associate at the law firm Mitchell Silberberg & Knupp LLP ("MSK"), counsel of record for Plaintiff/Counterclaim Defendant Activision Publishing, Inc. ("Activision"), and I am admitted *pro hac vice* to appear in this matter before the Court. I have personal knowledge of the following facts and could competently testify to these facts if called upon to do so.

## I. ACTIVISION'S INITIAL PRODUCTIONS AND THE DISCOVERY STAY

2. On October 22, 2021, Defendant/Counterclaim Plaintiff Warzone.com, LLC ("WZLLC") served its First Set of Requests for the Production of Documents ("First RFPs"). These requests sought a relatively limited body of documents, such as documents pertaining to Activision's selection and clearance of the "Call of Duty: Warzone" title for "video game(s)," Activision's knowledge or awareness of WZLLC, documents pertaining to consumer confusion between CODWZ and WZLLC's game, and documents "sufficient to" identify or show financial information such as revenue, costs, and marketing expenditures. *See* Declaration of Francesca M. S. Germinario ("Germinario Decl.") ¶ 47, Ex. 36.[1]

3. Activision timely responded to these requests on November 22, 2021 and made an initial production of documents.

4. Shortly thereafter, the Court stayed discovery while Activision's motion to dismiss was pending. Dkt. 55. On August 15, 2022, the Court granted the motion to dismiss. Dkt. 57.

5. On October 25, 2023, the Ninth Circuit Court of Appeals remanded the action and the Court requested that the parties engage in supplemental briefing

---

[1] WZLLC failed to provide copies of the actual requests it served, providing only Activision's *responses* to such requests. Thus, the Court does not have before it the Definitions or Instructions WZLLC included in its requests.

2

**DECLARATION OF LINDSAY R. EDELSTEIN**

1  to address the narrow issue of whether *Jack Daniels v. VIP Prods.*, 599 U.S. 140
2  (2023), required reversal of the Court's August 15, 2022, decision.  Dkt. 63.
3         6.      On April 11, 2024, the Court denied the motion to dismiss and also set
4  a pre-trial schedule.  Dkt. 69, 70.
5         7.      Because the parties had scheduled a mediation for May 31, 2024, they
6  agreed to a brief stay of discovery, except for a voluntary production of key
7  documents in furtherance of the mediation.  As part of this pre-mediation exchange
8  of discovery, Activision produced, *inter alia*:



19        8.      Shortly after the mediation (which was unsuccessful), on June 6,
20 2024, WZLLC served its Second Set of Requests for the Production of Documents
21 ("Second RFPs").
22        9.      The Second RFPs sought documents relating to, *inter alia,* WZLLC,
23 the selection of the "*Call of Duty: Warzone Mobile*" ("*CODWZM*") name for the

---

[2] WZLLC minimizes the resources expended by Activision to compile the P&Ls by claiming that Activision "has produced a total of two financial documents" (Germinario Decl. ¶ 10) and referring to it as "meager" in various correspondence. However, each P&L is a comprehensive, detailed statement prepared by Activision's accounting department based on its books and records, which is very time-consuming to prepare.  *See generally* Declaration of Evan Wingren, submitted contemporaneously with this declaration.  Activision has offered to make a witness available to discuss the P&Ls and discuss how they were prepared.

mobile version of *CODWZ*, the "decision to release" the mobile game (not limited to those relating to the title), corporate organizational charts, communications with Microsoft (Activision's parent company), all documents pertaining to the "launch" of a tournament called "*World Series of Warzone*" ("*WSOW*") (again, not limited to the title), documents pertaining to an effort by a third party (Ryvals, Inc.) to register a trademark in WORLD SERIES OF WARZONE for a *CODWZ* tournament, and financial documents pertaining to various titles other than *CODWZ*, *CODWZM*, and *WSOW*. *See* Germinario Decl., Ex. 38.

## II.    ACTIVISION'S DOCUMENT COLLECTION

10.    To gather and locate responsive documents, Activision identified a number of individuals engaged in the selection and clearance of the *CODWZ* title (many of whom are no longer with the company), as well as individuals involved in the marketing of that title.

