# EXHIBIT H



Derek A. Newman
Direct  +310.359.8188
Main   +310.359.8200
dn@newmanlaw.com

100 Wilshire Blvd, Suite 700
Santa Monica, CA 90401

## FRE 408—CONFIDENTIAL SETTLEMENT COMMUNICATION

**SENT BY EMAIL**

March 4, 2021

Scott J. Major
Millen, White, Zelano & Branigan, P.C.
2200 Clarendon Boulevard, Suite 1400
Arlington Courthouse Plaza I
Arlington, VA 22201
Email:  major@mwzb.com

    Re:    **Warzone.com, LLC v. Activision Publishing, Inc.**
             **WARZONE—Opposition No. 91265759**

Scott:

Thank you for your February 16, 2021 letter concerning settlement of the dispute between Warzone.com LLC and Activision.

Warzone believes that Activision infringed the WARZONE trademark by adopting the mark for identical goods and causing consumer confusion. Activision asserts a First Amendment "expressive works" defense, which applies under *Rogers v. Grimaldi* "unless the title explicitly misleads as to source or content of the work."[1]

The *Rogers* case, at footnote 5, explains that where a junior user adopts the use of a similar title to the senior user's work—like in this case—would explicitly mislead as to source. The *Rogers* court intended that the First Amendment defense that Activision raises "would not apply to misleading titles that are confusingly similar to other titles."[2] Recent cases follow *Rogers* footnote 5 and indicate that Activision's expressive-works defense wouldn't succeed.

Activision also argues that WARZONE is descriptive, requiring secondary meaning before Warzone may protect it. But the mark is either suggestive or arbitrary, qualifying for immediate protection. It doesn't describe Warzone's product or any feature or characteristic of it.

---

[1] *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989).
[2] *Id.* at n. 5.

*Scott Majors - Warzone.com, LLC v. Activision Publishing, Inc.*   **CONFIDENTIAL SETTLEMENT**
*March 4, 2021*   **COMMUNICATION**
*Page 2 of 9*

Warzone is confident in its infringement case. Activision should take a license in exchange for a reasonable royalty or an assignment in exchange for a one-time payment.

### A. Activision's use of the WARZONE mark is explicitly misleading and thus infringes Warzone's trademark.

In 2018, the Ninth Circuit in *Gordon v. Drape Creative, Inc.* considered when an "expressive works" defense to trademark infringement could succeed.[3] The court instructed that use of a mark in the same way by both users may be the type of explicitly misleading description of source that *Rogers* condemns, allowing a finding of trademark infringement.[4] The court discussed *Rogers* Footnote 5 and held that "misleading titles that are confusingly similar *to other titles* can be explicitly misleading, regardless of artistic relevance."[5] Indeed, the court found that allowing a junior user to claim the protection of "art" as a shield against a senior user's claim of infringement for identical use of the mark—as Activision argues here—would "turn trademark law on its head."[6]

Activision's use of WARZONE is explicitly misleading. First, identical usage alone can suffice to establish a "explicitly misleading description of source."[7] Warzone started using its WARZONE mark as the title of its videogame in 2017. Then in 2020, Activision began using WARZONE, also as a title for its videogame. "The potential for explicitly misleading usage is especially strong when the senior user and the junior user both use the mark in similar artistic expressions." Activision's use alone is sufficient to demonstrate that Activision's use of the WARZONE mark is explicitly misleading.

