Jennifer A. Kash (State Bar No. 203679)
Francesca M. S. Germinario (State Bar No. 326208)
Nicole A. Bloomfield (State Bar No. 356757)
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
21-3073@cases.warrenlex.com

*Attorneys for Defendant / Counterclaimant Warzone.com, LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTIVISION PUBLISHING, INC., <br><br>     Plaintiff / Counterclaim Defendant, <br><br> v. <br><br> WARZONE.COM, LLC, <br><br>     Defendant / Counterclaimant. | Case No. 2:21-cv-3073-FLA (JCx) <br><br> Hon. Fernando L. Aenlle-Rocha <br><br> **WARZONE.COM, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS IN SUPPORT OF WARZONE.COM, LLC'S OPPOSITION TO MOTION OF ACTIVISION PUBLISHING, INC. FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT ON COUNTERCLAIMS OF WARZONE.COM, LLC** <br><br> Hearing Date:  March 21, 2025 <br> Hearing Time:  1:30 p.m. <br> Courtroom:  6B <br> Pretrial Conference:  May 19, 2025 <br> Trial:  May 27, 2025 |

Pursuant to the Court's Initial Standing Order (Docket No. 13)  and Local Rule 56-2, Defendant and Counterclaimant Warzone.com, LLC ("Warzone") respectfully submits the following separate statement of genuine disputes of material facts, in response to the Statement of Uncontroverted Facts in Support of Motion of Plaintiff and Counterclaim Defendant Activision Publishing, Inc. ("Activision") for Summary Judgment or Alternatively, Partial Summary Judgment on Counterclaims of Warzone (ECF 112-1), as well as its statement of additional material facts.  Warzone also incorporates by reference its objections to evidence offered in support of Activision's Motion for Summary Judgment or, Alternatively, Partial Summary Judgment, filed concurrently herewith ("Objections to Evidence").

### Statement of Genuine Disputes of Material Facts

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 1. ███████████████████████ ███████████████ <br><br> Evidence: Declaration of Marc E. Mayer, dated February 14, 2025 ("Mayer Decl."), Ex. 37, Art. III; Mayer Decl., Ex. 35 (Deposition of Jay Westerdal ("Westerdal Depo.")), 88:2-88:16; Mayer Decl., Ex. 36 (Deposition of Randy Ficker ("Ficker Depo.")), 429:7-429:14. | Disputed but immaterial. <br><br> ██████████████████████ ███████████████████████ ███████████████████████ ██████████████████████ ████████ Mayer Decl., Ex. 37 at 3.1. |

WARZONE'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| 2. WZLLC's develops and monetizes a "turn-based" online board game that has used the titles *Warzone*, *Warzone Classic*, *Warzone* (*Risk ++*), and *Warzone – Turn Based Strategy*.<br><br>Evidence: Mayer Decl. Ex. 36 (Ficker Depo.) 170:11-170:17; 178:12-179:7; 181:1- 183:1; Mayer Decl., Ex. 32 (WZLLC's Objections and Amended Supplemental Response (No. 1), Amended Response (No. 2), Third Supplemental Response (No. 4), and Second Supplemental Response (No. 8) to Activision's First Set of Interrogatories ("Nov. 27, 2024 Rog. Resp.")), Interrogatory Response No. 1, at 12:5-12:8; Mayer Decl., Exs. 14, 19, 51, 52; Complaint (ECF 1; "Complaint") ¶ 19; Answer (ECF 14; "Answer") ¶ 19. | Disputed.<br><br>Warzone.com, LLC develops and monetizes *two* video games under its WARZONE brand. WarLight, which became Warzone in November 2017 and Warzone Idle which was released in July 2020.  Ficker Declaration ¶ 2. |
| 3. WZLLC also develops and monetizes a companion game to *Warzone* titled *Warzone Idle*.<br><br>Evidence: Mayer Decl., Ex. 32 (Nov. 27, 2024 Rog. Resp.), Interrogatory Response No. 1, at 11:10-11:13; Mayer Decl., Ex. 36 (Ficker Depo.), 214:16-215:4; Mayer Decl., Exs. 15, 18. | Disputed as to "companion game."<br><br><br>Ficker Decl. ¶¶ 2, 15; Geddes Decl., Ex. 1, ¶ 44. |
| 4. In 2008, Ficker created *WarLight* – the predecessor to *Warzone* – "as a hobby project."<br><br>Evidence: Mayer Decl., Ex. 32 (Nov. 27, 2024 Rog. Resp.), Interrogatory Response No. 1, 5:7-5:14; Mayer Decl., Ex. 62, at p. 9. | Undisputed, but immaterial.<br><br><br>Ficker Decl. ¶ 3. |

| | |
|---|---|
| 5. *WarLight* was based on and marketed as similar to Hasbro's board game *Risk*, where players take turns shifting numbers across a world map<br><br>Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 352:4-352:21; Complaint ¶ 22; Answer ¶ 22. | Disputed as to "based on and marketed" but immaterial.<br><br>Activision mischaracterizes paragraph 22 of the Answer, which states simply "Warzone game is a turn-based strategy game, in which players shift numbers (representing 'armies') across a map of the world in order to take control of countries or territories," and makes no mention of Risk. |
| 6. Ficker initially made *WarLight* available as a "browser-based" game on his website www.warlight.net.<br><br>Evidence: Mayer Decl., Ex. 32 (Nov. 27, 2024 Rog. Resp.), Interrogatory Response No. 1, 5:14-5:20; Complaint ¶ 22; Answer ¶ 22. | Undisputed. |
| 7. In 2013, Ficker released a *WarLight* mobile app.<br><br>Evidence: Mayer Decl., Ex. 32 (Nov. 27, 2024 Rog. Resp.), Interrogatory Response No. 1, at 7:2-7:5. | Undisputed. |
| 8. In 2013, *WarLight* was free-to-play and earned revenue through advertising and membership subscriptions.<br><br>Evidence: Mayer Decl., Ex. 32 (Nov. 27, 2024 Rog. Resp.), Interrogatory Response No. 1, at 6:25-7:10. | Undisputed. |
| 9. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇<br>▇▇▇▇▇▇▇▇▇▇▇<br><br>Evidence: Mayer Decl., Ex. 35 (Westerdal Depo.), | Undisputed but immaterial. |

– 3 –

| | |
|---|---|
| 176:13-178:1; Mayer Decl., Ex. 39; Mayer Decl., Ex. 32 (Nov. 27, 2024 Rog. Resp.), Interrogatory Response No. 1, at 7:27-7:28. | |
| 10. ██████████████████████ ████████████████ ████████████████ Evidence: Mayer Decl., Ex. 35 (Westerdal Depo.), 93:19-93:23; 135:21-136:3; 136:24-138:24; Mayer Decl., Ex. 38, at WZ023307- WZ023308; Mayer Decl., Ex. 36 (Ficker Depo.), 253:2-253:20. | Undisputed but immaterial that Jay Westerdal acquired the domain name www.warzone.com in December 2014. Dispute that "the pair decided to rename WarLight to Warzone." ████████ ████████████████████ ██████████████████ ████████████████████ ████████████████████ ████████████████████ ██████ Ficker Decl. ¶¶ 3-4. |
| 11. ████████████████████ ██████████████████ ████████████████ ████████ Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 145:8-147:19; 158:5-158:11; Mayer Decl., Ex. 41; Mayer Decl., Ex. 35 (Westerdal Depo.), 221:22-222:17; 231:10-231:17; 232:7-233:11; 245:20-246:6; 264:12-265:2; Mayer Decl., Ex. 32 (Nov. 27, 2024 Rog. Resp.), Interrogatory Response No. 1, 9:4-9:10. | Disputed but immaterial. At the time of selecting the Warzone name, Mr. Ficker did not indicate that there was widespread use of the term "Warzone" in, or as video game titles. ("I don't remember the exact number of times, but I remember that when I would Google search it I didn't find another game that was using just Warzone by itself." Mayer Decl., Ex. 36 (Ficker Depo) 161:18-21. The testimony Activision cites states that Mr. Westerdal was not aware of any game brands called "Warzone" at the time. ("I don't think there were any sole Warzones out there.") Mayer Decl., Ex. 35 (Deposition of Jay Westerdal), 231:15-17. Activision produced no evidence that Warzone "w[as] aware" of any |

WARZONE'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| | "widespread" use of the mark WARZONE by other video game companies "at or around the time" Warzone adopted the mark. |
| 12. ███████████████████ ███████████████████ ███████████████████ ████████<br><br>Evidence: Mayer Decl., Ex. 35 (Westerdal Depo.), 231:15-231:17. | Disputed as incomplete, but immaterial.<br><br>The testimony Activision cites states that Mr. Westerdal was not aware of any game brands called "Warzone" at the time. ("I don't think there were any sole Warzones out there.") Mayer Decl., Ex. 35 (Deposition of Jay Westerdal), 231:15-17. |
| ███████████████████ ███████████████████ ███████████████████ ███████████████████ ███████████████████ ████████<br><br>Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 158:5:158:11. | Undisputed but immaterial, 2015 is not a relevant time period. |
| 14. ███████████████████ ███████████████ ███████████████ ███████████████████ ███████████<br><br>Evidence: Mayer Decl., Ex. 35 (Westerdal Depo.), 135:15-136:3; 240:17-241:25; Mayer Decl., Ex. 38, at WZ023311; Mayer Decl., Ex. 36 (Ficker Depo.), 38:17-39:4; Mayer Decl., Ex. 32 (Nov. 27, 2024 Rog. Resp.), Interrogatory Response No. 1, 9:15-9:19. | Disputed as to "at or around the time."<br><br>Activision mischaracterizes the Google Chat; ███████████████████ ███████████████████ ████████ Mayer Decl., Ex. 38, at WZ023311. |
| 15. By 2015 there were over a dozen publicly available video games with the word | Disputed as to "By 2015" and "in their title," and immaterial. |

"Warzone" in their title, including *WarZone*, *WarZone 2*, and *WarZone 3*; *WWF: Warzone*; *Warzone Battle*; *Warzone Five*; *Warzone Tower Defense*; *Anomaly: Warzone Earth*; and *Warzone Chess*.

Evidence: Mayer Decl., Exs. 40, 87, 88, 89, 90, 91, 92, 93, 94, 95, 95A, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 147; Declaration of Terry Kiel, dated February 10, 2025 ("Kiel Decl."), Ex. A.

"By 2015" does not indicate when any purported offerings were first offered or whether they were still offered by the time of Warzone's use and Activision's subsequent use, let alone whether any offerings use the WARZONE mark. Activision submits no admissible evidence substantiating any purported use of the mark WARZONE, the date of any "publicly available" use, or even the nature or extent of use of the purported video game titles and subtitles, and this disputed fact is therefore immaterial.

Exhibit A to the declaration of Activision's former paralegal Terry Kiel to the extent admissible, is evidence only that on June 11, 2010, Activision's legal department conducted a preliminary trademark search for "'Warzone (Call of Duty)" and redacted results of the same.

16. "Warzone" also was the name of a game mode in Microsoft's *Gears of War*, a server for the video game *Counter-Strike*, an online magazine, a podcast, movies, comic books, and television shows.

Evidence: Mayer Decl., Exs. 95, 96, 106; Declaration of Lindsay R. Edelstein, dated February 14, 2025 ("Edelstein Decl."), Exs. 1, 13, 14; Kiel Decl., Ex. A.

Disputed but immaterial.

Activision submits no admissible evidence substantiating that any purported use is of the mark WARZONE, nor the date of any such use, or even the nature or extent of any of the listed "names"—for example, Mayer Decl., Ex. 95 at 587 states on its face that the game mode name referenced is actually "Warzone (a.k.a. Team Deathmatch)"—this disputed fact is immaterial.

