1  MARC E. MAYER (SBN 190969)
     mem@msk.com
2  KARIN G. PAGNANELLI (SBN 174763)
     kgp@msk.com
3  LINDSAY R. EDELSTEIN (*pro hac vice*)
     lre@msk.com
4  MITCHELL SILBERBERG & KNUPP LLP
   2049 Century Park East, 18th Floor
5  Los Angeles, CA  90067-3120
   Telephone: (310) 312-2000
6  Facsimile: (310) 312-3100

7  Attorneys for Activision Publishing,
   Inc.

8

9                UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11 | ACTIVISION PUBLISHING, INC., a | CASE NO. 2:21-cv-3073-FLA (JCx)
   | Delaware corporation, |
12 |                               |
   |            Plaintiff,         | [Assigned to Judge Fernando L. Aenlle-
13 |                               | Rocha]
   |       v.                      |
14 |                               | [*REDACTED*] EVIDENTIARY
   | WARZONE.COM, LLC,             | OBJECTIONS OF ACTIVISION
15 |                               | PUBLISHING, INC.
   |            Defendant.         |
16 |                               | Date:       March 21, 2025
   |_____| Time:       1:30 p.m.
17 | WARZONE.COM, LLC,             | Ctrm:       6B
   |                               |
18 |          Counterclaimant,     | Complaint Filed:      Apr. 8, 2021
   |                               | Counterclaim Filed:   June 8, 2021
19 |       v.                      | Pretrial Conference:  May 19, 2025,
   |                               |                       at 1:30 p.m.
20 | ACTIVISION PUBLISHING, INC., a | Trial:                May 27, 2025,
   | Delaware corporation,         |                       at 8:15 a.m.
21 |                               |
   |          Counterdefendant.    |
22 |_____|

23

24

25

26

27

28

_____

                    **EVIDENTIARY OBJECTIONS**

Plaintiff and Counterclaimant Defendant Activision Publishing, Inc. ("Activision") respectfully submits the following objections to evidence offered by Warzone.com, LLC ("WZLLC") in opposition to Activision's Motion for Summary Judgment or, Alternatively, Partial Summary Judgment.

## I.    General Objections to WZLLC's Evidence

Activision makes the following general objections in addition to the specific objections set forth below.

### A.    <u>Sham Testimony</u>

The co-owner and sole developer of WZLLC, Randy Ficker, has submitted a 23-paragraph declaration.  His declaration offers yet another revisionist history concerning ███████████████████████████████████████████ ████████████████████████████████████████  His unsupported claims are contradicted by the existing materials in the record, by the very documents he submits as exhibits, and even by his own prior deposition testimony.  "[A] party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."  *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).  Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scripps Health v. Nautilus Ins. Co.*, 2024 WL 4847371, at *6 (S.D. Cal. Nov. 20, 2024) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

### B.    <u>Improper Lay Opinion and Legal Conclusions (FRE 701, 702)</u>

"It is not appropriate for either a lay witness or expert witness to provide legal conclusions."  *Glob. BTG LLC v. Nat'l Air Cargo, Inc.*, 2013 WL 12121982, at *3 (C.D. Cal. Sept. 5, 2013) (citing cases).  WZLLC's submitted evidence, including but not limited to the Ficker Declaration, consistently flouts this basic rule by offering wholly unsubstantiated legal conclusions either as conclusory facts or as improper opinion evidence.  Such "unsupported legal conclusions are not

Mitchell Silberberg & Knupp LLP

EVIDENTIARY OBJECTIONS

1   evidence and do not create a genuine issue of material fact." *Travelers Cas. & Sur.*

2   *Co. of Am. v. Coyle/Reno Joint Venture*, 2018 WL 3344661, at *6 (N.D. Cal. July

3   9, 2018) (citing *FTC v. Publ'g Clearing House*, 104 F.3d 1168, 1171 (9th Cir.

4   1996)).

5       Likewise, Federal Rule of Evidence 701 sets outs that lay opinion testimony

6   is limited to opinions that are "rationally based on the witness's perception,"

7   "helpful to clearly understanding the witness's testimony or to determining a fact in

8   issue," and "not based on scientific, technical, or other specialized knowledge

9   within the scope of Rule 702." Any lay opinion testimony not meeting these

10   criteria must be stricken.

