MARC E. MAYER (SBN 190969)
    mem@msk.com
LINDSAY EDELSTEIN (*pro hac vice*)
    lre@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA  90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

E. MARTIN ESTRADA (SBN 223802)
    Martin.Estrada@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

BLANCA FROMM YOUNG (SBN 217533)
    blanca.young@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

Attorneys for Activision Publishing, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTIVISION PUBLISHING, INC., | CASE NO. 2:21-cv-3073-FLA (JCx) |
| Plaintiff, | [Judge Fernando L. Aenlle-Rocha] |
| v. | **ACTIVISION PUBLISHING, INC.'S NOTICE OF SUPPLEMENTAL AUTHORITY RE MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT** |
| WARZONE.COM, LLC, | |
| Defendant. | |
| AND RELATED COUNTERCLAIMS | |

**NOTICE OF SUPPLEMENTAL AUTHORITY**

## NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiff and Counterclaim-Defendant Activision Publishing, Inc. ("Activision") respectfully submits this Notice of Supplemental Authority to bring to the Court's attention the recent July 25, 2025, decision of the U.S. Court of Appeals for the Ninth Circuit in *World Champ Tech, LLC v. Peloton Interactive, Inc.*, No. 24-2266 (July 25, 2025).   In *World Champ*, the Ninth Circuit affirmed the decision granting summary judgment for the defendant on the plaintiff's reverse confusion claim in *World Champ Tech LLC v. Peloton Interactive, Inc.*, 2024 WL 665181, at *15 (N.D. Cal. Feb. 16, 2024), which is cited by Activision in its Motion (Dkt 111, at 11) and in its Reply Memorandum (Dkt 132, at 2, 3, 4, 7).

A true and correct copy of *World Champ Tech, LLC v. Peloton Interactive, Inc.*, No. 24-2266 (July 25, 2025), is attached hereto as **Exhibit A**.


DATED:  July 30, 2025

MARC E. MAYER
LINDSAY R. EDELSTEIN
MITCHELL SILBERBERG & KNUPP LLP

E. MARTIN ESTRADA
BLANCA F. YOUNG
MUNGER TOLLES & OLSON LLP


By: */s/ Marc E. Mayer*
Marc E. Mayer (SBN 190969)
Attorneys for Activision Publishing, Inc.

Mitchell
Silberberg &
Knupp LLP

20921161.1

NOTICE OF SUPPLEMENTAL AUTHORITY

# EXHIBIT A

**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUL 25 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| WORLD CHAMP TECH, LLC, | No. 24-2266 |
| Plaintiff - Appellant, | D.C. No. 3:21-cv-03202-LB |
| v. | |
| PELOTON INTERACTIVE, INC., | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Northern District of California
Laurel D. Beeler, Magistrate Judge, Presiding

Argued and Submitted June 3, 2025
San Francisco, California

Before: CALLAHAN, BADE, and KOH, Circuit Judges.

Plaintiff-Appellant World Champ Tech, LLC ("WCT") has a trademark

registration for "BIKE+" and has produced a mobile app called "Bike+" since

2014.  In September 2020, Defendant-Appellee Peloton Interactive, Inc.

("Peloton") released a new version of its home exercise bike called the "Peloton

Bike+."  WCT sued for trademark infringement, claiming that Peloton's use of the

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

mark Peloton Bike+ is likely to cause confusion among consumers as to whether Peloton produces or sponsors WCT's Bike+ app. The district court granted summary judgment to Peloton. WCT timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We review the district court's order de novo and the evidence in the light most favorable to WCT. *See Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1159 (9th Cir. 2021). We affirm.

"The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). In a reverse confusion case like this one, "[t]he question . . . is whether consumers doing business with the senior user might mistakenly believe that they are dealing with the junior user." *Id.* at 1130. The analysis is guided by eight factors:

> (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.

*Lodestar Anstalt v. Bacardi & Co.*, 31 F.4th 1228, 1252 (9th Cir. 2022) (quoting *Ironhawk Techs.*, 2 F.4th at 1160). "These factors are neither exhaustive nor dispositive; it is the totality of facts in a given case that is dispositive." *Id.* at 1252 (quoting *Ironhawk Techs.*, 2 F.4th at 1160). Accordingly, even when certain

factors weigh in the plaintiff's favor, summary judgment is appropriate if those factors are "overwhelmingly offset" by the remaining factors such that "no reasonable trier of fact could find that confusion is probable." *Id.* at 1261 (citation modified).

That is the case here.  The first two factors—mark strength and proximity of goods—weigh in WCT's favor.  For the first factor, regardless of whether WCT's Bike+ mark is descriptive or suggestive, a jury could find that Peloton's Peloton Bike+ mark is so commercially strong that it could overtake WCT's mark.  *See Ironhawk Techs.*, 2 F.4th at 1162-63.  For the second factor, a jury could find that the parties' products are intended for the "same class" of consumers—those who bike as a form of exercise—and are "similar in use and function"—offering users the ability to track metrics while biking.  *See id.* at 1164.

