MARC E. MAYER (SBN 190969)
  mem@msk.com
LINDSAY R. EDELSTEIN (*pro hac vice*)
  lre@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA  90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Activision Publishing, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTIVISION PUBLISHING, INC., a Delaware corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>WARZONE.COM, LLC,<br><br>　　　　　Defendant. | CASE NO. 2:21-cv-3073-FLA (JCx)<br><br>[Judge Fernando L. Aenlle-Rocha]<br><br>**RENEWED APPLICATION OF ACTIVISION PUBLISHING, INC. FOR LEAVE TO FILE CERTAIN DOCUMENTS UNDER SEAL**<br><br>(Declaration of Zachary Byer and [Proposed] Order filed concurrently herewith)<br><br>Complaint Filed:　April 8, 2021<br>Counterclaim Filed:　June 8, 2021 |
| WARZONE.COM, LLC,<br><br>　　　　　Counterclaimant,<br><br>　　v.<br><br>ACTIVISION PUBLISHING, INC., a Delaware corporation,<br><br>　　　　　Counterdefendant. | |

Mitchell Silberberg & Knupp LLP

21135831.2

**RENEWED APPLICATION FOR LEAVE TO FILE CERTAIN DOCUMENTS UNDER SEAL**

## INTRODUCTION

Pursuant to Local Rule 79-5.2.2(a) and (b), the Protective Order entered in this action on December 15, 2021 (Dkt. 39), and this Court's Order entered on October 6, 2025 Granting in Part and Denying In Part Plaintiff/Counterclaim-Defendant Activision Publishing, Inc.'s ("Activision") Application for Leave to File Documents Under Seal (Dkt. 147)[1], Activision, through its undersigned counsel, hereby submits this Renewed Application for Leave to File Certain Documents Under Seal (the "Application") in connection with Activision's Motion for Summary Judgment or, Alternatively, for Partial Summary Judgment ("Motion").

This application is made pursuant to Local Rule 79-5.2.2(a) in connection with the following documents:

- Portions of the following Exhibits to the Declaration of Marc E. Mayer, Dkt. 111-5 ("Mayer Decl."): 80, 83, 84, 85.
- Portions of the Declaration of Carolyn Wang, Dkt. 111-3 ("Wang Decl.") and Exhibit A attached thereto.
- Portions of the Declaration of Terry Kiel, Dkt. 111-4 ("Kiel Decl.") and Exhibits A-C attached thereto.
- Portions of Activision's Memorandum of Points and Authorities ("Memorandum"; Dkt. 111-1) and Separate Statement of Undisputed Facts ("SUF"; Dkt. 111-2).

The foregoing documents include proprietary business information for which special protection from public disclosure is warranted. Activision has taken steps to narrow the scope of this application as much as possible, including by excerpting certain documents and/or redacting private information contained on other exhibits in such a way as to allow their public disclosure. *See* Declaration of

---

[1] The Order was filed by the Court on September 30, 2025 and bears the same date. It was entered and served on the parties via ECF on October 6, 2025.

Zachary Byer ("Byer Decl."), ¶ 4. Accordingly, the Court should grant this application and permit portions of each of the foregoing documents to be filed under seal.

Lodged concurrently herewith are copies of the documents that Activision requests be partially sealed. Those portions that Activision requests be sealed and redacted from the public docket are highlighted in yellow.

Promptly upon issuance of a decision by the Court on this application and on any request by Warzone.com, LLC ("WZLLC") to seal documents that it has designated as "Confidential" or "Highly Confidential," Activision will file redacted version of these documents on the public docket.

