Docusign Envelope ID: 2BD0962E-20F0-46EC-B7E9-4794FC6438D1

| | |
|---|---|
| 1 | E. MARTIN ESTRADA (State Bar No. 223802) |
| | martin.estrada@mto.com |
| 2 | BLANCA F. YOUNG (State Bar No. 217533) |
| | blanca.young@mto.com |
| 3 | MUNGER, TOLLES & OLSON LLP |
| | 350 South Grand Avenue, 50th Floor |
| 4 | Los Angeles, CA 90071 |
| | Telephone: (213) 683-9100 |
| 5 | Facsimile: (213) 687-3702 |
| 6 | Attorneys for Plaintiff Activision Publishing, Inc. |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTIVISION PUBLISHING, INC., a Delaware corporation, | CASE NO. 2:21-cv-3073-FLA (JCx) |
| Plaintiff, | [Assigned to Judge Fernando L. Aenlle-Rocha] |
| v. | **DECLARATION OF ZACHARY BYER IN SUPPORT OF RENEWED APPLICATION OF ACTIVISION PUBLISHING, INC. FOR LEAVE TO FILE UNDER SEAL CERTAIN DOCUMENTS FILED IN CONNECTION WITH ITS REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT** |
| WARZONE.COM, LLC, | |
| Defendant. | |
| WARZONE.COM, LLC, | |
| Counterclaimant, | |
| v. | |
| ACTIVISION PUBLISHING, INC., a Delaware corporation, | |
| Counterclaim Defendant. | |

Mitchell Silberberg & Knupp LLP

**DECLARATION OF ZACHARY BYER**

I, Zachary Byer, declare as follows:

1. I am the Director of Litigation and Intellectual Property for Activision Blizzard, Inc. – the parent company of Activision Publishing, Inc. I make this Declaration in support of Activision's Renewed Application for Leave to File Under Seal Certain Documents Filed in Connection with its Reply in Support of its Motion for Summary Judgment or, Alternatively, Partial Summary Judgment (the "Application"). I have personal knowledge of the following facts, and, if called as a witness, could and would competently testify thereto.

2. In this action, Activision produced a substantial number of documents, many of which were designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL pursuant to the Protective Order entered by the Court in this action on December 15, 2021 (the "Protective Order"). Dkt. 39.

3. As an overarching matter, it should be noted that because of the enormous popularity of the *Call of Duty* franchise, lawsuits involving Activision and the *Call of Duty* franchise routinely receive a great deal of attention. It is common for members of the gaming press, online bloggers, competitors and fans to monitor court dockets and closely scrutinize any new filings, especially those that contain internal correspondence and analysis. This case is no exception. It has been reported on by the gaming press, and Warzone.com, LLC ("WZLLC") has given interviews concerning this case. Thus, Activision's concerns about the disclosure of documents placed in the public record are not merely hypothetical. I believe that it is very likely that any documents related to this case will be downloaded by members of the public or the gaming press and further distributed online. This is especially true for any documents that might give insight into Activision's internal business strategies and processes, which Activision's competitors are keenly interested in and could use to their strategic advantage.

4.      I have reviewed each of the documents sought to be filed under seal in this action and given careful consideration to what portions of these documents contain competitively sensitive information and should be filed under seal. I have done so with the goal of making Activision's sealing request as narrow as possible. Following is a description of each category of documents pertinent to this Application and an explanation as to why Activision believes that certain portions of such documents should be sealed.

**Documents Revealing the Number of Support Tickets Received by Activision**

5.      During the deposition of Matthew Cox, Activision's Senior Vice President and General Manager of the *Call of Duty* franchise, Mr. Cox provided testimony concerning the number of customer service inquiries related to *Call of Duty: Warzone* that Activision received during a four-year period of time and searches that were conducted in the course of this litigation to determine whether there was any evidence of consumer confusion within these inquiries. This testimony was attached as Exhibit 80 to the Declaration of Marc E. Mayer in support of Activision's Motion for Summary Judgment or, Alternatively, Partial Summary Judgment (the "Motion"). *See* Dkt. 111-5 at 333-342 (at 270:2).

6.      Activision's internal processes regarding the review of customer service inquiries, as well as the number of such inquiries, constitutes competitively sensitive information. Activision does not disclose to the public the number of customer service inquiries it receives on an annual basis. Activision has a legitimate concern that such information could be misconstrued if disclosed. Thus, Activision requests that this number be kept confidential. Activision does not seek to seal testimony regarding the existence of a customer service database or that it ran searches against that database; it only seeks to redact the number of inquiries it has received.

