1    E. MARTIN ESTRADA (State Bar No. 223802)
        martin.estrada@mto.com
2    BLANCA F. YOUNG (State Bar No. 217533)
        blanca.young@mto.com
3    MUNGER, TOLLES & OLSON LLP
     350 South Grand Avenue, 50th Floor
4    Los Angeles, CA 90071
     Telephone:  (213) 683-9100
5    Facsimile:   (213) 687-3702

6    Attorneys for Plaintiff Activision Publishing, Inc.

7    *Additional Counsel on Signature Page*

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   ACTIVISION PUBLISHING, INC., a          CASE NO. 2:21-cv-3073-FLA (JCx)
     Delaware corporation,
12                                           [Assigned to Judge Fernando L.
                      Plaintiff,             Aenlle-Rocha]
13
            v.                               **PLAINTIFF ACTIVISION
14                                           PUBLISHING, INC.'S
     WARZONE.COM, LLC,                       MEMORANDUM OF
15                                           CONTENTIONS OF FACT AND
                      Defendant.             LAW**
16
     ─────────────────────────────          FPTC:        March 6, 2026
17   WARZONE.COM, LLC,                       Time:        1:30 p.m.
                                             Ctrm:        6B
18                    Counterclaimant,
                                             Trial Date:  March 17, 2026,
19          v.                                            at 8:15 a.m.

20   ACTIVISION PUBLISHING, INC., a
     Delaware corporation,
21
                      Counterdefendant.
22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.    ACTIVISION'S CLAIM AND WZLLC'S DEFENSES [L.R. 16-4.1] .........1

    A.    Summary of Activision's Claim [L.R. 16-4.1(a)].................................1

    B.    Elements Required to Establish Activision's Claim and
        Activision's Key Evidence in Support [L.R. 16-4.1(b)-(c)] .................1

II.    WZLLC'S COUNTERCLAIMS AND ACTIVISION'S DEFENSES
    [L.R. 16-4.1] ..................................................................................................1

    A.    WZLLC's Counterclaims [L.R. 16-4.l(a)]..........................................1

    B.    Elements Required to Establish WZLLC's Counterclaims and
        Activision's Key Evidence in Opposition [L.R. 16-4.1(b)-(c)]...........2

        1.    Counterclaim 1: Trademark Infringement under the Lanham
            Act (15 U.S.C. § 1125) ...........................................................2

        2.    Counterclaim 2: California Common Law Unfair
            Competition .............................................................................16

        3.    Counterclaim 3: California Business & Professions Code §
            17200, *et seq.* Violations .......................................................23

    C.    Activision's Affirmative Defense [L.R. 16- 4.1(d)] ..........................24

    D.    Elements Required to Establish Activision's Affirmative Defense
        and Its Key Evidence in Support [L.R. 16-4.1(e)-(f) ........................25

        1.    Affirmative Defense 1: Unclean Hands ...................................25

    E.    Anticipated Evidentiary Issues [L.R. 16.4.1(h)]................................26

    F.    Issues of Law [L.R. 16-4.1(i) ...........................................................27

        1.    Whether WZLLC Can Own a Trademark in the Term
            "Warzone" When it Was Not the First to Use the Mark for a
            Video Game, and Prior Users Had Not Abandoned Their
            Use of the Mark. ....................................................................27

        2.    Whether WZLLC Has Article III Standing. .............................28

i

# TABLE OF CONTENTS
(continued)

Page

3.    Whether Intent Is a Relevant Factor to Prove Secondary
Meaning in a Reverse-Confusion Case. ...................................29

4.    Whether a Common-Law Unfair Competition Claim is
Cognizable in a Reverse-Confusion Case. ............................30

5.    Whether the *Noerr-Pennington* Doctrine Precludes WZLLC
From Asserting that Activision Applied for Trademarks to
"Block" WZLLC From Using the Alleged "Warzone"
Mark.......................................................................................31

6.    Whether Disgorgement Is Available as a Remedy in
Reverse Confusion Trademark Infringement Actions..............32

7.    Whether WZLLC Is Precluded From Recovering Both
Disgorgement of Profits and Actual or Punitive Damages. .....32

III.    BIFURCATION [L.R. 16-4.3].............................................................33

A.    Relevant Legal Standard ...................................................34

B.    Bifurcation is Necessary to Prevent Evidence of Activision's
Profits and Financial Condition From Prejudicing the Verdict ..........35

1.    Courts Routinely Bifurcate Trial to Avoid Undue Prejudice
From Evidence of Profits or Financial Condition. ...................35

2.    Evidence of Activision's Profits and Financial Condition Is
Not Relevant to Phase 1 Issues and Is Highly Prejudicial. ......35

3.    Evidence of Profits Is Not Intertwined With Any Phase 1
Issue. ......................................................................................38

C.    WZLLC's Disgorgement Claim Should Not Go to the Jury. .............39

D.    Bifurcation Will Promote Efficiency. ..................................................39

IV.    JURY TRIAL/BENCH TRIAL [L.R. 16-4.4] ....................................41

V.    ATTORNEYS' FEES [L.R. 16-4.5] ...................................................42

VI.    ABANDONMENT OF ISSUES [L.R. 16-4.6]....................................43

# TABLE OF AUTHORITIES

<b><u>Page(s)</u></b>

## CASES

*4 Pillar Dynasty LLC v. New York & Co., Inc.*,
  933 F.3d 202 (2d Cir. 2019) ................................................................... 9

*A & H Sportswear Inc. v. Victoria's Secret Stores, Inc.*,
  No. CIV.A. 94-CV-7408, 2002 WL 27735 (E.D. Pa. Jan. 9, 2002) ................... 8

*Activision Publ'g, Inc. v. Warzone.com, LLC*,
  621 F. Supp. 3d 1090 (C.D. Cal. 2022), *vacated and remanded*, No. 22-
  55831, 2023 WL 7118756 (9th Cir. Oct. 25, 2023), *and vacated*, No.
  2:21-CV-03073-FLA (JCX), 2024 WL 6467326 (C.D. Cal. Apr. 11,
  2024) ......................................................................................... 14

*Aliign Activation Wear, LLC v. lululemon athletica Can. Inc.*, 2021 WL
  3117239 (C.D. Cal. June 7, 2021) ......................................................... 3

*Alphonsis v. Critics' Choice Ass'n*,
  2022 WL 18278605 (C.D. Cal. Nov. 17, 2022) ........................................ 29

*Ambassador Hotel Co., Ltd. v. Wei-Chuan Inv.*,
  189 F.3d 1017 (9th Cir. 1999) ............................................................. 19

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ..................................................... 6, 10, 37

*Bedetti v. City of Long Beach*,
  2017 WL 5495146 (C.D. Cal. Apr. 12, 2017) ......................................... 35

*Binder v. Disab. Grp.*,
  772 F. Supp. 2d 1172 (C.D. Cal. Jan. 25, 2011) ................................. 19, 40

*Boltex Mfg. Co., L.P. v. Ulma Piping USA Corp.*,
  2019 WL 5684201 (S.D. Tex. Nov. 1, 2019) ..................................... 19, 40

*Clark v. Super. Ct.*,
  50 Cal. 4th 605 (2010) ................................................................ 18, 36

*Cleary v. News Corp.*,
  30 F.3d 1255 (9th Cir. 1994) .................................................. 21, 23, 24

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Coastal Sts. Mktg., Inc. v. Hunt,*
  694 F.2d 1358 (5th Cir. 1983) ..................................................................31

*Collagen Nutraceuticals, Inc. v. Neocell Corp.,*
  No. 09CV2188 DMS (WVG), 2010 WL 3069715 ...........................................23

*Comm. for Idaho's High Desert, Inc. v. Yost,*
  92 F.3d 814 (9th Cir. 1996) ...............................................................5, 28

*Cont'l Lab'y Prods., Inc. v. Medax Int'l, Inc.,*
  114 F. Supp. 2d 992 (S.D. Cal. 2000) ........................................................29

*Corbrus, LLC v. 8th Bridge Cap., Inc.,*
  2021 WL 4439220 (C.D. Cal. Aug. 9, 2021) ................................................35

*Danjaq LLC v. Sony Corp.,*
  263 F.3d 942 (9th Cir. 2001) ...............................................................34

*Deckers Outdoor Corp. v. Mojofit LLC,*
  2021 WL 1535536 (C.D. Cal. Mar. 30, 2021) ...............................................19

*Doe v. Rose,*
  2016 WL 9150617 (C.D. Cal. July 27, 2016) ...............................................35

*Dreamwerks Prod. Grp., Inc. v. SKG Studio,*
  142 F.3d 1127 (9th Cir. 1998) .........................................................*passim*

*Early Warning Servs. LLC v. Johnson,*
  2025 WL 2022624 (D. Ariz. July 18, 2025) .........................................18, 24, 31

*Echo Drain v. Newsted,*
  307 F. Supp. 2d 1116 (C.D. Cal. 2003) ........................................................4

*Entrepreneur Media, Inc. v. Dermer,*
  2019 WL 4187466 (C.D. Cal. July 22, 2019) .......................................18, 24, 31

*Entrepreneur Media, Inc. v. Smith,*
  279 F.3d 1135 (9th Cir. 2002) ................................................................4

*Est. of Richard Risher v. City of Los Angeles,*
  2022 WL 2235481 (C.D. Cal. Mar. 22, 2022) ...............................................34

iv

## TABLE OF AUTHORITIES
<u>(continued)</u>

**<u>Page(s)</u>**

*Fabick, Inc. v. JFTCO, Inc.*,
  944 F.3d 649 (7th Cir. 2019) ........................................................................ 7, 32

*Fifty-Six Hope Road Music, Ltd., v. A.V.E.L.A., Inc.*,
  778 F.3d 1059 (9th Cir. 2015) ................................................................ 8, 39, 41

*Fisher v. Dees*,
  794 F.2d 432 (9th Cir. 1986) ...................................................................... 17, 30

*Hangarter v. Provident Life & Accident Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004) ............................................................................ 34

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,
  28 F.4th 35 (9th Cir. 2022) ............................................................................... 39

*Herman Miller, Inc. v. Blumenthal Distrib., Inc.*,
  No. LA CV17-04279, 2019 WL 1416472 (C.D. Cal. Mar. 4, 2019) .................. 7

*Hill Collections v. Safeway, Inc.*,
  2019 WL 8889998 (C.D. Cal. Dec. 17, 2019) .................................................. 29

*Indus. Rayon Corp. v. Dutchess Underwear Corp.*,
  92 F.2d 33 (2d Cir. 1937) ............................................................................. 5, 28

*Japan Telecom, Inc. v. Japan Telecom Am., Inc.*,
  287 F.3d 866 (9th Cir. 2002) ........................................................................... 25

*Kittrich Corp. v. United Indus. Corp.*,
  2018 WL 11472385 (C.D. Cal. Nov. 15, 2018) ............................................... 29

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ................................................................................... 18

*Lindy Pen Co. v. Bic Pen Corp.*,
  982 F.2d 1400 (9th Cir. 1993) ......................................................................... 42

*Lodestar Anstalt v. Bacardi & Co.*,
  2019 WL 8105378 (C.D. Cal. July 3, 2019) .............................................. 17, 30

*Luxpro Corp. v. Apple Inc.*,
  2011 WL 1086027 (N.D. Cal. Mar. 24, 2011) ................................................. 31

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*M2 Software, Inc. v. Madacy Ent.*,
421 F.3d 1073 (9th Cir. 2005) ............................................................. 3, 6

*Marketquest Group, Inc. v. BIC Corp.*,
862 F.3d 927 (9th Cir. 2017) .............................................................. 6, 38

*Michael Kors, L.L.C. v. Chunma USA, Inc.*,
2017 WL 5665003 (C.D. Cal. Aug. 30, 2017) ...................................... 34

*Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge*,
316 U.S. 203 (1941) ................................................................................ 7

