Jennifer A. Kash (State Bar No. 203679)
jkash@bdiplaw.com
Francesca M. S. Germinario (State Bar No. 326208)
fgerminario@bdiplaw.com
Hillary Bunsow (State Bar No. 278719)
hillarybunsow@bdiplaw.com
Kenneth K. Wang (State Bar No. 336568)
kwang@bdiplaw.com
BUNSOW DE MORY LLP
701 El Camino Real
Redwood City, CA 94063
Tel: (650) 351-7248
Fax: (415) 426-4744

*Attorneys for Warzone.com, LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTIVISION PUBLISHING, INC.,<br><br>　　　　Plaintiff,<br>　v.<br>WARZONE.COM, LLC,<br><br>　　　　Defendant.<br>―――――――――――――――<br>WARZONE.COM, LLC,<br><br>　　　　Counterclaimant,<br>　v.<br>ACTIVISION PUBLISHING, INC.<br><br>　　　　Counterdefendant. | Case No. 2:21-cv-3073-FLA (JCx)<br><br>**WARZONE.COM, LLC'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE FABRICATED AND PREJUDICIAL "SHAKEDOWN," "EXTORTION," AND "DOMAIN PROSPECTING" NARRATIVES** |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT** on March 6, 2026, at 1:30p.m., or as soon thereafter as the matter may be heard before Judge Fernando L. Aenlle-Rocha in Courtroom 6, Sixth Floor, of the Federal Courthouse located at 350 West 1st Street, Los Angeles, California 90012, Defendant Warzone.com, LLC ("Warzone") hereby moves the Court for an Order granting Defendants' Motion in Limine No. 1 to exclude argument and testimony regarding fabricated and prejudicial "shakedown," "extortion," and "domain prospecting" narratives (the "Motion").

This Motion is based upon this Notice and the accompanying Memorandum in Support of Warzone's Motion in Limine No. 1, the pleadings and filings in this action, and such other matters as may be presented at or before the hearing. This Motion is made following conference of counsel pursuant to II.A.1 of Judge Aenlle-Rocha's Individual Rules, during which the Parties met and conferred on January 26, 2026 as to the bases of this Motion.

## INTRODUCTION

Warzone moves *in limine* to exclude any evidence, testimony, or argument suggesting that this action is a "shakedown," that plaintiff is or was engaged in "extortion" through this litigation, or advancing any unfounded narrative that Warzone's claims here are the product of a long-running scheme to eventually litigate against Activision.

These theories are unsupported by any admissible evidence. Activision has identified no documents, witnesses, or testimony it can offer to establish that Warzone acquired its domain name or asserted its trademark rights in bad faith, let alone as part of a conspiracy targeting Activision nearly ten years before Activision ever used the mark WARZONE in commerce. Permitting such arguments would invite the jury to decide this case based on speculation about motives and character, in violation of Federal Rules of Evidence 401, 402, and 403, rather than the elements of trademark infringement and unfair competition.

Because Activision's "shakedown" and "domain prospecting" narrative is

unsupported by evidence, irrelevant to the claims and defenses at issue, and unduly prejudicial, Activision should be precluded *in limine* from introducing such testimony or argument.

## BACKGROUND

On April 25, 2024, Activision filed its answer to Warzone's counterclaims, asserting the affirmative defense of unclean hands, and pleading only nominally that "Warzone's Counterclaims are barred, in whole or in part, by the doctrine of unclean hands." Docket No. 72 at 10.

On November 7, 2024, Activision served a response to Warzone's interrogatory number 22. Activision disclosed for the first time three theories on which they planned to proceed regarding their affirmative defense of unclean hands. *See* Declaration of Hillary Bunsow ("Bunsow Decl."), ¶ 16. In one theory, Activision claimed in its response that Warzone's trademark infringement and unfair competition claims should be barred as "part of a years'-long business strategy in which Warzone's founders, […] sought to make a windfall profit by registering the domain name Warzone.com, anticipating that Activision or another third-party might purchase that domain name from [the founders] at a premium." *Id*. Activision contended that it "has reason to believe" this theory is true based upon its characterization of Mr. Westerdal as "not in the business of developing or publishing video games. He is a domain 'prospector' in the business of purchasing and reselling domain names"—all accusations it based upon an alleged quote by Jay Westerdahl:

> I have consulted on several huge projects which I am allowed to talk about over the last 10 years, names like Phone.com, Beer.com, and Software.com that sold for millions. I have also helped acquire several domains for start-up companies that were rather cheap but quality (IPractice.com, Warzone.com, Estately.com, RobotLab.com, and DealPop.com). Those companies have gone on to do well because they have a good domain. A great domain name can be a useful tool to becoming a successful business.

*Id*. Activision cited no source for this quote. *Id*.

Activision's remaining 'disclosures' about this theory are comprised of wild conjecture. *See id*. ("Activision **has reason to believe** that in 2016 or 2017 Westerdahl

– 2 –

[sic] had no interest in developing or publishing video games…"); *id*. ("Activision **also has reason to believe** that Westerdahl [sic] and/or Ficker were aware that Activision had previously registered the domain name www.callofdutywarzone.com, and was considering the name 'Warzone' for a future 'Call of Duty' product").