11.    Activision collected the entire mailboxes of these over 20 individuals and ran a number of keyword searches designed to identify responsive documents.

12.    Contrary to WZLLC's misrepresentations (Germinario Decl. ¶ 5), Activision did not limit its search to documents containing hits for the terms "warzone" and "trademark." In fact, Activision provided to WZLLC a detailed list of the nine different searches it initially conducted in connection with over 20 custodians. Attached hereto as **Exhibit A** is a true and correct copy of an email dated August 12, 2024 regarding Activision's search parameters.

13.    I understand that the initial searches returned over ███ documents, which Activision reviewed.

14.    During this time, Activision's counsel also conducted many interviews with Activision employees to determine whether there were any other custodians with relevant knowledge.

15.    In addition to the documents referenced above (*supra* ¶ 7), Activision:



**DECLARATION OF LINDSAY R. EDELSTEIN**

Mitchell Silberberg & Knupp LLP

- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

16. Activision always remained willing to reasonably expand its initial searches upon reasonable request from WZLLC. For example, when WZLLC requested communications relating to the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

17. On August 19, 2024, WZLLC demanded Activision conduct an additional 14 keyword searches across its over 20 designated custodians. Attached hereto as **Exhibit B** is a true and correct copy of an email dated August 19, 2024 regarding WZLLC's proposed keyword searches.

18. Activision's eDiscovery Head, Stephen Marks, ran WZLLC's proposed searches, which resulted in nearly ▇▇▇▇ hits. *See* Declaration of Stephen Marks, ¶ 6, submitted contemporaneously with this declaration.

19. Specifically, one of WZLLC's proposed searches – "warzone" AND "mobile" – resulted in over ▇▇▇▇ hits. *Id.*

20. Ultimately, as of the date of this declaration, I understand that Activision has collected and reviewed more than ▇▇▇▇ documents from over 20 different custodians.

### III. WZLLC'S REJECTION OF ACTIVISION'S OFFERS TO MEET-AND-CONFER

21. Activision has been transparent about its document collection efforts, and many times offered to work with WZLLC to identify any specific documents or categories of documents that WZLLC believed were relevant and not produced.

22. WZLLC, however, rejected Activision's offers to meet-and-confer and refused to either explain to Activision what materials it is seeking or what it believed to be a reasonable method for identifying and collecting those materials.

23. For example, in an October 7, 2024 letter to Activision, WZLLC for the first time started making requests for other, abstract purported "uses" of "warzone" by Activision aside from in connection with its *CODWZ* game.

24. Attached hereto as **Exhibit C** is a true and correct copy of a letter dated October 7, 2024 from WZLLC to Activision.

25. In its letter, WZLLC stated that it wanted "to avoid wasting time with a meet and confer." *See* Ex. C.

26. In response, due to the ambiguity of WZLLC's new requests, Activision's counsel offered to set aside some time – during an upcoming meet-and-confer on deficiencies in WZLLC's production – to discuss the purported issues. Attached hereto as **Exhibit D** is a true and correct copy of an email thread dated October 8, 2024 between WZLLC and Activision.

27. WZLLC refused to clarify or to discuss these issues during the meet-and-confer, stating that "we are not requesting a meet and confer at this time." *See* Ex. D at 2.

28. In response, Activision expressed disappointment in WZLLC's refusal to substantively discuss its purported issues with discovery propounded by Activision, providing, in pertinent part:

> I am, of course, disappointed that you do not wish to continue this discussion by phone. As I mentioned to Mike on one of our prior meetings, I am a big believer in the value of meet-and-confer conversations. I do not think that such conversations are a "waste of time" (as you state in your letter). Rather, I believe that videoconferences or telephonic conversations allow the

parties to cut through the posturing that often permeates emails and letters and get to the core issues in dispute . . . Again, if you would like to schedule some time for a conference to discuss these or other issues, we'd be happy to make some time later this week or early next week.

Ex. D at 1-2.

29. WZLLC never responded to the above-referenced email.

## IV. THE PARTIES' NOVEMBER 14, 2024 "MEET AND CONFER"

30. From August 5, 2024 through mid-November, WZLLC did not conduct a single L.R. 37-1 meet-and-confer conference on any purported deficiencies in Activision's discovery responses or production.