The Ninth Circuit also recognized that if an alleged infringer uses a mark as a "centerpiece" of an expressive work, it may be found to be explicitly misleading[8] because it could lessen the distinctiveness, and thus the commercial value of, a competitor's mark.[9] The court noted that in previous cases involving the "expressive work" defense, the use of the mark was either (1) only one element of the work and the junior user's artistic expressions, or (2) incorporated into the body of the expressive work, where it served as only one component of the larger work and was "quite incidental."[10]

Activision uses the WARZONE mark as its centerpiece. It's literally the name of Activision's game. It's not a subtitle, not a catchphrase in the game, not a slogan to the promote the game, or some other secondary or tertiary feature. While Activision does at times use the "CALL OF DUTY" mark together with its use of the WARZONE mark, that isn't always the case. Activision frequently

---

[3] *Gordon v. Drape Creative, Inc.*, 909 F.3d 257 (9th Cir. 2018).
[4] *Id.* at 270.
[5] *Id.* (emphasis in original).
[6] *Id.* (emphasis added).
[7] *Id.*
[8] *Id.* at 271.
[9] *Id.* at 271 (citing *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 539 (1987)).
[10] *Id.* at 271.

ATV006520

Case 2:21-cv-03073-FLA-JC   Document 98-53   Filed 11/25/24   Page 4 of 10   Page
ID #:1909

*Scott Majors - Warzone.com, LLC v. Activision Publishing, Inc.*  **CONFIDENTIAL SETTLEMENT**
March 4, 2021  **COMMUNICATION**
Page 3 of 9

identifies its game to consumers as "WARZONE" and Activision has applied to register the standalone WARZONE mark.

Activision's use of the WARZONE mark as the centerpiece and title of its videogame reflects an effort to "lessen the distinctiveness and thus the commercial value of a competitor's mark."[11] In your letter, you go so far as to suggest that overtaking the distinctiveness of Warzone's WARZONE mark may have been Activision's goal. Under *Gordon*, Activision's actions in using the WARZONE mark are explicitly misleading, which means the expressive-works defense cannot overcome Warzone's trademark-infringement claim.

*Gordon* also suggests that a knowing use of a mark that consumers rely on to identify another party as source could support a finding of explicitly misleading use.[12] Here, Activision began using the WARZONE mark as the title of its videogame nearly three full years after Warzone began using the WARZONE mark as the title of its videogame. If, like most reasonable companies, Activision conducted even the most basic search for the term "Warzone" before choosing it as the title for its new videogame, it would have become aware of the WARZONE mark. A basic Google search in 2018 would have shown Warzone's WARZONE game as the top search result. Warzone is confident it could demonstrate through discovery that Activision knew that Warzone used its WARZONE mark as the title of its videogame and, despite that, went ahead using the same WARZONE mark as the title for its own videogame. This evidence would indicate an explicitly misleading mark, which invalidates the "expressive work" defense that Activision relies on.

**B.   *Twentieth Century Fox* and *Dr. Seuss* weigh in favor of an infringement finding in this case.**

Activision cites *Twentieth Century Fox Television v. Empire*[13] and *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*,[14] both of which preceded Gordon.

First, Activision suggests that the Ninth Circuit rejected footnote 5 of the *Rogers* decision in *Twentieth Century Fox*. But the court's discussion of *Rogers* footnote 5 was mere dicta because it didn't address a title-versus-title dispute. Unlike in *Twentieth Century Fox*, the Ninth Circuit in *Gordon* squarely addressed its prior remarks on *Rogers* footnote 5. *Gordon* noted that other courts have found that the second *Rogers* prong is "essentially a more exacting likelihood-of-confusion test."[15] The Ninth Circuit went on to say that if Fox had used the title "*Law & Order: Special Hip-Hop Unit*," such identical usage of NBC Universal's "Law & Order: Special Victims Unit" mark—as a title for its television show—it could be the exact type of explicitly misleading description of source

---

[11] *Gordon*, 909 F.3d at 270.
[12] *Id.* at 270 (noting the plaintiff introduced evidence that "defendants used the mark knowing that consumers rely on marks on the inside of cards to identify their source.")
[13] *Twentieth Century Fox Television, a division of Twentieth Century Fox Film Corp. v. Empire Distribution, Inc.*, 875 F.3d 1192 (9th Cir. 2017).
[14] Case No. 16-CV-2779-JLS (BGS), 2018 WL 2806733 (S.D. Cal. 2018).
[15] *Gordon*, 909 F.3d at n. 7 (citing *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 665 (5th Cir. 2000); *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1379 (2d Cir. 1993)).