Exhibit A to the declaration of Activision's former paralegal Terry Kiel to the extent admissible, is evidence only that on June 11, 2010, Activision's legal

| | department conducted a preliminary trademark search for "Warzone" (Call of Duty) and the redacted results of the same. |
|---|---|
| 17. Ficker announced the name change from *WarLight* to *Warzone* on www.warlight.net in January 2015 to negative player reaction.<br><br>Evidence: Mayer Decl., Ex. 35 (Westerdal Depo.), 244:16-245:8; Mayer Decl., Ex. 41; Mayer Decl., Ex. 36 (Ficker Depo.), 322:22-323:4; Mayer Decl., Ex. 60, at WZ023350. | Disputed as to "negative player reaction," but immaterial.<br><br>Activision mischaracterizes the evidence, which nowhere shows that the only "player reaction" to any action by Warzone was "negative."<br><br>Disputed under FRE 802, improper introduction of hearsay (Mayer Decl., Exh 60). |
| 18. Players commented on the WarLight forum that *Warzone* was not a unique name: "there [is] more than just one game called warzone"; "Warzone is already taken"; "Googling for 'warzone' g[a]ve me a page full of results which each belong to a different WarZone"; "if you change to warzone, it will be buried in a mountain of other like named games"; and "there's already tons of games out there called Warzone."<br><br>Evidence: Mayer Decl., Ex. 35 (Westerdal Depo.), 244:20-245:8; Mayer Decl., Ex. 41. | Disputed, but immaterial.<br><br>Activision provided no evidence showing that the WARZONE mark was not "unique," let alone that the mark was not available during the period of Warzone's use in commerce, only providing excerpts of hearsay player comments from an irrelevant time period. |
| 19. In a January 28, 2015 post to the *WarLight* blog, Ficker acknowledged the existence of other Warzone-titled games, but reassured users there would be no confusion because, for instance, *Warzone* and *Warzone 2100* were "[s]ubtle but technically different names."<br><br>Evidence: Mayer Decl., Ex. 35 (Westerdal Depo.), 244:20-245:8; 245:20-246:9; Mayer | Undisputed, but immaterial that "Warzone 2100" and "Warzone" were "different names" in January 2015. |

WARZONE'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| Decl., Ex. 41, at p. 2. | |
| 20. On October 25, 2017, Ficker announced plans to release a "sequel to *WarLight*," titled *Warzone*, "before the end of the year."<br><br>Evidence: Mayer Decl., Ex. 35 (Westerdal Depo.), 262:21-263:14; Mayer Decl., Ex. 42; Mayer Decl., Ex. 32 (Nov. 27, 2024 Rog. Resp.), Interrogatory Response No. 1, 10:25-10:27. | Undisputed. |
| 21. Players again expressed concern with changing *WarLight* to *Warzone*, noting that "the googleplay store already have games with similar name."<br><br>Evidence: Mayer Decl., Ex. 35 (Westerdal Depo.), 262:21-263:14; Mayer Decl., Ex. 42. | Disputed, but immaterial.<br><br>Activision provided no evidence that "players" collectively shared the single opinion that "the googleplay store already have games with similar name." Disputed under FRE 802, improper introduction of hearsay (Mayer Decl., Exh 42). |
| 22. Between January 2015 (when WZLLC announced the name-change) and November 2017 (when it made the change), more than a dozen additional games with "Warzone" in or as their title had been released, including the PC game *Warzone* by KEA, a mobile game *Warzone: Clash of Generals*, and a browser-based game *Warzones*.<br><br>Evidence: Mayer Decl., Exs. 44, 45, 47, 105, 106, 107, 108, 108A, 109, 110, 110A, 111, 112, 113, 114, 115, 116, 117, 118; Mayer Decl., Ex. 36 (Ficker Depo.), 310:15-311:22; Mayer Decl., Ex. 58. | Disputed, but immaterial.<br><br>Activision submits no admissible evidence substantiating that any purported use is of the mark WARZONE, nor the date of any such use, or the nature, extent, and duration of use of any of the listed "titles"; this fact is thus immaterial.  Activision's marketing academic Dr. Welden confirmed that he performed no such analysis.  Kash Decl., Ex. A [Welden Tr. 104:2-105:4 ].<br><br>Furthermore, the examples do not feature games with "Warzone…as their title." Mayer Decl., Exs. 44, 45, 47.  Several examples include use in game modes. Mayer Decl., Ex. 108.  Ex. 109 features a |

| | game with 3 reviews on the Amazon Appstore titled "IGI: War Zone," which is not an example of "Warzone" in or as their title. |
|---|---|
| 23. ███████████████████<br>███████████████████<br>█████████<br><br>Evidence: Mayer Decl., Ex. 31 (WZLLC's Amended Responses and Objections to Activision's First Set of Requests for Admissions, dated October 23, 2024 ("Oct. 23, 2024 RFA Resp.")), RFA Response No. 50; Mayer Decl., Ex. 35 (Westerdal Depo.), 263:15-265:22; Mayer Decl., Ex. 36 (Ficker Depo.), 161:15-161:25; Mayer Decl., Ex. 33 (WZLLC's Objections and Amended Responses (Nos. 3, 6, & 13), Second Supplemental Response (No. 5), and Supplemental Response (No. 12) to Activision's First Set of Interrogatories, dated December 1, 2024 ("Dec. 1, 2024 Rog. Resp.")), Interrogatory Response No. 12, 10:22-11:3; 11:7-11:11. | Undisputed. |
| 24. When WZLLC launched www.warzone.com in November 2017, the website contained the browser-based version of *Warzone*, which was the same game as *WarLight* but with some updates.<br><br>Evidence: Mayer Decl., Ex. 54; Mayer Decl., Ex. 32 (Nov. 27, 2024 Rog. Resp.), Interrogatory Response No. 1, at 10:13-10:28; Mayer Decl., Ex. 36 (Ficker Depo.), 170:11-170:17; Mayer Decl., Ex. 81, at WZ015331-WZ015332, | Disputed.<br><br>Warzone launched its updated game under the WARZONE brand in November 2017. The game included significant updates over Warlight, and was available for download on various platforms, including browser, PC, and mobile.  Ficker Decl. ¶ 4. |

| | |
|---|---|
| WZ015413, WZ015453. | |
| 25. *Warzone* is free-to-play and earns revenue through advertising and sales of subscriptions and "coins" that unlock features or allow players to join tournaments.<br><br>Evidence: Mayer Decl., Ex. 81, at WZ025713; Mayer Decl., Ex. 26 (WZLLC's Responses and Objections to Activision Publishing, Inc.'s First Set of Interrogatories, dated February 4, 2022), Interrogatory Response No. 10. | Undisputed. |
| 26. WZLLC never made *Warzone* available on any game consoles or PC distribution platforms.<br><br>Evidence: Complaint ¶ 20; Answer ¶ 20. | Disputed.<br><br>Warzone is available on and distributed over PC platforms. *See* Ficker Decl. ¶ 5.<br><br>In addition, the evidence cited is mischaracterized and does not discuss or support any conclusion regarding "PC distribution platforms." *See* Complaint ¶ 20; Answer ¶ 20. |
| 27. WZLLC has not provided evidence of any future plans or intent to develop a first-person shooter game.<br><br>Evidence: Mayer Decl., ¶ 55; Mayer Decl., Ex. 35 (Westerdal Depo.), 118:22-118:25; 194:8-194:14. | Disputed on the grounds that trial counsel's declaratory statement, which is incorrectly cited (corrected, ¶ 53), is improper lay opinion, mischaracterizes the evidence, and is inadmissible.<br><br>Otherwise undisputed, but immaterial. |
| 28. WZLLC has not produced evidence of any future plans to make its games available for consoles or on PC gaming platforms.<br><br>Evidence: Mayer Decl., ¶ 55; Mayer Decl., Ex. 35 (Westerdal Depo.), 118:22-118:25; 194:8-194:14. | Disputed on the grounds that trial counsel's declaratory statement, which is incorrectly cited, is improper lay opinion, mischaracterizes the evidence, and is inadmissible as set forth in the accompanying Objections to Evidence. |

| | |
|---|---|
| | ████████████ *See id.* |
| 29. In 2017, WZLLC changed the "App Name" of its mobile app from *WarLight* to *Warzone (Risk ++)*.<br><br>Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 178:12-179:7; Mayer Decl., Exs. 51, 52, 53; Mayer Decl., Ex. 81, at WZ015233, WZ015310, WZ015313. | Disputed, but immaterial.<br><br>████████████<br><br>Geddes Decl., Ex. 2 at 3; Ficker Decl. ¶ 6. |
| 30. After the name change from *WarLight* to *Warzone* on the app stores, players continued to complain about the new name, including that "[if I] type 'warzone' in the internet it only shows stuff about [Counter-Strike: Global Offensive]" and "there[']s a ton of games out there called just plain Warzone."<br><br>Evidence: Mayer Decl., Ex. 54; Mayer Decl., Ex. 81, at WZ015279; Mayer Decl., Ex. 36 (Ficker Depo.), 318:13-319:13; Mayer Decl., Ex. 59. | Disputed, but immaterial.<br><br>A vocal minority commented upon "the new name." Ficker Decl. ¶ 4.<br><br>Further disputed on the grounds that Exhibits 54, 81 and 59 contain inadmissible hearsay subject to FRE 802. |
| 31. ████████████<br><br>Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 196:10-197:12; Mayer Decl., Exs. 55, 56; Mayer Decl., Ex. 32 (Nov. 27, 2024 Rog. Resp.), Interrogatory Response No. 1, at 11:4-11:9; Mayer Decl., Ex. 81, at WZ023878. | Disputed, but immaterial.<br><br>On December 21, 2018, ████████████<br><br>Ficker Decl. ¶ 7.<br><br>Activision's own evidence supports this. *See* Mayer Decl., Ex. 36 (Ficker Depo.), 196:25-197:4 ████████████ |



| | |
|---|---|
| | ▮▮▮▮ (redacted) |
| 32. ▮▮▮▮ (redacted)<br><br>Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 181:1-183:1; 204:20-205:9; Mayer Decl., Ex. 73. | Disputed, but immaterial.<br><br>Warzone has not changed the title of the game Warzone since 2017. Ficker Decl. ¶ 6. |
| 33. WZLLC never distributed its mobile app under the app title *Warzone* – only as *Warzone (Risk ++)* or *Warzone – Turn Based Strategy*.<br><br>Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 181:1-181:19; 199:11-199:20; Mayer Decl., Exs. 43, 51, 73. | Disputed.<br><br>Warzone's offerings under the WARZONE brand, ▮▮▮▮ (redacted) Ficker Decl. ¶ 5. Since 2017, ▮▮▮▮ (redacted) Ficker Decl. ¶ 6. |
| 34. In late November or early December 2020 – weeks after a different company released a game titled *Idle Warzone* and nearly nine months after Activision released *CODWZ* – WZLLC released a *Warzone* spin-off titled *Warzone Idle*. WZLLC then re-titled *Warzone* to *Warzone Classic*.<br><br>Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), | Disputed.<br><br>Warzone Idle was released in July 2020. Ficker Decl. ¶ 2.<br><br>▮▮▮▮ (redacted) |