11       **C.**    <u>**Improper/Inadmissible Expert Testimony**</u>

12       To be admissible, expert testimony must meet the criteria of Fed. R. Evid.

13   702, as elaborated on by *Daubert v. Merrell Dow Pharms.,* 509 U.S. 579 (1993);

14   *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999) (court's

15   "gatekeeping" obligation "applies not only to testimony based on 'scientific

16   knowledge,' but also to testimony based on 'technical' and 'other specialized'

17   knowledge").

18       Rule 702 requires that proffered expert testimony be "based on sufficient

19   facts or data"; be "the product of reliable principles and methods"; and that "the

20   expert's opinion reflects a reliable application of [such] principles and methods to

21   the facts of the case." Fed. R. Evid. 702(b)-(d). Additional considerations under

22   *Daubert* include "(1) whether the theory can be and has been tested; (2) whether it

23   has been subjected to peer review; (3) the known or potential rate of error; and (4)

24   whether the theory or methodology employed is generally accepted in the relevant

25   scientific community." *Microsoft Corp. v. Mediapointe, Inc*. 710 F. Supp. 3d 805,

26   812 (C.D. Cal. 2024), citing *Daubert*, 509 U.S. at 593-94.

27       The court's gatekeeping role with respect to expert testimony applies on

28   summary judgment. *See, e.g., Sytsma v. Phillips 66 Co.,* 2022 WL 1135839, at *3

Mitchell
Silberberg &
Knupp LLP

**EVIDENTIARY OBJECTIONS**

(W.D. Wash. Apr. 18, 2022) (not crediting deficient expert testimony, as a "court can only consider admissible evidence in ruling on a motion for summary judgment") (quoting *Orr v. Bank of Am.*, *NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002)).  The testimony and reports of Bo Geddes and Claudiu Dimofte plainly do not meet the standards above and are not admissible.

### 1.    Bo Geddes

"The Court has the authority and responsibility to exclude expert testimony that is speculative or unreliable."  *Venture Corp. v. Wherify Wireless, Inc*., No. CV 04-8583-RGK FMOX, 2005 WL 5960919, at *1 (C.D. Cal. Sept. 23, 2005) (citing *Daubert*, 509 U.S. at 589; *Kumho Tire*, 526 U.S. at 137).  The gravamen of Mr. Geddes's offered testimony is that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Such testimony falls far short of the "reasonable certainty" required for an award of lost profits, and cannot survive the gatekeeping function of Rule 702.  *See Goodness Films, LLC v. TV One, LLC*, 2014 WL 12594201, at *3–4 (C.D. Cal. Aug. 28, 2014) (rejecting lost-profits claim "rel[ying] on wildly-optimistic and conclusory expert valuations, which, rather than the best evidence available, offer[ed] no reasonable basis for realistically assessing [] lost profits"); *Venture Corp*., 2005 WL 5960919, at *1 (C.D. Cal. Sept. 23, 2005) (excluding lost profits expert: "It does not appear that Mr. Lloyd's testimony is based on sufficient facts or data and that it is produced by reliable principles and methods.").  The testimony also is blatantly contradicted by evidence adduced at Mr. Geddes' deposition, confirming that ███████████████████████████████████████████████████████  Mayer Decl., Ex. 81, at WZ016957;

EVIDENTIARY OBJECTIONS

Supplemental Declaration of Marc E. Mayer ("Mayer Suppl. Decl."), ¶ 2 & Ex. 154 (Geddes Depo.), 128:6-16; 130:16-131:13, 192:21-193:3.

Additionally, for purposes of a lost-profits recovery, "reasonable certainty" must be "premised on reliable and tangible data, such as 'economic and financial data, market surveys and analyses, business records of similar enterprises, and the like.'" *Think20 Labs LLC v. Perkinelmer Health Scis., Inc.,* 2023 WL 9005633, at *3 (C.D. Cal. Nov. 30, 2023). Review of Mr. Geddes' report and his deposition testimony reflects that it is not based on any "reliable and tangible data."