But other factors overwhelmingly favor Peloton.  Consider the third factor, which turns on the similarity of the marks "as they are encountered in the marketplace." *Lodestar*, 31 F.4th at 1260 (citations omitted).  Since WCT ceased paid advertising in 2019, consumers who encounter WCT's mark primarily do so in the Apple App Store.  There, Peloton's app may appear alongside WCT's app in search results, but the two apps bear no similarity in appearance, especially because the Peloton app does not use the term "Bike+."  Further, although the use of house marks "can aggravate reverse confusion" in some cases, this is not one of

them.  *Ironhawk Techs.*, 2 F.4th at 1165.  The Apple App Store displays the app

producer's name alongside the app name and icon, which reduces the potential for

any confusion as to who produces each app.  *See Cohn v. Petsmart, Inc.*, 281 F.3d

837, 842 (9th Cir. 2002); *see also Lodestar*, 31 F.4th at 1260.  The mark similarity

factor therefore favors Peloton.

　　　Next, consider the sixth factor, which asks "whether a 'reasonably prudent

consumer' would take the time to distinguish between the two product lines."

*Ironhawk Techs.*, 2 F.4th at 1167 (quoting *Surfvivor Media, Inc. v. Survivor

Prods.*, 406 F.3d 625, 634 (9th Cir. 2005)).  This factor similarly favors Peloton.

When WCT applied for its trademark registration, it represented to the United

States Patent and Trademark Office that its app "is not acquired through impulse or

'rash' action"; instead, consumers must complete the multi-step process of

searching the Apple App Store, selecting the app they are looking for among

competitor apps, and then entering a passcode or alternative method of

authentication to confirm that they intend to download the app.  Again, during this

process, the Apple App Store displays "World Champ Tech" as the producer of the

Bike+ app.  Accordingly, a reasonably prudent consumer would identify the Bike+

app as being produced by WCT, not Peloton.  *See Lerner & Rowe PC v. Brown

Engstrand & Shely LLC*, 119 F.4th 711, 718 (9th Cir. 2024) ("[R]egular internet

users can readily distinguish domain names associated with the companies they are

searching for from those they are not." (citation omitted)).

Importantly, the fourth factor, actual confusion, also favors Peloton. While WCT has offered an expert survey finding a net confusion rate of 12%, courts generally treat rates below 10% as evidence "that confusion is not likely," 5 *McCarthy on Trademarks and Unfair Competition* § 32:189 (5th ed. May 2025), and rates "between 10% and 20%" as evidence that confusion is likely when "other evidence is supportive," *id.* § 32:188.[1] Here, the other evidence points in the opposite direction. The products have coexisted in the marketplace for years, and hundreds of consumers have downloaded WCT's Bike+ app during that time. Yet WCT has no evidence that any of them has experienced any confusion. *See Lerner & Rowe*, 119 F.4th at 720 (where 109,322 consumers saw the allegedly infringing ads and 7,452 consumers clicked on them, but there were only 236 consumer calls indicating confusion, "[t]he resulting 0.216% confusion rate [was] direct evidence of the likelihood of confusion comparable to, but more complete than, survey evidence"); *Cohn*, 281 F.3d at 842-43.

Collectively, these factors make it such that no reasonable trier of fact could

---

[1]     *Cf. Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1038 (9th Cir. 2010) (triable issue over likelihood of confusion based on expert survey finding 11% net confusion rate *and* disputes of material fact with respect to each of the eight factors).

find that confusion is probable, so WCT's claims fail as a matter of law.[2]  *See*

*Lodestar*, 31 F.4th at 1261.

**AFFIRMED.**

---

[2]     The remaining factors do not add much to the picture.  With respect to
the fifth factor, marketing channels, to the extent WCT's website or social media
posts continue to generate views without paid promotion, the "shared use of a
ubiquitous marketing channel" such as the internet "does not shed much light on
the likelihood of consumer confusion."  *Lerner & Rowe*, 119 F.4th at 725 (citation
omitted); *see also M2 Software v. Madacy Ent.*, 421 F.3d 1073, 1083-84 (9th Cir.
2005).  The seventh factor, intent, favors WCT because Peloton was aware of
WCT's registered mark, but WCT's limited use of the mark is a "mitigating
consideration."  *Lodestar*, 31 F.4th at 1260; *see M2 Software*, 421 F.3d at 1085.
Finally, the eighth factor, expansion of product lines, is neutral at best for WCT.
*See M2 Software*, 421 F.3d at 1085; *Surfvivor Media*, 406 F.3d at 634; *Cohn*, 281
F.3d at 843.