## ARGUMENT

This Court has inherent discretion to order documents to be filed under seal. *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 599 (1978)). In the Ninth Circuit, courts generally apply the "compelling reasons" standard when parties seek to file documents under seal in connection with a dispositive motion. *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1136 (9th Cir. 2003). Courts typically find such "compelling reasons" when the material sought to be sealed is "business information that might harm a litigant's competitive standing," *Geo-Logic Assocs., Inc. v. Metal Recovery Sols.*, 2020 WL 1469483, at *2 (D. Nev. Mar. 26, 2020), or "strategic documents and business review materials . . . relating to . . . strategic objectives, competitive analyses, financial information, and other proprietary information." *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, No. 17CV205-MMA (MDD), 2020 WL 1911502, at *5 (S.D. Cal. Apr. 20, 2020); *see also In re Qualcomm Litig.*, No. 317CV00108GPCMDD, 2019 WL 1557656, at *3 (S.D. Cal. Apr. 10, 2019) (granting motions to seal "confidential business information of the parties, including trade secrets, proprietary business records,

discussions of internal strategy, company dealings, and materials designated as 'Highly Confidential'"). As set forth below and in the accompanying Byer Declaration, compelling reasons exist to file the following documents under seal.

## I. EXHIBITS ATTACHED TO THE DECLARATION OF MARC E. MAYER (Dkt. 111-5)

Activision has carefully reviewed each of the exhibits attached to the Declaration of Marc E. Mayer (Dkt. 111-5). Based on its review, Activision requests that the Court grant Activision leave to file the following documents (or portions of such documents) under seal: (1) a portion of Exhibit 80, (2) portions of Exhibit 83, (3) portions of Exhibit 84, and (4) portions of Exhibit 85.

### 1. Portion of the Deposition of Matthew Cox: Exhibit 80 (Dkt. 111-5 at 333-342.)

**Exhibit 80** is a portion of the deposition transcript of Matthew Cox. A portion of the transcript, at 270:2 (on page 339 of Dkt. 111-5), identifies the number of customer service inquiries Activision received regarding *Call of Duty: Warzone* during a four-year period of time. Activision considers its internal process regarding the review of customer service inquiries, as well as the number of such inquiries to be competitively sensitive information. *See, e.g.*, *Fed. Trade Comm'n v. Amazon.com, Inc.*, No. C14-1038-JCC, 2016 WL 4447049, at *4 (W.D. Wash. Aug. 24, 2016) ("[M]aintain[ing] redactions over the figures that discuss Amazon's . . . customer service practices"); *Opperman v. Path, Inc.*, No. 13-CV-00453-JST, 2017 WL 1036652, at *4 (N.D. Cal. Mar. 17, 2017) (granting motion to seal "sensitive information about Apple's internal review process"). Activision does not disclose to the public the number of customer service inquiries it receives on an annual basis. Additionally, the searches Mr. Cox referenced in his deposition were conducted in connection with this litigation, at the direction of

counsel. To ensure that this request is narrowly tailored, Activision is prepared to redact only the number of customer service requests.

    **2.**    **Portions of Bo Geddes Reports: Exhibit 83 (Dkt. 111-5 at 423-471 ¶¶ 117, 130, 132) and Exhibit 85 (Dkt. 111-5 at 481-488 ¶¶ 7, 258-259, at pp. 484-488.)**

**Exhibit 83** is a copy of the expert report of Bo Geddes (the "Geddes Report"), which WZLLC designated as "Highly Confidential – Attorneys' Eyes Only." Activision does not take any position with respect to the confidentiality of the vast majority of the Exhibit. However, three paragraphs of the Geddes Report incorporate, reproduce, or discuss Activision's confidential material and should be sealed. Specifically:

- **Paragraphs 117 and 130** discuss and reproduce portions of a survey conducted by Activision's "Consumer Insights" team reflecting the video game preferences of certain segments of Activision's player base and the reasons why various categories of players had not purchased *Call of Duty: Warzone*. This consumer survey is confidential, contains proprietary and competitively sensitive information, and reflects Activision's internal market research and competitive analysis.

- **Paragraph 132** discusses the content of an internal Activision email concerning its influencer marketing program and communications concerning streaming of *Call of Duty: Warzone* by Activision's influencer partners. The email is exclusively between members of Activision's internal public relations team and contains information concerning the influencer program. Activision considers this email chain to be confidential and proprietary, including because it discloses internal discussions related to its marketing program.