7.      I understand that this Court already granted Activision's request to seal the number of customer service inquiries related to *Call of Duty: Warzone* that

Activision received during a four-year period of time and searches that were conducted in the course of this litigation to determine whether there was any evidence of consumer confusion within these inquiries.  *See* Dkt. 156.

**Documents Revealing Activision's Financials**

8.   In connection with this lawsuit, Activision prepared and produced certain documents containing non-public, confidential financial information, including revenue and profit figures in connection with *Call of Duty: Warzone*.  Activision does not release such information to the public.  Such information is competitively sensitive and its disclosure would harm the company, including because Activision's competitors could use this information to gauge the relative success of their competing games.

9.   I understand that this Court already granted Activision's request to seal documents revealing Activision's revenues.  *See* Dkt. 156.

**Documents Discussing Activision's Naming Processes**

10.   Activision provided a declaration of one of its employees, Carolyn Wang (the "Wang Declaration"; Dkt. 111-3).  The Wang Declaration discloses internal discussions about Activision's analysis of potential naming options for what ultimately became *Call of Duty: Warzone*.  Among the topics covered by the declaration are the opinions of Activision executives concerning such naming options, alternate names under consideration by Activision's marketing team, internal evaluations and analysis conducted by Activision, and issues or concerns articulated by Activision employees or executives concerning various proposed names.  *See id.* ¶¶ 3-8.

11.   Additionally, Paragraph 258 of the expert report of Christian Tregillis (Dkt. 111-5 at 472-480) discusses an internal email concerning surveys that were conducted by Activision pertaining to the selection of the *Call of Duty: Warzone* title.  This email was circulated only to members of Activision's internal marketing team and was never disclosed externally.

4
**DECLARATION OF ZACHARY BYER**

12.     In light of the popularity and intense public scrutiny of the *Call of Duty* franchise, competitors could use this information to learn about Activision's marketing and business strategies and the process by which Activision tests and selects names for its video games.

13.     Also, it is possible that Activision may wish to use one or more of the alternative names for future releases.  If these names were to be disclosed to the public, it is possible that competitors could undermine Activision's ability to use them for forthcoming titles.  Or, it is possible that members of the public could seek to disrupt Activision's business plans or generate revenue by improperly registering domain names or trademarks with these potential names.

14.     I understand that this Court already granted Activision's request to seal the above-referenced portions of the Wang Declaration, as well as the above-referenced portion of the Tregillis expert report.  *See* Dkt. 156.

**Activision's Internal "Style Guide" and Documents Discussing it**

15.     Attached as Exhibit A to the Wang Declaration was an internal "Style Guide," which depicts logos, icons, art, art colors, color palettes, and other information relating to Activision's game *Call of Duty: Warzone* (the "Style Guide"; *id.* at 6-46).

16.     The internal Style Guide contains proprietary branding and visual identity materials – such as logos, icons, artwork, and color palettes – that reflect Activision's confidential creative direction and brand strategy developed through substantial time and investment.  Public disclosure of the "Style Guide" or references that reveal its contents would allow competitors or third parties to copy, dilute, or exploit these assets, undermining Activision's competitive position, brand distinctiveness, and control over its intellectual property.

17.     I understand that this Court already granted Activision's request to seal the Style Guide.  *See* Dkt. 156.

**Documents Revealing Activision's Trademark Clearance and Search Practices**

18. Activision provided a declaration of its trademark paralegal discussing trademark clearance and search practices, including the timing of certain trademark searches conducted by Activision's legal department, the scope of trademark searches, and the materials used by Activision's legal department to assess the availability of game titles or trademarks. *See* Dkt. 111-4 ¶¶ 2-4, *id.*, Exs. A-C.

19. The manner by which Activision conducts trademark searches or analyses and the documents created as a result of such searches is confidential and its disclosure could prejudice the company. For example, a litigant could use such information as a basis for discovery or to improperly compare Activision's practices in one circumstance against those in other circumstances.

20. I understand that this Court already granted Activision's request to seal materials revealing Activision's trademark clearance and search practices. *See* Dkt. 147; Dkt. 156.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of January, 2026, in Los Angeles, California.

*Zachary Byer*
_____
Zachary Byer