*Monster Energy Co. v. Integrated Supply Netw., LLC*,
2018 WL 3357532 (C.D. Cal. June 4, 2018) ........................... 18, 24, 31

*Monster Energy Co. v. Integrated Supply Netw., LLC*,
533 F. Supp. 3d 928 (C.D. Cal. 2021) .................................................... 9

*Murdock v. Marolina Outdoor Inc.*,
2024 WL 2209771 (C.D. Cal. Apr. 22, 2024) ...................................... 29

*Oculu, LLC v. Oculus VR, Inc.*,
No. SACV 14-0196, 2015 WL 3619204 (C.D. Cal. June 8, 2015)........... 5, 8, 32

*PG&E Imports v. Johnson Enters., LLC*,
46 F.4th 953 (9th Cir. 2022) ............................................................. 5, 38

*POM Wonderful LLC v. Coca Cola Co.*,
2016 WL 5929336 (C.D. Cal. Mar. 9, 2016) ........................................ 37

*Romag Fasteners, Inc. v. Fossil, Inc.*,
140 S. Ct. 1492 (2020) ............................................................................ 9

*S. Cal. Darts Ass'n v. Zaffina*,
762 F.3d 921 (9th Cir. 2014) ............................................................ 5, 27

*Schrader Cellars, LLC v. Roach*,
129 F.4th 1115 (9th Cir. 2025) ............................................................. 31

*Self–Realization Fellowship Church v. Ananda*,
59 F.3d 902 (9th Cir. 1995) .............................................................. 4, 29

vi

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Skydive Arizona, Inc. v. Quattrochi,*
673 F.3d 1105 (9th Cir. 2012) ...................................................................9, 36, 39

*Snap, Inc. v. Vidal,*
750 F. Supp. 3d 1120 (C.D. Cal. 2024) ....................................................3

*Southland Sod Farms v. Stover Seed Co.,*
108 F.3d 1134 (9th Cir. 1997) ..................................................................17, 30

*Stone Creek, Inc. v. Omnia Italian Design, Inc.,*
808 F. App'x 459 (9th Cir. 2020) .............................................................8

*Strategic Partners, Inc. v. FIGS, Inc.,*
2022 WL 17348175 (C.D. Cal. Sept. 26, 2022) .......................................35, 41

*SunEarth, Inc. v. Sun Earth Solar Power Co.,*
839 F .3d 1179, 1181 (9th Cir. 2016) .......................................................42

*Surfvivor Media, Inc. v. Survivor Prods.,*
406 F.3d 625 (9th Cir. 2005) ...................................................................5

*Sybersound Recs., Inc. v. UAV Corp.,*
517 F.3d 1137 (9th Cir. 2008) ..................................................................17, 30

*Trovan, Ltd. v. Pfizer, Inc.,*
No. CV-98-0094 LGB MCx, 2000 WL 709149 (C.D. Cal. May 24, 2000) ......17

*Trujillo v. First Am. Registry, Inc.,*
157 Cal. App. 4th 628 (2007) ..................................................................19, 33

*Ubeda v. Zialcita,*
226 U.S. 452 (1913) .................................................................................5, 25, 27, 28

*Visa U.S.A. Inc. v. First Data Corp.,*
2005 WL 6271242 (N.D. Cal. Aug. 16, 2005) ..........................................29

*Ward Baking Co. v. Potter-Wrightington, Inc.,*
298 F. 398 (1st Cir. 1924) ........................................................................28

*Werschkull v. Un. Cal. Bank,*
85 Cal. App. 3d 981 (1978) ......................................................................19

ACTIVISION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1

## TABLE OF AUTHORITIES
(continued)

2

**Page(s)**

3

*Williams v. City of Long Beach*,
   2020 WL 4429356 (C.D. Cal. July 31, 2020) ...................................... 35

*Yuga Labs, Inc. v. Ripps*,
   2023 WL 7089922 (C.D. Cal. Oct. 25, 2023) ...................................... 40

### RULES & STATUTES

15 U.S.C. § 1117 .......................................................................... *passim*

15 U.S.C. § 1125 ........................................................................... 1, 2

Cal. Civ. Code § 3294 ........................................................... 20, 36, 39

Cal. Bus. & Prof. Code § 17200 .................................................. *passim*

Cal. Civ. Code § 3295 ...................................................................... 36

Fed. R. Civ. P. 42 ............................................................................ 34

L.R. 16-4 ........................................................................................... 1

### OTHER AUTHORITIES

4 McCarthy on Trademarks and Unfair Competition (5th ed. 2022) ...... 8, 19, 32, 40

9th Cir. Model Instructions § 15.6 .................................................... 2

9th Cir. Model Instructions § 15.10 .................................................. 3

9th Cir. Model Instructions § 15.11 .................................................. 4

9th Cir. Model Instructions § 15.18 .................................................. 6

9th Cir. Model Instructions § 15.29 .................................................. 7

28 Cal. Jur. 3d Election of Remedies § 14 (Jan. 2026 Update) ............................ 19

Jud. Couns. of Cal. Civ. Jury Instr. No. 3294 (2025 ed.) ........................ 21

Jud. Couns. of Cal. Civ. Jury Instr. No. 3945 (2025 ed.) ................. 19, 20

ACTIVISION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Stitch Editing Ltd. v. TikTok, Inc. et al*, 2:21-CV-06636, Order re: Jury Instruction on Common Law Unfair Competition Claim (Dkt. 458) (C.D. Cal. Mar. 1, 2023) ................................................................................ 30

*Stitch Editing Ltd. v. TikTok, Inc. et al*, 2:21-CV-06636, Final Jury Instructions (Dkt. 511) (C.D. Cal. Mar. 9, 2023) ................................................ 17

ACTIVISION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Pursuant to Local Rule 16-4, Plaintiff and Counterclaim Defendant Activision Publishing, Inc. ("Activision")[1] hereby submits this Memorandum of Contentions of Fact and Law in advance of the Final Pretrial Conference scheduled for March 6, 2026 at 1:30 p.m.

## I. ACTIVISION'S CLAIM AND WZLLC'S DEFENSES [L.R. 16-4.1]

### A. Summary of Activision's Claim [L.R. 16-4.1(a)]

<u>Claim 1: Declaratory Relief</u>. Activision seeks a declaration that it is not liable to WZLLC for infringement of any alleged trademark rights WZLLC claims to possess in the term "Warzone." Activision does not seek monetary damages.

### B. Elements Required to Establish Activision's Claim and Activision's Key Evidence in Support [L.R. 16-4.1(b)-(c)]

Activision's declaratory relief claim for non-infringement mirrors WZLLC's counterclaims. Because WZLLC bears the burden of proof on its claims for trademark infringement, unfair competition under Cal. Bus. & Prof. Code § 17200, and unfair competition under California common law, Activision refers the Court to Section II.B of this Memorandum for the elements of its claim and key evidence that Activision intends to introduce to support its claim.

## II. WZLLC'S COUNTERCLAIMS AND ACTIVISION'S DEFENSES [L.R. 16-4.1]

### A. WZLLC's Counterclaims [L.R. 16-4.l(a)]

WZLLC asserts three counterclaims against Activision relating to Activision's alleged use of the term "Warzone" in connection with Activision's video game Call of Duty: Warzone ("CODWZ"):

---

[1] The parties have stipulated that they should be realigned for trial (Dkt. 177), but because the Court has not at this time entered an order on the stipulation, Activision refers to itself here as the Plaintiff and Counterclaim Defendant.

ACTIVISION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Counterclaim 1: WZLLC claims Activision is liable for trademark infringement under 15 U.S.C. § 1125(a).

Counterclaim 2: WZLLC claims Activision is liable for trademark infringement under California common law.

Counterclaim 3: WZLLC claims Activision is liable for unfair competition and false advertising under California Business & Professions Code § 17200, *et seq.*

WZLLC seeks purported "lost profits" resulting from its claimed inability to advertise its product. It also seeks equitable disgorgement of Activision's profits purportedly attributable to its use of "Warzone" in connection with CODWZ. WZLLC has not preserved or adequately disclosed any other theories of monetary recovery or any evidence to support any other damages theory.

**B.** **Elements Required to Establish WZLLC's Claims and Activision's Key Evidence in Opposition [L.R. 16-4.1(b)-(c)]**

**1.** **Counterclaim 1: Trademark Infringement under the Lanham Act (15 U.S.C. § 1125)**

**a.** **Elements**

***Liability***: To prevail on its claim of trademark infringement under Section 1125 of the Lanham Act, WZLLC must prove each of the following elements by a preponderance of the evidence:

(1) The term "Warzone" is a valid, protectable trademark;

(2) WZLLC owns the term "Warzone" as a trademark; and

(3) Activision used WZLLC's alleged trademark in the term "Warzone" in interstate commerce without the consent of WZLLC in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods. *Ninth Circuit Manual of Model Civil Jury Instructions* § 15.6 (2024).

With respect to each of these elements, WZLLC must prove the following.

*Element 1: Trademark Validity.* Because WZLLC does not possess a registered trademark for the term "Warzone," it must prove by a preponderance of the evidence that "Warzone" is a valid trademark. Specifically, it must prove that the mark either is (1) inherently distinctive; or (2) descriptive but has acquired a secondary meaning.

An inherently distinctive trademark is a word, symbol, or device, or combination of them, which intrinsically identifies a particular source of a good in the market. The law assumes that an inherently distinctive trademark is one that almost automatically tells a consumer that it refers to a brand or a source for a product, and that consumers will be predisposed to equate the trademark with the source of a product. Trademarks are grouped into five categories based on their distinctiveness. These five categories are, in order of strength or distinctiveness: arbitrary (which is inherently distinctive), fanciful (also inherently distinctive), suggestive (also inherently distinctive), descriptive (which is protected only if it acquires in consumers' minds a "secondary meaning"), and generic (which is entitled to no protection). *Ninth Circuit Manual of Model Civil Jury Instructions* § 15.10 (2024).

"If 'third parties in applicant's field or closely related fields use the same or substantially the same wording as the mark, or very similar wording as the mark,' that usage 'tends to indicate the mark is at least highly descriptive.'" *Snap, Inc. v. Vidal*, 750 F. Supp. 3d 1120, 1156 n.20 (C.D. Cal. 2024) (quoting U.S. Patent & Trademark Off., Trademark Manual of Examining Procedure § 212.01); *Aliign Activation Wear, LLC v. lululemon athletica Can. Inc.*, 2021 WL 3117239, at *4 (C.D. Cal. June 7, 2021) ("A mark which is hemmed in on all sides by similar marks on similar goods or services cannot be very distinctive. It is merely one of a crowd of marks. In such a crowd, customers will not likely be confused between any two of the crowd and may have learned to carefully pick out one from the other.") (quoting *Miss World (UK) Ltd. v. Mrs. Am. Pageants, Inc.*, 856 F.2d 145,

1449 (9th Cir. 1988), *abrogated in part on other grounds by Eclipsce Assocs. Ltd. v. Data Gen. Corp.*, 894 F.2d 1114, 1116 n.1 (9th Cir. 1990)); *see also M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1087–88 (9th Cir. 2005) ("Use of similar marks by third-party companies in the relevant industry weakens the mark at issue."); *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002) ("[T]hat the marketplace is replete with products using a particular trademarked word indicates not only the difficulty in avoiding its use but also, and directly, the likelihood that consumers will not be confused by its use.").

If the alleged "Warzone" trademark is descriptive, WZLLC must prove that it has used the mark in such a way that its primary significance in the minds of the prospective consumers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is. WZLLC must establish by a preponderance of the evidence that a significant number of the consuming public associates the term "Warzone" with a single source, to find that it has acquired secondary meaning.