Activision cites nothing, let alone competent facts, showing what Warzone's principals purportedly knew, *id.*, alleging nevertheless—based on "belief"—that Warzone "thus knew that if they could use the Warzone.com name in connection with a video game, they could later extract substantial sums from Activision if Activision ultimately did use that name." Activision then speculates about a chain of imagined events designed to paint Warzone's legitimate business conduct as evidence of "domain prospecting", and positing that "[i]n 2020 and 2021, Westerdahl [sic] and Ficker decided that the most profitable use of the Warzone domain name and Warzone game was as a vehicle to bring trademark clams against Activision….[t]hey also knew that "Warzone" was a weak mark." *Id.*

This response contains no reference to documents produced by either party, nor citation to any other place in the record, and remains operative. *Id.*

On December 3 through December 5, 2024, Activision deposed Warzone witnesses Mr. Ficker and Mr. Westerdal for a total of three days on the record and yet elicited no testimony about this theory. Bunsow Decl., ¶ 14.

Activision's response to Warzone's interrogatory number 23 characterized Warzone's pre-suit discussions about the parties' trademark applications as a "shakedown." Bunsow Decl., ¶ 15.

On January 26, 2026, at the parties' L.R. 16-2 meet and confer, Warzone asked Activision whether it intended to maintain its unclean hands defense on this theory as disclosed in its interrogatory response. Bunsow Decl., ¶ 13. Activision responded that they did not yet know and would later confirm which theories they intended to pursue. *Id.* At time of filing, Activision has not disclaimed this basis for the single affirmative defense it maintains. *Id.*

# ARGUMENT

### A.   There is No Probative Value to Activision's Unfounded Accusations

Activision has identified no documents, witnesses, or testimony establishing that Warzone acquired domain names or asserted trademark rights in bad faith, let alone as part of a scheme targeting Activision. Critically, when pressed in discovery to articulate the factual bases for its unclean hands defense, Activision cited only its "beliefs," and despite its duty under Rule 26 to supplement its responses, has failed to disclose any other factual basis. *See* Bunsow Decl., ¶ 16.

### B.   There is No Probative Value to Activision's Introduction of Argument Regarding its Unfounded Narrative

Here, the opportunity to characterize Warzone and its principals as "domain prospectors" prescient enough to somehow predict Activision's future branding choices serves but one purpose: to influence the jury's perception of Warzone without bothering to proffer commensurately probative evidence. This is highly prejudicial, and the lack of evidentiary support defeats any probative value. *See, e.g., Allen v. Hylands Inc*., No. 12-1150, 2015 WL 12720304, at *9 (C.D. Cal. Aug. 20, 2015), *aff'd*, 773 F. App'x 870 (9th Cir. 2019) (prohibiting reference to a party as a "'snake oil salesmen,' 'charlatans,' 'con artists,' or by similar derogatory terms would be unduly prejudicial and has no probative value"); *Mitchell v. New York Life Ins. Co*., No. 22-01789, 2021 WL 4535345, at *3 (C.D. Cal. June 23, 2021) (warning that "argument pertaining to the unpleaded, unsupported 'intentional wrongful conduct' theory proposed in Plaintiff's brief also will not be permitted").

### C.   There is No Probative Value to Activision's Use of Pejoratives in Reference to Warzone

By the same token, the Court should also exclude argument or testimony phrases that imply wrongdoing that Activision neither disclosed nor developed, such as "cybersquatting," "domain squatting," "domain prospecting," "extortion," and the word of which Activision is particularly fond—"shakedown." *Metaswitch Networks Ltd. v. Genband US LLC*, No. 14-744, 2016 WL 3618831, at *2 (E.D. Tex. Mar. 1, 2016) (precluding parties at trial from "refer[ring] to this litigation as a 'stick up,' 'hold up,'

'shakedown,' or 'playing the lawsuit lottery'); *ContentGuard Holdings, Inc. v. Amazon.com*, Inc., No. 2:13-CV-01112-JRG, 2015 WL 11089489, at *2 (E.D. Tex. Aug. 24, 2015) (precluding arguments and evidence using "pejorative terms, or otherwise disparaging [plaintiffs'] business model").

Because these theories are unsupported by admissible evidence, irrelevant, and profoundly prejudicial, the Court should exclude any evidence, testimony, or argument advancing them *in limine*.

## CONCLUSION

For the foregoing reasons, Warzone respectfully requests that the Court grant Motion *in limine* No. 1.

Date: February 6, 2026

Respectfully submitted,

*/s/ Francesca M. S. Germinario*
Jennifer A. Kash (State Bar No. 203679)
jkash@bdiplaw.com
Francesca M. S. Germinario
(State Bar No. 326208)
fgerminario@bdiplaw.com
Hillary Bunsow (State Bar No. 278719)
hillarybunsow@bdiplaw.com
Kenneth Wang (State Bar No. 336568)
kwang@bdiplaw.com
BUNSOW DE MORY LLP
701 El Camino Real
Redwood City, CA 94063
Tel: (650) 351-7248
Fax: (415) 426-4744

*Attorneys for Warzone.com, LLC*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Warzone.com, LLC, certifies that this brief contains 1,383 words, which complies with the word limit in the Court's Scheduling and Trial Order for Standard Civil Actions.

Date: February 6, 2026

Respectfully submitted,

*/s/ Francesca M. S. Germinario*
Francesca M.S. Germinario