31. On November 4, 2024, Activision served its Responses and Objections to the Third Set of Requests for the Production of Documents ("Third RFPs").

32. The Third RFPs contained 80 new requests, many of which are overbroad, far-reaching, and harassing. Following in a non-exhaustive list of such improper requests:

- Request No. 57: "Documents and communications referring or related to ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉"

- Request No. 78: "Any and all documents or analytics created, discussed, obtained, used or developed by Activision, or any studio affiliated with Activision, regarding the number of gamer logins or logons *across Activision game titles*."

- Request No. 91: "Documents and communications sufficient to show Activision's revenue from [Call of Duty] *Modern Warfare*, subsequent to the release of *Call of Duty: Warzone* in 2020."

1  Germinario Decl. ¶ 51, Ex. 40 (Emphasis added.)

2      33.    Activision served its responses to the Third RFPs at 9:03 p.m. EST on November 4, 2024.  Attached hereto as **Exhibit E** is a true and correct copy of an email from my firm transmitting such responses.

    34.    56 minutes later, at 9:59 p.m. EST on November 4, 2024, WZLLC served a L.R. 37-1 letter purporting to encapsulate more than 100 separate requests (including requests from the Third RFPs) into four pages, without differentiating between dozens of such requests, and largely ignored the objections set forth in Activision's responses.  Germinario Decl., Ex. 3.   Attached hereto as **Exhibit F** is a true and correct copy of an email from WZLLC transmitting its letter.

    35.    With respect to 45 of Activision's responses identified in WZLLC's letter (by number only), WZLLC failed to explain why such responses were purportedly deficient or improper.  Germinario Decl., Ex. 3.

    36.    In response to this letter, Activision requested that, in compliance with L.R. 37-1, WZLLC – among other things – provide it with an explanation of the basis for WZLLC's deficiency claims with respect to each of the 45 requests before requiring Activision to engage in what would likely be a many hours'-long meet-and-confer.  Germinario Decl., Ex. 12.

    37.    WZLLC refused to do so.  In response to Activision's request, WZLLC stated that it disagreed with Activision's suggestion that a meet-and-confer covering over 100 requests would "require[] such extensive conversation[.]"  Attached hereto as **Exhibit G** is a true and correct copy of an email dated November 13, 2024 from WZLLC to Activision.

    38.    On Thursday, November 14, 2024, the parties held what was ostensibly meant to be a "meet and confer" regarding the purported deficiencies set forth in WZLLC's November 4, 2024 letter.

    39.    However, instead of using the conference to discuss specific requests or attempt to find common ground, WZLLC's counsel used the conference as a

platform to vent frustration about Activision's overall production to date. It became apparent during the conference that WZLLC's counsel had already prepared or was in the process of preparing a motion to compel and was not interested in finding constructive solutions to specific issues in dispute.

40. Aside from speculative comments about what "should" be in Activision's production given the purported size of the company, WZLLC only explicitly identified the following categories of documents (without identifying specific requests that such documents would purportedly be responsive to):



41. Each time WZLLC would raise a category of documents, Activision would request that WZLLC identify the specific request the documents pertained to for context and to review Activision's objections and response.

42. WZLLC only agreed to discuss two or three specific requests. When Activision would explain the basis for its objections, WZLLC would return to generalized descriptions of its purported need for broad categories of documents not encompassed by the specific request being discussed.

43. WZLLC never discussed Request Nos. 54, 78, 108, or 109 with Activision during the meet-and-confer.

## V. WZLLC MISCHARACTERIZES ACTIVISION'S POSITIONS

44. During the meet-and-confer, Activision never "admitted" that ***all documents*** pertaining to the "use" of the word "warzone" are relevant and discoverable. And in any event, as noted, WZLLC never propounded such a request. If it had, Activision would have objected to it as overbroad and unduly burdensome.

45. Activision never said that it would not produce further responsive, relevant, non-privileged documents. Germinario Decl. ¶ 5. It simply asked WZLLC to identify which responses WZLLC took issue with and for WZLLC to explain the relevance of such requests or work with Activision to narrow the requests to avoid undue burden.