Case 2:21-cv-03073-FLA-JC    Document 98-53    Filed 11/25/24    Page 5 of 10    Page ID #:1910

*Scott Majors - Warzone.com, LLC v. Activision Publishing, Inc.*    **CONFIDENTIAL SETTLEMENT**
*March 4, 2021*    **COMMUNICATION**
*Page 4 of 9*

addressed in *Rogers*.[16] For that reason, *Twentieth Century Fox* supports the conclusion that Activision is liable for infringement in this case.

Activision also cites the unreported district-court decision, *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*,[17] for the principle that *Rogers* applies in title-versus-title cases. *Dr. Seuss* isn't binding authority and was decided before *Gordon*.[18] More importantly, the alleged infringing book in that case included an express disclaimer that it wasn't associated with the *Dr. Seuss* mark and was, instead, a parody.[19] With that disclaimer, there could be no likelihood of consumer confusion. Activision's title doesn't include a disclaimer, so *Dr. Seuss* also supports the conclusion that Activision is liable for infringement.

C.   **Warzone is likely to succeed in opposition because its mark is distinctive and there has been actual consumer confusion.**

Activision alleges that WARZONE is inherently descriptive in the context of Warzone's videogame, which would require Warzone to acquire distinctives through secondary meaning before it could protect the mark. But WARZONE is either an arbitrary or suggestive mark, entitling Warzone to full and immediate protection under the Lanham Act.

A descriptive mark is a label that conveys an immediate idea of an ingredient, quality, characteristic, feature, function, purpose or use of the goods or services at issue.[20] In contrast, a mark is suggestive rather than descriptive when effort of thought or imagination is required to resolve the characteristics described by the mark and the goods or services themselves.[21] And an arbitrary mark uses common words in a fictitious and arbitrary manner[22] having no connection with the actual product.[23]

As an initial matter, WARZONE is not descriptive of a category or type of game or videogame. There are many different types of videogames.[24] WARZONE is not among them. Even amongst the sub-genres of "strategy video games," there is no "warzone" type of game.[25] So calling an online

---

[16] *Gordon*, 909 F.3d at 270.
[17] Case No. 16-CV-2779-JLS (BGS), 2018 WL 2806733 (S.D. Cal. 2018).
[18] *Dr. Suess* was decided in May 2018 while *Gordon* was decided several months later, in November 2018.
[19] *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, Case No. 16-CV-2779-JLS (BGS), 2018 WL 2806733, *5 (S.D. Cal. 2018).
[20] *Real Foods Pty Ltd. v. Frito-Lay N. Am., Inc.*, 906 F.3d 965 (Fed. Cir. 2018) (quoting *In re N.C. Lottery*, 866 F.3d 1363, (Fed. Cir. 2017)).
[21] *Id*.
[22] *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1131 (9th Cir. 1998).
[23] *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005).
[24] *See, e.g.*, MasterClass, "Guide to video game genres: 10 popular video game types," November 8, 2020, available at: https://www.masterclass.com/articles/guide-to-video-game-genres#10-popular-video-game-genres.
[25] *See, e.g.*, Wikipedia, "Strategy video game," available at: https://en.wikipedia.org/wiki/Strategy_video_game#References.

Case 2:21-cv-03073-FLA-JC   Document 98-53   Filed 11/25/24   Page 6 of 10   Page ID #:1911

*Scott Majors - Warzone.com, LLC v. Activision Publishing, Inc.*  **CONFIDENTIAL SETTLEMENT**
*March 4, 2021*  **COMMUNICATION**
*Page 5 of 9*

videogame "WARZONE" is not descriptive of a type of game, nor of its quality, characteristics, or features.

"Warzone" isn't found in the dictionary. The two-word phrase "war zone" describes a particular area or place where military combat occurs with violent connotations.