WARZONE'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| 214:16-215:4; 421:25-424:24; 426:1-426:19; Mayer Decl., Exs. 64, 65; Mayer Decl., Ex. 36 (Ficker Depo.), 620:18-620:25; Mayer Decl., Ex. 81, at WZ000801- WZ000807. | ███████████████████████ Ficker Decl. ¶ 2.<br><br>The release date of the app in Mayer Decl., Ex. 64 is not evident, and the game is titled "Idle Warzone 3d: Military Game, War Clicker Business Simulator." |
| ████████████████████<br>████████████████<br>███████████████<br>████<br><br>Evidence: Mayer Decl., Ex. 81, at WZ015298; Mayer Decl., Ex. 31 (Oct. 23, 2024 RFA Resp.), RFA Response Nos. 67, 69, 70, 71; Mayer Decl., Ex. 35 (Westerdal Depo.), 289:12-291:21; Mayer Decl., Ex. 28 (Aug. 28, 2024 RFP 1 Resp.), Supplemental Response No. 34; Mayer Decl., Ex. 29 (Aug. 28, 2024 RFP 2 Resp.), Supplemental Response No. 94. | Disputed.<br><br>Between November 2017 and March 2020, ████████████████<br>█████████████████████<br>█████████████████████<br>████████████████████<br>███████████████████<br>██████████████ Ficker Decl. ¶ 8. ████<br>███████████████████<br>█████████████████<br>*Id.* |
| 36. ████████████████<br>█████████████████<br>███████████████<br>█████████<br><br>Evidence: Mayer Decl., Ex. 81, at WZ15298; Mayer Decl., Ex. 31 (Oct. 23, 2024 RFA Resp.), RFA Response Nos. 67, 69, 70, 71; Mayer Decl., Ex. 35 (Westerdal Depo.), 289:12-291:21. | Disputed.<br><br>███████████████████████<br>█████████████████ Ficker Decl. ¶ 8. |
| 37. ████████████████<br>██████████████ | Disputed, but immaterial. |

| | |
|---|---|
| ████████████████ ████ Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 30:10-30:14, 240:12-241:10, 443:11- 443:15. | Warzone attended a gaming conference in the November 2017 to March 2020 time period. Ficker Decl., ¶ 8. |
| 38. ████████████ ████████████ ██████ Evidence:  Mayer Decl., Ex. 36 (Ficker Depo.), 231:18-231:25; 400:15-400:20; 434:22- 435:11; Mayer Decl., Ex. 28 (WZLLC's Supplemental Responses and Objections to Activision's First Set of Requests for Production of Documents, dated Aug. 28, 2024 ("Aug. 28, 2024 RFP 1 Resp."), Supplemental Response No. 33; Mayer Decl., Ex. 29 (Aug. 28, 2024 RFP 2 Resp.), Supplemental Response No. 94. | Disputed. ████████████████ █████████████████ ████████████ ████   Ficker Decl. ¶ 13.  Activision's own citations support this.  Mayer Decl., Ex. 36 (Ficker Depo.), 231:18-25 ("I did hire Bo Geddes"). |
| 39. ████████████ ██████████ ████████ Evidence:  Mayer Decl., Ex. 35 (Westerdal Depo.), 118:22-118:25; 194:8-194:14; 195:8-195:11; Mayer Decl., Ex. 28 (Aug. 28, 2024 RFP 1 Resp.), Supplemental Response No. 74; Mayer Decl., Ex. 28 (Aug. 28, 2024 RFP 1 Resp.), Supplemental Response No. 74; Mayer Decl., Ex. 29 (WZLLC's Supplemental Responses and Objections to Activision's Second Set of Requests for Production of Documents, dated August 28, 2024 ("Aug. 28, 2024 RFP 2 Resp.")), Supplemental Response No. 93. | Disputed, but immaterial. ████████████████ ██████████ ████████████████ ████████████████ █████████████████ █████████████████ ████████████ *See* Ficker Decl. ¶¶ 13- 14, Exs. 7, 18-21. |
| 40. ████████████ | Disputed as to "provide its game to |

– 14 –

| | |
|---|---|
| ▇▇▇▇▇▇▇▇▇▇▇▇<br>▇▇▇▇▇▇▇▇▇▇<br>▇▇▇▇▇▇▇<br>▇▇▇▇▇▇▇▇▇▇<br>▇▇▇▇▇▇▇▇▇<br>▇▇▇<br><br>Evidence: Mayer Decl., Ex. 36 (Ficker Depo.) 49:1-49:24; 438:18-439:18; 450:5-450:21. | reviewers," but immaterial.<br><br>Warzone's offerings are available to members of the public and have been reviewed online. *See, e.g.* Ficker Decl., ¶ 12, Ex. 4. Warzone has engaged with online publications. *See* Ficker Decl., ¶ 12. Activision points to no evidence showing that Warzone "was not aware that any such publications existed." |
| 41. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇<br>▇▇▇▇▇▇▇▇▇▇<br>▇▇▇▇▇▇▇▇▇<br><br>Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 228:23-229:8; 241:11-241:16. | Undisputed but immaterial. |
| 42. ▇▇▇▇▇▇▇▇▇▇▇▇<br>▇▇▇▇<br><br>Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 159:18-159:25. | Undisputed, but immaterial. |
| 43. WZLLC posted to its Facebook page (@WarzoneRisk) only three times since it changed its name to "Warzone."<br><br>Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 316:22-317:21; 423:23-424:5; Mayer Decl., Ex. 23. | Undisputed, but immaterial. |
| 44. WZLLC created a Reddit forum dedicated to its game, but did not change the forum name from "WarLight" to "Warzone" – so it is still called "r/Warlight."<br><br>Evidence: Mayer Decl., Ex. 24. | Disputed, but immaterial.<br><br>The evidence Activision cites states on its face that the subreddit is r/Warlight, and the description is "This is the subreddit for Warzone!" Mayer Decl., Ex. 24. |
| 45. WZLLC maintains a Discord server (a | Disputed. |

virtual community for discussing *Warzone*), which is "invite only."

Evidence: Mayer Decl., Ex. 25.

Activision's characterization of the cited document is unsupported on its face. To the extent Activision's citation shows anything at all, and without waiving objections as to the admissibility of Exhibit 25, it shows that navigating to the URL "https://discord.com/invite/6JMEZzXV5e" allows members of the public to choose a display name to join Warzone's Discord "Public chat." Mayer Decl., Ex. 25.



46. There is no evidence that WZLLC ever streamed *Warzone* or *Warzone Idle* on live-streaming video websites such as Twitch.

Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 326:11-326:14; 327:12-327:17; Mayer Decl., Ex. 86.

Disputed.

Activision's characterization of the cited documents is unsupported on its face. Warzone has utilized Twitch to interact with its users. Ficker Decl. ¶ 11, Ex. 2 at WZ000673 ("Fizzer, the creator of Warzone, will be doing a livestream on Monday, June 17th!...You can view it at twitch.tv/FizzerWL.  It will begin at

| | 11am."); Warzone players were able to report bug issues based on streams on Twitch.  Ficker Decl. ¶ 11, Ex. 3 WZ000617 ("thanks to the person who reported this on Twitch"). |
|---|---|
| 47. The most recent video available on Ficker's personal Twitch account (@FizzerWL) is a video of *WarLight* from nine years ago.<br><br>Evidence: Mayer Decl., Ex. 86. | Disputed, but immaterial.<br><br>Mr. Ficker conducted a livestream on Twitch, "Ask Fizzer Anything" on Tuesday, February 18, 2025, which is available as of February 28, 2025, at https://www.twitch.tv/fizzerwl/videos. Mr. Ficker conducts AMA sessions regularly, and is unaware why prior videos he posted to this Twitch account did not save.  Ficker Decl, ¶ 10, Ex. 1 at WZ000709. |
| 48. ▮▮▮▮▮▮▮▮▮▮<br>▮▮▮▮▮▮▮▮▮▮▮<br>▮▮▮▮▮▮▮▮▮▮▮<br>▮▮▮▮▮▮▮▮▮▮<br>▮▮▮▮▮<br><br>Evidence: Mayer Decl., Ex. 81, at WZ015967-WZ015979. | Disputed.<br><br>▮▮▮▮▮▮▮▮▮▮▮▮▮<br>▮▮▮▮▮▮▮▮▮▮▮<br>▮▮▮▮▮▮▮▮▮<br>▮▮▮▮▮▮▮▮▮▮▮<br>▮▮▮▮▮▮▮▮▮▮▮<br>▮▮▮▮▮▮▮▮▮<br>▮▮▮▮▮▮▮▮▮▮▮<br>▮▮▮▮▮▮▮▮▮▮<br>▮▮▮▮▮▮▮▮▮▮▮<br>▮▮▮▮▮▮▮▮▮▮▮<br>▮▮▮▮▮▮▮▮▮▮▮<br>*See* Ficker Decl. ¶¶ 13-17 Exs. 5-8. |
| 49. ▮▮▮▮▮▮▮▮▮<br>▮▮▮▮▮▮▮▮▮▮<br>▮▮▮▮▮▮▮▮<br>▮▮▮▮▮▮▮ | Undisputed as to Warzone's focus on developing Warzone Idle and its contact with Mr. Geddes after May 2020, otherwise disputed. |

WARZONE'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| ████████████████ | |
| Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 232:6-233:9; 399:18-400:20; Mayer Decl., Ex. 81, at WZ016957; Mayer Decl., Ex. 151 (Deposition of Bo Geddes ("Geddes Depo.")), 14:21-15:5;179:2-182:3; Mayer Decl., Ex. 28 (Aug. 28, 2024 RFP 1 Resp.), Supplemental Response No. 34. | Exhibit 81 should be inadmissible for the reasons set forth in the accompanying Objections to Evidence, but to the extent Activision's cited document shows anything, it does not support Activision's characterization that  Ficker Decl. ¶ 15. <br><br> As Mr. Ficker testified at his deposition, ████████████ Ficker Decl., ¶ 14. ████████████ Ficker Decl. ¶ 15. |
| 50. ████████████████████████████████████████ Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 378:19-378:23; Mayer Decl., Ex. 81, at WZ018504; WZ018503; Mayer Decl., Ex. 81, at WZ022730-WZ022731. | Disputed. <br><br> Warzone actively promotes the WARZONE brand and games it launched under the brand, and has continuously done so since its rebrand in 2017. *See* Ficker Decl. ¶¶ 2, 4, 8. <br><br> Warzone regularly updates its games and engages with its community including through official posts, public forums, video streams, blog posts, direct messages, and tournaments, as well as supporting user-led promotion. Ficker Decl. ¶ 10, *see also id.* ¶ 11, Ex. 2 (WZ000671); Ex. 22 (WZ000554) |

| | |
|---|---|
| | (Warzone Version Updates). |
| | This is consistent with the testimony offered by Activision, Mayer Ex. 36, Ficker deposition at 378:21-25 ███ ███████████████████████████ ██████████████████████████ ████████████████ |
| | Ficker Decl. ¶ 8. |
| | When Activision released Call of Duty Warzone in March 2020, ███████ ███████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████ Ficker Decl. ¶ 13; Exs. 5 [WZ015607], 8 [WZ016387]. |
| 51. ███████████████████████ ███████████████████████ ███████████████████████ ██████████████ <br><br> Evidence: Mayer Decl., Ex. 35 (Westerdal Depo.), 122:12-122:21; 124:3-124:15; 127:6-128:7; 128:13-128:24; 296:19-296:24; 328:13-328:23; Mayer Decl., Ex. 36 (Ficker Depo.), 90:15-90:25; 316:12-316:20; 402:12-402:18; Mayer Decl., Ex. 29 (Aug. 28, 2024 RFP 2 Resp.), Supplemental Response No. 94. | Disputed. <br><br> Search engine optimization was one marketing effort. Ficker Decl. ¶ 10. Warzone also actively promotes the WARZONE brand and games it launched under the brand, and has continuously done so since its rebrand in 2017. *See* Ficker Decl. ¶ 2, 8. Warzone regularly updates its games and engages with its community including through official posts, public forums, video streams, blog posts, direct messages, and tournaments, as well as supporting user-led promotion. Ficker Decl. ¶¶ 10-12. <br><br> When Activision released Call of Duty Warzone in March 2020, ████████ ██████████████████████████████ ██████████████████████████ |