*See, e.g.,* Mayer Suppl. Decl., Ex. 154 (Geddes Depo., 52:23-53:4, 61:3-15, 63:17-23, 69:10-70:15, 72:9-14, 77:17-23, 79:6-13, 80:10-81:25, 83:7-85:4, 85:22-87:5, 87:21-88:2, 88:12-89:19, 90:17-91:1, 94:23-25, 96:6-97:13, 155:3-156:6, 164:13-165:11, 172:9-174:5, 183:12-184:9, 213:4-12, 220:12-221:2.) *Id.* 208:1-9.

## 2. Claudiu Dimofte

"[S]erious flaws in a survey will make any reliance on that survey unreasonable," *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 488 (5th Cir. 2004), and "a survey can be so badly flawed that it cannot be used to demonstrate the existence of a question of fact on the likelihood of consumer confusion." *Universal City Studios, Inc. v. Nintendo Co.,* 746 F.2d 112, 118 (2d Cir. 1984); *see also, e.g., Kournikova v. Gen. Media Commc'ns Inc.*, 278 F. Supp. 2d 1111, 1125 (C.D. Cal. 2003) (on summary judgment, "flaws warrant[ed] discarding" of survey of opposing expert, including because "the survey did not sample the correct group, and did not permit those sampled to view all of the relevant evidence bearing on the relevant issue").

**EVIDENTIARY OBJECTIONS**

1    If ever a consumer survey failed to meet basic standards of admissibility

2    under Rule 702, it is the Dimofte survey. Dimofte admitted that his so-called

3    "Consumer Perception Survey" ████████████████████████████████████

4    ███████████████ and that he did not follow the *Eveready* format that is the

5    only recognized format for reverse-confusion cases. *See* Mayer Suppl. Decl., Ex.

6    157 (Dimofte Depo.) at 28:20-29:6, 93:15-22; *Koninklijke Philips Electronics N.V.*

7    *v. Hunt Control Systems, Inc.,* 2017 WL 3719468, *33 (D.N.J. 2017) ("[T]he

8    *Eveready* format is the standard for determining whether there has been reverse

9    confusion[.]"). Nor did Dimofte use a *Squirt* survey. *See* 5 McCarthy on

10   Trademarks and Unfair Competition § 32:173 (5th ed.) ("A likelihood of confusion

11   survey that makes use of neither the *Eveready* nor *Squirt* formats was said to be

12   highly suspect and required an explanation for its basis."). Instead, he used a

13   method that ███████████ did not replicate marketplace conditions, using no visual

14   stimuli, ████████████████████████████████████████

15   ████████████████████████ *See* Dimofte Decl. (ECF 126-7), ¶ 4; Mayer Suppl.

16   Decl., ¶ 5 & Ex. 157 (Dimofte Depo.), at 67:5-21, 71:1-12; 73:13-74:8; 268:12-22,

17   270:20-271:19 (████████████████████████████████████████████

18   ████████████████.

19   Moreover, where "a plaintiff asserts reverse confusion, the proper universe

20   for a likelihood of confusion survey is the *senior* user's potential customer base."

21   *Valador, Inc. v. HTC Corp.*, 242 F. Supp. 3d 448, 460 (E.D. Va.), *aff'd*, 707 F.

22   App'x 138 (4th Cir. 2017) (citing 6 McCarthy on Trademarks, § 32:159). Yet

23   Dimofte made no effort to focus on a universe comprised of players or potential

24   players of WZLLC's games. Instead, his survey defined its universe as "actual or

25   potential U.S. individual buyers and/or players of video games on any platform,"

26   whether or not they were likely in the market for turn-based strategy games or

27   games akin to WZLLC's admitted biggest competitor, *Risk*®, or were otherwise

28   reasonably likely to seek out games like WZLLC's. *See* Dimofte Decl., Ex. 1 at ¶

Mitchell
Silberberg &
Knupp LLP

**EVIDENTIARY OBJECTIONS**

21. ███████████████████████ this failure to identify and survey the correct segment was error.  Mayer Suppl. Decl., Ex. 157 (Dimofte Depo.), at 81:8-10; 83:9-13; 86:21-87:4; 232:23-233:11; 234:20-237:7.  This guaranteed that the survey universe would be skewed away from any reasonable notion of consumers belonging to WZLLC's "potential customer base," compounded by the fact that respondents were shown no visual stimuli, let alone anything resembling marketplace conditions.  *Id.* at 67:5-21; 71:1-12 (████████████████████ ██████