**Exhibit 85** is comprised of excerpts from the rebuttal expert report of Bo Geddes (the "Rebuttal Report"), which WZLLC designated as "Highly Confidential – Attorneys' Eyes Only." Activision does not take any position with respect to the confidentiality of the vast majority of the Exhibit. Pages 21-25 of Exhibit 85 (or pages 484-488 of Dkt. 111-5), however, incorporate several confidential internal Activision marketing documents, including: (1) marketing timetables; (2) advertising and promotional channels used by Activision, including specific information about Activision's customer targeting strategies; (3) Activision's internal budget projections for advertising and promotional efforts, including "daily spends" for user acquisition efforts; and (4) Activision's proposed "strike plan" for marketing *Call of Duty: Warzone*, both prior to and after its release to the public. These documents are very detailed and reveal Activision's internal marketing strategies, budgets, marketing channels, and user acquisition efforts. This sensitive information could be used by competitors to undercut Activision or reproduce Activision's targeting strategies.

Courts repeatedly have found that "information about proprietary business operations" should be filed under seal. *See, e.g.*, *Selling Source, LLC v. Red River Ventures, LLC*, Case No. 2:09-cv-01491-JCM-GWF, 2011 WL 1630338, at *6 (D. Nev. Apr. 29, 2011); *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (explaining that a sealing order may be justified where information encompasses "business information that might harm a litigant's competitive standing") (quotation omitted). The above-referenced portions of the Geddes Report and his Rebuttal Report contain confidential business or financial information, information regarding confidential business practices, or other confidential research, development, or commercial information and information otherwise generally unavailable to the public and that Activision created and compiled by its marketing professionals at its own expense, such that "compelling reasons" exist to keep such information sealed.

### 3. Portions of Christian Tregillis Report: Exhibit 84 (Dkt. 111-5 at 472-480 ¶¶ 7, 258-259, Heading 3.2 & Schedule 3.)

**Exhibit 84** is comprised of excerpts of the expert report of Christian Tregillis.  A portion of this Exhibit discusses WZLLC's disgorgement claim, which is premised on Activision's revenues in connection with *Call of Duty: Warzone*.  Specifically:

- Portions of Paragraph 7 and Heading 3.2 (between paragraphs 244 and 245) summarize the total amount of WZLLC's disgorgement claim, purporting to estimate "Activision's profits on its infringing use of the Warzone Mark…"
- Paragraph 258 contains quotes from an internal email chain concerning the decision to select *Call of Duty: Warzone* as the title of Activision's game.
- Paragraph 259 and Schedule 3 contain specific revenue numbers for *Call of Duty: Warzone*, including "PC and Console revenue" and "gross profit margin."

Activision's revenue in connection with *Call of Duty: Warzone* is highly proprietary and confidential.  This confidential business information is subject to sealing.  *See Clean Crawl, Inc. v. Crawl Space Cleaning Pros, Inc.*, 2020 WL 978267, at *2 (W.D. Wash. Feb. 28, 2020) (granting motion to "seal expert reports as containing confidential business information" where materials contained "business valuation[s] and projections" and information regarding "internal financial tracking," "costs to create marketing materials," and "cost[s] of past and future corrective advertising and gross profits"); *Opperman*, 2017 WL 1036652, at *5 (granting motion to seal "competitively sensitive financial information regarding Apple's advertising spending and revenue").  Activision does not release such information to the public.  Such information is competitively sensitive and its

disclosure would, among other things, allow competitors to gauge the relative success of their competing games.

Additionally, the email referenced in Paragraph 258 reflects Activision's internal discussions concerning its analysis of various potential naming options and the views of its CEO concerning such naming options. That information is considered to be a trade secret and proprietary, as it reflects Activision's internal considerations and decision-making process with respect to the selection of titles for its games.