In determining whether the term "Warzone" has acquired secondary meaning such that its primary significance in the minds of prospective consumers is its association with WZLLC, the following factors may be considered: (1) whether the people who purchase the product that bears the alleged trademark associate it with WZLLC; (2) the degree of advertising engaged in by WZLLC using the alleged trademark; (3) whether WZLLC successfully used the trademark to increase sales of its product; (4) the length of time and manner in which WZLLC used the claimed trademark; (5) whether the use of the term "Warzone" by WZLLC was exclusive; (6) whether Activision intentionally copied the alleged trademark; and (7) whether Activision's use has led to actual confusion by a significant number of consumers. *Ninth Circuit Manual of Model Civil Jury Instructions* § 15.11 (2024); *see also Self–Realization Fellowship Church v. Ananda,* 59 F.3d 902, 910-12 (9th Cir. 1995); *Echo Drain v. Newsted*, 307 F. Supp.

4

2d 1116, 1123 (C.D. Cal. 2003). Intentional copying supports an inference of secondary meaning in a *forward-confusion case*, where the junior user is accused of attempting to palm off its products as that of the senior user, because "competitors generally copy 'to realize upon a secondary meaning that is in existence.'" *PG&E Imports v. Johnson Enters., LLC*, 46 F.4th 953, 961 (9th Cir. 2022). But the same inference does not exist in a *reverse-confusion* case—like this one—where, by definition, "there is no question of palming off, since neither junior nor senior user wishes to siphon off the other's goodwill." *Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129-30 (9th Cir. 1998).

   *Element 2: Ownership.* If the term "Warzone" is a valid trademark, WZLLC must prove by a preponderance of the evidence that it was the first to use the word "Warzone" in the sale of goods or services, or that prior uses were abandoned. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 930 (9th Cir. 2014) (trademark ownership depends on "priority of use in commerce"; to own a mark, an entity "must have been the first to actually use the mark in the sale of goods or services"); *cf. Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 820-21 (9th Cir. 1996) (mark that had been previously used by a third party and then effectively abandoned did not preclude a trademark infringement claim in a forward-confusion case by a party who established "continuous and exclusive use of the mark" for over a decade); *Indus. Rayon Corp. v. Dutchess Underwear Corp.*, 92 F.2d 33, 36 (2d Cir. 1937) (distinguishing facts of case from *Ubeda v. Zialcita*, 226 U.S. 452 (1913), where prior third-party use barred trademark claim by purported trademark owner when "the earlier trade-mark was still in widespread use and had not been discontinued").

   *Element 3: Likelihood of Confusion*. WZLLC's claims are for "reverse confusion." Reverse confusion "occurs when consumers dealing with the senior mark holder," *i.e.*, WZLLC, "believe that they are doing business with the junior one," *i.e.*, Activision. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630

(9th Cir. 2005); *see also Oculu, LLC v. Oculus VR, Inc.*, No. SACV 14-0196, 2015 WL 3619204, at \*14-15 (C.D. Cal. June 8, 2015). WZLLC must "show sufficient evidence to permit a rational trier of fact to find that confusion is 'probable,' not merely 'possible'" among an "appreciable number of people." *M2 Software v. Madacy Ent.*, 421 F.3d 1073, 1085 (9th Cir. 2005) (quoting *Murray v. CNBC*, 86 F.3d 858, 861 (9th Cir. 1996)).

To assess confusion, the Ninth Circuit considers the eight factors set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979): (1) strength or weakness of the plaintiff's mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines (together, the "*Sleekcraft* factors"). *See Ninth Circuit Manual of Model Civil Jury Instructions* § 15.18.

The assessment of the *Sleekcraft* intent factor (*i.e.*, the junior user's intent in selecting the mark) is different in a reverse confusion case than it is in a case of forward confusion. *Marketquest Group, Inc. v. BIC Corp.*, 862 F.3d 927, 934 (9th Cir. 2017). In a forward confusion case, the question is whether the junior user "in adopting its mark intended to capitalize on [the senior user's] good will." *Id.* (internal quotations omitted). In a reverse confusion case, however, there is no intent to "siphon off" the junior user's goodwill. *Id.* (internal quotations omitted). Instead, relevant indicia of intent to cause confusion may include evidence that the junior user "deliberately intended to push the [senior user] out of the market by flooding the market with advertising to create reverse confusion," or that the junior user "culpably disregarded the risk of reverse confusion." *Id.* at 934-935.

***Actual Damages***: 15 U.S.C. § 1117 permits WZLLC to recover "damages sustained by the plaintiff" resulting from the alleged infringement. Damages means the amount of money which will reasonably and fairly compensate WZLLC for

any injury caused by Activision's alleged infringement of WZLLC's alleged trademark. WZLLC bears the burden of proving that it sustained actual damages by a preponderance of the evidence. *See Ninth Circuit Manual of Model Civil Jury Instructions* § 15.29.

***Disgorgement***: WZLLC seeks disgorgement of Activision's profits that are attributable to the infringement pursuant to 15 U.S.C. § 1117(a). Disgorgement is an equitable remedy that is decided by the Court, not by the jury. To obtain disgorgement, WZLLC must prove by a preponderance of the evidence:

(1) Activision's gross revenues ***attributable to the use of the term "Warzone"*** in the title of its game Call of Duty: Warzone; and

(2) A non-speculative causal connection between the alleged infringement and the gross revenue attributable to the infringement. *Ninth Circuit Manual of Model Jury Instructions* § 15.29 (2019); *see also Herman Miller, Inc. v. Blumenthal Distrib., Inc.*, No. LA CV17-04279, 2019 WL 1416472, at *19 (C.D. Cal. Mar. 4, 2019) ("To recover an alleged infringer's profits in a trademark action, a plaintiff must show that the alleged infringement caused either a rise in defendant's sales or a decline in plaintiff's sales.").

If WZLLC satisfies its burden of proof, Activision then bears the burden of proving its expenses and costs incurred in producing the gross revenue attributed to the infringement, and the portion of the profit attributable to factors other than use of the infringed trademark by a preponderance of the evidence. *Ninth Circuit Manual of Model Jury Instructions* § 15.29; *see also Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge*, 316 U.S. 203, 206 (1941) (cited in *Model Jury Instruction* § 15.29). WZLLC is not entitled to recover profits that it cannot demonstrate are attributable to the alleged infringement itself—*i.e.*, the use of the term "Warzone" as a subtitle in Call of Duty: Warzone. *Id.*

Where, as here, the theory of infringement is reverse confusion, courts have found that there is "meager justification for profit awards." *Fabick, Inc. v. JFTCO,*

*Inc.*, 944 F.3d 649, 659 (7th Cir. 2019) (affirming summary judgment that plaintiff in reverse confusion case could not recover defendant's profits); *see also* 4 McCarthy on Trademarks and Unfair Competition § 23:10 (5th ed. 2022) ("Because in a reverse confusion case the infringer is not seeking to take away the plaintiff's customer through confusion, awarding the plaintiff the profits of an infringer is not a proper basis for recovery."). This is particularly true where, as discussed below, there is overwhelming evidence that numerous factors other than the "Warzone" portion of the title of Call of Duty: Warzone—a game that was free to play—generated revenue. *See A & H Sportswear Inc. v. Victoria's Secret Stores, Inc.*, No. CIV.A. 94-CV-7408, 2002 WL 27735, *5 (E.D. Pa. Jan. 9, 2002) ("While not necessary for a finding of reverse confusion, it is also important that there is no indication that Victoria's Secret's success with its THE MIRACLE BRA swimwear was due to the strength of A & H's MIRACLESUIT mark or the confusion that was created because of the mark's similarity. Instead, it is equally likely that Victoria's Secret's success in the swimwear market was due to its strong trademark . . . . We think that it would be unfair to award Plaintiffs a share of the profits when there is no indication that Plaintiffs' mark contributed to these profits at all.").

Before awarding profits, the Court must determine whether recovery of Activision's profits is equitable under the specific facts of this case, as WZLLC may only recover Activision's profits "subject to the principles of equity." 15 U.S.C. § 1117(a); *see also Oculu*, 2015 WL 3619204, *22 (explaining that disgorgement is an available remedy based in part on the rationale that a defendant "should not be unjustly enriched"). An award of profits cannot be used to penalize Activision, and WZLLC is not entitled to a windfall. *See Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 808 F. App'x 459 (9th Cir. 2020); *Fifty-Six Hope Road Music, Ltd., v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1077 (9th Cir. 2015) ("In seeking to achieve equity between the parties, the court must fashion a remedy wherein the

ACTIVISION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

defendant may not retain the fruits, if any, of unauthorized trademark use or continue that use and the plaintiff is not given a windfall."). Additionally, as discussed in Section III below (regarding bifurcation), disgorgement is not available if it duplicates WZLLC's remedies at law.

Courts consider a variety of non-mandatory, non-exclusive factors to determine whether an award of profits is appropriate. For example, courts consider: (1) the degree of certainty that the defendant benefited from the unlawful conduct; (2) the availability and adequacy of other remedies; (3) the role of a particular defendant in effectuating the infringement; (4) any delay by the plaintiff; (5) the plaintiff's clean (or unclean) hands; (6) deterrence; and (7) fairness. *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 214 (2d Cir. 2019); *Monster Energy Co. v. Integrated Supply Network, LLC*, 533 F. Supp. 3d 928, 933-34 (C.D. Cal. 2021). Further, while willfulness is no longer a prerequisite to a court ordering disgorgement of profits, *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020), an infringer's mental state is a "highly important consideration in determining whether an award of profits is appropriate." *Id.*

***Enhanced Damages***. WZLLC seeks enhanced damages under the Lanham Act. Under the Lanham Act, the Court, in its discretion, may enter judgment "for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. § 1117(a). "If the court shall find that the amount of recovery based on [lost] profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation, and not a penalty." *Id.* The Lanham Act "has been construed to expressly forbid the award of damages to punish an infringer," *Skydive Arizona, Inc. v. Quattrochi*, 673 F.3d 1105, 1114 (9th Cir. 2012), and it is an abuse of discretion to enhance damages in order to punish a

1   willful infringer. *Id.* at 1114-1115. Instead, "enhancement of damages is only
2   available to ensure that the plaintiff receives compensation." *Id.*

3                    **b.    Key Evidence in Opposition**

4       ***Lack of Validity/Ownership***:  Activision will introduce evidence that the
5   alleged "Warzone" mark is descriptive, including screen captures, video captures,
6   and other evidence reflecting the content and themes of WZLLC's marketing and
7   game: nations engaged in ongoing military conflict, with each country vying for
8   domination over the others' territory and resources (in other words, a game about a
9   global warzone).

10      Activision also will introduce evidence, including documents and testimony
11  from witnesses including Randy Ficker, Jay Westerdal, Terry Kiel, and Roman
12  Welden, that before, during and after WZLLC renamed its game from "WarLight"
13  (the game's title since its conception in 2008) to "Warzone" in 2017, many other
14  third parties were already using the word "Warzone" in video game titles.

15      Activision will also introduce evidence that even after changing the game's
16  name to Warzone, WZLLC continued to use the name "WarLight" (the name by
17  which players had come to know the game for nearly a decade) to identify its
18  game. It did not market or build a consistent brand for the "Warzone" mark, did
19  not register for a trademark in "Warzone" before Activision released CODWZ, and
20  did not develop secondary meaning associating "Warzone" with its game.
21  Activision will also show that Activision did not intend to trade off of any
22  purported goodwill WZLLC may have developed in "Warzone."

23      ***Lack of Consumer Confusion***: Activision will introduce evidence and
24  testimony demonstrating that no reasonably prudent consumer of WZLLC's
25  mobile and browser-based turn-based strategy online board game would believe
26  that such game originates from or is associated with Activision and its popular
27  first-person action shooter Call of Duty franchise, including but not limited to the
28  following evidence relevant to each of the *Sleekcraft* factors.