46. Activision's counsel never said it "searched its document repositories for the term 'warzone' in proximity to 'trademark' and cannot be expected to do more[,]" as asserted in WZLLC's portion of the Joint Stipulation. Rather, Activision's counsel stated that Activision had run several searches designed to locate documents pertaining to the "Warzone" title, including various proximity searches, and that such searches had been disclosed to WZLLC's counsel several months ago. One example given by WZLLC's counsel was a proximity search for

"warzone" and "trademark," which was intended to address WZLLC's demand for documents pertaining to the use of "Warzone" as a trademark in commerce.

47. WZLLC has been well aware since August 12, 2024 of the exact parameters of Activision's searches. And even those searches were expanded upon by Activision.

48. Activision never said it "did not intend to expend any further effort to produce certain documents regarding 'Warzone Mobile.'" Germinario Decl. ¶ 5. In fact, it was expressly discussed that Activision would be providing a profit-and-loss for *CODWZM* imminently. That document was produced on November 20, 2024, less than a week after the meet and confer.

49. Activision never refused to produce documents relating to *CODWZ* and *WSOW*, as alleged in WZLLC's portion of the Joint Stipulation. In fact, Activision **agreed** to produce documents pertaining to the naming of *WSOW*, even though there is no dispute that WZLLC has never used that phrase, does not claim to own trademark rights in WORLD SERIES OF WARZONE and does not claim that this phrase infringes its purported trademark rights in the word "warzone." In fact, Warzone has maintained in this lawsuit that its claims chiefly concern the use of the word "Warzone" in isolation and that other third party uses of "Warzone" in game titles such as "Halo: Warzone," "Crysis: Warzone," "WWF: Warzone" and "Eve Valkyrie: Warzone" were distinguishable from Activision's use.

50. For example, ███████████████████████████████████████

51. Activision also agreed to produce financial information for CODWZ, CODWZM, and WSOW. During the meet-and-confer, Activision advised that these documents were forthcoming.

52. It has since provided such documents.

53. Activision is conducting yet another sweep for documents to ensure that all "naming" documents have been captured.

54. Activision is collecting information concerning WSOW—but because WSOW is not a "game," is not "sold," does not offer "virtual currency," and cannot be "downloaded," most of the requests are inapplicable (*e.g.*, Request Nos. 10, 11, 13-16, 19, 21). Activision already has explained this to WZLLC.

55. 

56.

57. In response to WZLLC's question regarding whether Activision's counsel had "searched in other ways, including interviewing Activision employees to locate responsive documents or using other search terms," Activision did not respond that they "did not know how to formulate any other search terms to find the documents Warzone sought." Germinario Decl. ¶ 5. That is nonsensical and unresponsive to that question. Activision *did* conduct many employee interviews and it *did* conduct additional searches. What Activision's counsel actually said was that given the breadth of the demands it would be impossible to formulate reasonable search queries but that it was prepared to discuss narrowing the demand so that reasonable searches could be performed.

58. And, even before this motion was served, Activision offered to engage in further substantive discussions about expanding keyword searches, adding custodians, or attempting to locate *specific* documents identified by WZLLC. Unfortunately, WZLLC's counsel's only response to that offer was that "it's not

Mitchell Silberberg & Knupp LLP

13

**DECLARATION OF LINDSAY R. EDELSTEIN**

our job to tell you how to find your own documents."

59. WZLLC served its portion of the Joint Stipulation to Activision the day after the purported meet-and-confer, on Friday night, November 15, 2024, at 11:45pm.

60. Attached hereto as **Exhibit H** is a true and correct copy of correspondence from WZLLC to Activision, dated March 4, 2021.

61. Attached hereto as **Exhibit I** is a true and correct copy of correspondence from Activision to WZLLC, dated March 21, 2021.

62. Attached hereto as **Exhibit J** is a true and correct copy of WZLLC's First Supplemental Response to Activision's Interrogatory 14, which WZLLC was ordered to supplement by this Court.

63. Attached hereto as **Exhibit K** is a true and correct copy of WZLLC's Amended Responses and Objections to Activision's First Set of Requests for Admission, dated October 23, 2024.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on November 22, 2024 in Brooklyn, New York.

By: _____
Lindsay R. Edelstein