> **war zone:** *n.* 1: a zone in which belligerents are waging war broadly: an area marked by extreme violence. 2: a designated area especially on the high seas within which rights of neutrals are not respected by a belligerent nation in time of war
>
> **war zone:** *n.* 1. An area in which military combat takes place. 2. An area at sea in which ships are prone to being attacked during a war.[26]
>
> **war zone**: *n.* a place where people are fighting in a war.[27]
>
> **war zone**: *n.* (during wartime) a combat area in which the rights of neutrals are suspended, as such an area on the high seas, where ships flying a neutral flag are subject to attack.[28]

The term "war zone," used in connection with a videogame, would convey a specific idea about the attributes or function of the game: one that is visceral, violent, and marked by the presence of soldiers and weapons, as shown in the images of war zones in Figure 1, below.[29]

---

[26] The American Heritage® Dictionary of the English Language, Fifth Edition, 2020 by Houghton Mifflin Harcourt Publishing Company.
[27] Cambridge Dictionary, available at: https://dictionary.cambridge.org/us/dictionary/english/war-zone.
[28] Dictionary.com Unabridged, based on the Random House Unabridged Dictionary, Random House, Inc., 2021, available at: https://www.dictionary.com/browse/warzone?s=t
[29] Photograph sources, clockwise from top left: The Peninsula, "Mexican town turned to war zone fears new era of narco violence," October 26, 2019, available at: https://thepeninsulaqatar.com/article/26/10/2019/Mexican-town-turned-to-war-zone-fears-new-era-of-narco-violence; Nicholas Kristof, New York Times, "In Portland's so-called war zone, it's the troops who provide the menace," available at: https://www.nytimes.com/2020/07/25/opinion/sunday/portland-protest-federal-troops.html; Grigor Atanesian & Benjamin Strick, BBC News, "Nagorno-Karabakh conflict: 'Execution' video prompts war crime probe," October 24, 2020, available at: https://www.bbc.com/news/world-europe-54645254; Jaya Narain, Daily Mail Online, "Solider who faced death in burning tank in Iraq set to run 52 marathons to repay medic who rebuilt him," December 27, 2010, available at https://www.dailymail.co.uk/news/article-1341804/Marathon-Man-The-ordeal-troops-blazing-tank-defining-image-Iraq-Now-running-52-marathons-repay-medic-rebuilt-him.html; Magdi Abdelhadi, BBC News, "Libya conflict: Why Egypt might send troops to back Gen Haftar," available at: https://www.bbc.com/news/world-africa-53779425; Alex Parker, Chicago Reader, "The photographs in *Conflict Zone* document endless war and daily life," May 19, 2011, available at: https://www.chicagoreader.com/chicago/conflict-zone-war-photography-exhibit/Content?oid=3829739.

*Scott Majors - Warzone.com, LLC v. Activision Publishing, Inc.*  
*March 4, 2021*  
*Page 6 of 9*

**CONFIDENTIAL SETTLEMENT COMMUNICATION**



Figure 1: Example images of war zones from news publications

The term "war zone" is frequently characterized by death, destruction, or both. And a "war zone" is set in a particular area where military-style conflict is taking place. The photograph in Figure 2 below depicts Syrian children on their way to school amidst the destruction characterizing the war zone in which they live.[30]



Figure 2: Example of ambient destruction characterizing a war zone

---

[30] Alan Taylor, The Atlantic, "Syria's Students: Going to School in a War Zone," November 9, 2017, available at: https://www.theatlantic.com/photo/2017/11/syrias-students-going-to-school-in-a-war-zone/545474/.

58

*Scott Majors - Warzone.com, LLC v. Activision Publishing, Inc.*
*March 4, 2021*
*Page 7 of 9*

**CONFIDENTIAL SETTLEMENT COMMUNICATION**

But none of these characteristics of a war zone immediately describes any feature or quality of Warzone's online game, WARZONE. In WARZONE, there is no on-screen violence, no visceral action, no soldiers, no weapons, no gore, no death playing out on screen, and no fire, destruction, or rubble. On top of that, the setting is entirely removed from any specific place. Instead, a game-player's view is a simple political world map, as shown in Figure 3, below.