| | |
|---|---|
| ████████████████████<br>██████ Ficker Decl. ¶ 13; Ex. 8, 7, 18. | |
| 52. ████████████████████<br>████████████████████<br>████████████████████<br>███████████<br><br>Evidence: Mayer Decl., Ex. 35 (Westerdal Depo.), 124:3-124:15; 127:6-128:7; 128:13-128:24; Mayer Decl., Ex. 36 (Ficker Depo.), 66:1-66:14; 90:15-90:25; Mayer Decl., Ex. 81, at WZ025702, WZ026556, WZ026563. | Disputed, but immaterial.<br><br>Over the past 17 years, Warzone has utilized many strategies to lead users to its website and other platforms where Warzone's offerings are promoted. Ficker Decl., ¶ 10.<br><br>Activision citation to the deposition of Mr. Westerdal is incomplete, and as such is a mischaracterization of the evidence. c/f Mayer Decl., Ex. 36, 124:3-124:15 with Kash Decl. 3,, Ex. B [Deposition testimony of Jay Westerdal, 124:3-25] ("Q.████████████████████<br>████████████████████<br>████████████████████<br>████████████████ |
| 53. WZLLC placed the word "Risk" all over its website content and metadata.<br><br>Evidence: Mayer Decl., Ex. 35 (Westerdal Depo.), 124:3-124:15; 127:6-128:7; Mayer Decl., Ex. 81, at WZ025702, WZ026556, WZ026563; Mayer Decl., Exs. 19, 22. | Disputed as to "all over."<br><br>Activision mischaracterizes the cited testimony ████████████████<br>████████████████████<br>████████████████████<br>██████████████<br>Mayer Decl., Ex. 35 (Westerdal Depo.), 124:9-15. |
| 54. The title of nearly every page of www.warzone.com includes the words: "Warzone – Better than Hasbro's Risk Game – Play Online Free."<br><br>Evidence: Mayer Decl., Ex. 22; Mayer Decl., | Disputed as to "title of" and "nearly every."<br>The logo is depicted on its own, with WARZONE in large font with a ™ next to it. The tagline makes it clear that Warzone is its own game, distinct from Risk: "[i]f |

– 20 –

WARZONE'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| Ex. 81, at WZ025702, WZ026556, WZ026563. | you like Hasbro's RISK® game, you'll love Warzone!" Ficker Decl., ¶ 6, Ex. 19 [WZ015535]. |
| 55. ████████████████████ ████████████████ ██████████████ ████████████████████ ██████████ <br><br> Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 81:7-82:21; 237:22-238-11; 354:9-355:23; Mayer Decl., Exs. 20, 21; Mayer Decl., Ex. 63, at p. 6; Mayer Decl., Ex. 35 (Westerdal Depo.), 277:7-280:2; Mayer Decl., Ex. 38. | Undisputed but immaterial. |
| 56. Search engine links to www.warzone.com contain the words "Warzone – Better than Hasbro's RISK® game – Play Online Free." <br><br> Evidence: Mayer Decl., Ex. 152. | Disputed but immaterial. Activision has no admissible evidence in support of its SUF 56; *See* Warzone's Objections to Evidence, filed concurrently herewith. |
| 57. WZLLC has never possessed a trademark registration for WARZONE. <br><br> Evidence: Complaint ¶ 24; Answer ¶ 24. | Undisputed that Warzone's applications for a trademark registration in WARZONE in the United States are suspended pending resolution of this litigation. Warzone has registered trademarks in WARZONE in Taiwan, Switzerland, Japan, Iceland and China. Ficker Decl., ¶ 20. |
| 58. █████████████████████ ████████████████████ ████████ <br><br> Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 345:12-345:15. | Disputed as to "until this dispute" and immaterial. <br><br> Warzone has common law trademark rights in WARZONE, which it began using in November 2017 and which it continues to use in connection with its video game offerings. |

| | Warzone applied to the USPTO for a trademark registration for WARZONE in classes 009 and 041 on October 30, 2020 (RJN 1).  Activision filed this complaint on April 8, 2021 (Docket No. 1). |
|---|---|
| 59. In August 2018 a third-party video game publisher received a U.S. trademark registration for EVE: VALKYRIE – WARZONE<br><br>Evidence: Kiel Decl., Ex. C ("2019 Search"), at 5. | Undisputed and immaterial. |
| 60. WZLLC did not oppose the application for a trademark for EVE VALKYRIE - WARZONE.<br><br>Evidence: Mayer Decl., Ex. 31 (Oct. 23, 2024 RFA Resp."), RFA Response No. 65; Mayer Decl., Ex. 36 (Ficker Depo.), 267:9-269:17; Marc Decl., Ex. 148. | Undisputed. |
| 61. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br><br>Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 267:9-273:17; 275:15-277:4; 291:18-295:19; Mayer Decl., Ex. 31 (Oct. 23, 2024 RFA Resp."), RFA Response No. 65; Mayer Decl., Ex. 28 (Aug. 28, 2024 RFP 1 Resp.), Supplemental Response Nos. 41, 42, 44, 45. | Disputed.<br><br>Warzone displayed its mark and brand, including utilization of "™" next to WARZONE.  Ficker Decl., ¶ 9; RJN A at [Warzone Specimen].  It has continuously used WARZONE as its common law trademark from rebranding under WARZONE in 2017 to the present. *See* Ficker Decl., ¶ 9.<br><br>Prior to Activision's unauthorized use of WARZONE and the resulting consumer confusion, Warzone was unaware of any video game being offered with the WARZONE mark.  Ficker Decl., ¶ 3. |

WARZONE'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| | Warzone applied to the USPTO for a trademark registration for WARZONE in classes 009 and 041 on October 30, 2020 (RJN 1, 2).<br><br>Warzone filed its opposition to Activision's trademark applications in WARZONE and CALL OF DUTY WARZONE on November 3, 2020. (RJN 3). |
| 62. By 2019, there were at least **20** mobile apps and other games with "Warzone" in their title, including *WarZone*, *Warzone Pacific*, *Warzone Quest*, *Enter the Warzone*, *Warzone World*, *Crossfire: Warzone*, and *Commando Warzone*.<br><br>Evidence: Kiel Decl., Ex. C (2019 Search); Mayer Decl., Exs. 46, 98, 99, 100, 101, 102, 103, 104, 107, 109, 111, 112, 113, 115, 117, 122, 126, 127, 128, 129, 130, 131, 133, 134. | Disputed as to "by 2019" and "mobile apps and other games."<br><br>Activision submits no admissible evidence substantiating that any purported use is of the mark WARZONE, nor the date of any such use, or the nature, extent, and duration of use of any of the listed "titles"; this fact is thus immaterial.<br><br>It is also unclear when these games were released or whether they were still active on the market in 2019.<br><br>Exhibit C to the declaration of Activision's former paralegal Terry Kiel to the extent admissible, is evidence only that on July 25, 2019, Activision's legal department conducted a preliminary trademark search regarding "WARZONE" and redacted results of the same. |
| 63. By December 2021, there were at least **27** "Warzone"-titled mobile apps and other games, such as *Ultimate Warzone*, *No Rule Warzone*, *Welcome to Warzone*, *Battle Royale Warzone*, and *Idle Warzone*.<br><br>Evidence: Mayer Decl., Exs. 98, 99, 100, 101, | Disputed as to "by December 2021" and "'Warzone'-titled" and "mobile apps and other games."<br><br>Activision submits no admissible evidence substantiating that any purported use is of the mark WARZONE, nor the date of any |

| | |
|---|---|
| 102, 103, 104, 107, 109, 111, 112, 113, 115, 117, 122, 126, 127, 128, 129, 130, 131, 133, 134, 135, 136, 138, 139, 140, 141. | such use, or the nature, extent, and duration of use of any of the listed "titles"; this fact is thus immaterial.<br><br>Activision fails to meet its burden of production in demonstrating that the facts in SUF 63 are both undisputed and material—-indeeed there is no evidence provided, no foundation laid, nor authentication anywhere that would allow the trier of fact to determine what types of games were available, when and where—let alone the relevance or accuracy of counsel's testimony that SUF 63 sets forth "Warzone-titled" products. |
| 64. Evidence: Mayer Decl., Ex. 32 (Nov. 27, 2024 Rog. Resp.), Interrogatory Response No. 1, at 10:20-10:24; Mayer Decl., Ex. 33 (Dec. 1, 2024 Rog. Resp.), Interrogatory Response No. 12, at 10:3-10:6; Mayer Decl., Ex. 36 (Ficker Depo.), 267:9-273:17; 275:15-277:4; 291:18-295:19; 348:11-349:23; Mayer Decl., Ex. 61; Mayer Decl., Ex. 31 (Oct. 23, 2024 RFA Resp."), RFA Response No. 65; Mayer Decl., Ex. 28 (Aug. 28, 2024 RFP 1 Resp.), Supplemental Response Nos. 41, 42, 44, 45. | Disputed.<br><br>See *supra* response to SUF 61. |

| 65. ███████████████ | Disputed. |
| ███████████████ | |
| ███████████████ | Activision mischaracterizes its own evidence. Mr. Ficker stated that the ™ should be smaller than the font size of the trademarked word WARZONE, because a ™ is "not as big as the other letters in the logo." Mayer Decl., Ex. 36 (Ficker Depo.) 349:16. Warzone ensured that its use of WARZONE appeared with a ™ consistently with the understanding that the ™ symbol conferred notice to the public that the term was being used as a trademark. Ficker Decl., ¶ 9; Ficker Decl., Ex. 19 [WZ025702] |
| Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 348:11-349:23; Mayer Decl., Ex. 61. | |
| 66. ███████████████ | Disputed as to "anywhere else" and "the ™." |
| ███████████████ | |
| ███ | Warzone's logo, and the ™ consistently used alongside it, appears at the top left of every page on its website.  Ficker Decl., ¶ 5. |
| Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 351:22-352:3; Mayer Decl., Exs. 14, 15, 17, 18, 19. | |
| 67. On its website, WZLLC uses a stylized gold, silver, and red logo, set against a hexagonal world map, accompanied by the phrase: "If you like Hasbro's RISK® game, you'll love Warzone!" | Disputed. |
| | The logo appears in the top left corner of every page of the website.  The phrase "If you like Hasbro's RISK® game, you'll love Warzone!" is at the bottom of the home page, and is not "accompanied" by any logo.  WARZONE appears in the logo in all caps.  Ficker Decl., ¶ 9. |
| Evidence: Mayer Decl., Exs. 19, 62. | |
| | Further disputed based on Warzone's objection to the introduction of attorney argument or testimony as evidence. |
| 68. WZLLC's website does not include a | Disputed. |

| | |
|---|---|
| trademark notice, but states: "RISK® is a registered trademark of Hasbro, Inc."<br><br>Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 352:8-356:12; Mayer Decl., Ex. 19. | What constitutes a "trademark notice" is not an issue of fact.<br><br>Warzone's use of the ™ after WARZONE (a fact not in dispute) is the trademark notice.<br><br>Undisputed but immaterial that the phrase "RISK® is a registered trademark of Hasbro, Inc." can be found at warzone.com. |
| 69. ██████████████<br>████████████████<br>████████████<br><br>Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 267:9-273:17; 275:15-277:4; 291:18-295:19; 295:21-296:8; Mayer Decl., Ex. 31 (Oct. 23, 2024 RFA Resp."), RFA Response No. 65; Complaint ¶ 21;<br>Answer ¶ 21; Mayer Decl., Ex. 28 (Aug. 28, 2024 RFP 1 Resp.), Supplemental Response Nos. 41, 42, 44, 45. | Undisputed and immaterial. |
| 70. ██████████████████<br>███████████████<br>██████<br><br>Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 267:20-270:17; 272:3-272:10; 275:15-277:4; Mayer Decl., Ex. 28 (Aug. 28, 2024 RFP 1 Resp.), Supplemental Response Nos. 41, 42, 44. | Disputed, incomprehensible as to time, third party uses, immaterial.<br><br>██████████████████████<br>███████████████████<br>█████████████████████<br>████████████████. Ficker Decl. ¶ 3. |
| 71. Activision produces, markets, and distributes video games, including the popular *Call of Duty* franchise. | Undisputed. |