These flaws are redoubled by Dimofte's use of questions that are consistently leading and abstract, priming respondents with desired responses or forcing them to conform to closed-end choices.  *See, e.g.,* Dimofte Decl., Ex. 1 at ¶¶ 39-47.  This is improper.  *See Universal City*, 746 F.2d at 118 & n.8 ("A survey question which begs its answer cannot be a true indicator of . . . confusion.").  Dimofte even went so far as to construct an apportionment-directed question about *Call of Duty: Warzone* that forced respondents to allocate 100 points to a list of factors pulled from an academic paper about video game ***design***, which he was unaware had ***ever*** been applied to consumer purchase decisions, and to which he arbitrarily added a new factor named "Game title."  *See* Dimofte Decl., Ex. 1 at ¶¶ 51, 73 and p. 63; Mayer Suppl. Decl., Ex. 157 (Dimofte Depo.) at 318:17-319:15, 320:14-20, 322:15-324:24; *compare* Mayer Decl., Ex. 84 (Tregillis Report) at p. 105.  Evidence from such questions is as ill-founded and unreliable as Dimofte's questions aimed at confusion.  His report and his testimony fail Rule 702 and do not merit consideration on Activision's motion.

Mitchell
Silberberg &
Knupp LLP

**EVIDENTIARY OBJECTIONS**

## II. Specific Objections

### A. Objections to Declaration of Jennifer Kash and Exhibits Thereto

| Evidence Objected To | Objection |
|---|---|
| 1. Kash Decl., Ex. K (presentation titled "Warzone in Paradise") | **Authentication (FRE 901)** <br><br> The exhibit has not been properly authenticated, and is submitted solely as a "true and correct copy of a document produced by Warzone." *See* Kash Decl., ¶ 12. <br><br> **Relevance (FRE 401-402)** <br><br> An unidentified third party's out-of-context presentation is not relevant to whether "Activision consistently markets and distributes its game as *Call of Duty: Warzone,* [and] not simply '*Warzone*.'" *See* SUF Reply, ¶ 89. Kash provides no basis to conclude that the presentation was created by, approved, or even ever seen by Activision.  It appears to be a website prepared by a third-party marketing agency concerning a campaign.  There is no evidence that the "Warzone in Paradise" phrase was ever used in any marketing for *Call of Duty: Warzone*. |

Mitchell
Silberberg &
Knupp LLP

**EVIDENTIARY OBJECTIONS**

| Evidence Objected To | Objection |
|---|---|
| 2. Kash Decl., Ex. AC (excerpts, Deposition of Bo Geddes) | **Improper and Inadmissible Expert Testimony (FRE 702; *Daubert*)** The reports and deposition testimony of Mr. Geddes, premised on success of a hypothetical effort to achieve a tenfold increase in WZLLC's monthly active users, are not based on reliable methods or on sufficient facts and data, and fail to meet the admissibility standards of Rule 702 and *Daubert*. Activision does not object to (and agrees with) ███ ███████████████████ Kash Decl., Ex. AC at 88:12-17. |

### B. Objections to Declaration of Randy Ficker and Exhibits Thereto

| Evidence Objected To | Objection |
|---|---|
| 3. "Warzone.com, LLC develops and monetizes two video games under its WARZONE brand." Declaration of Randy Ficker ("Ficker Decl."), ¶ 2, p. 1, lines 5-6. | **Lacks Personal Knowledge (FRE 602); Lack of Foundation (FRE 901(a)):** Mr. Ficker has not established that WZLLC has a "WARZONE brand" or that he has sufficient basis to |

| Evidence Objected To | Objection |
|---|---|
| | opine on whether any such "brand" exists. |
| 4. "Prior to November 1, 2017, I did not find any video games or video game companies using WARZONE, alone, as a trademark or brand." Ficker Decl., ¶ 3, p. 1, lines 18-20. | **Improper Lay Opinion Testimony and/or Expert Testimony** (Fed. R. Evid. 701, 702): Mr. Ficker is not qualified to opine on what constitutes use "as a trademark or brand," which in any event constitutes an improper legal conclusion. **Lacks Personal Knowledge (FRE 602)**; **Lack of Foundation (FRE 901(a))**: Whether "Warzone" was being used "as a trademark or brand" is outside Mr. Ficker's personal knowledge, and the statement is offered without foundation. |
| 5. "In November 2017, the rebranding to WARZONE was official." Ficker Decl., ¶ 4, p. 1, line 21. | **Lacks Personal Knowledge (FRE 602)**; **Lack of Foundation (FRE 901(a))**: Mr. Ficker has not established WZLLC to have a "WARZONE brand," or that he has sufficient basis to opine on whether a "rebranding" took place in November 2017. |
| 6. "Throughout its tenure, Warzone has engaged in advertising, including organic advertising. … Warzone paid | **Inadmissible Sham Testimony;** *see Yeager*, 693 F.3d at 1080. *Compare* Ficker Depo. (Mayer Decl., Ex. 36) at |