## II.  DECLARATION OF CAROLYN WANG (Dkt. 111-3).

The Court has granted Activision's request to seal Exhibit A to the Declaration of Carolyn Wang. In addition, Activision requests that Paragraphs 3 through 8 of the Wang Declaration be placed under seal. These paragraphs discuss in substantial detail the internal process by which Activision selected the title *Call of Duty: Warzone*, including alternative names under consideration, internal evaluations and analysis conducted by Activision, and issues or concerns articulated by Activision executives concerning various proposed names—which Activision may consider again for forthcoming *Call of Duty* titles. These paragraphs reveal Activision's internal, confidential naming and should be sealed. *See, e.g.*, *Zogenix, Inc. v. Fed. Ins. Co.*, No. 4:20-CV-06578-YGR, 2022 WL 3908529, at *1, n.1 (N.D. Cal. May 26, 2022) (sealing information regarding party's confidential internal "decision-making process").

In light of the popularity and intense public scrutiny of the *Call of Duty* franchise, competitors could use this information to learn about Activision's marketing strategies. *See, e.g.*, *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. C 10-3724 CW, 2014 WL 7387206, at *1 (N.D. Cal. Dec. 19, 2014) (granting motion to seal references to "business practices and testing procedures"). Also, it is possible that Activision may wish to use one or more of the alternative names for

future releases.  If these names were to be disclosed to the public, competitors could seek to undermine Activision's ability to use them for forthcoming titles.  Or, members of the public could seek to disrupt Activision's business plans or generate revenue by improperly registering domain names or trademarks with these potential names.

### III.   DECLARATION OF TERRY KIEL (Dkt. 111-4).

The Court has granted Activision's application with respect to Exhibits A through C of the Declaration of Terry Kiel.  Activision further requests that Paragraphs 2 through 4 of the Kiel Declaration be filed under seal.  These paragraphs discuss communications that took place within Activision's legal department with respect to trademark clearance and search practices.  Specifically, these paragraphs disclose (1) the timing of certain trademark searches conducted by Activision's legal department, (2) the scope of trademark searches, and (3) the materials used by Activision's legal department to assess the availability of game titles or trademarks.  The manner by which Activision conducts trademark searches and analyses and the documents created as a result of such searches is confidential; its disclosure could harm the company.  For example, a litigant could use such information as a basis for discovery or to improperly compare Activision's practices in one circumstance against those in other circumstances.

### IV.   MEMORANDUM (Dkt. 111-1) AND STATEMENT OF UNDISPUTED FACTS (Dkt. 111-2).

Consistent with the foregoing, Activision requests that the following portions of Activision's Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment (Dkt 111-1) and Statement of Undisputed Facts (Dkt 111-2) be filed under seal:

1. **Memorandum of Points and Authorities (Dkt 111-1).**

- Page 1, line 9 (reference to Activision revenue in the form of WZLLC's disgorgement demand; *see* Section I(3) *supra*);
- Page 7, line 16, n. 3 (7:25-7:26) (explanation of internal naming discussions; *see* Section II *supra*);
- Page 7, lines 17-22 (reference to internal trademark search results; *see* Section III *supra*);
- Page 19, portions of lines 13 and line 15 (references to number of support tickets; *see* Section I(1) *supra*);
- Page 20, lines 2-4 (reference to internal naming discussions; *see* Section II *supra*);
- Page 20, lines 11-12 and 17-19  (reference to internal trademark search results; *see* Section III *supra*);
- Page 21, lines 13-14 and Page 23, line 7 (references to Activision revenue in the form of WZLLC's disgorgement demand; *see* Section I(3) *supra*).

2. **Statement of Undisputed Facts (Dkt. 111-2).**

- Paragraphs 78-79 (reference to internal naming discussions; *see* Section II *supra*);
- Paragraphs 80-82 (reference to internal trademark search results; *see* Section III *supra*); and
- Paragraph 123 (reference to number of support tickets; *see* Section I(1) *supra*).

DATED:  October 27, 2025

MARC E. MAYER
LINDSAY R. EDELSTEIN
MITCHELL SILBERBERG & KNUPP LLP

By: */s/ Marc E. Mayer*
    Marc E. Mayer (SBN 190969)
    Attorneys for Activision Publishing, Inc.