ACTIVISION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1   *Strength of the Mark*: Activision will introduce evidence that WZLLC's

2   "Warzone" mark (to the extent it exists) is so weak and so devoid of any

3   distinctiveness that it is capable of only the most narrow protection, making

4   reverse confusion unlikely. This evidence includes, but is not limited to, testimony

5   of witnesses Randy Ficker, Jay Westerdal, Terry Kiel, Roman Welden, and

6   Stephanie Tully and documents showing that the alleged "Warzone" mark is

7   hemmed in by dozens of other uses of similar or identical marks, WZLLC's failure

8   to market and build a consistent brand for the "Warzone" mark, and concerns by

9   customers about WZLLC's "rebranding" from "WarLight" to "Warzone."

10   *Similarity of the Plaintiff's and Defendant's Marks*. Activision will

11   introduce evidence that Activision's use of the word "Warzone" in connection with

12   Call of Duty: Warzone is not similar to WZLLC's use of the word, particularly

13   when considering the context in which the parties' respective uses appear in the

14   marketplace. Specifically, Activision will introduce documents and testimony from

15   witnesses including Randy Ficker, Jay Westerdal, Matthew Cox, Carolyn Wang,

16   Matt Kliszewski, Chris Plummer, Roman Welden, and Stephanie Tully, that: the

17   games are presented very differently in the marketplace; Call of Duty: Warzone

18   always contains the Call of Duty franchise name in its advertising and store pages;

19   WZLLC's game uses a stylized logo that is very different from any logo used by

20   any Call of Duty game; on the Google Play and Apple App Stores WZLLC's game

21   was titled "Warzone – Turn Based Strategy," not "Warzone"; WZLLC deliberately

22   identified and sought to associate its game with "Risk"; and the marketing for Call

23   of Duty: Warzone generally indicates that it is a first-person shooter game.

24   *Proximity of the Goods/Services*: Activision will introduce evidence that the

25   parties' goods are sufficiently different in character, content, and intended

26   audience such that no reasonable consumer of WZLLC's games is likely to

27   mistakenly associate them with Activision and its Call of Duty franchise. This

28   evidence includes, but is not limited to, documents and testimony from witnesses

11

ACTIVISION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1    including Randy Ficker, Matt Cox, Carolyn Wang, Chris Plummer, Matt

2    Kliszweski, Roman Welden, and Stephanie Tully, regarding differences in

3    gameplay (*e.g.*, Call of Duty: Warzone is a first-person shooter game, while

4    Warzone is a strategy online boardgame), technical specifications to play the

5    games (*e.g.*, Call of Duty: Warzone is mainly played on consoles while Warzone is

6    played through an internet browser or mobile app), the marketplaces where the

7    games are available, how customers find the games, the skillsets required to play

8    the games, the consumer segments that are likely to engage with the games, and

9    how purchases are made.

10           *Type of Goods/Services and Degree of Care*: Activision will introduce

11    evidence that the actual and potential consumers of the parties' games, and of those

12    who play games and purchase in-game virtual products, are sophisticated

13    individuals and entities who know the difference between shooter games and

14    strategy games, are familiar with the Call of Duty series of games, discover and

15    play the parties' games because they are looking for a specific game experience,

16    and do not make purchasing errors based on the name of a video game. Activision

17    also will introduce evidence that because both parties' games are free to play and

18    generate revenue through in-game or in-app purchases, consumers only make

19    purchasing decisions after downloading, playing, engaging with, and enjoying the

20    game. Even in the unlikely event that a person mistakenly downloads or plays one

21    of the parties' games, it is virtually impossible for a player to make a mistaken

22    purchasing decision because the player will already have engaged with the game.

23    Any potential confusion—about whether they are completing in-game purchases of

24    weapon skins or other cosmetics (for first-person shooter game Call of Duty:

25    Warzone), or purchases of coins that can be used to purchase in-game "powers" or

26    upgrades (for WZLLC's turn-based strategy game "Warzone")—would therefore

27    be dispelled prior to the purchase.

28

ACTIVISION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

This evidence includes the games and marketplaces for each of the games, party documents, and testimony of witnesses including Randy Ficker, Bo Geddes, Matt Cox, Chris Plummer, Roman Welden, and Stephanie Tully.

*Marketing Channels*: Activision will introduce evidence of the parties' respective marketing channels to demonstrate that there is no meaningful overlap in marketing channels. Specifically, Activision will present evidence, through documents and testimony of witnesses including Carolyn Wang, Matt Cox, Chris Plummer, and Roman Welden that it advertises its Call of Duty games, including CODWZ, through a variety of advertising and marketing vehicles, including: its website (callofduty.com); Activision's social media channels (*e.g.*, Facebook, Instagram, YouTube); traditional paid media (*e.g.*, television advertisements and internet advertising such as banner ads, site takeovers, keyword purchases); press releases and public relations activities; partnerships with celebrities, streamers, and influencers; and industry events (*e.g.*, the Game Awards, Gamescom, PAX).  It also will present evidence that CODWZ was made available exclusively through PC and console retail platforms, such as Steam, Battle.net, the Xbox Store, and the PlayStation Store. Activision will present evidence, through documents and testimony of witnesses including Roman Welden, Stephanie Tully, Randy Ficker, Jay Westerdal, and Bo Geddes, that WZLLC does not engage in any marketing or advertising, does not partner with streamers or influencers, does not maintain or update social media accounts, does not attend conventions or conferences, and does not provide its game to reviewers or engage with print or online publications. Activision will also present evidence that players of WZLLC's game discover it through word of mouth and did not have trouble finding the game after CODWZ was released.

*Intent*: Activision will introduce evidence, through documents and testimony of witnesses including Carolyn Wang, Matt Cox, Terry Kiel, and Randy Ficker, that it adopted the title Call of Duty: Warzone in good faith. Specifically,

Activision will introduce evidence and testimony establishing that it chose the title Call of Duty: Warzone because it communicated the nature of the game and the themes presented in the game. Activision also will introduce evidence that it conducted a trademark search prior to its adoption of the Call of Duty: Warzone title and that such trademark search reflected that WZLLC had never registered a trademark in the term "Warzone," that there were dozens of other games and related products that included the word "Warzone" in their title, and that WZLLC never took any action to protect its alleged mark against these third party uses. Activision also will introduce evidence that at the time it adopted the Call of Duty: Warzone title, it had a reasonable belief that such use was protected by the First Amendment, as reflected by this Court's order granting Activision's motion to dismiss WZLLC's counterclaims. *Activision Publ'g, Inc. v. Warzone.com, LLC*, 621 F. Supp. 3d 1090 (C.D. Cal. 2022), *vacated and remanded*, No. 22-55831, 2023 WL 7118756 (9th Cir. Oct. 25, 2023), *and vacated*, No. 2:21-CV-03073-FLA (JCX), 2024 WL 6467326 (C.D. Cal. Apr. 11, 2024). Finally, Activision did not have any intent to harm WZLLC through purported infringement, and in fact offered before this litigation a co-existence arrangement in which each party would limit its pending trademark applications to their respective genres (turn-based strategy games for WZLLC, and first-person shooter games for Activision).

*Actual Confusion*: Activision will present evidence, including survey evidence from Matthew Ezell and expert testimony from Roman Welden and Stephanie Tully, reflecting that consumers are not confused between WZLLC's game and Activision's game, and that WZLLC's customers did not have trouble finding WZLLC's game after Call of Duty: Warzone was released. Activision also will establish that WZLLC has not adduced any cognizable evidence of actual reverse confusion and that its claims of purported "misdirected emails" or mis-tagged Twitch streams do not reflect confusion on the part of **WZLLC's** actual or

ACTIVISION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

potential consumers about whether WZLLC is associated with Activision's Call of Duty franchise.

To the extent WZLLC's survey evidence from Claudiu Dimofte is not excluded, Activision will demonstrate that Mr. Dimofte's survey does not follow any of the standard or accepted protocols for confusion surveys and is flawed in numerous other respects. This evidence will include rebuttal expert testimony from Stephanie Tully.

*Likelihood of Expansion*: Activision will present documents and testimony establishing that WZLLC has no plans, and has never had any plans, to create versions of its games for game consoles (where the vast majority of people play Call of Duty) or to create a first-person shooter game (Call of Duty's genre).

***Actual Damages***: Activision will establish through documents and testimony of witnesses including Randy Ficker, Jay Westerdal, Bo Geddes, Christine Hammer, Roman Welden, and Stephanie Tully, that WZLLC did not suffer any actual damages as a result of the alleged infringement. Specifically, Activision will prove that WZLLC has not suffered any damage to the value of its alleged trademark or overall business. It also cannot establish that it lost any profits as a result of the alleged infringement or that its revenues would be any greater if Activision had selected a different title for Call of Duty: Warzone. Specifically, there is no evidence that WZLLC's customers were unable to find WZLLC's game or that Activision's release of Call of Duty: Warzone caused WZLLC not to proceed with Bo Geddes' marketing plan. Nor is there any evidence that such a plan would have led to any meaningful growth in revenue. Activision will prove that, in fact, WZLLC's revenues *increased* after, and as a result of, the release of Call of Duty: Warzone and that WZLLC saw a meaningful profit for the very first time in 2021, after Call of Duty: Warzone was released.

***Disgorgement***: Activision will introduce evidence, including documents and testimony from witnesses including Matt Cox, Carolyn Wang, Matt Kliszewski,

ACTIVISION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Chris Plummer, Christine Hammer, Roman Welden, and Stephanie Tully, establishing that: (1) Activision's profits were not attributable to the alleged infringement; (2) an award of profits is not appropriate under the principles of equity; and (3) even assuming WZLLC could establish causation and entitlement to disgorgement under the principles of equity, any such amounts are *de minimis* and nowhere near the tens of millions of dollars WZLLC is seeking in disgorgement. This evidence includes the fact that Call of Duty: Warzone was free to play, and that consumer purchase decisions were driven by numerous factors and not by the subtitle of Activision's game. It also includes evidence rebutting (if it is not excluded) WZLLC's survey and related expert testimony on apportionment. Activision will also introduce evidence to establish its deductible costs.

**Enhanced Damages**: Activision will introduce evidence showing that there is no basis for enhancing damages to compensate WZLLC because WZLLC was not harmed by, and instead benefitted from, the introduction of Call of Duty: Warzone into the market. *See* Section II.B.1.b above (discussion regarding Actual Damages).

### 2. Counterclaim 2: California Common Law Unfair Competition

#### a. Elements

On WZLLC's California common law unfair competition claim, WZLLC will bear the burden of proving the following elements:

(1)   The word "Warzone" is a valid, protectable trademark owned by WZLLC;

(2)   Activision used the word "Warzone" without the consent of WZLLC in a manner that is likely to confuse ordinary consumers into believing Call of Duty: Warzone is actually WZLLC's game or is sponsored by, approved by, or affiliated with WZLLC's game;

ACTIVISION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

(3)    Activision knowingly intended to confuse customers;

(4)    Activision caused WZLLC competitive injury; and

(5)    Activision "passed off" Call of Duty: Warzone as WZLLC's or engaged in acts analogous to passing off.

*See Stitch Editing Ltd. v. TikTok, Inc. et al*, 2:21-CV-06636, Final Jury Instructions (Dkt. 511) (C.D. Cal. Mar. 9, 2023); *Trovan, Ltd. v. Pfizer, Inc.*, No. CV-98-0094 LGB MCx, 2000 WL 709149, at *7 (C.D. Cal. May 24, 2000) ("The common law tort of unfair competition . . . required a showing of competitive injury.").