Figure 3: Player view of the WARZONE videogame

The game involves slowly, strategically moving armies—represented by number icons—from one territory to another. It requires chess-like tactical thinking to evaluate and determine maneuvers and allocation of resources. The action is not rooted in a sense of specific place and isn't literal or visceral. Instead, it's abstract and theoretical. For example, troop movement is designated with arrows and highlighted colors on countries, shown in Figure 4 below.



Figure 4: Zoomed-in view of action in WARZONE

59

Case 2:21-cv-03073-FLA-JC    Document 98-53    Filed 11/25/24    Page 9 of 10    Page ID #:1914

*Scott Majors - Warzone.com, LLC v. Activision Publishing, Inc.*    **CONFIDENTIAL SETTLEMENT**
*March 4, 2021*    **COMMUNICATION**
*Page 8 of 9*

The made-up term WARZONE, used as a single word as the title of Warzone's game, is not descriptive because on its own, it describes a work characterized by military combat, destruction, desolation, and a strong sense of place. But the game itself is incongruous with those characteristics.

The USPTO's registration of other "war" marks for video, computer, or online games demonstrates that other war-based game names are likewise distinctive without having to acquire secondary meaning. See, for example, videogame titles registered for "Original War,"[31] "Treasure Wars,"[32] "Ocean Wars,"[33] "Toy Wars,"[34] "Tribal Wars,"[35] "Space Wars,"[36] "Instant War"[37] "Warpath,"[38] "Massive Warfare,"[39] "Armored Warfare"[40] and "War Games Commander."[41] WARZONE is no more descriptive than any of those marks and is likewise suggestive or arbitrary, entitling it to full protection under the law.

### D.    Warzone offers to settle for a license in exchange for royalty, or assignment in exchange for one-time payment.

Activision's proposal for coexistence wouldn't change the status quo. Consumer confusion would continue. And Activision's use of the mark would further lessen the distinctiveness and commercial value of Warzone's interest in its own WARZONE s mark.

Activision's use of the WARZONE mark has caused actual consumer confusion and damaged Warzone. Activision has not only hurt Warzone's sales for its existing customer base, but has also diminished Warzone's ability to attract new customers to its game and blunted Warzone's prospects for growth and expansion. Warzone relies on various tools such as internet searches and online videogame streaming resources as mechanisms for discovery of its online videogame. But since Activision began been using the WARZONE mark, Warzone has been drowned out on these resources. Despite plans for continued growth, which had been in the making from the launch of the game in 2017, Warzone hasn't been able to achieve a higher valuation and growth due to Activision's interfering and infringing use of the WARZONE mark. In addition, Warzone has been forced to spend resources addressing a regular stream of confused consumers. Warzone would rather spend these resources improving the game for its players and attracting new customers. Warzone estimates its damages at several million dollars.

---

[31] Reg. No. 6244000 ("original" disclaimed).
[32] Reg. No. 6122204 ("treasure" disclaimed).
[33] Reg. No. 5127556 ("ocean" disclaimed).
[34] Reg. No. 5607851.
[35] Reg. No. 4710581.
[36] Reg. No. 5386857.
[37] Reg. No. 5952625.
[38] Reg. No. 6021213.
[39] Reg. No. 5633362.
[40] Reg. No. 4557877.
[41] Reg. No. 5595554.

*Scott Majors - Warzone.com, LLC v. Activision Publishing, Inc.*  **CONFIDENTIAL SETTLEMENT**
*March 4, 2021*  **COMMUNICATION**
*Page 9 of 9*

To resolve this matter, Warzone would license the mark to Activision in exchange for a royalty of one quarter of one percent of gross revenue generated from sales of Activision WARZONE branded games. Alternatively, Warzone would settle for a one-time payment of $7 million and would assign the trademark to Activision in exchange.

We request a response by Friday March 12, 2021. Please let me know if you'd like to discuss in the interim.

Thank you.

NEWMAN DU WORS LLP

Derek A. Newman

ATV006527