WARZONE'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| Evidence: Complaint, ¶ 11; Answer, ¶ 11. | |
| 72. *Call of Duty* games are military-themed "first-person shooter" games where players engage in battle from the viewpoint of a combatant.<br><br>Evidence: Complaint, ¶ 12; Answer, ¶ 12. | Undisputed and immaterial. |
| 73. Activision released its first *Call of Duty* game in 2003, and has released new installments annually, each with a different sub-title (such as "Modern Warfare" and "Black Ops").<br><br>Evidence: Complaint, ¶¶ 2, 13; Answer, ¶¶ 2, 13. | Disputed and immaterial.<br><br>The cited allegations nowhere state or support the statement that Activision "released new installments annually," nor that each installment was released "with a different sub-title." *See* Complaint, ¶¶ 2, 13. |
| 74. By the end of 2019, Activision had released 16 *Call of Duty* games for Windows PCs and game consoles like Xbox and PlayStation.<br>Evidence: Complaint, ¶ 13; Answer, ¶ 13. | Undisputed and immaterial. |
| 75. ███████████████<br>███████████<br>█████████████<br>████████████<br>███████████<br>█████████<br><br>Evidence: Declaration of Carolyn Wang ("Wang Decl."), ¶ 2; Mayer Decl., Ex. 82 (Deposition of Carolyn Wang, taken on December 13, 2024), 122:5-123:1. | Undisputed and immaterial. |
| 76. In its "battle royale" game (which ultimately was titled *Call of Duty: Warzone*), up to 150 players drop onto and battle across a large-scale, open-world playing field. | Undisputed. |

| | |
|---|---|
| Evidence: Complaint, ¶ 2; Answer, ¶ 2. | |
| 77. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ <br><br> Evidence: Wang Decl. ¶¶ 4, 5, 7, 8. | Disputed. <br><br> ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ <br><br> ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ [Deposition of Carolyn Wang, December 13, 2024, Exhibit 48 at '559]. |
| 78. ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ <br><br> Evidence: Wang Decl. ¶ 6. | Undisputed. |
| 79. ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ ▮▮▮▮ <br><br> Evidence: Wang Decl. ¶ 6. | Undisputed. |
| 80. ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ ▮▮▮▮ <br><br> Evidence: Kiel Decl., ¶ 4, Ex. C (2019 Search). | Disputed. <br><br> Mr. Ficker has testified that Warzone is the name of his game. Warzone is not a game 'with Warzone *in* its title.' Ficker Decl., ¶ 9 Warzone was using WARZONE as a trademark when Activision ran its search. <br><br> Exhibit C to the declaration of Activision's former paralegal Terry Kiel to the extent admissible, is evidence only that on July 25, 2019, Activision's legal |

WARZONE'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| | department conducted a preliminary trademark search regarding "WARZONE" and redacted results of the same. |
| 81. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆<br>▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆<br>▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆<br>▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆<br>▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆<br><br>Evidence: *Id.* | Undisputed. |
| 82. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆<br>▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆<br>▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆<br><br>Evidence: *Id.* | Undisputed and immaterial. |
| 83. In 2019, the ***only*** live WARZONE trademark registration in connection with video games was EVE: VALKYRIE – WARZONE.<br><br>Evidence: *Id.* | Disputed as to "WARZONE trademark registration" and immaterial.<br><br>EVE: VALKYRIE – WARZONE is not a registered trademark in the word WARZONE, which is at issue in this case. |
| 84. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆<br>▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆<br><br>Evidence: Wang Decl., ¶ 8. | Disputed as to "January 2020."<br><br>▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆<br>▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆<br>▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆<br>▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆<br>▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆<br>▆▆▆▆▆▆▆▆ Kash Decl., Ex. C [ATV022414] at ATV022415 and ATV022418. |



| | |
|---|---|
| 85. On March 10, 2020, Activision released *CODWZ* for Windows PCs, Xbox, and PlayStation.<br><br>Evidence: Complaint, ¶¶ 13, 15; Answer, ¶¶ 13, 15; Mayer Decl., Exs. 1, 2, 9, 10, 11, 12. | Undisputed. |
| 86. Activision makes the console version of *CODWZ* available through the Xbox and PlayStation stores.<br><br>Evidence: Mayer Decl., Exs. 1, 2, 9, 10, 11, 12. | Undisputed but immaterial. |
| 87. The Windows version is and has been available for download only on Activision's Battle.net and Valve's Steam platforms.<br><br>Evidence: Mayer Decl., Exs. 1, 7, 8. | Disputed.<br><br>The Windows version of Call of Duty Warzone is available on other platforms such as CNET.  Kash Decl., Ex. AI [CNET PDF]. |
| 88. *CODWZ* is free-to-play and generates revenue through in-game purchases of "cosmetic" items for use in the game.<br><br>Evidence: Complaint, ¶ 15; Answer, ¶ 15; Mayer Decl., Exs. 1, 2. | Undisputed that Call of Duty; Warzone is free to play.<br><br>Otherwise disputed, as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| 89. Activision consistently markets and distributes its game as *Call of Duty: Warzone* – not simply "Warzone." | Disputed.<br><br>▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |

WARZONE'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| Evidence: Wang Decl. ¶ 10, Ex. A; Mayer Decl. ¶¶ 9-14, Exs. 8, 10, 11, 12, 13, 16. |  Activision markets Call of Duty: Warzone as Warzone. Kash Decl., Ex. E [Exhibit 93], |
| 90. On the few occasions where Activision referred to *CODWZ* as "Warzone," it did so only in a context that clearly indicated it is a *Call of Duty* game: for example, within the callofduty.com website or after the full name had already been used.<br><br>Evidence: Wang Decl. ¶ 11, Ex. A, B; Mayer Decl. ¶¶ 9-14, Exs. 8, 10, 11, 12, 13, 16. | Disputed.<br><br> Kash Decl., Ex. H [Deposition of Carolyn Wang, 361:3-5] ( Kash Decl., Ex. I [Deposition of |

Warzone's Statement of Genuine Disputes of Material Facts and Additional Material Facts

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| | Chris Plummer, Exhibit 85 at ATV001147] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br><br>Ex. A [Deposition of Roman Welden, 221:10-12] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| 91. Activision's publicly available *CODWZ* brand guidelines prohibit the use of the word "Warzone" without "Call of Duty."<br><br>Evidence: Wang Decl. ¶ 10, Ex. A. | Disputed, but immaterial.<br><br>The evidence cited does not support the characterization of the document attached to Ms. Wang's declaration as "publicly available," and Activision's lead counsel has attested in his concurrently-filed declaration under penalty of perjury that Ex. A is in fact sensitive business information for which compelling reasons exist to seal it in the public record. Docket No. 110-5 at ¶ 4.<br><br>The citations ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮" *See* Wang Dec., Ex. A at 14 ("the Warzone logo"). ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ Kash Decl.11, Ex. J |

| | |
|---|---|
| | [WZ025902]. Ms. Wang herself won an award for Activision's campaign for Warzone Pacific, in which the "word" Warzone is prominently advanced. Kash Decl. 12, Ex. K [WZ026225].<br><br>Warzone Mobile's Instagram icon is also simply "Warzone Mobile." Kash Decl., Ex. L [*See* Activision's Response to Warzone's First Set of Requests for Admission, No. 90]. In well-known publications like IGN, Call of Duty: Warzone Mobile is referred to simply as Warzone Mobile, Kash Decl. Ex. M (WZ026485) at WZ026485 ("You don't need to be a Warzone die-hard to enjoy Warzone Mobile").<br><br>Also disputed on the basis that Exhibit A to the Declaration of Carolyn Wang is not admissible, as set forth in the accompanying Objections to Evidence. |
| 92. Activision's *CODWZ* logos use a block-letter font, and its key art includes images of soldiers.<br><br>Evidence: Wang Decl. ¶¶ 10, 11, Ex. B. | Disputed, but immaterial.<br><br>The cited material does not support the statement on its face. The declaration paragraphs provide no foundation for the presentation of any logos at any particular time. What's more, Ex. B states clearly that it contains only a "representative sample" of art.<br><br>Activision's logos for Call of Duty Warzone do not consistently appear with images of soldiers. The focus of Activision's key art was on the Warzone logo as opposed to the background imagery: "'Warzone' Logo design can |

– 33 –

| | |
|---|---|
| | stay consistent and background imagery changes." Kash Decl. Ex. N (ATV018455) at ATV018460.<br><br>Activision's key art was influenced by whether the Warzone name could legally be used, as demonstrated by Kash Decl., Ex. O (ATV028010) at ATV028011:<br><br> |
| 93. In 2022, Activision announced and tested in limited jurisdictions a mobile version of *CODWZ*, titled *Call of Duty: Warzone Mobile* ("*CODWZM*").<br><br>Evidence: Mayer Decl., Ex. 78 (Deposition of Chris Plummer Depo., taken on December 16, 2024 ("Plummer Depo.")), 52:4-53:9; 91:24-92:20. | Undisputed, but immaterial particularly as to "limited jurisdictions." No evidence Activision cited supports actions taken in the United States market. |
| 94. *CODWZM* was released in March 2024.<br><br>Evidence: Mayer Decl., Ex. 78 (Plummer Depo.), 56:15-57:5. | Undisputed. |
| 95. *CODWZM* always has been titled "*Call of Duty: Warzone Mobile*" on all platforms, and | Disputed. |

– 34 –

its app icon contains only the words "Call of Duty."

Mayer Decl., Ex. 78 (Plummer Depo.), 72:19-73:12; Mayer Decl., Exs. 4, 13, 16.

Warzone Mobile's X handle is @warzonemobile and depicts the following profile picture (*See* Kash Decl., Ex. P (WZ024598):



Warzone Mobile's Instagram icon is also simply "Warzone Mobile." *See* Kash Decl., Ex. L [Activision's Response to Warzone's First Set of Requests for Admission, No. 90].

In popular publications like IGN, Call of Duty: Warzone Mobile is referred to simply as Warzone Mobile.  Kash Decl., Ex. M (WZ026485) at WZ026485 ("You don't need to be a Warzone die-hard to enjoy Warzone Mobile."); Ex. J [WZ025902].

---

96. *CODWZM* is listed as *Call of Duty: Warzone Mobile*, and its app icon says only "CALL OF DUTY."

Evidence: Mayer Decl., Ex. 78 (Plummer Depo.), 72:19-73:12; Mayer Decl., Exs. 4, 13, 16.

Disputed as to "listed as."

The cited documents do not support the statement that Warzone Mobile, over an indefinite period, has been "listed as Call of Duty Warzone Mobile" with an "app icon that says only 'CALL OF DUTY'" . As depicted *supra* SDF 95, Activision's social media channels for Warzone Mobile simply state "Warzone Mobile" as their icons.