**EVIDENTIARY OBJECTIONS**

Mitchell
Silberberg &
Knupp LLP

| Evidence Objected To | Objection |
|---|---|
| for Reddit and Facebook marketing between 2017 and 2020, and attended a gaming conference in that same time period."<br><br>Ficker Decl., ¶ 8, p. 2, lines 8-12. | 231:3-9 ██████████████████████<br>██████████████████████<br>█████ 240:12-23 ██████<br>██████████████████████<br>██████████████████████<br>██████████████; SUF ¶¶ 35-42 (and testimony cited therein). *See also, e.g.,* Ficker Decl., Exs. 23-25 at WZ005011, WZ005025, and WZ005042 (████████████████<br>██████████████████████<br>█████████████████. |
| 7. "WARZONE is our trademark, and has been used by Warzone continuously beginning in 2017 in connection with our video games."<br><br>Ficker Decl., ¶ 9, p. 2, lines 22-23. | **Improper Legal Conclusion / Lay Opinion Testimony (FRE 701)**<br>Mr. Ficker cannot offer a legal opinion as to ownership or validity of any trademark, or whether any such purported trademark was used in commerce such as to create trademark rights. |
| 8. "As I testified in my deposition, I understood this to confer notice that the term was being used as a trademark, as was Warzone's intention."<br><br>Ficker Decl., ¶ 9, p. 2, lines 27-28. | **Improper Legal Conclusion / Lay Opinion Testimony (FRE 701)**<br>Mr. Ficker cannot offer a legal opinion as to whether a term "was being used as a trademark," or whether any such use "confer[red] notice" in a legal sense. |

Mitchell Silberberg & Knupp LLP

**EVIDENTIARY OBJECTIONS**

| Evidence Objected To | Objection |
|---|---|
| 9. "Warzone has also engaged with online publications" Ficker Decl., ¶ 12, p. 3, line 26. | **Inadmissible Sham Testimony;** *see Yeager*, 693 F.3d at 1080. *Compare* SUF ¶ 40 (and testimony cited therein). **Vague and Conclusory (Fed. R. Civ. P. 56)**; *see, e.g., Rivera v. National Railroad Passenger Corp.,* 331 F3d 1074, 1078 (9th Cir. 2003) ("Conclusory allegations unsupported by factual data cannot defeat summary judgment."). *Compare* Ficker Decl. ¶ 12 & Ex. 4 (referring to user reviews submitted to Google Play Store). *See also* Westerdal Depo. at 208:9-20 (ECF 111-5 at 60) (███████████████████████████). |
| 10. "In December 2019, Warzone retained Bo Geddes, a marketing consultant in the video game industry." Ficker Decl., ¶ 13, p. 4, lines 9-10. | **Inadmissible Sham Testimony**; *see Yeager*, 693 F.3d at 1080. *Compare* Ficker Depo. 399:19-400-20 (ECF 111-5 at 400). *See also* SUF Reply ¶ 164. |
| 11. "Mr. Geddes and I continued to have regular correspondence from December 2019 to May 2020 to collaborate on the marketing plan and optimize Warzone's user interface ahead of the marketing campaign— | **Best Evidence Rule (FRE 1002):** The best evidence of the alleged "regular correspondence from December 2019 to May 2020" is the correspondence itself, which Mr. Ficker asserts is "reflected" in Exhibit 6 to his |