Common law unfair competition **is not a cognizable claim** in a reverse confusion case such as this, where, by definition, "there is no question of palming off, since neither junior nor senior user wishes to siphon off the other's goodwill." *Dreamwerks Prod.*, 142 F.3d at 1130; *see Stitch Editing*, Order re: Jury Instruction on Common Law Unfair Competition Claim, at 1-2 (Dkt. 458) (explaining that common law unfair competition is "synonymous with the act of 'passing off' one's goods as those of another" and that "[t]o prevail on its common law claim," the party asserting the claim "must prove additional elements beyond those required for federal trademark infringement," including "a showing of competitive injury"); *see also Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008) ("Sybersound has not alleged that the Corporation Defendants have passed off their goods as those of another nor that they exploit trade names or trademarks and, thus, has not stated a common law unfair competition claim."); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1147 (9th Cir. 1997) ("The common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another."); *Fisher v. Dees*, 794 F.2d 432, 440 (9th Cir. 1986) (explaining that the confusion required for a California common law unfair competition claim "must be of a specific kind: the public must be misled into thinking that the defendant's product is actually the plaintiff's"); *Lodestar Anstalt v. Bacardi & Co.*, 2019 WL 8105378, at *16 (C.D. Cal. July 3, 2019)

ACTIVISION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1  ("Common law unfair competition is limited to where a party 'passes off [its]
2  goods as another['s].'").

3      Further, Activision is immune under the *Noerr-Pennington* doctrine from
4  any claim by WZLLC that Activision's trademark enforcement efforts were
5  "unfair" because they were intended to "block" WZLLC from using "Warzone."
6  *Monster Energy Co. v. Integrated Supply Network, LLC*, 2018 WL 3357532, at *4
7  (C.D. Cal. June 4, 2018) (precluding claim of trademark misuse by "bullying"
8  because "[f]ilings with the PTO and the courts . . . are protected under the *Noerr-*
9  *Pennington* doctrine"); *Entrepreneur Media, Inc. v. Dermer*, 2019 WL 4187466, at
10 *3 (C.D. Cal. July 22, 2019) ("When courts within this Circuit have been
11 confronted with the issue of whether trademark enforcement activities before an
12 administrative entity like the Trademark Trial and Appeal Board ('TTAB') of the
13 USPTO are protected [under *Noerr-Pennington*], they have routinely found that
14 such activities are clearly protected."); *Early Warning Servs. LLC v. Johnson*, 2025
15 WL 2022624, at *4 (D. Ariz. July 18, 2025) ("[T]he Noerr-Pennington doctrine[]
16 immunize[s] [d]efendants from federal or state liability based on their trademark
17 enforcement efforts.") (internal quotation omitted).

18      ***Actual Damages***: *See* Section II.B.1.b above for Activision's contentions
19 regarding the absence of actual damages.

20      ***Punitive Damages***: Punitive damages are recoverable only under WZLLC's
21 state law claim for common law unfair competition. The Lanham Act does not
22 provide for punitive damages, *see* 15 U.S.C. § 1117(a), nor are punitive damages
23 recoverable for WZLLC's UCL claim under California Business and Professions
24 Code § 17200. *See Clark v. Superior Court*, 50 Cal.4th 605, 610 (2010) (in a
25 private UCL claim, "the remedies are 'generally limited to injunctive relief and
26 restitution . . . . Not recoverable are damages, including punitive damages and
27 increased or enhanced damages"); *Korea Supply Co. v. Lockheed Martin Corp.*, 29
28 Cal. 4th 1134, 1148 (2003) ("attorneys fees and damages, including punitive

1  damages, are not available under the UCL"). Therefore, if WZLLC fails to prove

2  its claim for common law unfair competition, or if that claim is disposed of as a

3  matter of law, WZLLC cannot recover punitive damages.

4          Further, WZLLC "cannot obtain a double recovery for the same loss by

5  receiving state law actual and punitive damages in addition to Lanham Act

6  damages and profits." 4 McCarthy § 30:97; *Binder v. Disab. Grp.*, 772 F. Supp. 2d

7  1172, 1184 (C.D. Cal. Jan. 25, 2011) (denying punitive damages because the

8  "damages award" under the Lanham Act "is sufficient and reasonable to account

9  for Plaintiffs' losses and Defendants' conduct"); *see also Deckers Outdoor Corp.*

10  *v. Mojofit LLC*, 2021 WL 1535536, at *3 (C.D. Cal. Mar. 30, 2021) (awarding

11  plaintiff's lost profits and not defendant's profits to avoid duplication of remedies);

12  *see generally Ambassador Hotel Co., Ltd. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1032

13  (9th Cir. 1999) (vacating damages award because plaintiff "may not receive

14  multiple awards for the same item of damage"); *Boltex Mfg. Co., L.P. v. Ulma*

15  *Piping USA Corp.*, 2019 WL 5684201, at *2 (S.D. Tex. Nov. 1, 2019) (holding

16  that plaintiffs "can elect under Texas common law to recover actual

17  damages . . . plus punitive damages, or they can elect to recover under the Lanham

18  Act for damages," but not both); 28 Cal. Jur. 3d Election of Remedies § 14 (Jan.

19  2026 Update) ("[w]here a person has two inconsistent remedies, sometime before

20  judgment, he or she must elect which remedy he or she desires to pursue"). Thus, if

21  WZLLC receives an award of disgorged profits, it should not recover duplicative

22  punitive damages.

23          To obtain punitive damages, WZLLC must first prove that Activision's

24  conduct caused WZLLC harm. *See Trujillo v. First Am. Registry, Inc.*, 157 Cal.

25  App. 4th 628, 638 (2007) (disapproved on other grounds) ("actual damage is a

26  general prerequisite to recovering punitive damages"); *Werschkull v. Un. Cal.*

27  *Bank*, 85 Cal.App.3d 981, 1002 (1978) ("It is settled law in California that punitive

28

damages cannot be awarded unless actual damages are suffered."); Jud. Couns. of Cal. Civ. Jury Instr. ("CACI") No. 3945 (2025 ed.).

Additionally, WZLLC is not entitled to punitive damages unless it proves by clear and convincing evidence that an officer, director, or managing agent of Activision acted with malice, oppression, or fraud. CACI No. 3945; Cal. Civ. Code § 3294. "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others. Cal. Civ. Code § 3294. "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights. *Id.* "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury. *Id.* An employee is a "managing agent" if the employee exercises substantial independent authority and judgment in corporate decision-making such that the employee's decisions ultimately determine corporate policy. CACI No. 3945.

The purpose of punitive damages is to punish a wrongdoer for the conduct that harmed the claimant and to discourage similar conduct in the future. There is no fixed formula for determining the amount of punitive damages, and awarding punitive damages is not required upon a finding of liability. The jury may consider the following factors in determining whether to award or the amount of punitive damages to award:

(a) How reprehensible was Activision's conduct? In deciding how reprehensible Activision's conduct was, courts consider, among other factors: (1) whether the conduct caused physical harm; (2) whether Activision disregarded the health or safety of others; (3) whether WZLLC was financially weak or vulnerable and Activision knew WZLLC was financially weak or vulnerable and took

1  advantage of it; (4) whether Activision's conduct involved a pattern or practice;

2  and (5) whether Activision acted with trickery or deceit.

3      (b) Is there a reasonable relationship between the amount of punitive

4  damages and WZLLC's harm?

5      (c) In view of Activision's financial condition, what amount is necessary to

6  punish it and discourage future wrongful conduct?

7      Punitive damages may not be used to punish Activision for the impact of its

8  alleged misconduct on persons other than WZLLC. CACI 3294 (2025).

9              **b.    Activision's Key Evidence in Opposition**

10     Because the elements of trademark validity and ownership and customer

11 confusion in WZLLC's claim for common law unfair competition are

12 "substantially congruent" to its claims made under the Lanham Act, *e.g., Cleary*,

13 30 F.3d at 1262-63, all the same key evidence Activision cites above applies with

14 equal force to defeat WZLLC's common law unfair competition claim.

15     With respect to the additional elements of the common law unfair

16 competition claim, Activision will also present evidence that there was no

17 competitive injury to WZLLC and it did not try to block WZLLC from using

18 "Warzone." That evidence includes the testimony of Matt Cox and Roman

19 Welden, as well as testimony of WZLLC representatives, establishing that

20 WZLLC and Activision are not competitors; their games have a very different

21 appeal; their games are played differently, require different equipment and

22 technical specifications; and their games are available in different places in the

23 marketplace. Additionally, since both games are free to play, they can co-exist in

24 the marketplace and do not cannibalize each other's market. Indeed, Activision

25 offered co-existence to WZLLC.

26     Activision will also submit evidence, including documents and testimony

27 from witnesses including Carolyn Wang and Matt Cox, establishing that Activision

28 did not act with fraud or an intent to mislead consumers or engage in passing off or

any acts analogous to passing off. This includes evidence regarding Activision's internal naming process and decision-making, evidence regarding the branding and marketing for Call of Duty: Warzone, and evidence establishing that the Call of Duty name is so well known that Activision would have no need or desire to pass off its game as being produced by or affiliated with WZLLC's game.

Activision will introduce evidence, including documents and testimony from Randy Ficker, Jay Westerdal, Bo Geddes, Christine Hammer, and Stephanie Tully, showing that punitive damages are not appropriate because WZLLC cannot demonstrate the prerequisite actual harm and in fact benefitted from the introduction of CODWZ. *See* Activision's contentions regarding Actual Damages for further detail.

Activision will introduce evidence that punitive damages are not appropriate for the further reason that its conduct does not rise to the level of wanton or willful conduct that would support such an award. Specifically, Activision will introduce evidence that its selection of the Call of Duty: Warzone name was not an effort to create reverse confusion or destroy WZLLC's brand; that at the time it selected the title "Call of Duty: Warzone," Activision had valid reason to believe that the term "Warzone" was not a valid or protectible trademark and that its use was protected by the First Amendment; and that Activision did not engage in any fraud or deceit but instead made efforts to ensure that its game would not be confused with WZLLC's game. Finally, Activision will submit evidence that it did not intend to steal WZLLC's alleged trademark or block WZLLC's game from the market. Indeed, before this litigation began, Activision offered a co-existence arrangement by which both parties would limit their respective registrations to the distinct genres in which their games operate.

ACTIVISION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

3. **Counterclaim 3: California Business & Professions Code § 17200, *et seq.* Violations**

   a. **Elements**

WZLLC's California Business & Professions Code § 17200 claim ("UCL Claim") is a purely equitable claim for the Court to decide. Under the UCL, the court may award equitable relief for "unfair competition," defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

Under the "unlawful" prong, WZLLC will bear the burden of proving the following elements:

(1)    WARZONE is a valid, protectable trademark owned by WZLLC; and

(2)    Activision used the term "Warzone" in its Call of Duty: Warzone title without the consent of WZLLC in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

*Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) ("This Circuit has consistently held that . . . actions pursuant to California Business and Professions Code § 17200 are substantially congruent to claims under the Lanham Act.") (internal quotation marks omitted).

To the extent WZLLC intends to pursue a UCL Claim under the "unfair" prong, WZLLC would bear the burden of proving the elements of a common-law unfair competition claim, which, as discussed above, requires a showing of more than just trademark infringement. *See Collagen Nutraceuticals, Inc. v. Neocell Corp.*, No. 09CV2188 DMS (WVG), 2010 WL 3069715, at *3 (S.D. Cal. Aug. 4, 2010 ("state law claims for unfair competition under California common law and California Business and Professions Code § 17200 are subject to the same test") (citations omitted).

1    For the reasons discussed above, an unfair competition claim is not

2  cognizable in a reverse confusion case. Further, Activision is immune under the

3  *Noerr-Pennington* doctrine from any claim by WZLLC that Activision's trademark

4  enforcement efforts were "unfair" under the UCL because they were allegedly

5  intended to "block" WZLLC from using "Warzone." *Monster Energy Co. v.*

6  *Integrated Supply Network, LLC*, 2018 WL 3357532, at *4 (precluding claim of

7  trademark misuse by "bullying" because "[f]ilings with the PTO and the courts . . .