WARZONE'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| 97. In 2021, Activision launched the first of a series of four *CODWZ* tournaments titled *Call of Duty: World Series of Warzone.*<br><br>Evidence: Mayer Decl., Ex. 79 (Deposition of Matt Kliszewski Depo., taken on December 11, 2024), 269:10-269:14. | Disputed as to "titled."<br><br>The tournaments are referred to simply as "World Series of Warzone" by Activision. Activision marketed World Series of Warzone at worldseriesofwarzone.com and on its blog as "Welcome to the World Series of Warzone." Kash Decl., Ex. Y [Deposition of Matt Kliszewski, at 307:20-24]. & Ex. R [Deposition of Matt Kliszewski, Exhibit 29] |
| 98. WZLLC has not alleged any likelihood of confusion between its games and the tournaments.<br><br>Evidence: *See generally* WZLLC's Counterclaims (ECF 14). | Disputed.<br><br>Warzone has alleged likelihood of confusion based on Activision's use of the WARZONE mark and any of its uses, including World Series of Warzone, which are at controversy in this case. *See* Answer and Counterclaims ¶¶ 4, 34, 36. |
| 99. Activision advertised *CODWZ* via television ads, internet banner ads, and influencers.<br><br>Evidence: Mayer Decl., Ex. 83 (Expert Report of WZLLC's expert Bo Geddes, dated January 17, 2025), ¶ 126. | Disputed.<br><br>Activision selectively cites Warzone's expert in support of this fact, which includes reference to "social media boosts," "agency collaborations" and "brand partnerships." Geddes Decl., Ex. 1 ¶ 126. |
| 100. ███████████████<br>███████████████<br>█████████<br><br>Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 525:19-526:23, Mayer Decl., Exs. 70, 74, 75, 76; Mayer Decl., Ex. 33 (Dec. 1, 2024 Rog. Resp.), Interrogatory Response No. 12, 11:7-11:11. | Disputed.<br><br>The release of the game Call of Duty; Warzone in March of 2020, at the height of a global pandemic, did not make Warzone aware that Activision was intentionally using WARZONE as its own trademark, with knowledge of and in violation of Warzone's common law trademark rights. Nevertheless, Warzone |

did all it could to mitigate the damage to its brand—redirecting Twitch livestreams, informing consumers that it was not Activision, posting that it was not Call of Duty's Warzone on its own webpage, and releasing Warzone Idle as soon as it was ready. *See* Ficker Decl. ¶¶ 17-19.

Unbeknownst to Warzone at the time, Activision was aware of Warzone's video games and its WARZONE trademark— it appeared in the preliminary trademark search conducted by Activision's legal department in July of 2019 (*see* Kiel Declaration, Exh. C) and on June 25, 2020 it filed for a trademark in WARZONE with the USPTO ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ WARZONE.  Kash Decl. 21, Ex. T [Deposition of Matthew Cox, Ex. 143 at ATV014565 ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮

Warzone filed its opposition to Activision's WARZONE's trademark applications on November 3, 2020, the first date it was permissible to do so. (RJN 3).

| 101. ▮▮▮▮▮▮▮▮ | Disputed, but only as to time—*see* SDF 100, *supra*. |
| --- | --- |

| | |
|---|---|
| Evidence: Mayer Decl., Ex. 33 (Dec. 1, 2024 Rog. Resp.), Interrogatory Response No. 12, 11:7-11:11. | |
| 102. ████████████████████████ ████████████████ | Undisputed except as to "recorded a profit."

Warzone was a uniquely profitable game for its genre, earning over $2 million in lifetime revenues.  Geddes Decl., Ex. 1, ¶ 90, Ficker Decl., Ex. 21. |
| Evidence: Mayer Decl., Ex. 81, at WZ004817-WZ004818, WZ005072, WZ005086, WZ005058; Mayer Decl., Ex. 31 (Oct. 23, 2024 RFA Resp.), RFA Response Nos. 38, 40; Mayer Decl., Exs. 66, 67, 68, 69. | |
| 103. ████████████████████ ████████████████████ ██████████████ | Undisputed that SUF 13 is a partial quote from Mr. Ficker's email of March 22, 2020 ████████████████ ███████████████████████ ███████████████████████ ████████████████████  See also, Ficker Decl., Ex. 13, Ex. 8.; Geddes Decl., Ex. 1 at ¶¶ 30-31, 36. |
| Evidence: Mayer Decl., Ex. 70. | |
| 104. WZLLC has no evidence that the consuming public ever associated the word *Warzone* exclusively with its goods or services.

Evidence: Mayer Decl., ¶ 55. | Disputed and immaterial as it misstates the standard with respect to "exclusively."

Activision's evidence also does not support this contention.  Rather, the paragraph citation (likely intended to be ¶ 53) demonstrates only that Activision's trial counsel improperly offers testimony that he is unable to find such evidence.

*See* SDF 105, 106,

Warzone has been in use in commerce since 2017.  Mr. Ficker has consistently used ™ after the WARZONE in its logo, |

– 38 –

| | and the name of the game has remained Warzone since 2017.  Ficker Decl., ¶ 9. |
|---|---|
| 105. WZLLC has no evidence that it ever lost a customer or prospective customer because of *CODWZ*.<br><br>Evidence: Mayer Decl., ¶ 55. | Disputed.<br><br>Similar to the above, the evidence that Activision cites in support of this "uncontroverted fact" is improper lay opinion and attorney testimony offered by Activision's trial counsel that it could not find evidence of infringement in the discovery produced by Warzone in this matter.<br><br>Warzone has submitted evidence of actual confusion, including a consumer survey conducted by Dr. Dimofte, all of which Activision fails to mention in its motion for summary judgment.  Dimofte Decl, Ex. 1 at ¶¶ 6, 66, 67, 70 76, 77, 78, 84, 85(a). |
| 106. There is no evidence that any prospective customer mistakenly believed that WZLLC's games were created by or associated with Activision.<br><br>Evidence: Mayer Decl., Ex. 31 (Oct. 23, 2024 RFA Resp.), RFA Response Nos. 1-4, 9-10; Mayer Decl., ¶ 55. | Disputed.<br><br>Trial counsel's declaratory statement, which is incorrectly cited, is improper lay opinion and mischaracterizes the evidence.<br><br>The consuming public of video games are prospective customers of Warzone's game. Dimofte Decl., Ex. 1 at ¶ 21.<br><br>Warzone has submitted evidence of actual confusion, including a consumer survey conducted by Dr. Dimofte, all of which Activision fails to mention in its motion for summary judgment.  Dimofte Decl, Ex. 1 ¶¶ 77, 78, 85(a). |

WARZONE'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

*See* Ficker Decl., ¶ 17, Exs. 10-14.

Negative public reviews meant for Activision have been associated with Warzone's brand. Kash Decl., Ex. U [WZ017663].

*See* Kash Decl., ¶ 22, Ex. U [WZ017663]

| | |
|---|---|
| 107. WZLLC has never attempted to place any monetary value on its alleged *Warzone* trademark or to quantify the damage in the purported value of the mark.<br><br>Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 346:5-347:23; Mayer Decl., Ex. 35 (Westerdal Depo.), 67:23-69:22; Mayer Decl., Ex. 153 (WZLLC's Amended Responses and Objections to Activision's First Set of Interrogatories [No. 14], dated November 12, 2024 ("Nov. 12, 2024 Rog. Resp.")), Response to Interrogatory No. 14. | Disputed.<br><br>Mayer Decl, Exh. 84; *see also* Dimofte Declaration, Ex. 1 at 68.<br><br>In addition, counsel for Activision, Scott Majors, by letter dated February 16, 2021, asked that Warzone provide Activision with the amount it believed it was damaged due to Activision's infringement of WARZONE. Counsel for Warzone, Derek Newman responded by letter of March 4, 2021 stating that Warzone would license the mark to Activision in exchange for a royalty of one quarter of one percent of gross revenue generated from sales of Activision WARZONE branded games" or "settle for one-time payment of $7 million |

WARZONE'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| | and would assign the trademark to Activision in exchange."  Kash Decl. at 23 - 24 , Exs. V [ATV006497], W [ATV006519] |
| 108. Activision has never sought to preclude WZLLC from using "Warzone" in connection with its games.<br><br>Evidence: Mayer Decl., Exs. 74, 75, 76. | Disputed.<br><br>Activision's complaint in this matter, filed April 8, 2021, expressly requests that Warzone's "pending applications for registration of the mark WARZONE should not proceed" and that "Activision's pending applications for registration of the marks WARZONE and CALL OF DUTY WARZONE may proceed to registration" and that the Court enjoin Warzone "from interfering with Activision's use and registration of the WARZONE and CALL OF DUTY WARZONE marks and from opposing, seeking to cancel, or otherwise objecting to any federal registrations and applications for registration of such marks."  Docket No. 1. at ¶¶ 13:6-13.<br><br>Furthermore, Activision has actively sought to preclude others from using the "Warzone" mark.  Kash Decl., Ex. F at [ATV028042] is a November 20, 2020 ███████████████ in May 2021, ███████████████ |

| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br>▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ 13 Ex. L,<br>Activision's Responses to Request for<br>Admission 61-81. |
|---|---|
| 109. In late 2020 and early 2021, WZLLC threatened to seek to enjoin Activision from distributing *CODWZ* unless Activision paid WZLLC $7 million or a royalty of .25% of its "gross revenue" from *CODWZ*.<br><br>Evidence: Mayer Decl., Exs. 74, 75, 76. | Disputed.<br><br>In November 2020, Warzone was not aware of Activision's intentional actions in an effort to obtain the WARZONE mark despite being aware of Warzone.com's common law trademark rights (*see supra* SDF 100)<br><br>Derek Newman, trademark counsel for Warzone reached out to Activision on November 18, 2020, following up by letter to Activision's trademark counsel Scott Major on November 20, 2020 in which he attempted to amicably resolve matters, writing "Activision has been using Warzone's trademark in connection with the game "Call of Duty: Warzone" since March 2020, causing consumer confusion and harm to Warzone, and has applied to register the WARZONE trademark with the United States Trademark Office. Warzone hopes that Activision will change the name of its games, stop using Warzone's WARZONE mark, and abandon the trademark applications.  But if Activision insists on using the WARZONE mark, we **invite Activision to make a proposal to Warzone to resolve these issues**" Kash Decl., Ex. F at ATV028042,  emphasis added, and "Yet though we've investigated an affirmative claim, **Warzone prefers to leave war to the videogames**. If |

Activision is unwilling to stop its use of the WARZONE mark, **we'd prefer to discuss a holistic resolution of both the infringement issue and the parties' rights in the mark. We believe a solution exists that would provide both parties with certainty in their rights and obligations for their respective online game names and brands.**" *Id.* at ATV006496, emphasis added.

Activision did not respond until February 16, 2021, whereupon Mr. Majors informed Mr. Newman that Activision was entitled to the WARZONE mark "in consideration of the substantial promotion and success of Activision's game, our client believes it was first to establish secondary meaning in the WARZONE mark" Kash Decl., Ex. V at ATV006497 and thereafter "if your client still believes it has been damaged by Activision such that monetary payment is justified, **we invite your client to quantify those damages** for our consideration." *Id.* at ATV006500.

In correspondence of March 4, 2021, Warzone for the first time, provided a potential solution, with Mr. Newman writing to Mr. Majors that "[t]o resolve this matter, Warzone would license the mark to Activision in exchange for a royalty of one quarter of one percent of gross revenue generated from sales of Activision WARZONE branded games" or "settle for one-time payment of $7 million and would assign the trademark to Activision in exchange."  Kash Decl., Ex.