Mitchell
Silberberg &
Knupp LLP

| Evidence Objected To | Objection |
|---|---|
| these conversations are reflected in Exhibit 6 (WZ015672), a true and correct copy of which is attached hereto." <br> Ficker Decl., ¶ 13, p. 4, lines 16-20. | declaration, at WZ015672.  However, that document reflects "conversations" only through **January 10, 2020** and does not reflect any plan to "optimize Warzone's user interface ahead of the [proposed] marketing campaign." |
| 12.  "I began working with Mr. Geddes to implement the first part of his plan, the UI/UX (user interface) design updates March 2020 [*sic*]…." <br> Ficker Decl., ¶ 13, p. 4, lines 22-24. | **Inadmissible Sham Testimony**; *see Yeager*, 693 F.3d at 1080.  *Compare* Ficker Depo. 399:19-400-20 (ECF 111-5 at 400). |
| 13.  "After some discussion, we decided that in order to optimize the expected increase in revenues per user, the marketing plan would begin after the release of Warzone Idle, as reflected in Exhibit 7 at WZ023896." <br> Ficker Decl., ¶ 13, p. 5, lines 1-3. | **Inadmissible Sham Testimony**; *see Yeager*, 693 F.3d at 1080. *Compare* Ficker Depo. 399:19-400-20 (ECF 111-5 at 400). <br><br> **Best Evidence Rule (FRE 1002)**: The best evidence of the contents of Exhibit 7 is the exhibit itself, |

Mitchell Silberberg & Knupp LLP

**EVIDENTIARY OBJECTIONS**

| Evidence Objected To | Objection |
|---|---|
| 14. "I paused further development of the user interface with Mr. Geddes in May of 2020 in order to focus on the development of Warzone Idle, as I testified at deposition, so that I could use funds from Warzone Idle for the marketing. I fully expected to engage in further marketing and advertising as soon as Warzone Idle launched and I felt I could afford to do so. Mr. Geddes and I had always anticipated that the marketing plan would be initiated post release of Warzone Idle." Ficker Decl., ¶ 14, p. 5, lines 8-13. | **Inadmissible Sham Testimony**; *see Yeager*, 693 F.3d at 1080. *Compare* Ficker Depo. 399:19-400-20 (ECF 111-5 at 400); Mayer Decl., Ex. 81, WZ016957. |
| 15. "The beta launch of Warzone Idle happened in July of 2020. It performed well, and because of its improved ability to harvest micro-transactions, it increased revenues almost immediately. But it did not increase Warzone's user base as I had hoped especially since I was aware that other video games were experiencing major growth during Covid." Ficker Decl., ¶ 15, p. 5, lines 14-18. | **Inadmissible Sham Testimony**; *see Yeager*, 693 F.3d at 1080. *Compare* Ficker Depo. at 214:16-215:4 (ECF 111-5 at 100) ██████████████ ███████████████. Mr. Ficker does not explain ████████████ ███████████████████████████ ███████████████████████████ ███████████████████████████ |

Mitchell
Silberberg &
Knupp LLP

| Evidence Objected To | Objection |
|---|---|
| 16. "… increasing use of WARZONE by Activision, and its increasing association with Call of Duty…" Ficker Decl., ¶ 15, p. 5, lines 19-20 | **Improper Legal Conclusion / Lay Opinion (FRE 701)**: Mr. Ficker may not offer a legal conclusion as to purported "use" of "Warzone," or a legal or expert opinion about purported "association" with *Call of Duty.* **Lacks Personal Knowledge (FRE 602); Lack of Foundation (FRE 901(a))**: Mr. Ficker is without personal knowledge of any such purported "association" in the minds of consumers. |
| 17. "The spike was short-lived and by the end of June 2020 it was clear that video game consumers were confusing my Warzone with Call of Duty's Warzone." Ficker Decl., ¶ 16, p. 5, lines 25-26. | **Improper Legal Conclusion / Lay Opinion (FRE 701)**: Mr. Ficker may not offer a legal conclusion as to purported consumer confusion. **Lacks Personal Knowledge (FRE 602); Lack of Foundation (FRE 901(a))**: Mr. Ficker is without personal knowledge of whether video game consumers were "confused," let alone in any sense having legal significance. His claim that "it was clear that video game consumers were confusing my Warzone with Call of Duty's Warzone" |