8  are protected under the *Noerr-Pennington* doctrine."); *Entrepreneur Media*, 2019

9  WL 4187466, at *3 ("When courts within this Circuit have been confronted with

10  the issue of whether trademark enforcement activities before an administrative

11  entity like the Trademark Trial and Appeal Board ('TTAB') of the USPTO are

12  protected [under *Noerr-Pennington*], they have routinely found that such activities

13  are clearly protected."); *Early Warning Servs. LLC v. Johnson*, 2025 WL 2022624,

14  at *4 (D. Ariz. July 18, 2025) ("[T]he Noerr-Pennington doctrine[] immunize[s]

15  [d]efendants from federal or state liability based on their trademark enforcement

16  efforts.") (internal quotation omitted).

17    There is no cognizable claim under the UCL for "fraud" or deceptive

18  advertising given that this is a reverse confusion case that, by definition, does not

19  involve "palming off." *Dreamwerks Prod.*, 142 F.3d at 1130.

20                **b.    Activision's Key Evidence in Opposition**

21    WZLLC's UCL claim under the "unlawful" prong is "substantially

22  congruent" to its claims made under the Lanham Act. *Cleary*, 30 F.3d 1262-63.

23  Thus, all the same key evidence Activision cites above applies with equal force to

24  defeat WZLLC's Section 17200 claim. The evidence relevant to the other UCL

25  prongs is discussed above in connection with the common-law unfair competition

26  claim.

27          **C.    Activision's Affirmative Defenses [L.R. 16- 4.1(d)]**

28    <u>Unclean Hands</u>: WZLLC's claims are barred by the doctrine of unclean

ACTIVISION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

hands because WZLLC acted inequitably in connection with its selection of its

alleged "Warzone" trademark and the manner by which it marketed and exploited

its game.

### D.   Elements Required to Establish Activision's Affirmative Defenses and Its Key Evidence in Support [L.R. 16-4.1(e)-(f)]

#### 1.   Affirmative Defense 1: Unclean Hands

##### a.   Elements

To prove an unclean hands defense, Activision must demonstrate that

WZLLC's conduct is inequitable, meaning that WZLLC has used the "Warzone"

mark to deceive consumers, and that the inequitable conduct relates to the subject

matter of the claims. If WZLLC's alleged "Warzone" mark imitates the earlier

trademark of a third party, that may be inequitable conduct that demonstrates

unclean hands. *Japan Telecom, Inc. v. Japan Telecom Am., Inc.*, 287 F.3d 866,

870–71 (9th Cir. 2002) ("To make out an unclean hands defense, a trademark

defendant must demonstrate that the plaintiff's conduct is inequitable and that the

conduct relates to the subject matter of its claims. To show that a trademark

plaintiff's conduct is inequitable, defendant must show that plaintiff used the

trademark to deceive consumers.") (quotations omitted); *Ubeda*, 226 U.S. at 453

(recognizing an unclean hands defense because "[t]he plaintiff's trademark in its

turn closely imitates in most particulars a much earlier and widely known

trademark").

##### b.   Activision's Key Evidence in Support

Activision will introduce documents and testimony reflecting that WZLLC

consistently acted in an inequitable manner with respect to its game and its

trademark. Specifically, Activision will introduce documents and testimony,

including the testimony of Jay Westerdal and Randy Ficker, demonstrating that:

- WZLLC engaged in acts of trademark infringement when it selected a
title that it knew had been in use by other games, and WZLLC

ACTIVISION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1    intended to overtake pre-existing trademark rights belonging to other

2    game developers and publishers;

3    •    WZLLC sought to trade off third-party marks, including Hasbro's

4    RISK trademark, and only removed "RISK" from its game title after

5    receiving a cease-and-desist letter from Hasbro;

6    •    WZLLC modeled its logo off a popular, pre-existing mark; and

7    •    WZLLC never intended to develop "WARZONE" as its brand but

8    instead registered the warzone.com domain name in furtherance of

9    Westerdal's domain speculation business, to attempt to "warehouse"

10    or seize this common word for its own benefit, and with the

11    expectation that it could extort an unjustified windfall payment from

12    video game companies that later decided to include "Warzone" in a

13    game title.

14    **E.    Anticipated Evidentiary Issues [L.R. 16-4.1(h)]**

15    At this time, there are several anticipated evidentiary issues brought to the

16    Court's attention through the parties' respective *Daubert* motions and motions *in*

17    *limine* filed on February 6, 2026, as listed below. Activision is concurrently filing

18    the following motions *in limine*:

19    1.  Motion to exclude the expert testimony of Bo Geddes and Christian

20    Tregillis relating to WZLLC's claimed lost profits.

21    2.  Motion to exclude the opinion of Dr. Claudiu Dimofte and all other

22    evidence relying on his opinion, including testimony by Christian

23    Tregillis.

24    3.  Motion to exclude trademark proceedings with the U.S. Patent and

25    Trademark office or foreign tribunals.

26    4.  Motion to exclude evidence or argument regarding Activision's

27    protected petitioning activity, including evidence or argument that

28    Activision's trademark filings were intended to block WZLLC from

ACTIVISION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

the market; in the alternative, motion for *in limine* determination of admissibility regarding evidence that Activision offered co-existence before this suit was filed.

5. Motion to exclude evidence or argument relating to confusion among Activision's Call of Duty: Warzone customers.

## F.    Issues of Law [L.R. 16-4.1(i)]

At this time, the following issues of law are anticipated as defined by L.R. 16-4.1(i): (1) whether WZLLC can own a trademark in the term "Warzone" when it was not the first to use the mark for a video game, and prior users had not abandoned their use of the mark; (2) whether WZLLC has Article III standing; (3) whether intent is a relevant factor to prove secondary meaning in a reverse-confusion case; (4) whether a common-law unfair competition claim is cognizable in a reverse-confusion case; (5) whether the *Noerr-Pennington* doctrine precludes WZLLC from asserting that Activision applied for trademarks to "block" WZLLC from using the term "Warzone"; (6) whether disgorgement is an available or appropriate remedy in this case as a matter of law; and (7) whether an award of punitive damages *and* disgorgement of Activision's profits would be duplicative and overly punitive. Activision also incorporates any additional issues of law addressed in motions *in limine* and in the parties' disputed jury instructions.

### 1.    Whether WZLLC Can Own a Trademark in the Term "Warzone" When it Was Not the First to Use the Mark for a Video Game, and Prior Users Had Not Abandoned Their Use of the Mark.

Trademark ownership depends on "priority of use in commerce." *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 930 (9th Cir. 2014). To own a mark, an entity "must have been the first to actually use the mark in the sale of goods or services." *Id*; *Ubeda v. Zialcita*, 226 U.S. 452 (1913). Although WZLLC used "Warzone" before Activision used the word as a subtitle for its Call of Duty: Warzone game,

WZLLC was not the first to use "Warzone" in the sale of video games. In fact, as WZLLC was aware, many other video games were using "Warzone" in their titles at the time WZLLC selected "Warzone" as the name for its game. Therefore, WZLLC does not own the mark.

In *Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814 (9th Cir. 1996), the Ninth Circuit held that "a third party's prior use of a trademark is not a defense in an infringement action," but the facts of that case are distinguishable. First, the party asserting ownership of the mark had "continuous and exclusive use of the mark" for over a decade; the alleged prior third-party users had likely long since abandoned the mark. 92 F.3d at 820-21. Here, by contrast, WZLLC's use has never been exclusive; many third parties have used the term "Warzone" both before and at the same time as WZLLC. In light of this widespread, concurrent use, WZLLC cannot claim "title against all the world but the true owner." *Id.* at 820; *see also Indus. Rayon Corp.*, 92 F.2d at 36 (distinguishing facts of case from *Ubeda*, 226 U.S. 452, where prior third-party use barred trademark claim by purported trademark owner when "the earlier trade-mark was still in widespread use and had not been discontinued").

Second, *Yost* relied heavily on *Ward Baking Co. v. Potter-Wrightington, Inc.*, 298 F. 398, 402 (1st Cir. 1924), which reasoned that third-party prior use did not exonerate a defendant from responsibility because the defendant was still attempting to "appropriate to itself a good will created by the plaintiff." But in a reverse confusion case, the junior user (here, Activision) does not attempt to appropriate the goodwill created by the senior users (here, WZLLC). *See Dreamwerks Prod.*, 142 F.3d at 1130. *Yost*'s holding does not extend to the facts of this case.

### 2.    Whether WZLLC Has Article III Standing.

For similar reasons, WZLLC does not have Article III standing. Because WZLLC does not own the mark, it does not have standing to assert a trademark

infringement or unfair competition claim on behalf of any prior user of the mark. *See Murdock v. Marolina Outdoor Inc.*, 2024 WL 2209771, at *4 (C.D. Cal. Apr. 22, 2024); *Alphonsis v. Critics' Choice Ass'n*, 2022 WL 18278605, at *3-4 (C.D. Cal. Nov. 17, 2022); *Hill Collections v. Safeway, Inc.*, 2019 WL 8889998, at *4 (C.D. Cal. Dec. 17, 2019); *Visa U.S.A. Inc. v. First Data Corp.*, 2005 WL 6271242, at *5 (N.D. Cal. Aug. 16, 2005).

### 3. Whether Intent Is a Relevant Factor to Prove Secondary Meaning in a Reverse-Confusion Case.

Marks that are descriptive are not entitled to trademark protection unless they have developed secondary meaning that associates the mark in the mind of ordinary consumers with the senior user. *See Self-Realization Fellowship Church*, 59 F.3d at 911 ("Since [the] marks [a]re descriptive, they ha[ve] to have secondary meaning to be valid.").

One of the factors that bears on whether a mark has acquired secondary meaning in a typical forward-confusion case is whether the junior user intentionally copied the mark. That tends to show that the mark acquired secondary meaning based on "the assumption that a defendant would not copy a mark or design unless it (1) believed the mark or design had attained secondary meaning in the minds of consumers, and (2) intended to exploit this secondary meaning to deceive consumers." *Cont'l Lab'y Prods., Inc. v. Medax Int'l, Inc.*, 114 F. Supp. 2d 992, 1008 (S.D. Cal. 2000).

But that assumption does not apply in a reverse confusion case such as this, where the junior user (Activision) does not intend to exploit the purported secondary meaning of the senior user (WZLLC). *See Dreamwerks Prod.*, 142 F.3d at 1130. Because "intentional copying supports a finding of secondary meaning only where the defendant intended to confuse consumers and pass off its product as the plaintiff's," *Kittrich Corp. v. United Indus. Corp.*, 2018 WL 11472385, at *5

(C.D. Cal. Nov. 15, 2018), and because there is no such intent here, intent is not a relevant factor to prove secondary meaning in this case.

### 4.    Whether a Common-Law Unfair Competition Claim is Cognizable in a Reverse-Confusion Case.

As a matter of law, common-law unfair competition claims are not recognized in reverse confusion cases like this one, where there are no allegations of "passing off." *Lodestar*, 2019 WL 8105378, at *16; *Southland Sod Farms*, 108 F.3d at 1147 ("The common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another."). By definition, in a reverse confusion case, "there is no question of palming off, since neither junior nor senior user wishes to siphon off the other's goodwill." *Dreamwerks Prod. Group*, 142 F.3d at 113.

Even if common-law unfair competition claims were cognizable in such cases—which they are not—WZLLC would still be unable to "prove the additional elements beyond those required for federal trademark infringement" necessary to state a claim. *See Sybersound*, 517 F.3d at 1153 ("Sybersound has not alleged that the Corporation Defendants have passed off their goods as those of another nor that they exploit trade names or trademarks and, thus, has not stated a common law unfair competition claim); *Fisher*, 794 F.2d at 440 (explaining that the confusion required for a California common law unfair competition claim "must be of a specific kind: the public must be misled into thinking that the defendant's product is actually the plaintiff's"); *Lodestar*, 2019 WL 8105378, at *16 ("Common law unfair competition is limited to where a party 'passes off [its] goods as another['s].'"); *Stitch Editing*, Order re: Jury Instruction on Common Law Unfair Competition Claim, at 1-2.