WARZONE'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| | W at ATV006527. Activision responded on March 24, 2021, offering $10,000 and then promptly filed the instant complaint on April 8, 2021. Kash Decl., Ex. Z at ATV006530, and Docket 1. |
| 110. The gameplay of *CODWZ* and WZLLC's offerings do not have similar appearances, mechanics, or player experience.<br><br>Evidence Mayer Decl., Ex. 31 (Oct. 23, 2024 RFA Resp.), RFA Response Nos. 59, 60; Mayer Decl., Exs. 1, 2, 3, 4, 5, 6. | Disputed and immaterial as to "gameplay."<br><br>The games have nearly identical marks and are in overlapping markets.  Geddes Decl., Ex. 2 at 10,<br><br>The issue in this case is Activision's unauthorized use of the mark WARZONE. (Docket 69 (Court Order denying MTD). |
| 111. WZLLC's games are slow-paced online board games that appeal to those "who enjoy strategy-based civilization building games," and WZLLC has compared them to *Risk*.<br><br>Evidence: Mayer Decl., Ex. 3; Mayer Decl., Ex. 27 (WZLLC's Supplemental Responses and Objections to Activision's First Set of Interrogatories, dated July 24, 2024), Interrogatory Response No. 8, at 5:17-5:19. | Disputed as to "online board games."<br><br>Activision further mischaracterizes the evidence, which provides no support for the contention that Warzone's games are "slow-paced" nor that they were compared to *Risk*.<br><br>Warzone has not characterized either of its games as an online board game. Rather, Warzone is described as a "cross-platform strategy game with social play opportunities." Geddes Decl., Ex. 1 at ¶ 86. |

WARZONE'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| 112. WZLLC has provided no evidence that players of *CODWZ* play WZLLC's games or vice versa.<br><br>Evidence: Mayer Decl., ¶ 55. | Disputed.<br><br>Trial counsel's declaratory statement, which is incorrectly cited, is improper lay opinion and mischaracterizes the evidence.<br><br>Warzone has provided evidence that the video game market is not highly segmented, and that players of first-person shooter games and strategy games experience significant overlap. Geddes Declaration, Ex. 2 at 10. Dimofte Declaration, Ex. 1.<br><br>The consuming public of video games are prospective customers of Warzone's game. Dimofte Decl., Ex. 1 at ¶ 21. |
| 113. Not one consumer submitted a review on the Apple or Google App Stores for a WZLLC mobile game believing it was a *Call of Duty* or Activision game.<br><br>Evidence: Mayer Decl., Exs. 149, 150. | Disputed.<br><br>Attorney testimony is not evidence, nor are the undated (and unproduced) exhibits 149 and 150.<br><br>Activision relies on reviews from years before Call of Duty Warzone was released that are not representative of the 23.6k reviews on the Google App store or the 1.5k reviews on the Apple app store. |

WARZONE'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS



114. [redacted]

Evidence: Mayer Decl., Ex. 83 (Geddes Report), ¶¶ 55-62.

Disputed.

[redacted] Ex. 1 ¶ 120, Ex. 2 ¶ 10.

115. [redacted]

Evidence: *Id.* ¶ 37.

Undisputed except that the cited paragraph 37 of Mr. Gedde's report should be included in full:

WARZONE'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS



116.

Undisputed except that the cited paragraph 42 of Mr. Gedde's report should be included in full:

Evidence: *Id.* ¶ 42.

117.

Evidence: *Id.*

| | |
|---|---|
| ███████████████████ ████████████ | ███████████████████████████████ ████████████████████ |
| 118. WZLLC has not identified any actual or potential customer, licensee, or business partner who failed or refused to do business with WZLLC due to a mistaken belief that Activision was the source of or affiliated with WZLLC's games.<br><br>Evidence: Mayer Decl., ¶ 55. | Disputed.<br><br>Trial counsel's declaratory statement, which is incorrectly cited, is improper lay opinion and mischaracterizes the evidence.<br><br>Warzone submitted the expert report of Claudiu V. Dimofte, which identified actual confusion in the marketplace. Dimofte Decl., Ex. 1, ¶ 77-78. |
| 119. ████████████████████ ██████████████ ████████████████████<br><br>Evidence: Mayer Decl., ¶¶ 42-44; see, e.g., Mayer Decl., Ex. 71; Mayer Decl., Ex. 81, at WZ011349, WZ011478, WZ0011557, WZ011574. | Disputed as to "199" and "CODWZ players."<br><br>Emails were not only from CODWZ players. Warzone received more than 250 actual confusion emails. Ficker Decl., ¶18, Exs., 10-14.<br><br>Geddes Decl., Ex. 2, § I(A)(3) |
| 120. ████████████████████ ██████████████<br><br>Evidence: Mayer Decl., Ex. 35 (Westerdal Depo.) 329:18-330:5; Mayer Decl., Ex. 36 (Ficker Depo.), 578:15-579:7, 626:23-632:4; Mayer Decl. ¶¶ 42-44; see, e.g., Mayer Decl., Exs. 71, 72; Mayer Decl., Ex. 81, at WZ011349, WZ011478, WZ0011557, WZ011574. | Disputed. *See supra* SDF 119.<br><br>Activision additionally mischaracterizes the testimony. █████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ███████████████ Mayer Decl., Ex. 35 (Westerdal Depo.) 330:1-9. |
| 121. ████████████████████ ████████████████████ ████████████████████ ████████████████ | Disputed.<br><br>Mr. Ficker would often engage in email correspondence with confused consumers, |



| | |
|---|---|
| ▮ <br><br> Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 626:23-632:4; Mayer Decl., Exs. 71, 72. | where neither party was sure which game was being discussed until enough detail was revealed for Mr. Ficker to clarify which game the consumers were writing about. *See e.g.* Ficker Decl., ¶ 17, Ex. 14 |
| 122. ▮▮▮ <br><br> Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 626:23-632:4, 632:11-634:3; Mayer Decl., Exs. 71, 72. | ▮▮▮▮▮▮▮▮▮▮▮ <br><br> Warzone further disputes SUF 122 on the grounds that Exhibits 71 and 72 are inadmissible , as is the characterization of any evidence or "analysis" offered as testimony by trial counsel (e.g. Mayer Decl., pg. 12, heading reads "Analysis of Misdirected Emails"). |
| 123. ▮▮▮ <br><br> Evidence: Mayer Decl., Ex. 80 (Deposition of Matt Cox, taken on December 19, 2024), 269:10-270:3. | Disputed and immaterial. <br><br> ▮▮▮ |

| | |
|---|---|
| | ████████████████████████<br>████████████████████████████<br>████████████████████████████<br>████████████████████████████<br>██████████████████████████<br>██████████████████████████<br>████████████████████████<br>████████ |
| 124. ████████████████████<br>████████████████████████<br>██████ <br><br>Evidence: Mayer Decl., Exs. 49, 66, 67, 68, 69. | Disputed and immaterial, particularly in that it seeks to limit the relevant time frame as "to March 2020."<br><br>Warzone's revenues from November 2017 to March 2020 were greater than $200,000 as evidenced by the yearly tax returns produced in this action.  Ficker Dec., ¶ 21 Exs. 15, 16, 17, 18. |
| 125. In October 2024, WZLLC represented to the Court that it was **not** seeking purported lost profits.<br><br>Evidence: Mayer Decl., Ex. 34, 8:10-13; 11:6-11:10; 14:19-14:22; 16:1-16:2. | Disputed as to "represented" but immaterial to resolution of Activision's motion.<br><br>Lost profits were disclosed as a potential damages theory since Warzone filed its counterclaims on June 8, 2021 (Docket No. 14).<br><br>Magistrate Judge Jacqueline Chooljian ordered Warzone to amend its response to Interrogatory No. 14 by November 12, 2024.  In compliance, Warzone disclosed the types of injuries it sustained and the basis for these, which specifically identifies "Assessment of the loss of brand equity needed to support long-term growth initiatives, including calculating diminished brand loyalty, differentiation, and perceived quality, which affects the |

| | |
|---|---|
| | ability to expand." Kash Decl., Ex. AB [Warzone's Amended Responses and Objections to Activision's First Set of Interrogatories [No. 14]]. |
| 126. ███████<br>█████████████<br>███████████████<br>████████<br><br>Evidence: Mayer Decl., Ex. 153 (Nov. 12, 2024 Rog. Resp.), Response to Interrogatory No. 14; Mayer Decl., Ex. 30 (WZLLC's Objections and Supplemental Response to Activision's First Set of Interrogatories (No. 14), dated September 24, 2024), Supplemental Response No. 14, at 4:22-4:24. | Disputed as to ██████████ and "████████████████" but immaterial to resolution of Activision's motion.<br><br>*See supra* SDF 125.<br><br>Warzone produced over 1300 documents during discovery concerning Bo Geddes' work for Warzone relating to marketing. *See* Mayer Decl., Ex. 84. |
| 127. ██████████<br>████████████<br>████████████<br>████████████<br>██████<br><br>Evidence: Mayer Decl., Ex. 83 (Geddes Report), ¶ 90; Mayer Decl., Ex. 84, ¶¶ 42-48. | Disputed.<br><br>Warzone has disclosed multiple damages theories predicated on the expert opinion of multiple experts.  To the extent that SUF 127 is not simply advancing improper legal conclusion as "fact," Warzone's damages theory regarding lost profits involves varying amounts of monthly expenditure over the damages period, and is supported not only by contemporaneous documents, *supra* SDF 125, ██████████<br>████████████<br>████████████<br>███████ Geddes Decl., Ex. 1. Activision cites to a single paragraph in the middle of a pages-long analysis of the feasibility of a detailed marketing campaign.  *Id*. at ¶¶ 74-114.  No cited evidence supports the characterization of |

| | |
|---|---|
| | any of Warzone's damages theories as reliant on mere possibility, and thus misrepresents the factual and evidentiary basis of Warzone's damages claims. |
| 128. ███████████████████ ██████████████████████ ████████████████ Evidence: Mayer Decl., Ex. 36 (Ficker Depo.), 232:6-233:9; 399:18-400:20; Mayer Decl., Ex. 81, at WZ016957. | Disputed but immaterial. Activision grossly mischaracterizes the documents and evidence to provide argument instead of fact. Activision has no evidence that Warzone "rejected" Mr. Geddes proposal. Mr. Geddes and Mr. Ficker have and will testify, consistent with the evidence, that the marketing plan agreed to in December of 2019 was always intended to be implemented after Warzone Idle was released. *See* Ficker Decl, ¶¶ 13-14. When Warzone Idle was first released in July 2020, Mr. Ficker had decided that in light of Activision's unauthorized use of WARZONE, it did not make sense to invest resources into a new marketing plan. Ficker Decl., ¶ 15. |
| 129. ███████████████████ ██████████████████ Evidence: Mayer Decl., Ex. 81, at WZ015605. | Undisputed but immaterial. Activision mischaracterizes the document. Ficker Decl., ¶ 13, Ex. 7. |
| 130. ███████████████████ ██████████████████ ████████ Evidence: Mayer Decl., Ex. 83 (Geddes Report), ¶¶ 99, 103. | Disputed as to "at best" but immaterial. Activision mischaracterizes the Geddes Report. No marketing projection can be "guaranteed." Geddes Declaration, Ex.1; Kash Decl., Ex. AC [Deposition of Roman Welden, 256:21-257:5 ("Every business decision in marketing should be |



based off of data that they have…there are
many factors that could go into good
projections.  Even the best projections,
though, do not have a guarantee.")]

131. ███████████████

Evidence: Mayer Decl., Ex. 151 (Geddes
Depo.), at 108:18-110:5, 113:14-114:7,
219:21-221:1.

Disputed.