Mitchell Silberberg & Knupp LLP

| Evidence Objected To | Objection |
|---|---|
| | is speculation and not grounded in any evidence. |
| 18. "Since rebranding as WARZONE we had risen in search rankings for the keyword "warzone" with thousands of people associating our game with the WARZONE brand. By midsummer 2020, queries for "warzone" led to Call of Duty." Ficker Decl., ¶ 16, pp. 5-6, lines 28-3. | **Lacks Personal Knowledge (FRE 602)**; **Lack of Foundation (FRE 901(a))**: Mr. Ficker offers no basis for knowing that thousands of people were "associating [his] game" with a purported Warzone "brand," and the assertion is entirely speculative. |
| 19. "In the fall of 2020, I learned that Activision had filed for a trademark in WARZONE, which was Warzone's trademark and had been since 2017." Ficker Decl., ¶ 18, p. 6, lines 18-19. | **Improper Legal Conclusion / Lay Opinion (FRE 701)**: Mr. Ficker may not offer a legal conclusion as to ownership or validity of any trademark, or whether any such purported trademark was used in commerce such as to create trademark rights. |
| 20. "Because of the confusion in the marketplace, and because Warzone had been using WARZONE before Activision, on November 3, 2020 Warzone filed oppositions to Activision's WARZONE trademark applications." Ficker Decl., ¶ 19, p. 6, lines 24-26. | **Improper Legal Conclusion / Lay Opinion (FRE 701)**: Mr. Ficker may not offer a legal conclusion as to purported "confusion in the marketplace." Nor may he offer a legal conclusion as to ownership or validity of any trademark, or whether any such purported trademark was used in |

Mitchell Silberberg & Knupp LLP

EVIDENTIARY OBJECTIONS

| Evidence Objected To | Objection |
|---|---|
| | commerce such as to create trademark rights. |

### C.    Objections to Declaration of Bo Geddes and Exhibits Thereto

| Evidence Objected To | Objection |
|---|---|
| 21.  "I make this declaration based on my personal knowledge, my background, experience, and education; and the publications, reports, studies, documents, interviews, and other materials and information listed in my Expert Report and Rebuttal Expert Report. If called to testify at trial I would testify competently regarding the opinions and conclusions I have formed in this case."<br>Declaration of Bo Geddes ("Geddes Decl."), ¶ 4, p. 1, lines 18-22. | **Improper and Inadmissible Expert Testimony (FRE 702 / *Daubert*)**: Mr. Geddes's ██████████████ ████████████████████ ████████████████████ ████████████████████ ██████████ is wholly speculative and does not rely on reliable facts and data. |
| 22.  Exhibit 1 to Geddes Decl. ("Expert Report of Bo Geddes" dated January 17, 2025). | **Improper and Inadmissible Expert Testimony (FRE 702 / *Daubert*)**: Mr. Geddes's ████████████ ████████████████████ ████████████████████ |

Mitchell
Silberberg &
Knupp LLP

| Evidence Objected To | Objection |
|---|---|
| | ███████████████████ is wholly speculative and does not rely on reliable facts and data. *See also supra,* Section I.C.1, incorporated by reference; *StarStone Nat'l Ins. Co. v. Indep. Cities Risk Mgmt. Auth.*, 2020 WL 6143608, at *1 (C.D. Cal. Aug. 19, 2020) ("[E]xperts may not express opinions as to legal conclusions."). |
| 23.    Exhibit 2 to Geddes Decl. ("Rebuttal Expert Report of Bo Geddes" dated January 31, 2025). | **Improper/Inadmissible Expert Testimony (FRE 702 / *Daubert*)**; *see, e.g.*, *Sytsma v. Phillips 66 Co.,* 2022 WL 1135839, at *3 (W.D. Wash. Apr. 18, 2022) (not crediting deficient expert testimony, as a "court can only consider admissible evidence in ruling on a motion for summary judgment.") (quoting *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002)).  *See also supra,* Section I.C.1, incorporated by reference; *StarStone Nat'l Ins. Co*, 2020 WL 6143608, at *1 ("[E]xperts may not express opinions as to legal conclusions."). |