Therefore, WZLLC's common-law unfair competition claim is not cognizable.

ACTIVISION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

**5.** **Whether the *Noerr-Pennington* Doctrine Precludes WZLLC From Asserting that Activision Applied for Trademarks to "Block" WZLLC From Using the Alleged "Warzone" Mark.**

WZLLC has asserted that Activision acted "unfairly" by applying for trademarks and opposing WZLLC's trademark applications to "block" WZLLC from using the term "Warzone." Activision is immune from such a claim under the *Noerr-Pennington* doctrine.

"Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Schrader Cellars, LLC v. Roach*, 129 F.4th 1115, 1121 n.9 (9th Cir. 2025) (citation omitted). "Filings with the [Patent and Trademark Office]…are protected under the *Noerr-Pennington* doctrine," *Monster Energy*, 2018 WL 3357532, at *4, as is foreign petitioning activity. *Luxpro Corp. v. Apple Inc.*, 2011 WL 1086027, at *5 (N.D. Cal. Mar. 24, 2011) ("[T]he Court concludes that the *Noerr–Pennington* doctrine also protects parties' efforts to petition foreign governments."); *Coastal States Marketing, Inc. v. Hunt*, 694 F.2d 1358, 1366 (5th Cir. 1983) ("We see no reasons why acts that are legal and protected if done in the United States should in a United States court become evidence of illegal conduct because performed abroad."); *Entrepreneur Media*, 2019 WL 4187466, at *3 ("When courts within this Circuit have been confronted with the issue of whether trademark enforcement activities before an administrative entity like the Trademark Trial and Appeal Board ('TTAB') of the USPTO are protected [under *Noerr-Pennington*], they have routinely found that such activities are clearly protected."); *Early Warning Servs. LLC v. Johnson*, 2025 WL 2022624, at *4 (D. Ariz. July 18, 2025) ("[T]he *Noerr-Pennington* doctrine[] immunize[s] [d]efendants from federal or state liability based on their trademark enforcement efforts.") (internal quotation omitted).

1 | Any claims or request for damages that WZLLC is asserting based on this
2 | petitioning activity are therefore precluded as a matter of law.

3 | **6.    Whether Disgorgement Is Available as a Remedy in Reverse**
4 | **Confusion Trademark Infringement Actions.**

5 | Disgorgement is not an appropriate remedy in a reverse confusion trademark
6 | infringement action, where, as here, any alleged "enrichment" to Activision from
7 | use of the word "Warzone" in Call of Duty: Warzone was based on Activision's
8 | own investment in its game and the parties agree that Activision had no intent to
9 | trade off the alleged goodwill of WZLLC. "Because in a reverse confusion case the
10 | infringer is not seeking to take away the plaintiff's customer through confusion,
11 | awarding the plaintiff the profits of an infringer is not a proper basis for recovery."
12 | McCarthy § 23:10. Thus, as the Seventh Circuit has recognized, reverse confusion
13 | cases, at best, "present meager justification for profit awards." *Fabick, Inc.*, 944
14 | F.3d at 659 (affirming summary judgment that plaintiff in reverse confusion case
15 | could not recover defendant's profits). An award of disgorgement thus would be a
16 | pure windfall, untethered to any actual damages or lost profits. *See* 15 U.S.C.
17 | §1117 (profits award must be "compensation and not a penalty"); *Oculu*, 2015 WL
18 | 3619204, at *9 ("[i]n exercising equity to award defendant's profits … the court
19 | must fashion a remedy wherein [the] plaintiff is not ... [given] a windfall").

20 | **7.    Whether WZLLC Is Precluded From Recovering Both**
21 | **Disgorgement of Profits and Actual or Punitive Damages.**

22 | A "plaintiff cannot obtain a double recovery for the same loss by receiving
23 | state law actual and punitive damages in addition to Lanham Act damages and
24 | profits." 4 McCarthy § 30:97. Accordingly, WZLLC must elect between these
25 | remedies and cannot be awarded a double recovery.

26 |
27 |
28 |

## III.    BIFURCATION [L.R. 16-4.3]

Activision respectfully submits that the Court should bifurcate the trial into two phases and defer all consideration of equitable remedies and claims until after the jury trial. Bifurcation will ensure that the jury's verdict is not tainted by irrelevant and prejudicial evidence of Activision's profits and financial condition, and it will avoid juror confusion and promote efficiency.

Specifically, in Phase 1 of the jury trial, the jury should decide: (a) whether Activision is liable under WZLLC's claims for trademark infringement and Common-Law Unfair Competition; (b) WZLLC's actual damages (if they find Activision liable for either claim); and (c) whether WZLLC is entitled to punitive damages (if they find Activision liable under the Common-Law Unfair Competition claim). The jury should not be permitted to hear evidence of Activision's net worth, profits, or financial condition in Phase 1, because that evidence is not relevant to any Phase 1 issue and it is highly prejudicial. If there is need for a Phase 2, the same jury would decide the amount of any punitive damages, and would at that time hear evidence of Activision's profits or financial condition.

All equitable issues in the case, including WZLLC's claim under California Business & Professions Code § 17200, and its request for equitable relief in the form of disgorgement of profits, injunctive relief, and enhanced damages, should be resolved through post-trial briefing and/or in a bench trial.

This kind of phasing is routinely ordered, and should be ordered here for three reasons. ***First***, bifurcation is necessary to prevent irrelevant and unduly prejudicial evidence of Activision's profits and financial condition from infecting the jury's consideration of liability, compensatory damages, and WZLLC's entitlement to punitive damages. ***Second***, whether Activision's profits should be disgorged is an equitable issue for the Court to decide, so there is no reason for the jury to decide if WZLLC is entitled to that remedy. ***Third***, bifurcation will promote

ACTIVISION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

efficiency. If the jury does not find liability, there would be no need to address the amount of punitive damages or WZLLC's claim for disgorgement or other equitable remedies. And if the jury does find liability, disgorgement would be addressed along with other equitable issues separately by the Court. Evidence related to Activision's financial condition and profits is discrete and can easily be separated from the evidence relevant to the issues for Phase 1.[2]

## A.    Relevant Legal Standard

Rule 42(b) of the Federal Rules of Civil Procedure "confers broad discretion upon the district court to bifurcate a trial, thereby deferring costly and possibly unnecessary proceedings[.]" *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) (quoting *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002)). The court can exercise this discretion "[f]or convenience, to avoid prejudice, or to expedite and economize" the proceedings. Fed. R. Civ. P. 42(b). Relevant factors include "whether bifurcation would increase convenience and judicial economy, reduce the risk of jury confusion, and avoid prejudice to the parties." *Michael Kors, L.L.C. v. Chunma USA, Inc.*, 2017 WL 5665003, at *1 (C.D. Cal. Aug. 30, 2017). Bifurcation is also appropriate as to equitable issues where "no right to a jury exists." *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001).

---

[2] The evidence that should be introduced only after Phase 1 includes Profit and Loss statements for Call of Duty: Warzone; testimony by Activision's CFO Evan Wingren and other Activision executives about profits from Call of Duty: Warzone; testimony from WZLLC's damages expert Christian Tregellis about Activision's profits from Call of Duty: Warzone and the portion of those profits purportedly attributable to use of the word "Warzone" (Tregellis Report ¶¶ 2, 7, 131-133, 220, 253, 255-259) and the rebuttal to these opinions by Activision's expert Christine Hammer (Hammer Rebuttal Report ¶¶ 109-140); documents and testimony about Activision's net worth, size, or overall financial condition of the kind discussed in Tregellis's Report at ¶¶ 51, 56, 57, 133, 162.

ACTIVISION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

### B.     Bifurcation is Necessary to Prevent Evidence of Activision's Profits and Financial Condition From Prejudicing the Verdict

#### 1.     Courts Routinely Bifurcate Trial to Avoid Undue Prejudice From Evidence of Profits or Financial Condition.

Courts in this District "regularly" bifurcate trial on the amount of punitive damages to prevent prejudice and promote efficiency, including in Lanham Act and unfair competition cases. *Strategic Partners, Inc. v. FIGS, Inc.*, 2022 WL 17348175, at *2 (C.D. Cal. Sept. 26, 2022); *see also Williams v. City of Long Beach*, 2020 WL 4429356, at *4 (C.D. Cal. July 31, 2020) ("[C]ourts in this District routinely bifurcate trials in a manner that defers the issues of punitive damages . . . for a second phase of trial."); *Bedetti v. City of Long Beach*, 2017 WL 5495146, at *2 (C.D. Cal. Apr. 12, 2017) (same); *Estate of Richard Risher v. City of Los Angeles*, 2022 WL 2235481, at *1 (C.D. Cal. Mar. 22, 2022) (same). Courts in this District have also bifurcated trial to prevent argument and evidence related to a claim for disgorgement of profits from being presented to the jury. *Strategic Partners*, 2022 WL 17348175, at *3.

Bifurcating trial in this way is common because "the risk that evidence of the [] defendants' net worth and financial condition may prejudice [the jury] if considered during the liability phase of the trial outweighs any probative value of such evidence." *Corbrus, LLC v. 8th Bridge Cap., Inc.*, 2021 WL 4439220, at *8–9 (C.D. Cal. Aug. 9, 2021); *Doe v. Rose*, 2016 WL 9150617, at *1 (C.D. Cal. July 27, 2016) (bifurcating punitive damages from other issues because "[e]vidence of Defendants' income, assets, and net-[worth] could improperly influence the jury's determination of liability and compensatory damages").

#### 2.     Evidence of Activision's Profits and Financial Condition Is Not Relevant to Phase 1 Issues and Is Highly Prejudicial.

The risk that the jury would be unduly influenced by evidence of Activision's profits and financial condition is clearly apparent here. The report of

WZLLC's damages expert, Christian Tregillis (the "Tregillis Report"), is filled with irrelevant information about Activision's size, wealth, and profits, such as the fact that in 2022 Activision generated $3.3 billion in net revenue. *See* Tregillis Report ¶ 56.

While a defendant's financial condition is a factor for the jury to consider in awarding punitive damages, and profits attributable to the alleged infringement are relevant to the equitable disgorgement claim, that evidence is not relevant to liability, to WZLLC's damages, or to whether the prerequisites for punitive damages are met. Indeed, California law—which supplies the only cause of action under which WZLLC may seek punitive damages (WZLLC's common-law unfair competition claim)[3]—***requires*** the court, at the request of the defendant, to "preclude the admission of evidence of that defendant's profits or financial condition until after the trier of fact returns a verdict for plaintiff awarding actual damages and finds that a defendant is guilty of malice, oppression, or fraud in accordance with Section 3294." Cal. Civ. Code § 3295. WZLLC's claim that evidence of Activision's profits is so intertwined with the proposed Phase 1 issues that bifurcation is not warranted has been squarely rejected by the state legislature.

As this legislative judgment reflects, bifurcation will minimize the risk that the jury finds liability, or awards undeserved compensatory damages, based on the improper influence of Activision's profits and financial condition.

Evidence of Activision's profits and financial condition is not relevant to whether Activision infringed WZLLC's alleged trademark, which depends on completely different considerations such as whether WZLLC can claim trademark

---

[3] Punitive damages are not available under the Lanham Act, *see Skydive Arizona, Inc. v. Quattrochi*, 673 F.3d 1105, 1114 (9th Cir. 2012) (The Lanham Act "has been construed to expressly forbid the award of damages to punish an infringer"), or for WZLLC's UCL claim under California Business & Professions Code § 17200. *See Clark*, 50 Cal.4th at 610 (in a private UCL claim, "the remedies are generally limited to injunctive relief and restitution…. Not recoverable are damages, including punitive damages and increased or enhanced damages") (internal quotations omitted).

ACTIVISION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

protection over a common, descriptive word like "Warzone"; whether WZLLC used the word in a way that developed secondary meaning for WZLLC; and whether WZLLC's customers were likely to be confused by use of the word in the subtitle of Call of Duty: Warzone. *See Sleekcraft*, 599 F.2d at 348-49 (identifying factors relevant to likelihood of confusion).