Activision mischaracterizes the deposition
testimony of Mr. Geddes. Kash Decl., ¶
29, Ex. AC [Deposition of Bo Geddes,
88:24-89:4 ("██████████████

██████████████")] *See
also supra* SDF 130.  The campaign he
intended to run for Warzone was at the
bottom end of his skillset; he was ███

132. ████████████

Disputed but immaterial.

| | |
|---|---|
| ███████████████ <br><br> Evidence: Mayer Decl., Ex. 151 (Geddes Depo.), at 125:12-128:16. | Activision mischaracterizes the testimony of Mr. Geddes.  In the same excerpt cited by Mr. Mayer, Mr. Geddes testified that he ████████████████ ████████████████ ████████████████ ████████████████ ███████ Mayer Decl., Exh. 151, Deposition of Bo Geddes at 126:21-25. <br><br> Activision seeks to rely on Mr. Geddes as an expert when it is beneficial to their arguments, including introducing both of Mr. Geddes's expert reports as evidence as exhibits to Mr. Mayer's declaration. |
| 133. ████████████ ███████████ ██████ <br><br> Evidence: Mayer Decl., Ex. 31 (Oct. 23, 2024 RFA Resp.), RFA Response Nos. 9, 10. | Disputed but immaterial. <br><br> First, Activision has grossly mischaracterized the evidence submitted in support of SUF 133.  Neither RFA seeks information regarding Activision's revenue. Warzone responded after objecting to both. <br> Warzone has also provided survey evidence regarding the importance of the WARZONE name to Activision's sales. Dimofte Declaration, Ex.1, page 68; *see* Mayer Decl., Ex. <br><br> *See also* Kash Decl., Ex. T [ATV014565] (June 23 2020 email). |
| 134. ██████████ ███████████ ███████████ <br><br> Evidence: Mayer Decl., Ex. 85, at pp. 21-23; | Disputed, but immaterial.  *See Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 934 (9th Cir. 2017) in the case of reverse confusion, typically 'neither junior nor senior user wishes to siphon off the other's goodwill.' citing *Dreamwerks* |

| | |
|---|---|
| Mayer Decl., Ex. 151, at 238:11-238:22. | *Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir. 1998)."<br><br>Warzone also disputes that Activision's citations to the deposition testimony of Mr. Geddes and to his rebuttal report support SUF 134—there was no "concession" by Mr. Geddes, nor any of Warzone's other, but uncited, experts.<br><br>In fact, Mr. Geddes attests to the value that the name WARZONE would bring to a game. Geddes Decl., Ex. 1 at ¶ 76 (███ ███████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ █████████████████████).<br><br>*See also* Mayer Decl, Exhibit 84 ("Tregillis Report"). |
| 135. As of today, at least 50 games with "Warzone" in their titles have been released.<br><br>Evidence: Mayer Decl., Exs. 46, 57, 87, 88, 89, 90, 91, 92, 93, 94, 95, 95A, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 108A, 109, 110, 110A, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 132A, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146. | Disputed, but immaterial.<br>Further dispute as to "as of today" and immaterial as it refers to "in their titles" where the proper inquiry is "as their titles."<br><br>Activision's evidence in support of this contention provides no information as to when these games were released nor whether they are in use in commerce. |

## WARZONE'S ADDITIONAL MATERIAL FACTS

Warzone also sets forward the following additional material facts :

|  | **Additional Material Facts** | **Evidence** |
|---|---|---|
| 136. | Both Activision and Warzone use WARZONE in connection with video games offered to video game players. | Geddes Decl., Ex. 1, at ¶ 120. |
| 137. | Both Activision and Warzone have pending applications before the USPTO for a federal trademark in the standard word character mark WARZONE in files of use 009 and 041. | RJNs A-D, Docket No. 69 at 6-7.[1] |
| 138. | In November 2017, Warzone officially rebranded from WarLight with the launch of its revamped core game, and began its use of WARZONE in commerce. | Ficker Decl., ¶ 4. |
| 139. | The logo with the WARZONE mark has been displayed on Warzone offerings since November 2017. | Ficker Decl., ¶ 4, 9. |
| 140. | In November 2017 there was no other video game developer or publisher using WARZONE as a trademark. | Ficker Decl., ¶ 3. |
| 141. | WARZONE is not descriptive as applied to Warzone's products. | Kash Decl, Ex. A [Welden Rpt] at ¶ 81 (Warzone games "employ the thematic fiction of playing an army general making military decisions, the game is entirely abstract and implements basic area control mechanics common to many board games"); |

---

[1] The Court may take, and has previously taken, judicial notice of these filings as matters of public record.  Docket No. 69 at 6-7 ("The court also takes judicial notice of Plaintiff's representations to the USPTO in connection with its trademark applications…Trademark/Service Mark Application, Principal Register, Serial No. 90020487, available at https://tinyurl.com/Serial-No90020487").

| | | Warzone's marketing expert opined that WARZONE connotes a "military aesthetic," and the logo implies battles for domination of a map. Geddes Decl., Ex. 1 ¶ 55; RJN A-D; Kash Decl., Ex. L [Activision's Response to Request for Admission No. 82]. |
|---|---|---|
| 142. | In February 2018, a few months after the rebranding to WARZONE, the number of search queries for "Warzone" was at 8100, with a click through to warzone.com of 6480 for the month. | Kash Decl., Ex. AD [Tully Deposition, 154:2-13];  Ex. AE [Tully Deposition, Exhibit 153, February 2018 sheet]. |
| 143. | Also in February 2018, Warzone saw 9,079 new account signups and 34,405 monthly active players. | *See* Ficker Decl., ¶ 22, Ex. 20 [WZ024307]; Ex. 21 [WZ022732]. |
| 144. | Between February 2018 to January 2020, the number of monthly search queries for "warzone" increased (from 8,100 to 12,100) as did the number of click-throughs to warzone.com from the same keyword queries (from 6,480 to 9,680). | Kash Decl., 32 Ex. AF (12,100) [Tully Deposition, Exhibit 153, January 2020 sheet] and Ex. AD at 152:15-153:1. (Dr. Tully testified at deposition that the increase in association between searches for "warzone" and click throughs to the Warzone website, beginning in January of 2018, was based on WarLight players identifying WARZONE as the game previously known as WarLight, or people already familiar with the Warzone game. |

WARZONE'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| 145. | In 2019, to ramp up user engagement, Warzone made plans to develop a significant amount of new content for a game expansion in another genre that made better use of "microtransactions," a popular video game product known for its higher earning potential in the free-to-play game space. | Ficker Decl., ¶ 13, Ex 25 ; Geddes Decl., Ex.1 at ¶ |
|------|------|------|
| 146. | Throughout 2019, Warzone maintained an average of over 30,000 monthly active users each month and saw 83,814 new account signups that year. | Ficker Decl. ¶ 22, Ex. 20-21, [WZ024307, WZ022732]<br><br>In addition, marketing industry expert Bo Geddes has opined that his review of the monthly active user data between January 2019 and December 2019, data for Warzone reveals that Warzone had an average of 32,724 monthly active users; in combination with Warzone's 1 million registered users, Warzone was well-positioned for exponential growth. Geddes Decl., Ex. 1 at ¶ 9. |
| 147. | At the end of 2019, in anticipation of expanding its user base and releasing Warzone Idle, Warzone retained marketing consultant Mr. Geddes to discuss user acquisition, including embarking on its first paid growth campaign. | Ficker Decl., ¶ 13. |
| 148. | In late 2019 and early 2020, Warzone began discussing and implementing the first part of its plan, the user interface design updates, with Mr. Geddes. | Ficker Decl., ¶ 13 Exs. 5-8. |

WARZONE'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| | | |
|---|---|---|
| 149. | In January 2020, of the 12100 public searches for "Warzone," 0 clicked through to callofduty.com/warzone. | Kash Decl. 30, Ex. AD Tully Deposition at Exhibit 516 and 168:1-11. |
| 150. | In March 2020, of the 12100 public searches for "Warzone." 9700 clicked through to callofduty.com/warzone, representing 31.80 percent of the traffic to callofduty.com/warzone for the month. | Kash Decl, 30 Ex. AD Tully Deposition at Exhibit 517 and 171:24 - 175:14. |
| 151. | By January 2020, search queries for "warzone" rose to 12100 resulting in 9680 click-throughs to Warzone's website and Warzone was experiencing record revenues. | Kash Decl., Ex. AF [Tully Deposition, Exhibit 153 (January 2020 Sheet)]; Ficker Decl. ¶¶ 13, 22, Ex. 9 (Kash Decl., Ex. AD, (Dr Tully opines that the vast majority of the increasing thousands who searched for warzone each month between January of 2018 and January 2020 were intentionally looking for the Warzone game available at warzone.com. [Tully Deposition,164:6-8] |
| 152. | In early March 2020, development continued on Warzone Idle game and user interface and Warzone performance continued to climb, Warzone saw a spike in active users and new accounts in March 2020, but as Dr. Welden testified, this spike was a mere data "shock." The surge in Warzone users was short-lived, and the "influx of many players who are not paying" resulted in a precipitous drop in revenue per user from $0.21 to $0.12 per user. | Ficker Decl. ¶ 13, Ex. 9; Kash Decl.9 Ex. H (Wang Depo Excerpts), Ex A (Welden Depo Excerpts) |
| 153. | As marketing industry expert Mr. Geddes opined, this level of user engagement and interest represents exceptional performance for an | Geddes Decl., Ex.1, ¶¶ 24, 63; Ficker Decl. 13, Ex. 21. |

WARZONE'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| | | |
|---|---|---|
| | independent video game developer.  In the video game industry, 50% of indie games earn less than $4,000 in their lifetimes, and fewer than 10% of independent games earn more than their development costs; in early 2020, Warzone was leading the class by either metric.  SUF 48, 50 | |
| 154 | In March 2020, of the 12100 public searches for "Warzone," 169 clicked through to warzone.com | Kash Dec., Ex. AJ [Tully Deposition, Exhibit 153, March 2020 sheet]. |
| 155 | In June 2020, there were 74000 public searches for "Warzone," and 74 clicked through to warzone.com | Kash Decl., Ex. X [Tully Deposition, Exhibit 153, June 2020 sheet]. |
| 156 | On April 8, 2021, Activision filed this lawsuit against Warzone in which it requested relief:  1) Declaring that Defendant does not possess exclusive trademark rights in the term "Warzone"; 2) Declaring that Activision's use of the WARZONE or CALL OF DUTY WARZONE Marks does not infringe, and at all times has not infringed, any existing and valid common law trademark rights of Defendant under the Lanham Act, 15 U.S.C. § 1125(a); 3) Declaring that Activision's use of the WARZONE or CALL OF DUTY WARZONE Marks is not likely to cause, and has not caused, confusion, mistake or deception as to the affiliation, connection, or association of Defendant with Activision's goods and services, or as to the origin, sponsorship, or approval of Activision's goods and services by Defendant under the Lanham Act, 15 U.S.C. § 1125(a); 4) Declaring that Activision's pending applications for registration of the marks WARZONE and CALL OF DUTY WARZONE may proceed to registration; 5) Declaring that Defendant's pending applications for registration of the mark WARZONE should not proceed to registration; 6) Ordering that  Defendant, its | Docket No. 1 at 11-12. |

|  | officers, directors, employees, agents, affiliates, attorneys, representatives, and licensees, be enjoined and permanently restrained from interfering with Activision's use and registration of the WARZONE and CALL OF DUTY WARZONE marks and from opposing, seeking to cancel, or otherwise objecting to any federal registrations and applications for registration of such marks. |  |
|---|---|---|
| 157 | On June 25, 2020, Activision filed an application with the USPTO for a federal trademark in WARZONE. | RJN C, D. |
| 158 | Activision also applied for a separate trademark with the USPTO in CALL OF DUTY WARZONE on June 25, 2020. | RJN C, D. |
| 159 | Activision's specimen submitted to the USPTO was generated on June 24, 2020. | RJN C, D. |
| 160 | Activision represented to the USPTO that it began its use of WARZONE  in March 10, 2020. | RJN C, D. |
| 161 | Warzone has priority of use of WARZONE, at November 13, 2017 for class 041 and December 1, 2017 for class 009, as set forth in its declarations to the USPTO. | RJN C, D. |
| 162 | On November 3, 2020, Warzone opposed Activision's application for the WARZONE trademark, and for the trademark Call of Duty Warzone based on likelihood of confusion. | RJN C, D. |
| 163 | The single issue before the USPTO is whether there is a likelihood of confusion between the WARZONE marks filed earlier by Activision, or the WARZONE marks with priority of use. | RJN C, D. |
| 164 | The campaign he intended to run for Warzone was at the bottom end of his skillset; he was "almost certain" that the campaign he set out would |  |

WARZONE'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS

| achieve growth to 330,000 MAU based on his understanding of the industry, his command of social media marketing, and his evaluation of the strength and appeal of Warzone's offerings. | |

Date:  February 28, 2025               Respectfully submitted,

_____
Jennifer A. Kash (State Bar No. 203679)
Francesca M. S. Germinario (State Bar No. 326208)
Nicole A. Bloomfield (State Bar No. 356757)
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
21-3073@cases.warrenlex.com

*Attorneys for Defendant /
Counterclaimant Warzone.com, LLC*