D.      **Objections to Declaration of Claudiu Dimofte and Exhibits Thereto**

| Evidence Objected To | Objection |
|---|---|
| 24.    "In my Expert Report, and consistent with my practice, I title the consumer survey I performed a 'Consumer Perception Study' which I conducted using well known survey methodologies, and I provide citations to the same.  While I utilize some of the principles in two types of surveys that can be utilized to measure consumer confusion, known as 'Eveready' or 'Squirt' surveys, the methodology I set forth in my report is another means for testing consumer confusion accepted by those in the consumer testing field. The results of this survey form the basis of my conclusion that there is consumer confusion amongst potential consumers of Warzone based on Activision's use of WARZONE." Declaration of Claudiu Dimofte ("Dimofte Decl."), ¶ 4, p. 2, lines 12-20. | **Improper/Inadmissible Expert Testimony (FRE 702 / *Daubert*);** *see, e.g., Fetzer*, 381 F.3d at 488 ("[S]erious flaws in a survey will make any reliance on that survey unreasonable."); *Kournikova v. Gen. Media Commc'ns* Inc., 278 F. Supp. 2d 1111, 1125 (C.D. Cal. 2003) ("flaws warrant[ed] discarding" of survey evidence on summary judgment).  *See also supra*, Section I.C.2, incorporated by reference; *StarStone Nat'l Ins. Co.*, 2020 WL 6143608, at \*1 ("[E]xperts may not express opinions as to legal conclusions."). **Best Evidence (FRE 1002)**: The best evidence of the contents of the Dimofte Report is the report itself. |

Mitchell Silberberg & Knupp LLP

| Evidence Objected To | Objection |
|---|---|
| 25.    "I understand that Activision is representing to the Court that Warzone has no evidence of consumer confusion including that there is no survey evidence from any expert regarding consumer confusion, but my Expert Report contains evidence of actual confusion among prospective consumers of Warzone, and I believe my findings, along with my expertise in the field of consumer perception, will be helpful to the trier of fact." Dimofte Decl., ¶ 5, p. 2, lines 23-28. | **Improper/Inadmissible Expert Testimony (FRE 702 / *Daubert*)**; *see, e.g., Fetzer*, 381 F.3d at 488 ("[S]erious flaws in a survey will make any reliance on that survey unreasonable."); *Kournikova v. Gen. Media Commc'ns* Inc., 278 F. Supp. 2d 1111, 1125 (C.D. Cal. 2003).  *See also supra,* Section I.C.2, incorporated by reference; *StarStone Nat'l Ins. Co.*, 2020 WL 6143608, at *1 ("[E]xperts may not express opinions as to legal conclusions.").<br><br>**Best Evidence (FRE 1002)**: The best evidence of the contents of the Dimofte Report is the report itself. |
| 26.    "As discussed in the Expert Report and at my deposition, it is my opinion, based on the data from the survey and other documents and materials reviewed in providing my Expert Report, that most video game consumers play or would play more than one type or genre of video games." Dimofte Decl., ¶ 6, p. 3, lines 1-4. | **Improper/Inadmissible Expert Testimony (FRE 702 / *Daubert*)**; *see, e.g., Fetzer*, 381 F.3d at 488 ("[S]erious flaws in a survey will make any reliance on that survey unreasonable."); *Kournikova*, 278 F. Supp. 2d at 1125. *See also supra,* Section I.C.2, incorporated by reference. |

Mitchell Silberberg & Knupp LLP

EVIDENTIARY OBJECTIONS

| Evidence Objected To | Objection |
|---|---|
| 27.    Dimofte Decl., Ex. 1 ("Expert Report of Claudiu Dimofte" dated January 16, 2025). | **Improper/Inadmissible Expert Testimony (FRE 702 / *Daubert*)**; *see, e.g., Fetzer*, 381 F.3d at 488 ("[S]erious flaws in a survey will make any reliance on that survey unreasonable."); *Kournikova*, 278 F. Supp. 2d at 1125. *See also supra,* Section I.C.2, incorporated by reference; *StarStone Nat'l Ins. Co.*, 2020 WL 6143608, at *1 ("[E]xperts may not express opinions as to legal conclusions."). |

DATED: March 7, 2025                    MARC E. MAYER
                                        KARIN G. PAGNANELLI
                                        LINDSAY R. EDELSTEIN
                                        MITCHELL SILBERBERG & KNUPP LLP


                                        By:  */s/ Marc E. Mayer*
                                             Marc E. Mayer (SBN 190969)
                                             *Attorneys for Activision Publishing, Inc.*

Mitchell
Silberberg &
Knupp LLP

**EVIDENTIARY OBJECTIONS**