Nor is evidence of Activision's profits relevant to WZLLC's actual damages, because WZLLC has never claimed (nor could it credibly claim) that Activision's profits from Call of Duty: Warzone replaced profits that WZLLC would have made from its "Warzone" game. Instead, WZLLC's claim is that it lost profits because it was "drowned out" by Call of Duty: Warzone.

On the other hand, there a substantial risk that evidence of Activision's profits and overall financial condition will lead the jury to decide liability or award damages based on sympathy for a small business, antipathy for a large corporation, or simply because they believe that Activision can afford to pay a verdict.

A jury could also easily confuse evidence of profits that ***Activision made*** (if any) from using the word "Warzone" in Call of Duty: Warzone with the amount of profits that ***WZLLC lost*** (if any) from sales related to its own games as result of the alleged infringement. The amount WZLLC is seeking for lost profits is a small fraction of the tens of millions of dollars it is seeking in disgorgement, and there is a substantial risk that the jury will confuse the two types of profit-related remedies and award WZLLC a windfall.

Additionally, the jury may be misled into believing that WZLLC's wildly inflated calculation of lost profits—which are 10,000 times higher than the most profit WZLLC ever earned before Call of Duty: Warzone was released—is reasonable by comparison to the profits that Activision made from Call of Duty: Warzone. The two have nothing to do with one another. *Cf. POM Wonderful LLC v. Coca Cola Co.*, 2016 WL 5929336, at *7 (C.D. Cal. Mar. 9, 2016) (granting motion *in limine* to exclude expert opinion in part because calculation "would

37

1 mislead the jury into believing [the plaintiff's] actual damages calculations are

2 'reasonable' by comparison").

3         **3.**      **Evidence of Profits Is Not Intertwined With Any Phase 1**

4                     **Issue.**

5       WZLLC claims that evidence of Activision's profits is relevant to whether

6 its infringement was intentional, and is thus "intertwined" with liability. But

7 whether Activision intended to profit from any goodwill in the alleged "Warzone"

8 mark is irrelevant and nonsensical in the context of the reverse confusion theory of

9 trademark infringement that WZLLC is pursuing. In a typical case of forward

10 confusion, the junior user is accused of attempting to palm off its product as that of

11 the senior user in order to profit from the goodwill the senior user has built in the

12 mark. *PG&E Imports v. Johnson Enterprises, LLC*, 46 F.4th 953, 961 (9th Cir.

13 2022). In a reverse confusion case, however, "there is no question of palming off,

14 since neither [the] junior [user] [here, Activision] nor senior user [here, WZLLC]

15 wishes to siphon off the other's goodwill." *Dreamwerks Prod.*, 142 F.3d at 1130.

16       The relevant question related to Activision's intent in this reverse confusion

17 case is whether Activision intended to "flood the market to create reverse

18 confusion" or "culpably disregarded" the risk that it would "push the plaintiff out

19 of the market." *Marketquest Group*, 862 F.3d at 934. The amount of profit that

20 Activision made after the fact, and the manner in which WZLLC's experts have

21 apportioned those profits to use of the subtitle "Warzone" after the fact, could not

22 have been known to Activision at the time of its decision to use the mark and are

23 not probative of its intent. WZLLC is free to introduce evidence of the time,

24 money, and effort that Activision put into selecting the Call of Duty: Warzone

25 name and launching and promoting its Call of Duty: Warzone game—including

26 evidence that Activision hoped to make a profit at that time—but evidence of the

27 profit Activision made after the fact, which WZLLC's experts then apportioned to

28

ACTIVISION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1  the use of "Warzone" after the fact, is irrelevant and highly prejudicial with respect

2  to the issues the jury must decide.

3      WZLLC has also suggested that a profit motive by Activision would be

4  relevant to whether the court should enhance damages for willful infringement, but

5  the Court may not enhance damages to punish alleged willful infringement.

6  *Skydive Arizona*, 673 F.3d at 1114. In any case, enhancement is an equitable

7  remedy, *id.*, so there is no reason to taint the jury's consideration of other issues

8  with this unduly prejudicial evidence.

9      **C.    WZLLC's Disgorgement Claim Should Not Go to the Jury.**

10      For similar reasons, WZLLC's disgorgement claim should not go to the jury,

11  even on an advisory verdict.

12      Activision's profits from Call of Duty: Warzone are relevant to WZLLC's

13  claim for disgorgement, but "[a] claim for disgorgement of profits under § 1117(a)

14  is equitable, not legal" and thus does not "invoke[ ] [the] right" to a jury trial. *See*

15  *Fifty-Six Hope Road*, 778 F.3d at 1074–76. Instead, "disgorgement of profits is an

16  equitable issue ordinarily left to the court." *Harbor Breeze Corp. v. Newport*

17  *Landing Sportfishing, Inc.*, 28 F.4th 35, 39 (9th Cir. 2022). Because evidence of

18  Activision's profits is irrelevant to any issue the jury must decide in Phase 1, and

19  because arguments about disgorgement profits risk confusing the jury and inviting

20  a verdict of liability or damages based on improper considerations, the Court

21  should address disgorgement if necessary after the jury trial.

22      **D.    Bifurcation Will Promote Efficiency.**

23      Finally, bifurcation will promote efficiency. Because the Court will need to

24  consider other equitable remedies such as WZLLC's request for injunctive relief

25  and enhanced damages, it makes sense and promotes efficiency for the Court to

26  address all equitable remedies at the same time in post-trial briefing and/or a bench

27  trial after the jury renders a verdict on the claims at law.

28

ACTIVISION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1    Additionally, bifurcation would guard against an impermissible duplicative
2    recovery and assist the Court in weighing the relevant equitable considerations.

3    WZLLC has pleaded both state and federal claims that could result in
4    incompatible remedies. "[S]ubject to the principles of equity," disgorgement of
5    "defendants' profits" is one of three monetary remedies available under the
6    Lanham Act. 15 U.S.C. § 1117(a). Although the Lanham Act does not provide for
7    punitive damages, *see* 15 U.S.C. § 1117(a), WZLLC can pursue them under its
8    state common-law claim for unfair competition, *see* Cal. Civ. Code, § 3294. But a
9    "plaintiff cannot obtain a double recovery for the same loss by receiving state law
10    actual and punitive damages in addition to Lanham Act damages and profits." 4
11    McCarthy § 30:97; *see, e.g.*, *Boltex Mfg. Co., L.P. v. Ulma Piping USA Corp.*,
12    2019 WL 5684201, at *2 (S.D. Tex. Nov. 1, 2019) (holding that plaintiffs "can
13    elect under Texas common law to recover actual damages . . . plus punitive
14    damages, or they can elect to recover under the Lanham Act for damages," but not
15    both); *Binder v. Disab. Grp.*, 772 F. Supp. 2d 1172, 1184 (C.D. Cal. Jan. 25, 2011)
16    (denying punitive damages because the "damages award" under the Lanham Act
17    "is sufficient and reasonable to account for Plaintiffs' losses and Defendants'
18    conduct").

19    Bifurcation would help to avoid a duplicative recovery by deferring
20    consideration of disgorgement of profits until after a jury has decided whether and
21    to what extent WZLLC is entitled to legal remedies. Bifurcation would also assist
22    the Court's consideration of the equities. Under the Lanham Act, disgorgement is
23    "never automatic and never a matter of right." *Yuga Labs, Inc. v. Ripps*, 2023 WL
24    7089922, at *10 (C.D. Cal. Oct. 25, 2023) (internal quotations omitted). Instead, it
25    is "subject to principles of equity," 15 U.S.C § 1117(a), and depends on a host of
26    factors including the harm to the plaintiff and whether it has been compensated.
27    Bifurcating disgorgement of profits until after a jury verdict will allow the court to
28    have the benefit of a full trial record on these issues as well as a jury verdict (if

40

any) on the other legal remedies that WZLLC is seeking, while ensuring that the jury verdict is not tainted by information about the size of Activision's profits or its financial condition. *Strategic Partners*, 2022 WL 17348175, at *3 (ordering bifurcation because "[r]eserving the consideration of equitable remedies until after the jury's verdict will preserve both the Court and the jury's time and will obviate the danger of the jury conflating its lost profits award (if any) with disgorgement of [defendant's] profits.").

## IV.  JURY TRIAL/BENCH TRIAL [L.R. 16-4.4]

The following issues are triable to a jury:

1.      Whether Activision is liable for trademark infringement under the Lanham Act.

2.      Whether Activision is liable for common law unfair competition under California law.

3.      If Activision is found liable, the amount of actual damages awardable to WZLLC.

4.      If Activision is found liable for California common law unfair competition, whether punitive damages should be imposed and, if so, the amount of such punitive damages.

The following issues are equitable in nature and do not create a right to a jury trial under the Seventh Amendment:

1.      Whether Activision is entitled to a declaration of non-infringement.

2.      Whether Activision is liable for unfair competition under Cal. Bus. Prof. Code § 17200.

3.      Whether WZLLC is entitled to enhanced damages under the Lanham Act to compensate for its alleged injuries.

4.      Whether WZLLC is entitled to an award of disgorgement of Activision's profits and, if so, the amount of such award. *See Fifty-Six Hope*, 778

ACTIVISION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

F.3d at 1074-75; *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1405 (9th Cir. 1993).

5.    Whether WZLLC is entitled to injunctive relief and, if so, the nature of such injunctive relief.

6.    Whether this case is "exceptional" such that attorneys' fees should be awarded to the prevailing party.

## V.    ATTORNEYS' FEES [L.R. 16-4.5]

Section 35(a) of the Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorneys' fees to the prevailing party." 15 U.S.C. §1117(a). The standard for assessing whether a case is "exceptional" involves evaluating a "'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F .3d 1179, 1181 (9th Cir. 2016) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 n.6 (2014)) (internal citation omitted).

If Activision prevails at trial it may move for an award of attorneys' fees incurred in this action. WZLLC's claims are groundless, and it appears that WZLLC brought this case not to seek redress for any actual injury but to seek an unjustified windfall recovery.

To the extent WZLLC intends to seek attorneys' fees, it is not entitled to attorneys' fees because Activision acted in good faith when it adopted the Call of Duty: Warzone title, and its decision to seek declaratory relief was reasonable, since at the time Activision filed this case WZLLC's infringement claims plainly were barred by the First Amendment, as this Court found in its initial order granting Activision's Motion to Dismiss.

ACTIVISION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

## VI.    ABANDONMENT OF ISSUES [L.R. 16-4.6]

Activision no longer is seeking an order directing the United States Patent and Trademark Office to allow its trademark applications to proceed to registration or to prevent WZLLC's applications from proceeding to registration. It has now filed a motion to strike those aspects of its Complaint. Dkt. 176.

Activision also is no longer asserting the First Amendment as an affirmative defense. Activision's asserted affirmative defenses of failure to mitigate, no attorneys' fees, no likelihood of confusion, descriptiveness, lack of secondary meaning, and extraterritoriality are elements of WZLLC's claims and are no longer asserted as affirmative defenses.

Dated: February 6, 2026

/s  Blanca F. Young

E. MARTIN ESTRADA (State Bar No. 223802)
martin.estrada@mto.com
BLANCA F. YOUNG (State Bar No. 217533)
blanca.young@mto.com
DANE P. SHIKMAN (State Bar No. 313656)
dane.shikman@mto.com
STEPHANY REAVES (*pro hac vice application forthcoming*)
LAUREN BILOW (State Bar No. 344970)
lauren.bilow@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702

MARC E. MAYER (State Bar No. 190969)
KARIN G. PAGNANELLI (State Bar No. 174763)
LINDSAY R. EDELSTEIN (*pro hac vice*)
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

*Attorneys for Activision Publishing, Inc.*

43

ACTIVISION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW